# EXHIBIT D

PTO/AIA/15 (07-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office. U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# UTILITY PATENT APPLICATION TRANSMITTAL

*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| | |
|---|---|
| Attorney Docket No. | 43060-701.201 |
| First Inventor | Lian G. RAJEWSKI |
| Title | Enalapril Compositions |
| Express Mail Label No. | Electronically Filed on November 6, 2012 |

## APPLICATION ELEMENTS

*See MPEP chapter 600 concerning utility patent application contents.*

1. ☐ **Fee Transmittal Form.**
   (PTO/SB/17 or equivalent)

2. ☐ **Applicant claims small entity status.**
   See 37 CFR 1.27.

3. ☑ **Specification.** [Total Pages 45]
   Both the claims and abstract must start on a new page
   (For information on the preferred arrangement, see MPEP § 608.01(a))

4. ☑ **Drawing(s).** (35 U.S.C. 113) [Total Sheets 8]

5. ☐ **Inventor's Oath or Declaration.** [Total Sheets 3]
   (including substitute statements under 37 CFR 1.64 and assignments serving as an oath or declaration under 37 CFR 1.63(e))
   a. ☑ Newly executed (original or copy)
   b. ☐ A copy from a prior application (37 CFR 1.63(d))

6. ☑ **Application Data Sheet.** *See Note below.
   See 37 CFR 1.76 (PTO/AIA/14 or equivalent)

7. ☐ **CD-ROM or CD-R.**
   in duplicate, large table or Computer Program (Appendix)
   ☐ Landscape Table on CD

8. **Nucleotide and/or Amino Acid Sequence Submission.**
   *(if applicable, items a. – c. are required)*
   a. ☐ Computer Readable Form (CRF)
   b. ☐ Specification Sequence Listing on:
      i. ☐ CD-ROM or CD-R (2 copies); or
      ii. ☐ Paper
   c. ☐ Statements verifying identity of above copies

**ADDRESS TO:**   Commissioner for Patents
P.O. Box 1450
Alexandria VA  22313-1450

## ACCOMPANYING APPLICATION PARTS

9. ☐ **Assignment Papers.**
   (cover sheet & document(s))
   Name of Assignee_____

10. ☐ **37 CFR 3.73(c) Statement.**   ☐ **Power of Attorney.**
    (when there is an assignee)

11. ☐ **English Translation Document.**
    (if applicable)

12. ☐ **Information Disclosure Statement.**
    (PTO/SB/08 or PTO-1449)
    ☐ Copies of citations attached

13. ☐ **Preliminary Amendment.**

14. ☐ **Return Receipt Postcard.**
    (MPEP § 503) (Should be specifically itemized)

15. ☐ **Certified Copy of Priority Document(s).**
    (if foreign priority is claimed)

16. ☐ **Nonpublication Request.**
    Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35 or equivalent.

17. ☑ **Other:** Certification and Request for Prioritized Examination
    Under 37 CFR 1.102(e) (1 pp)

---

***Note:*** (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).
(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary interest in the matter. See 37 CFR 1.46(b).

## 18. CORRESPONDENCE ADDRESS

☑ The address associated with Customer Number: 21971     **OR**   ☐ Correspondence address below

| | |
|---|---|
| Name | |
| Address | |
| City | State | Zip Code |
| Country | Telephone | Email |

| | | | |
|---|---|---|---|
| Signature | | Date | November 6, 2012 |
| Name (Print/Type) | Jeffrey W. Guise | Registration No. (Attorney/Agent) | 34,613 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

SPI_0000045

Doc Code: TRACK1.REQ
Document Description: TrackOne Request

PTO/AIA/424 (09-12)

## CERTIFICATION AND REQUEST FOR PRIORITIZED EXAMINATION
### UNDER 37 CFR 1.102(e) (Page 1 of 1)

| First Named Inventor: | Lian G. RAJEWSKI | Nonprovisional Application Number (if known): | |
|---|---|---|---|
| Title of Invention: | ENALAPRIL COMPOSITIONS | | |

**APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS PRIORITIZED EXAMINATION FOR THE ABOVE-IDENTIFIED APPLICATION.**

1. The processing fee set forth in 37 CFR 1.17(i), the prioritized examination fee set forth in 37 CFR 1.17(c), and if not already paid, the publication fee set forth in 37 CFR 1.18(d) have been filed with the request. The basic filing fee, search fee, examination fee, and any required excess claims and application size fees are filed with the request or have been already been paid.

2. The application contains or is amended to contain no more than four independent claims and no more than thirty total claims, and no multiple dependent claims.

3. The applicable box is checked below:

   **I.  ☑  Original Application (Track One) - Prioritized Examination under § 1.102(e)(1)**

   i.  (a) The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a). This certification and request is being filed with the utility application via EFS-Web.
   ---OR---
   (b) The application is an original nonprovisional plant application filed under 35 U.S.C. 111(a). This certification and request is being filed with the plant application in paper.

   ii.  The executed inventor's oath or declaration is filed with the application. (37 CFR 1.63 and 1.64)

   **II.  ☐  Request for Continued Examination - Prioritized Examination under § 1.102(e)(2)**

   i.  A request for continued examination has been filed with, or prior to, this form.
   ii.  If the application is a utility application, this certification and request is being filed via EFS-Web.
   iii.  The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a), or is a national stage entry under 35 U.S.C. 371.
   iv.  This certification and request is being filed prior to the mailing of a first Office action responsive to the request for continued examination.
   v.  No prior request for continued examination has been granted prioritized examination status under 37 CFR 1.102(e)(2).

| Signature | | Date November 6, 2012 |
|---|---|---|
| Name (Print/Typed) **Jeffrey W. Guise** | | Practitioner Registration Number **34,613** |

**Note:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below*.

☑  *Total of ___1___ forms are submitted.

SPI_0000046

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

**Title of Invention** | ENALAPRIL COMPOSITIONS

As the below named inventor, I hereby declare that:

This declaration is directed to:

☒ The attached application, or

☐ United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Lian G. RAJEWSKI          Date (Optional): 11/01/2012

Signature: _____

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form. Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0551-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☒ The attached application, or

☐ United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Roger A. RAJEWSKI

Signature: _____    Date (Optional) : _____

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form. Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☒ The attached application, or

☐ United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: John L. HASLAM                    Date (Optional) 30 Oct 2012

Signature: _____

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

SPI_0000049

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☒ The attached application, or

☐ United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Kathleen HEPPERT                                    Date (Optional): 3/10/12

Signature: _Kathleen E Heppert_

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form. Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

SPI_0000050

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

■ The attached application, or

☐ United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Michael C. BECKLOFF          Date (Optional) : _____

Signature: _Michael C. Beckloff_ (signature)

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form. Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

SPI_0000051

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[■] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Frank SEGRAVE                    Date (Optional) : _____

Signature: _____

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form. Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☑ The attached application, or

☐ United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Robert MAURO

Date (Optional): 05-NOV-2012

Signature: _____

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form. Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:  ☒ The attached application, or

☐ United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Peter COLABUONO

Signature: _____     Date (Optional): 10/30/12

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form.
Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

WSGR Docket No. 43060-701.201

PATENT APPLICATION

**ENALAPRIL COMPOSITIONS**

Inventors:        Lian G. RAJEWSKI,
Citizen of United States of America, Residing at
4628 Muirfield Drive
Lawrence, KS 66047

Roger A. RAJEWSKI,
Citizen of United States of America, Residing at
4628 Muirfield Drive
Lawrence, KS 66047

John L. HASLAM,
Citizen of United States of America, Residing at
1560 N 1060 Road
Lawrence, KS 66046

Kathleen HEPPERT,
Citizen of United States of America, Residing at
2901 Oxford Road
Lawrence, KS 66049

Michael C. BECKLOFF,
Citizen of United States of America, Residing at
14108 Canterbury Street
Leawood, Kansas 66224

Frank SEGRAVE,
Citizen of United States of America, Residing at
5371 Gordon Way
Dublin, OH 43017

Robert MAURO,
Citizen of United States of America, Residing at
24 Oakwood Ave
Miller Place, NY 11764

Peter COLABUONO,
Citizen of United States of America, Residing at
7133 Mission Hills Dr.
Las Vegas, NV 89113

Assignees:    Silvergate Pharmaceuticals
              5371 Gordon Way
              Dublin, OH 43017

              a Delaware Corporation

              University of Kansas
              245 Strong Hall
              1450 Jayhawk Boulevard
              Lawrence, KS 66045

Entity:       Large business concern

W$_G^S$R

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300 (Main)
(650) 493-6811 (Facsimile)

**Filed Electronically on:  November 6, 2012**

# ENALAPRIL COMPOSITIONS

## CROSS REFERENCE

[0001] This application claims the benefit of U.S. Provisional Application Ser. No. 61/710,489, filed on October 5, 2012, which is incorporated herein by reference in its entirety.

## BACKGROUND OF THE INVENTION

[0002] Hypertension, or high blood pressure, is a serious health issue in many countries. According to the National Heart Blood and Lung Institute, it is thought that about 1 in 3 adults in the United States alone have hypertension. Left unchecked, hypertension is considered a substantial risk factor for cardiovascular and other diseases including coronary heart disease, myocardial infarction, congestive heart failure, stroke and kidney failure. Hypertension is classified as primary (essential) hypertension or secondary hypertension. Primary hypertension has no known cause and may be related to a number of environmental, lifestyle and genetic factors such as stress, obesity, smoking, inactivity and sodium intake. Secondary hypertension can be caused by drug or surgical interventions, or by abnormalities in the renal, cardiovascular or endocrine system.

[0003] A number of antihypertensive drugs are available for treating hypertension. Various therapeutic classes of antihypertensive drugs include alpha-adrenergic blockers, beta-adrenergic blockers, calcium-channel blockers, hypotensives, mineralcorticoid antagonists, central alpha-agonists, diuretics and renin-angiotensin-aldosterone inhibitors which include angiotensin II receptor antagonists (ARB) and angiotensin-converting enzyme (ACE) inhibitors. Angiotensin-converting enzyme (ACE) inhibitors inhibit angiotensin-converting enzyme (ACE), a peptydyl dipeptidase that catalyzes angiotension I to angiotension II, a potent vasoconstrictor involved in regulating blood pressure.

[0004] Enalapril is a prodrug belonging to the angiotensin-converting enzyme (ACE) inhibitor of medications. It is rapidly hydrolyzed in the liver to enalaprilat following oral administration. Enalaprilat acts as a potent inhibitor of ACE. The structural formulae of enalapril and enalaprilat is as follows:

Enalapril

Enalaprilat

SPI_0000057

[0005] Enalapril is currently administered in the form of oral tablets, (e.g., Vasotec®). In addition to the treatment of hypertension, enalapril tablets have been used for symptomatic congestive heart failure, and asymptomatic left ventricular dysfunction.

## SUMMARY OF THE INVENTION

[0006] Provided herein are enalapril powder compositions for an oral liquid formulation. In one aspect, the powder comprises (a) about 1 to about 30 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, and (b) about 60 to about 99 % (w/w) mannitol. In some embodiments, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at ambient or refrigerated conditions. In other embodiments, the powder is stable for at least six months at ambient, accelerated or refrigerated conditions. In certain instances, ambient conditions are $25\pm5°C$ and $55\pm10\%$ relative humidity. In certain instances, refrigerated conditions are $5\pm3°C$. In certain instances, accelerated conditions are about 40 °C or 60 °C and/or up to 80% relative humidity.

[0007] In another aspect, the powder comprises (a) about 1 to about 30 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, (b) about 60 to about 99 % (w/w) mannitol, and (c) about 0.5 to about 2 % (w/w) colloidal silicon dioxide. In some embodiments, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at ambient or refrigerated conditions. In other embodiments, the powder is stable for at least six months at ambient, accelerated or refrigerated conditions.

[0008] In certain embodiments, the enalapril is enalapril maleate. In certain embodiments, the powder is reconstituted in water for the oral liquid. In certain embodiments, the powder is reconstituted in a syrup for the oral liquid. In certain embodiments, the powder further comprises a pharmaceutically acceptable excipient. In certain instances, the pharmaceutically acceptable excipient is a sweetener, flavoring agent or preservative. In certain instances, the pharmaceutically acceptable excipient is a sweetener. In certain instances, the sweetener is a solid. In certain instances, the powder further comprises a solid (e.g., powder) sweetener. In certain instances, the sweetener is a liquid. In certain instances, the powder is reconstituted in a liquid sweetener (e.g., syrup). In certain embodiments, the enalapril or pharmaceutically acceptable salt thereof is about 12 to about 15 % (w/w). In certain embodiments, the mannitol is about 80 to 85 % (w/w). In certain embodiments, the silicon dioxide is about 1 % (w/w). In certain embodiments, the enalapril or pharmaceutically acceptable salt thereof is about 14 % (w/w), the mannitol is about 85 % (w/w) and

WSGR Docket No. 43060-701.201

SPI_0000058

the silicon dioxide is about 1 % (w/w).  In certain embodiments, the powder comprises about 150 mg enalapril, about 890 mg mannitol and 10 mg colloidal silicon dioxide.

[0009]  In another aspect, the powder comprises (a) about 1 to about 30 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, (b) about 60 to about 99 % (w/w) mannitol, and (c) about 0.5 to about 2 % (w/w) colloidal silicon dioxide, wherein, when the powder is reconstituted into an oral liquid, the liquid maintains no more than 5 % total impurities for at least 12 weeks at ambient or refrigerated conditions.  In another aspect, the powder comprises (a) about 1 to about 30 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, (b) about 60 to about 99 % (w/w) mannitol, and (c) about 0.5 to about 2 % (w/w) colloidal silicon dioxide, wherein, the powder maintains no more than 5 % total impurities for at least six months at ambient, accelerated or refrigerated conditions.

[0010]  In certain embodiments, the liquid maintains no more than 2.5 % total impurities for at least 12 weeks.  In certain embodiments, the liquid maintains no more than 2.5 % enalaprilat for at least 12 weeks.  In certain embodiments, the liquid maintains no more than 2.5 % diketopiperazine for at least 12 weeks.  In certain embodiments, the powder maintains no more than 2.5 % total impurities for at least six months.  In certain embodiments, the powder maintains no more than 1 % enalaprilat for at least six months.  In certain embodiments, the powder maintains no more than 1 % diketopiperazine for at least six months.

[0011]  Also provided herein are enalapril oral liquid formulations.  In one aspect, the liquid formulation comprises (a) about 0.5 to about 5 mg/mL enalapril or a pharmaceutically acceptable salt thereof, (b) about 3 to about 10 mg/mL mannitol, and (c) a sweetener; wherein, the liquid is homogenous and stable for at least 12 weeks at ambient or refrigerated conditions.

[0012]  In another aspect, the liquid formulation comprises (a) about 0.5 to about 5 mg/mL enalapril or a pharmaceutically acceptable salt thereof, (b) about 3 to about 10 mg/mL mannitol,( c) about 0.03 to about 0.13 mg/mL colloidal silicon dioxide,and (d) a sweetener; wherein, the liquid is homogenous and stable for at least 12 weeks at ambient or refrigerated conditions.

[0013]  In certain embodiments, the enalapril is enalapril maleate.  In certain embodiments, the liquid formulation comprises about 1 mg/mL enalapril.  In certain embodiments, the liquid formulation comprises about 5 mg/mL mannitol.  In certain embodiments, the liquid formulation comprises about 6 mg/mL mannitol.  In certain embodiments, the liquid formulation comprises about 0.06 mg/mL colloidal silicon dioxide.  In certain embodiments, liquid formulation comprises about 1 mg/mL enalapril, about 6 mg/mL mannitol and about 0.06 mg/mL colloidal silicon dioxide.

WSGR Docket No. 43060-701.201

SPI_0000059

[0014] In certain embodiments, the sweetener is sorbitol.  In certain embodiments, the liquid formulation comprises an additional pharmaceutically acceptable excipient.  In certain instances, the pharmaceutically acceptable excipient is a flavoring agent or preservative.  In certain embodiments, the liquid formulation comprises water as the liquid vehicle.  In certain embodiments, the liquid formulation comprises a syrup as the liquid vehicle.

[0015] In another aspect, the liquid formulation comprises (a) about 1 mg/ml enalapril or a pharmaceutically acceptable salt thereof, (b) about 6 mg/ml mannitol, (c) about .07 mg/ml colloidal silicon dioxide, and (d) a sweetener, wherein the liquid formulation maintains an 80 – 125 % $C_{max}$ of 58 ng/mL following oral administration at a 10 mg enalapril dosage for at least 12 weeks.

[0016] In some embodiments, when the liquid formulation is stored at up to 12 weeks at ambient or refrigerated conditions after reconstitution, the liquid formulation provides an 80 – 125 % $C_{max}$ of 58 ng/mL enalapril following oral administration at a 10 mg enalapril dosage.  In some embodiments, when the liquid formulation is stored at up to 12 weeks at ambient or refrigerated conditions, the liquid formulation provides an 80 – 125 % $C_{max}$ of 41 ng/mL enalaprilat following oral administration at a 10 mg enalapril dosage.

[0017] In some embodiments, when the liquid formulation is stored at up to 12 weeks at ambient or refrigerated conditions after reconstitution, the liquid formulation provides an 80 – 125 % $AUC_{inf}$ of 102.6 h*ng/mL enalapril following oral administration at a 10 mg enalapril dosage.  In some embodiments, when the liquid formulation is stored at up to 12 weeks at ambient or refrigerated conditions, the liquid formulation provides an 80 – 125 % $AUC_{inf}$ of 405.3 h*ng/mL enalaprilat following oral administration at a 10 mg enalapril dosage.

[0018] In some embodiments, when the liquid formulation is stored at up to 12 weeks at ambient or refrigerated conditions after reconstitution, the liquid formulation provides an 80 – 125 % $T_{max}$ of 0.87 h for enalapril following oral administration at a 10 mg enalapril dosage.  In some embodiments, when the liquid formulation is stored at up to 12 weeks at ambient or refrigerated conditions, the liquid formulation provides an 80 – 125 % $T_{max}$ of 3.45 h for enalaprilat following oral administration at a 10 mg enalapril dosage.

[0019] Also provided herein are processes for preparing an enalapril oral liquid formulation.  In one aspect, the process comprises the steps of (i) providing an uniform powder comprising  about 10 to about 20 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, about 60 to about 90 % (w/w) mannitol, and about 0.5 to about 1 % (w/w) colloidal silicon dioxide in a bottle; (ii) adding an amount of sweetener in liquid syrup form; (iii) shaking the liquid formulation for at least 10 seconds; (iv) adding a second amount of sweetener in liquid syrup form; (v) shaking the liquid formulation for

SPI_0000060

at least 10 seconds; and (vi) allowing the formulation in the bottle to stand for at least one hour to allow bubble dissipation.

[0020] Also provided herein are methods of treating hypertension or heart failure comprising administering to a patient in need thereof an oral liquid formulation reconstituted from an enalapril powder as described herein. In one embodiment, the patient is a child. In another embodiment, the patient is elderly.

## INCORPORATION BY REFERENCE

[0021] All publications, patents, and patent applications mentioned in this specification are herein incorporated by reference to the same extent as if each individual publication, patent, or patent application was specifically and individually indicated to be incorporated by reference.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0022] The novel features of the invention are set forth with particularity in the appended claims. A better understanding of the features and advantages of the present invention will be obtained by reference to the following detailed description that sets forth illustrative embodiments, in which the principles of the invention are utilized, and the accompanying drawings of which:

[0023] FIG. 1: Scaled-up enalapril powder composition A blended for 60 minutes showing formulation of balls and segregation.

[0024] FIG. 2: Reconstitution of various enalapril powder compositions: enalapril and mannitol (2A), neat enalapril (2B), and enalapril, mannitol and colloidal silicon dioxide (2C).

[0025] FIG. 3: Mean enalapril concentration-time profiles (linear, *top*; log, *bottom*) after administration of test formulation – fasted (Treatment A), reference product – fasted (Treatment B), and test formulation – fed (Treatment C).

[0026] FIG. 4: Mean enalaprilat concentration-time profiles (linear, *top*; log, *bottom*) after administration of test formulation – fasted (Treatment A), reference product – fasted (Treatment B), and test formulation – fed (Treatment C).

## DETAILED DESCRIPTION OF THE INVENTION

[0027] Provided herein are stable enalapril powder compositions for oral liquid administration. Also provided herein are stable enalapril oral liquid compositions. These enalapril compositions described herein are useful for the treatment of hypertension, heart failure as well as ventricular dysfunction. The compositions are advantageous over conventional solid dosage administration of

WSGR Docket No. 43060-701.201

SPI_0000061

enalapril ranging from ease of administration, better absorption, accessibility to additional patient populations such as to children and the elderly, and an increased patient compliance to medication.

[0028] It is generally known that certain segments of the population have difficulty ingesting and swallowing solid oral dosage forms such as tablets and capsules.  As many as a quarter of the total population has this difficulty.  Often, this leads to non-compliance with the recommended medical therapy with the solid dosage forms, thereby resulting in rending the therapy ineffective.  Further, solid dosage forms are not recommended for children or elderly due to increased risk in choking.

[0029] For enalapril, the current solution to overcoming the use of the tablet form is for a compounding pharmacist to pulverize and crush the enalapril tablet(s) into a powder via mortar and pestle and reconstitute the powder in some liquid form.  However forming a enalapril oral liquid in this fashion has significant drawbacks including large variability in the actual dosage, incomplete solubilizing of the enalapril tablet in the liquid, rapid instability, inconsistent  formulation methods per compounding pharmacy, and a number other potential issues.  The crushed tablet liquid formulation may also be potentially unsafe due to contamination with residual drugs and other substances from the mortar and pestle or other crushing agent.

[0030] The present embodiments provide a safe and effective oral administration of enalapril for the treatment of hypertension and other disorders.  In particular, the embodiments provide stable enalapril oral liquid compositions as well as enalapril powder compositions for oral liquid administration.

[0031] As used herein, "enalapril" refers to enalapril base, its salt, or solvate or derivative or isomer or polymorph thereof. Suitable compounds include the free base, the organic and inorganic salts, isomers, isomer salts, solvates, polymorphs, complexes etc.  U.S. Pat. Nos. 4,374,829; 4,472,380 and 4,510,083 disclose exemplary methods in the preparation of enalapril.  In some embodiments, the enalapril used in the compositions described herein is an enalapril salt.  In some instances, the enalapril salt is enalapril maleate.  In other instances, the enalapril salt is in the form of enalapril sodium.

[0032] Other ACE inhibitors are contemplated in the formulations within and include but are not limited to quinapril, indolapril, ramipril, perindopril, lisinopril, benazepril, imidapril, zofenopril, trandolapril, fosinopril, captopril, and their salts, solvates, derivatives, polymorphs, complexes, thereof.


**Enalapril Powder Compositions**

SPI_0000062

[0033] In one aspect, enalapril powder compositions herein comprise enalapril and mannitol as a stabilizing agent.  By itself, enalapril is temperature stable under dry or stable conditions.  However, when mixed in a matrix such as in a tablet with additional excipients, enalapril is unstable and can degrade to an unwanted cyclized diketopiperazine (DKP).

Enalapril                                                  Diketopiperazine

[0034] It is contemplated that lactose in enalapril solid tablet formulations aid in preventing degradation to diketopiperazine and/or other related substances.  However, surprisingly, as shown in Example 1, powder blends of lactose with enalapril showed the greatest degradation whereas enalapril/mannitol powder was most stable under accelerated conditions.  This was also observed for the prepared solutions from the powder blends (Example 2).

[0035] In some embodiments, enalapril is present in about 1 % w/w to about 30 % w/w of the powder composition.  In some embodiments, enalapril is present in about 2 % w/w to about 25 % w/w, about 5 % w/w to about 20 % w/w, about 7 % w/w to about 18 % w/w, about 10 % w/w to about 16 % w/w, or about 12 % w/w to about 15 % w/w of the powder composition.  In other embodiments, enalapril is present in about 1 % w/w, about 2 % w/w, about 3 % w/w, about 4 % w/w, about 5 % w/w, about 6 % w/w, about 7 % w/w, about 8 % w/w, about 9 % w/w, about 10 % w/w, about 11 % w/w, about 12 % w/w, about 13 % w/w, about 14 % w/w, about 15 % w/w, about 16 % w/w, about 17 % w/w, about 18 % w/w, about 19 % w/w, about 20 % w/w, about 21 % w/w, about 22 % w/w, about 23 % w/w, about 24 % w/w, about 25 % w/w, about 26 % w/w, about 27 % w/w, about 28 % w/w, about 29 % w/w or about 30 % w/w of the powder composition.  In certain embodiments, enalapril is present in about 1 % w/w of the powder composition.  In certain other embodiments, enalapril is present in about 2 % w/w of the powder composition.  In certain other embodiments, enalapril is present in about 10 % w/w of the powder composition. In certain other embodiments, enalapril is present in about 14 % w/w of the powder composition. In certain other embodiments, enalapril is present in about 15 % w/w of the powder composition. In certain other embodiments, enalapril is present in about 20 % w/w of the powder composition.

WSGR Docket No. 43060-701.201

SPI_0000063

[0036] In some embodiments, mannitol is present in about 60 % w/w to about 99 % w/w of the powder composition.  In some embodiments, mannitol is present in about 65 % w/w to about 95 % w/w, about 70 % w/w to about 90 % w/w or about 75 % w/w to about 85 % w/w of the powder composition.  In other embodiments, mannitol is present in about 99 % w/w, about 98 % w/w, about 97 % w/w, about 96 % w/w, about 95 % w/w, about 94 % w/w, about 93 % w/w, about 92 % w/w, about 91 % w/w, about 90 % w/w, about 89 % w/w, about 88 % w/w, about 87 % w/w, about 86 % w/w, about 85 % w/w, about 84 % w/w, about 83 % w/w, about 82 % w/w, about 81 % w/w, about 80 % w/w, about 79 % w/w, about 78 % w/w, about 77 % w/w, about 76 % w/w, about 75 % w/w, about 74 % w/w, about 73 % w/w, about 72 % w/w, about 71 % w/w, about 70 % w/w, about 69 % w/w, about 68 % w/w, about 67 % w/w, about 66 % w/w, about 65 % w/w, about 64 % w/w, about 63 % w/w, about 62 % w/w, about 61 % w/w or about 60 % w/w of the powder composition.  In certain embodiments, mannitol is present in about 1 % w/w of the powder composition.  In certain other embodiments, mannitol is present in about 99 % w/w of the powder composition.  In certain other embodiments, mannitol is present in about 90 % w/w of the powder composition. In certain other embodiments, mannitol is present in about 85 % w/w of the powder composition. In certain other embodiments, mannitol is present in about 80 % w/w of the powder composition. In certain other embodiments, mannitol is present in about 70 % w/w of the powder composition. In certain other embodiments, mannitol is present in about 60 % w/w of the powder composition.

[0037] In further embodiments, the enalapril powder compositions herein comprises additional excipients including, but not limited, to buffering agents, glidants, preservatives, sweeteners, flavoring agents, coloring agents and thickeners.  Additional excipients such as bulking agents, tonicity agents and chelating agents are within the scope of the embodiments.

[0038] Buffering agents maintain the pH when enalapril powder compositions are reconstituted into a liquid form.  Non-limiting examples of buffering agents include, but are not limited to, sodium bicarbonate, potassium bicarbonate, magnesium hydroxide, magnesium lactate, magnesium glucomate, aluminum hydroxide, aluminum hydroxide/sodium bicarbonate co precipitate, a mixture of an amino acid and a buffer, a mixture of aluminum glycinate and a buffer, a mixture of an acid salt of an amino acid and a buffer, and a mixture of an alkali salt of an amino acid and a buffer. Additional buffering agents include sodium citrate, sodium tartarate, sodium acetate, sodium carbonate, sodium polyphosphate, potassium polyphosphate, sodium pyrophosphate, potassium pyrophosphate, disodium hydrogenphosphate, dipotassium hydrogenphosphate, trisodium phosphate, tripotassium phosphate, sodium acetate, potassium metaphosphate, magnesium oxide, magnesium hydroxide, magnesium carbonate, magnesium silicate, calcium acetate, calcium glycerophosphate,

WSGR Docket No. 43060-701.201

SPI_0000064

calcium chloride, calcium hydroxide, calcium lactate, calcium carbonate, calcium bicarbonate, and other calcium salts. Some buffering agents also impart effervescent qualities when a powder is reconstituted in a solution. In some embodiments, the enalapril powder compositions described herein comprise a buffering agent.

[0039] Glidants are substances that improve flowability of a powder. Suitable glidants include, but are not limited to, calcium phosphate tribasic, calcium silicate, cellulose (powdered), colloidal silicon dioxide, magnesium silicate, magnesium trisilicate, silicon dioxide, starch, talc and the like. In some embodiments, the enalapril powder compositions described herein comprise a glidant. In certain instances, enalapril powder compositions described herein comprise colloidal silicon dioxide.

[0040] Preservatives include anti-microbials, anti-oxidants, and agents that enhance sterility. Exemplary preservatives include ascorbic acid, ascorbyl palmitate, BHA, BHT, citric acid, erythorbic acid, fumaric acid, malic acid, propyl gallate, sodium ascorbate, sodium bisulfate, sodium metabisulfite, sodium sulfite, parabens (methyl-, ethyl-, butyl-), benzoic acid, potassium sorbate, vanillin, and the like. In some embodiments, the enalapril powder compositions described herein comprise a preservative.

[0041] Sweeteners or sweetening agents include any compounds that provide a sweet taste. This includes natural and synthetic sugars, natural and artificial sweeteners, natural extracts and any material that initiates a sweet sensation in a subject. In some embodiments, the enalapril powder compositions described herein comprise a sweetener. Solid, powder sweeteners, in some embodiments, are blended with the enalapril powder compositions described herein. In other embodiments, sweeteners in liquid form referred to as syrups are used to solvate or dissolve the enalapril powder compositions described herein.

[0042] Sugars illustratively include glucose, fructose, sucrose, xylitol, tagatose, sucralose, maltitol, isomaltulose, Isomalt[TM] (hydrogenated isomaltulose), lactitol, sorbitol, mannitol, erythritol, trehalose, maltodextrin, polydextrose, and the like. Other sweeteners illustratively include glycerin, inulin, erythritol, maltol, acesulfame and salts thereof, e.g., acesulfame potassium, alitame, aspartame, neotame, sodium cyclamate, saccharin and salts thereof, e.g., saccharin sodium or saccharin calcium, neohesperidin dihydrochalcone, stevioside, thaumatin, and the like. Sweeteners can be used in the form of crude or refined products such as hydrogenated starch hydrolysates, maltitol syrup, high fructose corn syrup, etc., and as branded products, e.g., Sweet Am[TM] liquid (Product Code 918.003--propylene glycol, ethyl alcohol, and proprietary artificial flavor combination, Flavors of North America) and Sweet Am[TM] powder (Product Code 918.005--maltodextrin, sorbitol, and fructose combination and Product Code 918.010--water, propylene

WSGR Docket No. 43060-701.201

SPI_0000065

glycol, sorbitol, fructose, and proprietary natural and artificial flavor combination, Flavors of North America), ProSweet$^{TM}$ (1-10% proprietary plant/vegetable extract and 90-99% dextrose combination, Viriginia Dare), Maltisweet$^{TM}$ (maltitol solution, Ingredion) and Sorbo$^{TM}$ (sorbitol and sorbitol/xylitol solution, SPI Polyols), Invertose$^{TM}$ (high fructose corn syrup, Ingredion) and Ora-Sweet® sugar-free flavored syrup (Paddock Laboratories, Inc.). Sweeteners can be used singly or in combinations of two or more. Suitable concentrations of different sweeteners can be selected based on published information, manufacturers' data sheets and by routine testing. In certain instances, an above-described syrup is used to solvate or dissolve the enalapril powder compositions described herein. In further instances, Ora-Sweet® sugar-free flavored syrup is used to solvate or dissolve the enalapril powder compositions described herein.

[0043] In some embodiments, the sweetener imparts a sweet sensation equivalent to an about 50 % to about 95% w/v sucrose in water. In some embodiments, the sweetener imparts a sweet sensation equivalent to an about 50 % w/v, about 55 % w/v, about 60 % w/v, about 65 % w/v, about 70 % w/v, about 75% w/v, about 85 % w/v (e.g., simple syrup NF), about 90 % w/v, or about 95 % w/v sucrose in water. In some embodiments, the sweetener imparts a sweet sensation equivalent to an about 60 % to about 80% w/v sorbitol in water. In some embodiments, the sweetener imparts a sweet sensation equivalent to an about 60 % w/v, about 65 % w/v, about 70 % w/v, about 75 % w/v or about 80 % w/v sorbitol in water. In some embodiments, the sweetener imparts a sweet sensation equivalent to an about 64 % w/v sorbitol in water.

[0044] In another embodiment, the enalapril powder compositions comprise a flavoring agent or flavorant to enhance the taste or aroma of the composition in liquid form. Suitable natural or synthetic flavoring agents can be selected from standard reference books, for example Fenaroli's Handbook of Flavor Ingredients, 3rd edition (1995). Non-limiting examples of suitable natural flavors, some of which can readily be simulated with synthetic agents or combinations thereof, include almond, anise, apple, apricot, bergamot, blackberry, blackcurrant, blueberry, cacao, caramel, cherry, cinnamon, clove, coffee, coriander, cranberry, cumin, dill, eucalyptus, fennel, fig, ginger, grape, grapefruit, guava, hop, lemon, licorice, lime, malt, mandarin, molasses, nutmeg, orange, peach, pear, peppermint, pineapple, raspberry, rose, spearmint, strawberry, tangerine, tea, vanilla, wintergreen, etc. Also useful, particularly where the composition is intended primarily for pediatric use, is tutti-frutti or bubblegum flavor, a compounded flavoring agent based on fruit flavors. Presently preferred flavoring agents include anise, cinnamon, cacao, orange, peppermint, cherry (in particular wild cherry), grape, bubblegum and vanilla. In some embodiments, the enalapril powder

WSGR Docket No. 43060-701.201

SPI_0000066

compositions described herein comprise a wild cherry flavoring agent. Flavoring agents can be used singly or in combinations of two or more.

[0045] In further embodiments, the enalapril powder compositions comprise a coloring agent for identity and/or aesthetic purposes of the resultant liquid form. Suitable coloring agents illustratively include FD&C Red No. 3, FD&C Red No. 20, FD&C Red No. 40, FD&C Yellow No. 6, FD&C Blue No. 2, D&C Green No. 5, D&C Orange No. 5, caramel, ferric oxide and mixtures thereof.

[0046] Thickeners impart viscosity or weight to the resultant liquid forms from the enalapril compositions described herein. Exemplary thickeners include dextrin, cellulose derivatives (ethylcellulose, hydroxyethyl cellulose, methylcellulose, hypromellose, and the like) starches, pectin, polyethylene glycol, polyethylene oxide, trehalose and certain gums (xanthan gum, locust bean gum, etc.). In certain embodiments, the enalapril powder compositions comprise a thickener.

[0047] Additional excipients are contemplated in the enalapril powder composition embodiments. These additional excipients are selected based on function and compatibility with the enalapril powder compositions described herein and may be found, for example in *Remington: The Science and Practice of Pharmacy,* Nineteeth Ed (Easton, PA: Mack Publishing Company, 1995); Hoover, John E., *Remington's Pharmaceutical Sciences,* (Easton, PA: Mack Publishing Co 1975); Liberman, H.A. and Lachman, L., Eds., *Pharmaceutical Dosage Forms* (New York, NY: Marcel Decker 1980); and *Pharmaceutical Dosage Forms and Drug Delivery Systems,* Seventh Ed (Lippincott Williams & Wilkins 1999), herein incorporated by reference in their entirety.

[0048] In certain embodiments, an additional excipient is present in about 1 % w/w to about 30 % w/w of the enalapril powder composition. In certain embodiments, an additional excipient is present in about 2 % w/w to about 25 % w/w, about 5 % w/w to about 20 % w/w, about 7 % w/w to about 15 % w/w or about 10 % w/w to about 12 % w/w of the enalapril powder composition. In other embodiments, an additional excipient is present in about 1 % w/w, about 2 % w/w, about 3 % w/w, about 4 % w/w, about 5 % w/w, about 6 % w/w, about 7 % w/w, about 8 % w/w, about 9 % w/w, about 10 % w/w, about 11 % w/w, about 12 % w/w, about 13 % w/w, about 14 % w/w, about 15 % w/w, about 16 % w/w, about 17 % w/w, about 18 % w/w, about 19 % w/w, about 20 % w/w, about 21 % w/w, about 22 % w/w, about 23 % w/w, about 24 % w/w, about 25 % w/w, about 26 % w/w, about 27 % w/w, about 28 % w/w, about 29 % w/w or about 30 % w/w of the enalapril powder composition.

*Preparation of Enalapril Powder Compositions*

[0049] Preparation of enalapril powder compositions described herein includes any known pharmaceutical method. In one embodiment, the enalapril powder compositions described herein are

SPI_0000067

prepared by a granulation method. In an exemplary granulation method, enalapril is dissolved in water or a solution (e.g., sodium bicarbonate) which is subsequently sprayed onto mannitol. The wetted material is then dried via heat (e.g., 40°-60°C oven) or air-dried. The dried granulation is then passed through a 40-mesh screen, for example.

[0050] In another embodiment, the enalapril powder compositions described herein are prepared by a direct blend method. In one example, enalapril is blended with mannitol along with any other excipients in a dry mixer or blender. In certain instances, the powders are passed through a mesh screen prior to and/or after mixing. The dry blend is facilitated by conventional large-scale mixing equipment such as rotating-shell mixers (e.g., drum-type, cubical shaped, double-cone and twin-shell blender), fixed-shell (ribbon) mixers, sigma-blade and planetary paddle mixers, vertical impeller mixers and motionless mixers. The mixing is performed to blend uniformity of the enalapril powder compositions described herein. In embodiments with additional excipients, mixing methods can include all components together or incorporate certain components together first with other components subsequently added.

[0051] In an additional embodiment, the enalapril powder compositions described herein additionally comprise colloidal silicon dioxide in scale-up preparation. Although colloidal silicon dioxide has been reported to decrease stability of enalapril, (Rezende *et al.,* Stability and Compatibility Study on Enalapril Maleate using Thermoanalytical Techniques, *J. Thermal Anal. & Calorimetry*, 2008 (93) 881-886), the addition of colloidal silicon dioxide surprisingly aided in the uniformity of the blend and the bottle content as well as in preparation of the liquid form (see Example 4).

[0052] In some embodiments, colloidal silicon dioxide is present in about 0.1 % w/w to about 2 % w/w of the powder composition. In some embodiments, colloidal silicon dioxide is present in about 0.1 % w/w to about 2 % w/w, about 0.2 % w/w to about 1.7 % w/w, about 0.3 % w/w to about 1.5 %, about 0.4 % w/w to about 1.2 % or about 0.5 % w/w to about 1.0 % w/w of the powder composition. In other embodiments, colloidal silicon dioxide is present in about 0.1 % w/w, about 0.2 % w/w, about 0.3 % w/w, about 0.4 % w/w, about 0.5 % w/w, about 0.6 % w/w, about 0.7 % w/w, about 0.8 % w/w, about 0.9 % w/w, about 1.0 % w/w, about 1.1 % w/w, about 1.2 % w/w, about 1.3 % w/w, about 1.4 % w/w, about 1.5 % w/w, about 1.6 % w/w, about 1.7 % w/w, about 1.8 % w/w, about 1.9 % w/w or about 2.0 % w/w of the powder composition. In certain embodiments, colloidal silicon dioxide is present in about 0.1 % w/w of the powder composition. In certain other embodiments, colloidal silicon dioxide is present in about 0.5 % w/w of the powder composition. In certain other embodiments, colloidal silicon dioxide is present in about 1.0 % w/w of the powder

WSGR Docket No. 43060-701.201

SPI_0000068

composition. In certain other embodiments, colloidal silicon dioxide is present in about 1.2 % w/w of the powder composition. In certain other embodiments, colloidal silicon dioxide is present in about 1.5 % w/w of the powder composition. In certain other embodiments, colloidal silicon dioxide is present in about 1.7 % w/w of the powder composition. In certain other embodiments, colloidal silicon dioxide is present in about 2.0 % w/w of the powder composition.

*Stability of Enalapril Powder Compositions*

[0053] The enalapril powder compositions described herein are stable in various storage conditions including refrigerated, ambient and accelerated conditions.  Stable as used herein refer to enalapril powder compositions having about 95 % enalapril and about 5 % or less total impurities or substances at the end of a given storage period.  Stability is assessed by HPLC or any other known testing method.  In some embodiments, the stable enalapril powder compositions have about 5 %, about 4 %, about 3 %, about 2.5 %, about 2 %, about 1.5 %, about 1 %, or about 0.5 % total impurities or substances.  In other embodiments, the stable enalapril powder compositions have about 5 % total impurities or substances.  In yet other embodiments, the stable enalapril powder compositions have about 4 % total impurities or substances.  In yet other embodiments, the stable enalapril powder compositions have about 3 % total impurities or substances.  In yet other embodiments, the stable enalapril powder compositions have about 2 % total impurities or substances.  In yet other embodiments, the stable enalapril powder compositions have about 1 % total impurities or substances.  In further embodiments, the stable enalapril powder compositions have about 95 %, about 96 %, about 97 %, about 98 % or about 99 % enalapril at the end of a given storage period.

[0054] At refrigerated and ambient conditions, the enalapril powder compositions described herein are stable for at least 1 month, at least 2 months, at least 3 months, at least 6 months, at least 9 months, at least 12 months, at least 15 months, at least 18 months, at least 24 months, at least 30 months and at least 36 months.  At accelerated conditions, the enalapril powder compositions described herein are stable for at least 1 month, at least 2 months, at least 3 months, at least 4 months, at least 5 months, at least 6 months, at least 7 months, at least 8 months, at least 9 months, at least 10 months, at least 11 months or at least 12 months.  Accelerated conditions include temperature and/or relative humidity (RH) that are above ambient levels (e.g. 25±5°C; 55±10% RH). In some instances, an accelerated condition is at about 30 °C, about 35 °C, about 40 °C, about 45 °C, about 50 °C, about 55 °C or about 60 °C.  In other instances, an accelerated condition is above 65 % RH, about 70 % RH, about 75 % RH or about 80 % RH.  In further instances, an accelerated condition is about 40 °C or 60 °C at ambient humidity.  In yet further instances, an accelerated

-13-

WSGR Docket No. 43060-701.201

SPI_0000069

condition is about 40 °C at 75±5 % RH humidity. Ambient conditions include temperature and/or relative humidity (RH) that are at ambient levels (e.g. 25±5°C; 55±10% RH).  In some instances, an ambient condition is at about 20 °C, about 21 °C, about 22 °C, about 23 °C, about 24 °C, about 25 °C, about 26 °C, about 27 °C, about 28 °C, about 29 °C, or about 30 °C.  In other instances, an ambient condition is about 45 % RH, about 50 % RH, about 55 % RH, about 60 % RH or about 65 % RH.  Refrigerated conditions include temperature and/or relative humidity (RH) in typical refrigeration units (e.g., 5±3°C).  In some instances, a refrigerated condition is at about 2 °C, about 3 °C, about 4 °C, about 5 °C, about 6 °C, about 7 °C or about 8 °C.  In other instances, a a refrigerated condition is at about 4 °C.

**Enalapril Oral Liquid Compositions**

[0055]  In another aspect, enalapril powder compositions described herein are useful for the preparation or reconstitution of an enalapril oral liquid.  Oral liquids include, but are not limited to, solutions (both aqueous and nonaqueous), suspensions, emulsions, syrups, slurries, juices, elixirs, dispersions, and the like.  It is envisioned that solution/suspensions are also included where certain components of the enalapril powder compositions described herein are in a solution while other components are in a suspension.  By way of illustrative example only, when an enalapril powder composition comprising enalapril, mannitol and an excipient such as colloidal silicon dioxide or a powdered cellulose is dissolved in water or other aqueous solvent, the enalapril and mannitol are in solution whereas the colloidal silicon dioxide or powdered cellulose would form a suspension in the aqueous environment.  In some embodiments, the enalapril oral liquid compositions are solutions.  In other embodiments, the enalapril oral liquid compositions are suspensions.  In yet other embodiments, the enalapril oral liquid compositions are solution/suspensions.

[0056]  Liquid vehicles suitable for the enalapril powder compositions described herein are selected for a particular oral liquid composition (solution, suspension, etc.) as well as other qualities such as clarity, toxicity, viscosity, compatibility with excipients, chemical inertness, palatability, odor, color and economy.  Exemplary liquid vehicles include water, ethyl alcohol, glycerin, propylene glycol, syrup (sugar or other sweetener based, e.g., Ora-Sweet® SF sugar-free flavored syrup), juices (apple, grape, orange, cranberry, cherry, tomato and the like), other beverages (tea, coffee, soft drinks, milk and the like), oils (olive, soybean, corn, mineral, castor and the like), and combinations or mixtures thereof.  Certain liquid vehicles, e.g., oil and water, can be combined together to form emulsions.  In some embodiments, water is used for as a vehicle for an enalapril oral liquid.  In other embodiments,

SPI_0000070

a syrup is used for as a vehicle for an enalapril oral liquid.  In yet other embodiments, a juice is used for as a vehicle for an enalapril oral liquid.

[0057] The enalapril liquids prepared from the powder compositions described herein, in some embodiments, are homogenous.  Homogenous liquids as used herein refer to those liquids that are uniform in appearance, identity, consistency and drug concentration per volume. Non-homogenous liquids include such liquids that have varied coloring, viscosity and/or aggregation of solid particulates, as well as non-uniform drug concentration in a given unit volume.  Homogeneity in liquids are assessed by qualitative identification or appearance tests and/or quantitative HPLC testing or the like.  Such exemplary tests  include visual inspection of the resultant liquid for air bubbles and/or undissolved solids which may cause variable dosing.  Analytical HPLC testing can also determine drug concentration uniformity by examining aliquots of certain volume sections (e.g., 5 or 10 mL from the top, middle and bottom of a 150 mL bottle).  The mixing methods and excipients described herein are selected to impart a homogenous quality to a resultant enalapril liquid.

[0058] Mixing methods encompass any type of mixing that results in a homogenous enalapril liquid composition.  In some embodiments, a quantity of an enalapril powder composition is added to a liquid vehicle and then mixed by a stirring, shaking, swirling, agitation element or a combination thereof.  In certain instances, a fraction of an enalapril powder composition (i.e., one-half, one-third, one-fourth, etc.) is added to a liquid vehicle, mixed by stirring, shaking, swirling, agitation or a combination thereof, and the subsequent powder fraction(s) is added and mixed.  In other embodiments, a liquid vehicle is added to an enalapril powder composition in a container, for example, a bottle, vial, bag, beaker, syringe, or the like.  The container is then mixed by stirring, shaking, swirling, agitation, inversion or a combination thereof.  In certain instances, a fractional volume of the liquid vehicle (i.e., one-half, one-third, one-fourth volume, etc.) is added to an enalapril powder composition in a container, mixed by stirring, shaking, swirling, agitation, inversion or a combination thereof; and the subsequent liquid fraction(s) is added and mixed.  In certain instances, a one-half fractional volume of the liquid vehicle is added to an enalapril powder composition in a container and mixing by shaking; the other one-half fractional volume of the liquid vehicle is then subsequently added and mixed.  In any of the above embodiments, mixing (i.e., stirring, shaking, swirling, agitation, inversion or a combination thereof) occurs for a certain time intervals such as about 10 seconds, about 20 seconds, about 30 seconds, about 45 seconds, about 60 seconds, about 90 seconds, about 120 seconds, about 2.5 minutes, about 3 minutes, about 3.5 minutes, about 4 minutes, or about 5 minutes.  In embodiments, where there are two or more mixing steps, the time intervals for each mixing can be the same (e.g., 2x10 seconds) or different (e.g., 10

WSGR Docket No. 43060-701.201

SPI_0000071

seconds for first mixing and 20 seconds for second mixing).   In any of the above embodiments, an enalapril liquid composition is allowed to stand for a period of time such as about 10 minutes, about 20 minutes, about 30 minutes, about 45 minutes, about 1 hour, about 1.5 hours or about 2 hours, to allow any air bubbles resultant from any of the mixing methods to dissipate.

*Stability of Enalapril Oral Liquid Compositions*

[0059]   The enalapril oral liquid compositions described herein are stable in various storage conditions including refrigerated and ambient conditions.   Stable as used herein refer to enalapril oral liquid compositions having at least about 90 % enalapril and 5 % or less total impurities or substances at the end of a given storage period.   Stability is assessed by HPLC or any other known testing method.   In some embodiments, the stable enalapril oral liquid compositions have about 5 %, about 4 %, about 3 %, about 2.5 %, about 2 %, about 1.5 %, about 1 %, or about 0.5 % total impurities or substances.   In other embodiments, the stable enalapril oral liquid compositions have about 5 % total impurities or substances.   In yet other embodiments, the stable enalapril oral liquid compositions have about 4 % total impurities or substances.   In yet other embodiments, the stable enalapril oral liquid compositions have about 3 % total impurities or substances.   In yet other embodiments, the stable enalapril oral liquid compositions have about 2 % total impurities or substances.   In yet other embodiments, the stable enalapril oral liquid compositions have about 1 % total impurities or substances.   In further embodiments, the stable enalapril oral liquid compositions have at least about 90 %, at least about 91 %, at least about 92 %, at least about 93 %, or at least about 94 % enalapril at the end of a given storage period.

[0060]   At refrigerated and ambient conditions, in some embodiments, the enalapril oral liquid compositions described herein are stable for at least 1 week, 2 weeks, 4 weeks, 6 weeks, 8 weeks, 10 weeks, 12 weeks, 16 weeks, 20 weeks, at least 24 weeks, at least 30 weeks, or at least 36 weeks.   In other embodiments, the enalapril oral liquid compositions described herein are stable at refrigerated and ambient conditions for at least 12 weeks.   Ambient conditions include temperature and/or relative humidity (RH) that are at ambient levels (e.g. 25±5°C; 55±10% RH).   In some instances, an ambient condition is at about 20 °C, about 21 °C, about 22 °C, about 23 °C, about 24 °C, about 25 °C, about 26 °C, about 27 °C, about 28 °C, about 29 °C, or about 30 °C.   In other instances, an ambient condition is about 45 % RH, about 50 % RH, about 55 % RH, about 60 % RH or about 65 % RH.   Refrigerated conditions include temperature and/or relative humidity (RH) in typical refrigeration units (e.g., 5±3°C).   In some instances, a refrigerated condition is at about 2 °C, about 3 °C, about 4 °C, about 5 °C, about 6 °C, about 7 °C or about 8 °C.   In other instances, a a refrigerated condition is at about 4 °C.

SPI_0000072

[0061] In further embodiments, the stable enalapril oral liquid compositions described herein that are stored at ambient or refrigerated conditions for a give storage period after reconstitution provide similar, consistent or equivalent pharmacokinetic parameters as an enalapril oral liquid composition that is formulated prior to administration to a subject (i.e., freshly made). In other words, the enalapril oral liquid compositions described herein have stability after a storage period to provide similar, consistent or equivalent pharmacokinetic parameters as a freshly made enalapril oral liquid composition. For example, a 12 week stable enalapril oral liquid composition provides similar, consistent or equivalent pharmacokinetic parameters as an enalapril oral liquid composition made five minutes prior administration. Pharmacokinetic parameters include $C_{max}$, $T_{max}$, $AUC_{last}$, $AUC_{inf}$, $T_{1/2}$, $C_{last}$ for enalapril and/or enalaprilat and exemplary values are obtained and described in Example 7. In some instances, the stable enalapril oral liquid compositions described herein provide within 80% to 125%, 80% to 120%, 85% to 125%, 90% to 110% pharmacokinetic parameters of a freshly made enalapril oral liquid composition when the stable composition is stored at least 1 week, 2 weeks, 4 weeks, 6 weeks, 8 weeks, 10 weeks, 12 weeks, 16 weeks, 20 weeks, at least 24 weeks, at least 30 weeks, or at least 36 weeks after reconstitution. In other instances, the stable enalapril oral liquid compositions described herein provide within 80% to 125%, 80% to 120%, 85% to 125%, 90% to 110% pharmacokinetic parameters of a freshly made enalapril oral liquid composition when the stable composition is stored for 12 weeks after reconstitution.

## Kits and Articles of Manufacture

[0062] For the enalapril powder and liquid compositions described herein, kits and articles of manufacture are also described. Such kits can comprise a carrier, package, or container that is compartmentalized to receive one or more containers such as vials, tubes, and the like, each of the container(s) comprising one of the separate elements to be used in a method described herein including an enalapril powder or liquid composition. Suitable containers include, for example, bottles, vials, syringes, and test tubes. The containers can be formed from a variety of materials such as glass or plastic.

[0063] A kit will typically may comprise one or more additional containers, each with one or more of various materials (such as reagents, optionally in concentrated form, and/or devices) desirable from a commercial and user standpoint for an enalapril powder or liquid composition described herein. Non-limiting examples of such materials include, but not limited to, buffers, diluents, filters, needles, syringes; carrier, package, container, vial and/or tube labels listing contents and/or

WSGR Docket No. 43060-701.201

SPI_0000073

instructions for use, and package inserts with instructions for use associated with an enalapril powder or liquid composition.  A set of instructions will also typically be included.

[0064] A label can be on or associated with the container.  A label can be on a container when letters, numbers or other characters forming the label are attached, molded or etched into the container itself; a label can be associated with a container when it is present within a receptacle or carrier that also holds the container, e.g., as a package insert.  A label can be used to indicate that the contents are to be used for a specific therapeutic application.  The label can also indicate directions for use of the contents, such as in the methods described herein.


## Methods

[0065] Provided herein, in one aspect, are methods of treatment comprising administration of the enalapril oral liquid compositions described herein to a subject.  In some embodiments, the enalapril oral liquid compositions described herein treat hypertension in a subject.  Hypertension as used herein includes both primary (essential) hypertension or secondary hypertension.  In certain instances, hypertension is classified in cases when blood pressure values are greater than or equal to 140/90 (systolic/diastolic) mm Hg in a subject.   In certain instances, the enalapril oral liquid compositions described herein treat a subject having a blood pressure values are greater than or equal to 140/90 mm Hg.  In certain instances, the enalapril oral liquid compositions described herein treat primary (essential) hypertension in a subject.  In other instances, the enalapril oral liquid compositions described herein treat secondary hypertension in a subject.

[0066] In other embodiments, the enalapril oral liquid compositions described herein treat prehypertension in a subject. Prehypertension as used herein refers to cases where a subject's blood pressure is elevated above normal but not to the level considered to be hypertension.  In some instances, prehypertension is classified in cases when blood pressure values are 120-139/80-89 mm Hg.  In certain instances, the enalapril oral liquid compositions described herein treat a subject having a blood pressure values of 120-139/80-89 mm Hg.

[0067] In yet other embodiments, the enalapril oral liquid compositions described herein are prophylactically administered to subjects suspected of having, predisposed to, or at risk of developing hypertension.  In some embodiments, the administration of enalapril oral liquid compositions described herein allow for early intervention prior to onset of hypertension.  In certain embodiments, upon detection of a biomarker, environmental, genetic factor, or other marker, the enalapril oral liquid compositions described herein are prophylactically administered to subjects.

WSGR Docket No. 43060-701.201

SPI_0000074

[0068] In further embodiments, the enalapril oral liquid compositions described herein treat heart failure (e.g., symptomatic congestive), asymptomatic left ventricular dysfunction, myocardial infarction, diabetic nephropathy and chronic renal failure.  In certain instances, the enalapril oral liquid compositions described herein treat symptomatic congestive heart failure.  In other instances, the enalapril oral liquid compositions described herein treat asymptomatic left ventricular dysfunction.  In further instances, the enalapril oral liquid compositions described herein treat myocardial infarction.  In yet further instances, the enalapril oral liquid compositions described herein treat diabetic nephropathy.  In yet further instances, the enalapril oral liquid compositions described herein treat chronic renal failure.

**Dosing**

[0069] In one aspect, the enalapril oral liquid compositions are used for the treatment of diseases and conditions described herein.  In addition, a method for treating any of the diseases or conditions described herein in a subject in need of such treatment, involves administration of enalapril oral liquid compositions in therapeutically effective amounts to said subject.

[0070] Dosages of enalapril oral liquid compositions described can be determined by any suitable method.  Maximum tolerated doses (MTD) and maximum response doses (MRD) for enalapril and/or enalaprilat can be determined via established animal and human experimental protocols as well as in the examples described herein.  For example, toxicity and therapeutic efficacy of enalapril and/or enalaprilat can be determined by standard pharmaceutical procedures in cell cultures or experimental animals, including, but not limited to, for determining the $LD_{50}$ (the dose lethal to 50% of the population) and the $ED_{50}$ (the dose therapeutically effective in 50% of the population).  The dose ratio between the toxic and therapeutic effects is the therapeutic index and it can be expressed as the ratio between $LD_{50}$ and $ED_{50}$.  Enalapril dosages exhibiting high therapeutic indices are of interest.  The data obtained from cell culture assays and animal studies can be used in formulating a range of dosage for use in human.  The dosage of such compounds lies preferably within a range of circulating concentrations that include the $ED_{50}$ with minimal toxicity.  The dosage may vary within this range depending upon the dosage form employed and the route of administration utilized.  Additional relative dosages, represented as a percent of maximal response or of maximum tolerated dose, are readily obtained via the protocols.

[0071] In some embodiments, the amount of a given enalapril oral liquid composition that corresponds to such an amount varies depending upon factors such as the particular enalapril salt or form, disease condition and its severity, the identity (*e.g.*, age, weight, sex) of the subject or host in

-19-

SPI_0000075

need of treatment, but can nevertheless be determined according to the particular circumstances surrounding the case, including, *e.g.*, the specific agent being administered, the liquid composition type, the condition being treated, and the subject or host being treated.

[0072] In some embodiments, the enalapril oral liquid compositions described herein are provided in a dose per day from about 0.01 mg to 100 mg, from about 0.1 mg to about 80 mg, from about 1 to about 60, from about 2 mg to about 40 mg of enalapril. In certain embodiments, the enalapril oral liquid compositions described herein are provided in a daily dose of about 0.01 mg, about 0.05 mg, about 0.1 mg, about 0.2 mg, about 0.4 mg, about 0.6 mg, about 0.8 mg, about 1 mg, about 1.5 mg, about 2 mg, about 2.5 mg, about 3 mg, about 4 mg, about 5 mg, about 6 mg, about 7 mg, about 8 mg, about 9 mg, about 10 mg, about 11 mg, about 12 mg, about 15 mg, about 20 mg, about 25 mg, about 30 mg, about 35 mg, about 40 mg, about 45 mg, about 50 mg, about 55 mg, about 60 mg, about 65 mg, about 70 mg, about 76, mg, about 80 mg, about 85 mg, about 90 mg or about 100 mg, or any range derivable therein. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 1 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 2 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 3 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 4 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 5 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 6 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 7 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 8 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 9 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 10 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 11 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 12 mg. The dose per day described herein can be given once per day or multiple times per day in the form of sub-doses given b.i.d., t.i.d., q.i.d., or the like where the number of sub-doses equal the dose per day.

[0073] In further embodiments, the daily dosages appropriate for the enalapril oral liquid compositions described herein are from about 0.01 to about 1.0 mg/kg per body weight. In one embodiment, the daily dosages appropriate for the enalapril oral liquid compositions are from about

0.02 to about 0.8 mg/kg enalapril per body weight.  In another embodiment, the daily dosage appropriate for the enalapril oral liquid compositions are from about 0.05 to about 0.6 mg/kg per body weight.  In another embodiment, the daily dosage appropriate for the enalapril oral liquid compositions is about 0.05 mg/kg, about 0.06 mg/kg, about 0.07 mg/kg, about 0.08 mg/kg, about 0.10 mg/kg, about 0.15 mg/kg, about 0.20 mg/kg, about 0.25 mg/kg, about 0.30 mg/kg, about 0.40 mg/kg, about 0.50 mg/kg, or about 0.60 mg/kg.  In a further embodiment, the daily dosage appropriate for the enalapril oral liquid compositions is about 0.08 mg/kg.

[0074]  In other embodiments the enalapril oral liquid compositions are provided at the maximum tolerated dose (MTD) for enalapril and/or enalaprilat.  In other embodiments, the amount of the enalapril oral liquid compositions administered is from about 10% to about 90% of the maximum tolerated dose (MTD), from about 25% to about 75% of the MTD, or about 50% of the MTD. In particular embodiments, the amount of the enalapril oral liquid compositions administered is from about 5%, 10%, 15%, 20%, 25%, 30%, 35%, 40%, 45%, 50%, 55%, 60%, 65%, 70%, 75%, 80%, 85%, 90%, 95%, 99%, or higher, or any range derivable therein, of the MTD for enalapril and/or enalaprilat.

[0075]  In further embodiments, the enalapril oral liquid compositions are provided in a dosage that is similar, comparable or equivalent to a dosage of a known enalapril tablet formulation.  In other embodiments, the enalapril oral liquid compositions are provided in a dosage that provides a similar, comparable or equivalent pharmacokinetic parameters (e.g., AUC, $C_{max}$, $T_{max}$, $C_{min}$, $T_{1/2}$) as a dosage of a known enalapril tablet formulation.  Similar, comparable or equivalent pharmacokinetic parameters, in some instances, refer to within 80% to 125%, 80% to 120%, 85% to 125%, 90% to 110%, or increments therein, of the given values. It should be recognized that the ranges can, but need not be symmetrical, e.g., 85% to 105%.


**<u>Administration</u>**

[0076]  Administration of a enalapril oral liquid composition is at a dosage described herein or at other dose levels and compositions determined and contemplated by a medical practitioner.  In certain embodiments, the enalapril oral liquid compositions described herein are administered for prophylactic and/or therapeutic treatments. In certain therapeutic applications, the enalapril oral liquid compositions are administered to a patient already suffering from a disease, e.g., hypertension, in an amount sufficient to cure the disease or at least partially arrest or ameliorate the symptoms, e.g., lower blood pressure. Amounts effective for this use depend on the age of the patient, severity of the disease, previous therapy, the patient's health status, weight, and response to the enalapril

SPI_0000077

compositions, and the judgment of the treating physician. Therapeutically effective amounts are optionally determined by methods including, but not limited to, a dose escalation clinical trial.

[0077] In prophylactic applications, the enalapril oral liquid compositions described herein are administered to a patient susceptible to or otherwise at risk of a particular disease, e.g., hypertension. Such an amount is defined to be a "prophylactically effective amount or dose." In this use, the precise amounts also depend on the patient's age, state of health, weight, and the like. When used in a patient, effective amounts for this use will depend on the risk or susceptibility of developing the particular disease, previous therapy, the patient's health status and response to the enalapril compositions, and the judgment of the treating physician.

[0078] In certain embodiments wherein the patient's condition does not improve, upon the doctor's discretion the administration of an enalapril oral liquid composition described herein are administered chronically, that is, for an extended period of time, including throughout the duration of the patient's life in order to ameliorate or otherwise control or limit the symptoms of the patient's disease.  In other embodiments, administration of an enalapril oral liquid composition continues until complete or partial response of a disease.

[0079] In certain embodiments wherein a patient's status does improve, the dose of an enalapril oral liquid composition being administered may be temporarily reduced or temporarily suspended for a certain length of time (*i.e.*, a "drug holiday"). In specific embodiments, the length of the drug holiday is between 2 days and 1 year, including by way of example only, 2 days, 3 days, 4 days, 5 days, 6 days, 7 days, 10 days, 12 days, 15 days, 20 days, 28 days, 35 days, 50 days, 70 days, 100 days, 120 days, 150 days, 180 days, 200 days, 250 days, 280 days, 300 days, 320 days, 350 days, and 365 days. The dose reduction during a drug holiday is, by way of example only, by 10%-100%, including by way of example only 10%, 15%, 20%, 25%, 30%, 35%, 40%, 45%, 50%, 55%, 60%, 65%, 70%, 75%, 80%, 85%, 90%, 95%, and 100%.

[0080] In some embodiments, enalapril oral liquid compositions described herein are administered chronically.  For example, in some embodiments, an enalapril oral liquid composition is administered as a continuous dose, i.e., administered daily to a subject.  In some other embodiments, enalapril oral liquid compositions described herein are administered intermittently (e.g. drug holiday that includes a period of time in which the composition is not administered or is administered in a reduced amount).

[0081] In some embodiments an enalapril oral liquid composition is administered to a subject who is in a fasted state.  A fasted state refers to a subject who has gone without food or fasted for a certain period of time.  General fasting periods include at least 4 hours, at least 6 hours, at least 8 hours, at

SPI_0000078

least 10 hours, at least 12 hours, at least 14 hours and at least 16 hours without food.  In some embodiments, an enalapril oral liquid composition is administered orally to a subject who is in a fasted state for at least 8 hours.  In other embodiments, an enalapril oral liquid composition is administered to a subject who is in a fasted state for at least 10 hours.  In yet other embodiments, an enalapril oral liquid composition is administered to a subject who is in a fasted state for at least 12 hours.  In other embodiments, an enalapril oral liquid composition is administered to a subject who has fasted overnight.

[0082]  In other embodiments an enalapril oral liquid composition is administered to a subject who is in a fed state. A fed state refers to a subject who has taken food or has had a meal.  In certain embodiments, an enalapril oral liquid composition is administered to a subject in a fed state 5 minutes post-meal, 10 minutes post-meal, 15 minutes post-meal, 20 minutes post-meal, 30 minutes post-meal, 40 minutes post-meal, 50 minutes post-meal, 1 hour post-meal, or 2 hours post-meal.  In certain instances, an enalapril oral liquid composition is administered to a subject in a fed state 30 minutes post-meal.  In other instances, an enalapril oral liquid composition is administered to a subject in a fed state 1 hour post-meal.  In yet further embodiments, an enalapril oral liquid composition is administered to a subject with food.

[0083]  In further embodiments described herein, an enalapril oral liquid composition is administered at a certain time of day for the entire administration period.  For example, an enalapril oral liquid composition can be administered at a certain time in the morning, in the evening, or prior to bed.  In certain instances, an enalapril oral liquid composition is administered in the morning.  In other embodiments, an enalapril oral liquid composition can be administered at different times of the day for the entire administration period.  For example, an enalapril oral liquid composition can be administered on 8:00 am in the morning for the first day, 12 pm noon for the next day or administration, 4 pm in the afternoon for the third day or administration, and so on.

## Further Combinations

[0084]  The treatment of certain diseases or conditions (e.g., hypertension, heart failure, myocardial infarction and the like) in a subject with an enalapril oral liquid composition described herein encompass additional therapies and treatment regimens with other agents in some embodiments.  Such additional therapies and treatment regimens can include another therapy, e.g., additional anti-hypertensives,  for treatment of the particular disease or condition in some embodiments.  Alternatively, in other embodiments, additional therapies and treatment regimens include other

WSGR Docket No. 43060-701.201

SPI_0000079

agents used to treat adjunct conditions associated with the disease or condition or a side effect from the enalapril oral liquid composition in the therapy.

[0085] Additional agents for use in combination with an enalapril oral liquid composition described herein include, but are not limited to, diuretics (loop, thiazide, potassium-sparing, and the like), beta blockers (metoprolol, propanolol, pronethalol, and the like), alpha blockers (phentolamine, phenoxybenzamine, tamsulosin, prazosin, and the like), mixed alpha and beta blockers (bucindolol, carvedilol, labetalol), calcium channel blockers (dihydropyridines such as nifedipine, amlodipine, etc., dilitazem, verapamil and the like), angiotensin II receptor antagonists (saralasin, lsartan, eprosartin, irbesartan, valsartan, and the like), other ACE inhibitors (captopril, quinapril, ramipril, lisinopril, zofenopril, and the like), aldosterone antagonists (eplerenone, spironolactone and the like), vasodilators (hydralazine and the like) and alpha-2 agonists (clonidine, moxonidine, guanabenz and the like).

## Certain Definitions

[0086] Unless defined otherwise, all technical and scientific terms used herein have the same meanings as commonly understood by one of ordinary skill in the art.  Although any methods and materials similar or equivalent to those described herein can be used in the practice or testing of embodiments described herein, certain preferred methods, devices, and materials are now described.

[0087] As used herein and in the appended claims, the singular forms "a", "an", and "the" include plural reference unless the context clearly dictates otherwise.  Thus, for example, reference to "an excipient" is a reference to one or more excipients and equivalents thereof known to those skilled in the art, and so forth.

[0088] The term "about" is used to indicate that a value includes the standard level of error for the device or method being employed to determine the value. The use of the term "or" in the claims is used to mean "and/or" unless explicitly indicated to refer to alternatives only or the alternatives are mutually exclusive, although the disclosure supports a definition that refers to only alternatives and to "and/or."  The terms "comprise," "have" and "include" are open-ended linking verbs. Any forms or tenses of one or more of these verbs, such as "comprises," "comprising," "has," "having," "includes" and "including," are also open-ended.  For example, any method that "comprises," "has" or "includes" one or more steps is not limited to possessing only those one or more steps and also covers other unlisted steps.

SPI_0000080

[0089] "Optional" or "optionally" may be taken to mean that the subsequently described structure, event or circumstance may or may not occur, and that the description includes instances where the events occurs and instances where it does not.

[0090] As used herein, the term "therapeutic" means an agent utilized to treat, combat, ameliorate, prevent or improve an unwanted condition or disease of a patient.  In some embodiments, a therapeutic agent such as enalapril is directed to the treatment and/or the amelioration of, reversal of, or stabilization of the symptoms of hypertension described herein.

[0091] "Administering" when used in conjunction with a therapeutic means to administer a therapeutic systemically or locally, as directly into or onto a target tissue, or to administer a therapeutic to a patient whereby the therapeutic positively impacts the tissue to which it is targeted. Thus, as used herein, the term "administering", when used in conjunction with an enalapril composition, can include, but is not limited to, providing an enalapril composition into or onto the target tissue; providing an enalapril composition systemically to a patient by, e.g., oral administration whereby the therapeutic reaches the target tissue or cells. "Administering" a composition may be accomplished by injection, topical administration, and oral administration or by other methods alone or in combination with other known techniques.

[0092] The term "animal" as used herein includes, but is not limited to, humans and non-human vertebrates such as wild, domestic and farm animals. As used herein, the terms "patient," "subject" and "individual" are intended to include living organisms in which certain conditions as described herein can occur. Examples include humans, monkeys, cows, sheep, goats, dogs, cats, mice, rats, and transgenic species thereof. In a preferred embodiment, the patient is a primate. In certain embodiments, the primate or subject is a human. In certain instances, the human is an adult.   In certain instances, the human is child.   In further instances, the human is under the age of 12 years. In certain instances, the human is elderly.  In other instances, the human is 60 years of age or older. Other examples of subjects include experimental animals such as mice, rats, dogs, cats, goats, sheep, pigs, and cows. The experimental animal can be an animal model for a disorder, e.g., a transgenic mouse with hypertensive pathology. A patient can be a human suffering from hypertension, or its variants or etiological forms.

[0093] By "pharmaceutically acceptable", it is meant the carrier, diluent or excipient must be compatible with the other ingredients of the formulation and not deleterious to the recipient thereof.

[0094] The term "pharmaceutical composition" shall mean a composition comprising at least one active ingredient, whereby the composition is amenable to investigation for a specified, efficacious outcome in a mammal (for example, without limitation, a human).  Those of ordinary skill in the art

SPI_0000081

will understand and appreciate the techniques appropriate for determining whether an active ingredient has a desired efficacious outcome based upon the needs of the artisan.

[0095] A "therapeutically effective amount" or "effective amount" as used herein refers to the amount of active compound or pharmaceutical agent that elicits a biological or medicinal response in a tissue, system, animal, individual or human that is being sought by a researcher, veterinarian, medical doctor or other clinician, which includes one or more of the following: (1) preventing the disease; for example, preventing a disease, condition or disorder in an individual that may be predisposed to the disease, condition or disorder but does not yet experience or display the pathology or symptomatology of the disease, (2) inhibiting the disease; for example, inhibiting a disease, condition or disorder in an individual that is experiencing or displaying the pathology or symptomatology of the disease, condition or disorder (i.e., arresting further development of the pathology and/or symptomatology), and (3) ameliorating the disease; for example, ameliorating a disease, condition or disorder in an individual that is experiencing or displaying the pathology or symptomatology of the disease, condition or disorder (i.e., reversing the pathology and/or symptomatology). As such, a non-limiting example of a "therapeutically effective amount" or "effective amount" of a composition of the present disclosure may be used to inhibit, block, or reverse the activation, migration, or proliferation of cells or to effectively treat hypertension or ameliorate the symptoms of hypertension.

[0096] The terms "treat," "treated," "treatment," or "treating" as used herein refers to both therapeutic treatment in some embodiments and prophylactic or preventative measures in other embodiments, wherein the object is to prevent or slow (lessen) an undesired physiological condition, disorder or disease, or to obtain beneficial or desired clinical results. For the purposes described herein, beneficial or desired clinical results include, but are not limited to, alleviation of symptoms; diminishment of the extent of the condition, disorder or disease; stabilization (i.e., not worsening) of the state of the condition, disorder or disease; delay in onset or slowing of the progression of the condition, disorder or disease; amelioration of the condition, disorder or disease state; and remission (whether partial or total), whether detectable or undetectable, or enhancement or improvement of the condition, disorder or disease. Treatment includes eliciting a clinically significant response without excessive levels of side effects. Treatment also includes prolonging survival as compared to expected survival if not receiving treatment. A prophylactic benefit of treatment includes prevention of a condition, retarding the progress of a condition, stabilization of a condition, or decreasing the likelihood of occurrence of a condition. As used herein, "treat," "treated," "treatment," or "treating" includes prophylaxis in some embodiments.

WSGR Docket No. 43060-701.201

SPI_0000082

# EXAMPLES

## Example 1: Stability of Enalapril Formulated Powder

[0097] *Enalapril Powder Formulation*: The stability of enalapril with lactose, sucrose or mannitol was assessed in various storage conditions. 2 % w/w enalapril powder was formulated via granulation according to the following table.

| Component | Amount in 150 mL Bottle (mg) | Weight (% w/w solids) | Batch (g) |
|---|---|---|---|
| Enalapril Maleate | 150 | 2.0 | 6.000 |
| Stability Agent (Lactose, Sucrose or Mannitol) | 7350 | 98.0 | 294.0 |
| Sodium Bicarbonate | --- | --- | 3.074 |
| Water | --- | --- | 25.00 |
| Total Solids | 7500 | 100.0 | 300.0 |

[0098] Enalapril Maleate was slowly dissolved in a 12 % sodium bicarbonate solution.  The stability agent (lactose, sucrose or mannitol) was mixed in a mixer at slow speed and the enalapril solution was slowly sprayed onto the stability agent over a period of about 20 minutes.  The wetted material was spread onto a dish and placed in a 60°C oven for at least 4 h.  The dried granulation was passed through a 40-mesh screen.

[0099] *Stability Studies*: The effect of the three stability agents, lactose, mannitol and sucrose on the stability of the granulated powder was evaluated.  7.5 g of powder was placed in 8 oz amber, graduated PET bottles and stored under refrigerated, 25°C/60% Relative Humidity (RH), 40°C/ambient and 60°C/ambient conditions.  At various time points the powder in the bottle was analyzed for enalapril by HPLC/UV analysis.  The following tables depict the stability of enalapril+stability agent powder in bottle in the various storage conditions.

| 2 % w/w Enalapril/Lactose Powder in Bottle Formulation | | | | |
|---|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient | 60°C/ambient |
| 0 | 101.54 | 101.54 | 101.54 | 101.54 |
| 1 | 100.27 | 100.59 | 98.61 | 94.74 |
| 2 | 100.37 | 100.60 | 98.82 | 94.51 |
| 3 | 101.10 | 99.58 | 98.45 | 93.44 |
| 4 | 99.03 | 98.53 | 96.94 | 92.66 |

| | | | | |
|---|---|---|---|---|
| 8 | 100.23 | 99.63 | 98.89 | 90.56 |
| 12 | 102.20 | 99.53 | 100.02 | 89.76 |
| 26 | 101.28 | 95.83 | 97.89 | 75.57 |
| 52 | 101.50 | 91.90 | 93.70 | N/A |

| 2 % w/w Enalapril/Mannitol Powder in Bottle Formulation | | | | |
|---|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient | 60°C/ambient |
| 0 | 100.16 | 100.16 | 100.16 | 100.16 |
| 1 | 99.61 | 99.57 | 93.42 | 96.96 |
| 2 | 98.56 | 98.41 | 94.41 | 101.14 |
| 3 | 99.21 | 98.51 | 99.42 | 101.24 |
| 4 | 99.20 | 98.59 | 101.26 | 99.97 |
| 8 | 101.26 | 98.88 | 102.17 | 100.80 |
| 12 | 103.33 | 99.67 | 103.31 | 95.15 |
| 26 | 102.19 | 96.89 | 102.68 | 94.66 |
| 52 | 102.50 | 94.30 | 99.70 | N/A |

| 2 % w/w Enalapril/Sucrose Powder in Bottle Formulation | | | | |
|---|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient | 60°C/ambient |
| 0 | 98.68 | 98.68 | 98.68 | 98.68 |
| 2 | 97.67 | 100.60 | 98.87 | 99.92 |
| 4 | 97.40 | 100.50 | 98.97 | 99.06 |
| 8 | 98.40 | 99.56 | 98.83 | 97.74 |
| 12 | 97.17 | 98.47 | 97.13 | 94.97 |
| 26 | 97.90 | 96.40 | 99.00 | 93.50 |
| 52 | N/A | N/A | N/A | N/A |

[00100]      Based on the powder in bottle stability at accelerated conditions (25°C/60% RH, 40°C/ambient, 60°C/ambient), it was determined that the enalapril/mannitol formulation was the most stable.

**Example 2: Stability of Prepared Enalapril Solution**

SPI_0000084

**[00101]**     *Enalapril Solution Formulation*: 1.0 mg/mL enalapril solutions were prepared from the lactose and mannitol granulations (Example 1) made with the addition of OraSweet SF® flavored syrup and placed under refrigerated, 25°C/60% RH and 40°C/ambient conditions.  A enalapril/sucrose solution was prepared at 2 mg/mL concentration to evaluate the effect of the higher concentration on solution stability.  The following tables depict the stability of enalapril+stability agent solution in the various storage conditions.

| 1 mg/mL Enalapril/Lactose Prepared Solution | | | |
|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient |
| 0 | 101.66 | 101.66 | 101.66 |
| 1 | 100.63 | 100.33 | 97.18 |
| 2 | 101.35 | 99.77 | 93.69 |
| 3 | 101.25 | 98.68 | 90.03 |
| 4 | 100.65 | 97.25 | 86.21 |
| 8 | 101.27 | 94.19 | 73.69 |
| 12 | 102.15 | 92.99 | 65.91 |

| 1 mg/mL Enalapril/Mannitol Prepared Solution | | | |
|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient |
| 0 | 95.86 | 95.86 | 95.86 |
| 1 | 94.56 | 94.08 | 91.28 |
| 2 | 94.98 | 93.90 | 87.48 |
| 3 | 95.06 | 92.59 | 83.86 |
| 4 | 94.42 | 91.28 | 80.45 |
| 8 | 95.10 | 88.39 | 68.52 |
| 12 | 95.74 | 86.99 | 60.43 |

| 2 mg/mL Enalapril/Sucrose Prepared Solution | | | |
|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient |
| 0 | 99.16 | 99.16 | 99.16 |
| 2 | 101.1 | 98.71 | 89.05 |
| 4 | 101.3 | 95.48 | 79.86 |
| 8 | 99.79 | 90.35 | 62.94 |

WSGR Docket No. 43060-701.201

SPI_0000085

| 12 | 99.40 | 86.18 | 40.24 |

[00102]      In the prepared solutions, the enalapril+mannitol solution was most stable at 40°C/ambient conditions.

## Example 3: Direct Blend Enalapril Powder Compositions

[00103]      *Enalapril Powder Composition A*: An enalapril powder composition as set forth in the following table is prepared.

| Component | Amount in 150 mL Bottle (mg) | Weight (% w/w solids) |
|---|---|---|
| Enalapril Maleate | 150 | 14.29 |
| Mannitol | 900 | 85.71 |
| Total Solids | 1050 | 100.0 |

[00104]      The composition is prepared by adding the components together.  The powder is then screened and direct blended until blend uniformity.

[00105]      *Enalapril Powder Composition B*: An enalapril powder composition as set forth in the following table is prepared.

| Component | Amount in 150 mL Bottle (mg) | Weight (% w/w solids) |
|---|---|---|
| Enalapril Maleate | 150 | 14.29 |
| Mannitol | 890 | 84.76 |
| Colloidal Silicon Dioxide | 10 | 0.95 |
| Total Solids | 1050 | 100.0 |

[00106]      The composition is prepared by adding the components together.  The powder is then screened and direct blended until blend uniformity.

[00107]      *Enalapril Powder Composition C*: An enalapril powder composition as set forth in the following table is prepared.

| Component | Amount in 150 mL Bottle (mg) | Weight (% w/w solids) |
|---|---|---|
| Enalapril Maleate | 150 | 14.29 |

WSGR Docket No. 43060-701.201

SPI_0000086

| | | |
|---|---|---|
| Mannitol | 590 | 56.19 |
| Colloidal Silicon Dioxide | 10 | 0.95 |
| Sorbitol | 300 | 28.57 |
| Total Solids | 1050 | 100.0 |

[00108]     The composition is prepared by adding the components together.  The powder is then screened and direct blended until blend uniformity.

[00109]     *Enalapril Powder Composition D*: An enalapril powder composition as set forth in the following table is prepared.

| Component | Amount in 150 mL Bottle (mg) | Weight (% w/w solids) |
|---|---|---|
| Enalapril Maleate | 150 | 12.5 |
| Mannitol | 590 | 49.17 |
| Colloidal Silicon Dioxide | 10 | 0.83 |
| Sorbitol | 300 | 25.0 |
| Wild Cherry Flavor | 150 | 12.5 |
| Total Solids | 1200 | 100.0 |

[00110]     *Enalapril Powder Composition E*: An enalapril powder composition as set forth in the following table is prepared.

| Component | Amount in 150 mL Bottle (mg) | Weight (% w/w solids) |
|---|---|---|
| Enalapril Maleate | 150 | 7.5 |
| Mannitol | 590 | 29.5 |
| Colloidal Silicon Dioxide | 10 | 0.5 |
| Sorbitol | 300 | 15 |
| Sodium Bicarbonate | 800 | 40 |
| Lemon Flavor | 150 | 7.5 |
| Total Solids | 2000 | 100.0 |

     WSGR Docket No. 43060-701.201

SPI_0000087

**Example 4: Enalapril Composition Scale-up Optimization Studies**

**[00111]**        Scale-up studies investigated blend and bottle content uniformity

**[00112]**        *Blend and Bottle Content Uniformity of Enalapril Powder Composition A*: Enalapril Powder Composition A (150 mg enalapril, 900 mg mannitol/bottle) was scaled-up and the resultant formulation tested for blend and content uniformity.  For blend uniformity, 10 1g samples were taken from the blender (top front right, middle front right, bottom front, top front left, middle front left, top back right, middle back right, bottom back, top back left, and middle back left) by a suitable powder sampler at the below times.

| Blend Uniformity - Enalapril Powder Composition A | | |
|---|---|---|
| **Blending Time (min)** | **Avg drug assay (%)** | **%RSD** |
| 10 | 96.0 | 2.80 |
| 15 | 96.6 | 2.13 |
| 20 | 99.5 | 3.69 |

**[00113]**        Bottle content uniformity values were assessed via a hopper study after filling and capping the Enalapril Powder Composition blend into 150 mL bottles:

| Bottle Content Uniformity - Enalapril Powder Composition A | | | |
|---|---|---|---|
| **Time Point** | **Avg drug assay (%)** | **%RSD** | **Acc. Value (Limit ≤15)** |
| Beginning | 89.9 | 2.12 | 13.2 |
| Middle | 104.7 | 2.66 | 9.9 |
| End | 99.8 | 3.14 | 7.5 |

**[00114]**        The content uniformity study revealed that some segregation of the powder composition could have occurred post-blending.

**[00115]**        *Blend Time Variation for Enalapril Powder Composition A*: Blend time was assessed for possibility of contributing to segregation of the powder composition.  Blend time was shortened to 5 minutes and blend uniformity and bottle content uniformity was assessed as above:

| Blend Uniformity - Enalapril Powder Composition A | | |
|---|---|---|
| **Blending Time (min)** | **Avg drug assay (%)** | **%RSD** |
| 5 | 96.7 | 1.25 |
| **Bottle Content Uniformity - Enalapril Powder Composition A** | | |

WSGR Docket No. 43060-701.201

SPI_0000088

| Study | Avg drug assay (%) | %RSD |
|---|---|---|
| Content Uniformity | 95.9 | 6.14 |
| By Weight | 97.7 | 6.69 |

[00116]     The high %RSD was observed in the bottle content uniformity studies indicating variance in the filling and capping of the drug powder composition.

[00117]     Blend time was changed back to 10 minutes in an attempt to optimize blend and fill, however, it was not successful.

[00118]     Lengthening the blend time to 20, 30, 40 and 60 minutes revealed the following observations:

| Blend Uniformity - Enalapril Powder Composition A | | |
|---|---|---|
| Blending Time (min) | Visual Observation | Avg drug assay (%) |
| 20 | Homogenous | 89.9, 102.8, 96.1 |
| 30 | Small round balls segregating in blend | 90.4, 90.1, 100.9 |
| 40 | Small round balls segregating in blend and gradually increasing in proportion | 105.4 |
| 60 | Much greater and clear segregation of round balls in the blend | 139.8; fines: 55.8 |

[00119]     FIG. 1 shows a visual depiction of the enalapril powder composition A blended for 60 minutes.  Thus, a lower blend time (e.g., about 10 – 20 minutes) is contemplated to be more optimal to prevent 'balling up' and segregation of the powder blend.

[00120]     The scaled-up enalapril and mannitol powder compositions (Enalapril Powder Composition A and the like) were examined in reconstitution studies where 150 mL Ora-Sweet® SF sugar-free flavored syrup was to the powder compositions.  Scaled-up enalapril and mannitol powder compositions such as Enalapril Powder Composition A did not dissolve in the syrup, but instead resulted in powder clumping and specking on the surface of the liquid, termed 'clouding'.  Various

SPI_0000089

enalapril and mannitol formulations were examined at different concentrations, which resulted in similar 'clouding'.  FIG. 2A shows the clouding phenomenon from an exemplary enalapril and mannitol powder formulation.

[00121]     *Reconstitution of Neat Enalapril Powder in Bottle*: Due to the 'clouding' in the reconstitution as well as the uniformity issues in the scale-up studies of Enalapril Powder Composition A, neat enalapril, i.e., drug alone, without any excipients, was examined for scale-up bottle filling and subsequent reconstitution.  It was observed that during reconstitution with 150 mL Ora-Sweet® SF sugar-free flavored syrup, the neat enalapril did not dissolve but floated on the surface of the liquid, even after 2 hours standing after reconstitution (FIG. 2B).

[00122]     *Colloidal Silicon Dioxide Addition to form Enalapril Powder Composition B*:

[00123]     Although colloidal silicon dioxide has been reported to decrease stability of enalapril (Rezende *et al.,* Stability and Compatibility Study on Enalapril Maleate using Thermoanalytical Techniques, *J. Thermal Anal. & Calorimetry*, 2008 (93) 881-886), the addition of colloidal silicon dioxide to an enalapril powder composition during scale-up resulted in improved and acceptable blend uniformity and bottle content uniformity levels.  Enalapril Powder Composition B (150 mg enalapril, 890 mg mannitol, 10 mg colloidal silicon dioxide/bottle) was scaled-up and the resultant formulation tested for blend and content uniformity as described above.  The blend and content uniformity assays showed that the addition of colloidal silicon dioxide imparted uniformity in the powder composition:

| Blend Uniformity - Enalapril Powder Composition B | | |
|---|---|---|
| **Blending Time (min)** | **Avg drug assay (%)** | **%RSD** |
| 10 | 99.8 | 1.34 |
| 10 | 99.7 | 1.08 |
| **Bottle Content Uniformity - Enalapril Powder Composition B** | | |
| **Study** | **Avg drug assay (%)** | **%RSD** |
| Content Uniformity | 102.6 | 1.98 |
| Content Uniformity | 98.5 | 2.77 |

[00124]     In reconstitution studies, surprisingly, the addition of colloidal silicon dioxide resulted in a solution that, upon visual inspection, was truly dissolved and homogenous (FIG. 2C).

WSGR Docket No. 43060-701.201

SPI_0000090

[00125]        A lower amount of colloidal silicon dioxide was also studied (150 mg enalapril, 895 mg mannitol, 5 mg colloidal silicon dioxide/bottle).  However the enalapril powder composition had lower flowability than that of enalapril powder composition B.

[00126]        The stability of the enalapril powder and liquid composition with respect to the addition of colloidal silicon dioxide was analyzed in Example 6.

**Example 5: Additional Reconstitution Methods and Studies**

[00127]        The overall mixing efficiency and solution/suspension drug concentration homogeneity was evaluated over a series of mixing methods and times.

[00128]        *Mixing Method A*: 75 mL of Ora-Sweet® SF sugar-free flavored syrup was added to a 150 mL bottle of Enalapril Powder Composition B and the bottle was shaken vigorously.  A second 75 mL of Ora-Sweet® SF syrup was subsequently added and the bottle was shaken vigorously.

[00129]        *Observations:* The resultant liquid contained entrapped air bubbles.  It was determined that the bubbles would interfere with dosing as a variable volume of the liquid could be administered in dosing syringes for administration.

[00130]        *Mixing Method B*: 75 mL of Ora-Sweet® SF sugar-free flavored syrup was added to a 150 mL bottle of Enalapril Powder Composition B and the bottle was gently swirled. A second 75 mL of Ora-Sweet® SF syrup was subsequently added and the bottle was gently swirled.  The bottle was then inverted slowly for about 5 times.

[00131]        *Observations:* The gently swirling and subsequent inversions minimized the bubble formation.  However, in a clinical trial similar to Example 7, it was observed that the subjects had received a lower dose (about 1.30 mg) of enalapril rather than standard 10 mg dosage.  Based on this observation, it was determined that the mixing method did not introduce enough energy in the process and resulted in improper wetting and mixing of the powder.

[00132]        *Mixing Method C*: 150 mL bottle of Enalapril Powder Composition B was first tapped on a hard surface to disperse any powder caking.  75 mL of Ora-Sweet® SF sugar-free flavored syrup was added to the 150 mL bottle and the bottle was shaken for specified time intervals (10, 20, 30, 45 and 60 seconds).  A second 75 mL of Ora-Sweet® SF syrup was subsequently added and the bottle was shaken for the specified time interval.  Bubbles were allowed to dissipate (for at least one hour).  Two samples were taken immediately after the second shaking.  One sample was filtered through a 0.45 micron filter.  A third sample was taken 1 h after the second shaking and after any bubbles dissipated from the liquid.  The three samples were assayed by HPLC.  The mixing and homogeneity results are as follows:

SPI_0000091

| Mixing Method C: Enalapril by HPLC as % of 1 mg/mL | | | |
|---|---|---|---|
| Time (seconds) | Sample 1 (unfiltered) | Sample 2 (filtered) | Sample 3 (1 h) |
| 2 x 10 | 101.3 | 101.2 | 101.2 |
| 2 x 20 | 100.9 | 100.8 | 100.8 |
| 2 x 30 | 101.5 | 101.3 | 101.1 |
| 2 x 45 | 101.6 | 101.7 | 101.7 |
| 2 x 60 | 100.9 | 100.9 | 101.1 |

[00133]     *Observations*: There was no perceived difference observed between filtered and unfiltered samples indicating that the reconstituted enalapril liquid is not a suspension.  The addition of 75 mL of Ora-Sweet® SF syrup followed by shaking for 10 seconds and the addition of another 75 mL of Ora-Sweet® SF syrup followed by shaking for 10 seconds resulted in a homogenous solution.  All longer shaking times produced equivalent results.

**Example 6: Additional Stability Studies**

[00134]     *Powder Stability*: Enalapril Powder Composition B and its reconstituted oral liquid form were further investigated in stability studies.  1050 mg enalapril Powder Composition B in 150 mL white plastic bottles were examined for stability in 25±2°C/60±5% RH at up to 9 months and 40±2°C/75±5% RH (accelerated) conditions at up to 6 months.  At each given time point, enalapril and related substances were assayed via HPLC.  The below tables depict stability of the powder at the various conditions.

| Enalapril Powder Composition B - 25°C/60% RH | | | |
|---|---|---|---|
| Time (Months) | Enalapril (%) | Enalaprilat (%) | DKP (%) |
| 0 | 97.8 | 0.05 | 0.02 |
| 1 | 98.6 | 0.05 | 0.03 |
| 2 | 97.6 | 0.12 | 0.05 |
| 3 | 98.6 | 0.06 | 0.07 |
| 6 | 96.8 | 0.09 | 0.11 |
| 9 | 98.6 | 0.12 | 0.15 |

| Enalapril Powder Composition B - 40°C/75% RH | | | |
|---|---|---|---|
| Time (Months) | Enalapril (%) | Enalaprilat (%) | DKP (%) |

WSGR Docket No. 43060-701.201

SPI_0000092

| 0 | 97.8 | 0.05 | 0.2 |
|---|------|------|-----|
| 1 | 97.9 | 0.12 | 0.23 |
| 2 | 96.8 | 0.15 | 0.32 |
| 3 | 97.2 | 0.16 | 0.42 |
| 6 | 96.2 | 0.18 | 0.63 |

[00135]    Enalapril Powder Composition B remained stable through 6 months under accelerated stability conditions and 9 months under ambient ($25\pm2°C/60\pm5\%$ RH) conditions at up to 9 months conditions with slight increase in the levels of enalaprilat and DPK.  However, none of the total related impurities exceeded 5%.  Stability at ambient conditions was also examined for two additional lots of Enalapril Powder Composition B.  Similar results were observed for the levels of enalaprilat and DPK.

[00136]    *Reconstituted Liquid Stability*: Enalapril Powder Composition B was reconstituted in 150 mL bottles according to Mixing Method C (2x30 s of shaking) and stored at ambient conditions. Aliquots were taken during selected time points during the study period.  The below tables depict stability of the reconstituted liquid at the various conditions.

| Enalapril Reconstituted Liquid - Ambient | | | |
|------------|---------------|-----------------|----------|
| Time (Weeks) | Enalapril (%) | Enalaprilat (%) | DKP (%) |
| 0 | 97.4 | 0.43 | 0.04 |
| 2 | 96.8 | 0.73 | 0.08 |
| 4 | 96.9 | 0.87 | 0.08 |
| 8 | 95.4 | 1.35 | 0.12 |
| 12 | 93.7 | 2.22 | 0.17 |

[00137]    After being reconstituted, the enalapril liquid was stable in ambient conditions with essentially unchanged values of its attributes, including microbial limits, preservative effectiveness and preservative assay up to the end of the study period (12 weeks).

**Example 7: Clinical Trial: Bioavailability Study of 10 mg Enalapril Maleate Oral Liquid vs Vasotec® 10 mg Tablets Under Fasted Conditions and 10 mg Enalapril Maleate Oral Liquid in Fed Conditions in Healthy Adults**

[00138]    The objectives of this single-dose, open-label, randomized, three-period, three-treatment, three-way crossover study were:

- To assess the bioavailability of a test formulation of 10 mg oral liquid reconstituted from Enalapril Powder Composition B versus Vasotec® 10 mg enalapril tablets under fasted conditions in healthy adults
- To assess the food effect on a test formulation of 10 mg oral liquid reconstituted from Enalapril Powder Composition B in healthy adults

[00139]    *Study Design*: Healthy adult subjects were to receive each of the following three treatments in a randomized fashion during three study periods:

- <u>Treatment A</u>, Test Formulation: Enalapril maleate oral liquid reconstituted from Enalapril Powder Composition B via Mixing Method C (2x30 s of shaking), 10 mg/10 mL, administered under fasted conditions
- <u>Treatment B</u>, Reference Product: Vasotec®, one 10 mg tablet, administered under fasted conditions
- <u>Treatment C</u>, Test Formulation: Enalapril maleate oral liquid reconstituted from Enalapril Powder Composition B via Mixing Method C (2x30 s of shaking), 10 mg/10 mL, administered under fed conditions

[00140]    Screening assessments were performed by the investigator or designee within 28 days prior to study start. Treatments A and B were to be administered after an overnight fast of at least 10 hours; Treatment C was to be administered following an overnight fast of at least 10 hours and an FDA standard high-calorie, high-fat breakfast meal beginning 30 minutes prior to administration of the study drug. Each dose was to be orally administered with 240 mL (8 fl. oz.) of room temperature tap water; after dosing, no food was allowed until 4 hours postdose. Each drug administration was separated by a washout period of ≥ 7 days.

[00141]    During each study period, meals were the same and scheduled at approximately the same times relative to dose. In addition, during each period, blood samples were obtained prior to and following each dose at selected times through 72 hours postdose. Plasma pharmacokinetic (PK) samples were analyzed for enalapril and enalaprilat using a validated analytical method; appropriate PK parameters were calculated for each formulation using on-compartmental methods. Blood was also drawn and urine collected for clinical laboratory testing at screening and at the end of the study.

[00142]    Each subject was to receive a total of three single doses, one dose at each of three study periods; the duration of the study for each subject would be approximately 45 days.

[00143]    *Subject Criteria*: Subjects must have been a male or non-pregnant, non-breastfeeding female; 18 to 55 years of age; with body mass index (BMI) between 18 and 30 kg/m2 and weight a minimum of 50 kg (110 lbs). Subjects were not to have a history or presence of clinically significant

-38-

SPI_0000094

cardiovascular, pulmonary, hepatic, renal, hematologic, gastrointestinal, endocrine, immunologic, dermatologic, neurologic, oncologic, or psychiatric disease, or any other condition that, in the opinion of the investigator, would jeopardize the safety of the subject or the validity of the study results; and were not to have a history of chronic cough, hyperkalemia, renal insufficiency, renal artery stenosis, or angioedema related to previous treatment with an angiotensin-converting enzyme inhibitor.

[00144]     _Results_

[00145]     Various pharmacokinetic parameters are summarized below for enalapril and enalaprilat.

| Mean PK Parameters | | | | | |
| Single 10 mg Doses | | | | | |
| $C_{max}$ (ng/mL) | $T_{max}$ (h) | $AUC_{last}$ (h*ng/mL) | $AUC_{inf}$ (h*ng/mL) | $T_{1/2}$ (h) | $C_{last}$ (ng/mL) |
|---|---|---|---|---|---|
| Treatment A - Enalapril | | | | | |
| 58.0 | 0.87 | 102.6 | 103.7 | 1.70 | 0.460 |
| Treatment B - Enalapril | | | | | |
| 61.8 | 0.92 | 106.5 | 107.5 | 1.45 | 0.467 |
| Treatment C - Enalapril | | | | | |
| 31.3 | 1.21 | 88.47 | 88.70 | 1.34 | 0.507 |
| Treatment A - Enalaprilat | | | | | |
| 41.0 | 3.45 | 405.3 | 443.3 | 30.49 | 0.841 |
| Treatment B - Enalaprilat | | | | | |
| 44.5 | 3.51 | 417.1 | 455.9 | 30.78 | 0.860 |
| Treatment C - Enalaprilat | | | | | |
| 26.4 | 4.49 | 315.7 | 360.1 | 33.94 | 0.889 |

[00146]     Concentration-time data are summarized graphically for enalapril in FIG. 3 (linear, _top_; log, _bottom_) and enalaprilat in FIG. 4 (linear, _top_; log, _bottom_).

[00147]     _Test Formulation versus Reference Product (Fasted)_: Based on the geometric mean ratios of enalapril and enalaprilat AUCs (Test/Reference for $AUC_{last}$ and $AUC_{inf}$), the bioavailability of the test formulation relative to the reference product was approximately 96% to 97%. The geometric mean ratios of enalapril and enalaprilat $C_{max}$ were 92.45% and 90.94%, respectively. The

SPI_0000095

90% confidence intervals about the geometric mean ratios (Test/Reference) of enalapril and enalaprilat $C_{max}$ and AUCs were within the accepted 80% to 125% range, indicating no significant difference.

[00148]    *Test Formulation (Fasted) versus Test Product (Fed)*: Based on the geometric mean ratios of enalapril AUCs (Fed/Fasted for $AUC_{last}$ and $AUC_{inf}$), a high-fat meal decreases the bioavailability of enalapril from the test formulation by approximately 14% to 15%; $C_{max}$ is decreased by approximately 46%. For enalaprilat, food decreases $C_{max}$ by approximately 36% and AUCs by approximately 20% to 23%.

[00149]    *Clinical Trial with Mixing Method B*: The above trial was conducted with Enalapril maleate oral liquid reconstituted from Enalapril Powder Composition B via Mixing Method A (shake vigorously).  The study was discontinued prior to dosing after it was observed that the mixing method created entrapped air bubbles in the liquid and could result in uneven dosing via dosing syringes.

[00150]    *Clinical Trial with Mixing Method B*: The above trial was conducted with Enalapril maleate oral liquid reconstituted from Enalapril Powder Composition B via Mixing Method B (gentle swirling and inversion).  A number of subjects on the test product only were observed to have very low enalapril and enalaprilat levels in both fasted and fed test treatments.  Based on this observation, the reconstituted enalapril maleate test formulation was assayed and it was determined that the test dose administered was not a 10 mg dose as specified in the study protocol, but was a mean dose of about 1.30 mg.  Upon further investigation, it was determined that the low concentration of enalapril in the dose occurred due to the mixing method.

[00151]    While preferred embodiments of the present invention have been shown and described herein, it will be obvious to those skilled in the art that such embodiments are provided by way of example only.  Numerous variations, changes, and substitutions will now occur to those skilled in the art without departing from the invention.  It should be understood that various alternatives to the embodiments of the invention described herein may be employed in practicing the invention.  It is intended that the following claims define the scope of the invention and that methods and structures within the scope of these claims and their equivalents be covered thereby.

WSGR Docket No. 43060-701.201

SPI_0000096

CLAIMS

WHAT IS CLAIMED IS:

1.      A pharmaceutical powder for an oral liquid formulation, the powder comprising:

(a)      about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,

(b)      about 85 % (w/w) mannitol, and

(c)      about 1 % (w/w) colloidal silicon dioxide,

wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about 25±5°C and 55±10% relative humidity.

2.      The pharmaceutical powder of claim 1, wherein the enalapril or pharmaceutically acceptable salt thereof is enalapril maleate.

3.      The pharmaceutical powder of claim 1, wherein the powder is reconstituted in water for the oral liquid.

4.      The pharmaceutical powder of claim 1, wherein the powder is reconstituted in syrup for the oral liquid.

5.      The pharmaceutical powder of claim 1, wherein the powder further comprises a pharmaceutically acceptable excipient.

6.      The pharmaceutical powder of claim 5, wherein the pharmaceutically acceptable excipient is a sweetener, flavoring agent or preservative.

7.      The pharmaceutical powder of claim 5, wherein the pharmaceutically acceptable excipient is a sweetener.

8.      The pharmaceutical powder of claim 7, wherein the sweetener is a solid.

9.      The pharmaceutical powder of claim 7, wherein the sweetener is a liquid.

10.      The pharmaceutical powder of claim 1, wherein the powder is stable for at least six months at ambient, accelerated or refrigerated conditions.

11.      The pharmaceutical powder of claim 1, wherein the liquid comprises

(a)      about 1 mg/ml enalapril or a pharmaceutically acceptable salt thereof,

(b)      about 6 mg/ml mannitol, and

(c)      about .07 mg/ml colloidal silicon dioxide.

12.      The pharmaceutical powder of claim 11, wherein the liquid further comprises a pharmaceutically acceptable excipient.

13.      The pharmaceutical powder of claim 11, wherein the pharmaceutically acceptable excipient is a sweetener, flavoring agent or preservative.

     WSGR Docket No. 43060-701.201

SPI_0000097

14.    The pharmaceutical powder of claim 11, wherein the pharmaceutically acceptable excipient is a sweetener.

15.    The pharmaceutical powder of claim 14, wherein the sweetener is a syrup.

16.    The pharmaceutical powder of claim 1, wherein the powder comprises about 150 mg enalapril, about 890 mg mannitol and 10 mg colloidal silicon dioxide.

WSGR Docket No. 43060-701.201

SPI_0000098

# ENALAPRIL COMPOSITIONS

## ABSTRACT OF THE DISCLOSURE

Provided herein are stable enalapril powder compositions for oral liquid formulation.  Also provided herein are methods of using enalapril oral liquid formulations for the treatment of certain diseases including hypertension, heart failure and asymptomatic left ventricular dysfunction.

WSGR Docket No. 43060-701.201

SPI_0000099

1/3



FIGURE 1





FIGURE 2A                                    FIGURE 2B



FIGURE 2C

SPI_0000100





**FIGURE 3**

SPI_0000101

3/3





**FIGURE 4**

SPI_0000102

PTO/AIA/14 (08-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 43060-701.201 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | | Remove |
|---|---|---|---|---|
| Legal Name | | | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Lian | G. | RAJEWSKI | |

| Residence Information (Select One) | ● US Residency | ○ Non US Residency | ○ Active US Military Service |
|---|---|---|---|

| City | Lawrence | State/Province | KS | Country of Residence | US |
|---|---|---|---|---|---|

### Mailing Address of Inventor:

| Address 1 | 4628 Muirfield Drive | | |
|---|---|---|---|
| Address 2 | | | |
| City | Lawrence | State/Province | KS |
| Postal Code | 66047 | Country i | US |

| Inventor | 2 | | | Remove |
|---|---|---|---|---|
| Legal Name | | | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Roger | A. | RAJEWSKI | |

| Residence Information (Select One) | ● US Residency | ○ Non US Residency | ○ Active US Military Service |
|---|---|---|---|

| City | Lawrence | State/Province | KS | Country of Residence | US |
|---|---|---|---|---|---|

### Mailing Address of Inventor:

| Address 1 | 4628 Muirfield Drive | | |
|---|---|---|---|
| Address 2 | | | |
| City | Lawrence | State/Province | KS |
| Postal Code | 66047 | Country i | US |

| Inventor | 3 | | | Remove |
|---|---|---|---|---|
| Legal Name | | | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | John | L. | HASLAM | |

| Residence Information (Select One) | ● US Residency | ○ Non US Residency | ○ Active US Military Service |
|---|---|---|---|

SPI_0000103

PTO/AIA/14 (08-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 43060-701.201 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

| City | Lawrence | State/Province | KS | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 1560 N 1060 Road | | |
|---|---|---|---|
| Address 2 | | | |
| City | Lawrence | State/Province | KS |
| Postal Code | 66046 | Country i | US |

**Inventor   4**    Remove

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Kathleen | | HEPPERT | |

**Residence Information (Select One)** ⦿ US Residency ◯ Non US Residency ◯ Active US Military Service

| City | Lawrence | State/Province | KS | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 2901 Oxford Road | | |
|---|---|---|---|
| Address 2 | | | |
| City | Lawrence | State/Province | KS |
| Postal Code | 66049 | Country i | US |

**Inventor   5**    Remove

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Michael | C. | BECKLOFF | |

**Residence Information (Select One)** ⦿ US Residency ◯ Non US Residency ◯ Active US Military Service

| City | Leawood | State/Province | KS | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 14108 Canterbury Street | | |
|---|---|---|---|
| Address 2 | | | |
| City | Leawood | State/Province | KS |
| Postal Code | 66224 | Country i | US |

**Inventor   6**    Remove

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Frank | | SEGRAVE | |

**Residence Information (Select One)** ⦿ US Residency ◯ Non US Residency ◯ Active US Military Service

| City | Dublin | State/Province | OH | Country of Residence | US |
|---|---|---|---|---|---|

SPI_0000104

PTO/AIA/14 (08-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 43060-701.201 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

**Mailing Address of Inventor:**

| Address 1 | 5371 Gordon Way | | |
|---|---|---|---|
| Address 2 | | | |
| City | Dublin | State/Province | OH |
| Postal Code | 43017 | Country i | US |

**Inventor    7**   [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Robert | | MAURO | |

| Residence Information (Select One) | ● US Residency | ○ Non US Residency | ○ Active US Military Service |
|---|---|---|---|
| City | Miller Place | State/Province | NY | Country of Residence | US |

**Mailing Address of Inventor:**

| Address 1 | 24 Oakwood Avenue | | |
|---|---|---|---|
| Address 2 | | | |
| City | Miller Place | State/Province | NY |
| Postal Code | 11764 | Country i | US |

**Inventor    8**   [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Peter | | COLABUONO | |

| Residence Information (Select One) | ● US Residency | ○ Non US Residency | ○ Active US Military Service |
|---|---|---|---|
| City | Las Vegas | State/Province | NV | Country of Residence | US |

**Mailing Address of Inventor:**

| Address 1 | 7133 Mission Hills Drive | | |
|---|---|---|---|
| Address 2 | | | |
| City | Las Vegas | State/Province | NV |
| Postal Code | 89113 | Country i | US |

**Inventor    9**   [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | | | | |

| Residence Information (Select One) | ● US Residency | ○ Non US Residency | ○ Active US Military Service |
|---|---|---|---|
| City | | State/Province | | Country of Residence | |

SPI_0000105

Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 43060-701.201 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

**Mailing Address of Inventor:**

| Address 1 | |
|---|---|
| Address 2 | |
| City | | State/Province | |
| Postal Code | | Country i | |

**Inventor   10**                                                    [ Remove ]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | | | | |

| Residence Information (Select One)  ◉ US Residency   ○ Non US Residency   ○ Active US Military Service |
|---|

| City | | State/Province | | Country of Residence i | |
|---|---|---|---|---|---|
| | | | | | |

**Mailing Address of Inventor:**

| Address 1 | |
|---|---|
| Address 2 | |
| City | | State/Province | |
| Postal Code | | Country i | |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.          [ Add ]

## Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below.
For further information see 37 CFR 1.33(a).

☐   **An Address is being provided for the correspondence Information of this application.**

| Customer Number | 21971 |
|---|---|
| Email Address | patentdocket@wsgr.com          [ Add Email ] [ Remove Email ] |

## Application Information:

| Title of the Invention | ENALAPRIL COMPOSITIONS | | |
|---|---|---|---|
| Attorney Docket Number | 43060-701.201 | Small Entity Status Claimed | ☐ |
| Application Type | Nonprovisional | | |
| Subject Matter | | | |
| Suggested Class (if any) | | Sub Class (if any) | |
| Suggested Technology Center (if any) | | | |
| Total Number of Drawing Sheets (if any) | 3 | Suggested Figure for Publication (if any) | 4 |

EFS Web 2.2.4

SPI_0000106

PTO/AIA/14 (08-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 43060-701.201 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

## Publication Information:

☐ Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐ **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | ○ US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 21971 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application. Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.

| Prior Application Status | Pending | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| | non provisional of | 61710489 | 2012-10-05 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

## Foreign Priority Information:

This section allows for the applicant to claim benefit of foreign priority and to identify any prior foreign application for which priority is not claimed. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(a).

| Application Number | Country^i | Filing Date (YYYY-MM-DD) | Priority Claimed |
|---|---|---|---|
| | | | ○ Yes ● No |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

SPI_0000107

PTO/AIA/14 (08-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 43060-701.201 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

## Authorization to Permit Access:

| [x] | Authorization to Permit Access to the Instant Application by the Participating Offices |
|---|---|

If checked, the undersigned hereby grants the USPTO authority to provide the European Patent Office (EPO),
the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the World Intellectual Property Office (WIPO),
and any other intellectual property offices in which a foreign application claiming priority to the instant patent application
is filed access to the instant patent application. See 37 CFR 1.14(c) and (h). This box should not be checked if the applicant
does not wish the EPO, JPO, KIPO, WIPO, or other intellectual property office in which a foreign application claiming priority
to the instant patent application is filed to have access to the instant patent application.

In accordance with 37 CFR 1.14(h)(3), access will be provided to a copy of the instant patent application with respect
to: 1) the instant patent application-as-filed; 2) any foreign application to which the instant patent application
claims priority under 35 U.S.C. 119(a)-(d) if a copy of the foreign application that satisfies the certified copy requirement of
37 CFR 1.55 has been filed in the instant patent application; and 3) any U.S. application-as-filed from which benefit is
sought in the instant patent application.
In accordance with 37 CFR 1.14(c), access may be provided to information concerning the date of filing this Authorization.

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR
to have an assignment recorded by the Office.

### Applicant   1

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed.
The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR
1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person
who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an
applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient
proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be
identified in this section.

| (●) Assignee | ( ) Legal Representative under 35 U.S.C. 117 |
|---|---|
| ( ) Person to whom the inventor is obligated to assign. | ( ) Person who shows sufficient proprietary interest |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

| Name of the Deceased or Legally Incapacitated Inventor : | |
|---|---|

| If the Assignee is an Organization check here. | [x] |
|---|---|

| Organization Name | University of Kansas |
|---|---|

EFS Web 2.2.4

SPI_0000108

Approved for use through 01/31/2014. OMB 0651-0032
PTO/AIA/14 (08-12)
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 43060-701.201 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

**Mailing Address Information:**

| **Address 1** | 245 Strong Hall | | |
|---|---|---|---|
| Address 2 | 1450 Jayhawk Boulevard | | |
| **City** | Lawrence | **State/Province** | KS |
| **Country** | US | Postal Code | 66045 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.

**Applicant   2**

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

| ● Assignee | ○ Legal Representative under 35 U.S.C. 117 |
|---|---|
| ○ Person to whom the inventor is obligated to assign. | ○ Person who shows sufficient proprietary interest |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor :

| If the Assignee is an Organization check here. | [x] |
|---|---|

| Organization Name | Silvergate Pharmaceuticals |
|---|---|

**Mailing Address Information:**

| **Address 1** | 5371 Gordon Way | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | Dublin | **State/Province** | OH |
| **Country** | US | Postal Code | 43017 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.

SPI_0000109

PTO/AIA/14 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 43060-701.201 |
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |

## Signature:

NOTE:  This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4 for signature requirements and certifications

| Signature | | | | Date (YYYY-MM-DD) | 2012-11-06 |
| First Name | Jeffrey | Last Name | Guise | Registration Number | 34613 |

Additional Signature may be generated within this form by selecting the Add button.

This collection of information is required by 37 CFR 1.76.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

SPI_0000110

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO<br><br>**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>*(Use as many sheets as necessary)* | **Complete if Known** | |
|---|---|---|
| | Application Number | 13/670,355 |
| | Filing Date | 11/07/2012 |
| | First Named Inventor | Lian G. Rajewski |
| | Art Unit | 1629 |
| | Examiner Name | Not yet assigned |
| Sheet | 1 | of | 3 | Attorney Docket Number | 43060-701.201 |

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Document Number<br>Number-Kind Code² *(if known)* | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1. | US-2006/0094760 | 05/04/2006 | Fawzy et al. | |
| | 2. | US-2007/0265344 | 11/15/2007 | Strobel et al. | |
| | 3. | US-2008/0234291 | 09/25/2008 | Francois et al. | |
| | 4. | US-4,743,450 | 05/10/1988 | Harris et al. | |
| | 5. | US-5,698,562 | 12/16/1997 | Mendes et al. | |
| | 6. | US-6,028,222 | 02/22/2000 | Dietlin et al. | |
| | 7. | US-6,413,988 | 07/02/2002 | De Proost | |
| | 8. | US-6,977,257 | 12/20/2005 | Parab et al. | |
| | 9. | US-7,101,888 | 09/05/2006 | Reo et al. | |
| | 10. | US-7,605,148 | 10/20/2009 | Batta et al. | |
| | 11. | US-8,153,824 | 04/10/2012 | Sesha | |
| | 12. | US-4,830,853 | 05/16/1989 | Murthy et al. | |
| | 13. | US-2004/0258757 | 12/23/2004 | Bosch et al. | |
| | 14. | US-2008/0221156 | 09/11/2008 | Spireas | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Foreign Patent Document<br>Country Code³ - Number⁴ - Kind Code⁵ *(if known)* | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | 15. | WO-2001/045667 | 06/28/2001 | LEK Tovarna Farmacevtskih | | |
| | 16. | WO-2011/031462 | 03/17/2011 | Latitude Pharma | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹Applicant's unique citation designation number (optional). ²See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

- 1 -

Attorney Docket No. 43060-701.201

SPI_0000111

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | **Complete if Known** | |
|---|---|---|
| | Application Number | 13/670,355 |
| | Filing Date | 11/07/2012 |
| | First Named Inventor | Lian G. Rajewski |
| | Art Unit | 1629 |
| | Examiner Name | Not yet assigned |

| Sheet | 2 | of | 3 | Attorney Docket Number | 43060-701.201 |
|---|---|---|---|---|---|

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | 17. | AHLIN et al., "Investigation of polymeric nanoparticles as carriers of enalaprilat for oral administration," Int'l. Journ. Pharmaceutics, 239, pp. 113-120 (2002) | |
| | 18. | ALLEN et al., "Stability of alprazolam, chloroquine phosphate, cisapride, enalapril maleate, and hydralazine hydrochloride in extemporaneously compounded oral liquids," Am J. Health-Syst Pharm, Vol. 55, pp. 1915-1920, (1998) | |
| | 19. | BHARDWAJ et al., "Study of forced degradation behavior of enalapril maleate by LC and LC-MS and development of a validated stability-indicating assay method," Journ. Pharmac. and Biomed. Analysis, 46, pp 113-120 (2008) | |
| | 20. | BOURGAULT et al., "Reference-based pricing of prescription drugs: exploring the equivalence of angiotensin-converting-enzyme inhibitors," CMAJ, 161:255-60 (1999) | |
| | 21. | CABOT CORPORATION, "Influence of CAB-O-SIL® M-5P on the Angle of Repose and Flow Rates of Pharmaceutical Powders," 10 pages (2004) | |
| | 22. | LIMA et al., "Stability and *in vitro* release profile of enalapril maleate from different commercially available tablets: Possible therapeutic implications," Journ. Pharmac. and Biomed. Analysis, 47, pp 934-937 (2008) | |
| | 23. | NAHATA et al., "Stability of enalapril maleate in three extemporaneously prepared oral liquids," Am. J. Health-Syst Pharm Vol. 55, pp. 1155-1157 (1998) | |
| | 24. | NUNN et al., "Formulation of medicines for children," British Journal of Clinical Pharmacology, 59:6, pp 674-676 (2005) | |
| | 25. | PATEL et al., "Extemporaneous Dosage Form for Oral Liquids," Pharmacophore, Vol. 2, No. 2, pp. 86-103 (2011) | |
| | 26. | REZENDE et al., "Stability and Compatibility Study on Enalapril Maleate Using Thermoanalytical Techniques," Journ Thermal Analysis and Calorimetry, 93:3, pp 881-886 (2008) | |
| | 27. | RIPPLEY et al., "Pharmacokinetic Assessment of an Oral Enalapril Suspension for Use in Children," Biopharmaceutics & Drug Disposition 21:339-344 (2000) | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST 16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

- 2 -

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| | Application Number | 13/670,355 |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Filing Date | 11/07/2012 |
| | First Named Inventor | Lian G. Rajewski |
| *(Use as many sheets as necessary)* | Art Unit | 1629 |
| | Examiner Name | Not yet assigned |
| Sheet | 3 | of | 3 | Attorney Docket Number | 43060-701.201 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
| | 28. | SIMONČIČ et al., "Use of microcalorimetry in determination of stability of enalapril maleate and enalapril maleate table formulations," Int'l. Journ. Pharmaceutics, 342, pp. 145-151 (2007) | |
| | 29. | SOSNOWSKA et al., "Stability of Extemporaneous Enalapril Maleate Suspensions for Pediatric Use Prepared from Commercially Available Tablets," Acta Poloniae Pharmaceutica, Vol. 66, No. 3, pp. 321-326 (2009) | |
| | 30. | STANISZ, "Evaluation of stability of enalapril maleate in solid phase," Journ. Pharma. and Biomed. Analysis, 31, pp 375-380 (2003) | |
| | 31. | VASOTEC (Enalapril Maleate) Product Insert (2010) | |
| | 32. | WANG et al., "Eudragit E Accelerated the Diketopiperazine Formation of Enalapril Maleate Determined by Thermal FTIR Microspectroscopic Technique," Pharmaceutical Research, Vol. 21, No. 11, November 2004 | |
| | 33. | WELLS et al., "The Pharmacokinetics of Enalapril in Children and Infants with Hypertension," J. Clin Pharmacol 41:1064-1074 (2001) | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant  [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2*

- 3 -

Attorney Docket No. 43060-701.201

SPI_0000113

Attorney Docket No.  43060-701.201
PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Inventor:   Lian G. Rajewski

Serial Number:       13/670,355

Filing Date:       11/07/2012

Title:     Enalapril Compositions

Group Art Unit:     1629

Examiner:      Not yet assigned

**CONFIRMATION NO:   2719**

FILED ELECTRONICALLY ON: November 7, 2012

Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

## INFORMATION DISCLOSURE STATEMENT
## UNDER 37 CFR §1.97

Madam:

An Information Disclosure Statement along with attached PTO/SB/08 is hereby submitted.  A copy of each listed publication is submitted, if required, pursuant to 37 CFR §§1.97-1.98, as indicated below.

The Examiner is requested to review the information provided and to make the information of record in the above-identified application.  The Examiner is further requested to initial and return the attached PTO/SB/08 in accordance with MPEP §609.

The right to establish the patentability of the claimed invention over any of the information provided herewith, and/or to prove that this information may not be prior art, and/or to prove that this information may not be enabling for the teachings purportedly offered, is hereby reserved.

This statement is not intended to represent that a search has been made or that the information cited in the statement is, or is considered to be, prior art or material to patentability as defined in §1.56.

A. ☒ *37 CFR §1.97(b).* This Information Disclosure Statement should be considered by the Office because:

☐   (1)   It is being filed within 3 months of the filing date of a national application and is other than a continued prosecution application under §1.53(d);

-- OR --

☐   (2)   It is being filed within 3 months of entry of the national stage as set forth in §1.491 in an international application;

SPI_0000114

-- OR --

☒    (3)    It is being filed before the mailing of a first Office action on the merits;

-- OR --

☐    (4)    It is being filed before the mailing of a first Office action after the filing of a request for continued examination under §1.114.

B.   ☐   *37 CFR §1.97(c).* Although this Information Disclosure Statement is being filed after the period specified in *37 CFR §1.97(b),* above, it is filed before the mailing date of the earlier of (1) a final office action under §1.113, (2) a notice of allowance under §1.311, or (3) an action that otherwise closes prosecution on the merits, this Information Disclosure Statement should be considered because it is accompanied by one of:

☐    a statement as specified in §1.97(e) provided concurrently herewith;

-- OR --

☐    a fee of $180.00 as set forth in §1.17(p) authorized below, enclosed, or included with the payment of other papers filed together with this statement.

C.   ☐   *37 CFR §1.97(d).* Although this Information Disclosure Statement is being filed after the mailing date of the earlier of (1) a final office action under §1.113 or (2) a notice of allowance under §1.311, it is being filed before payment of the issue fee and should be considered because it is accompanied by:

i.   a statement as specified in §1.97(e);

-- AND --

ii.   a fee of $180.00 as set forth in §1.17(p) is authorized below, enclosed, or included with the payment of other papers filed together with this Statement.

D.   ☐   *37 CFR §1.97(e).* Statement.

☐    A statement is provided herewith to satisfy the requirement under 37 CFR §§1.97(c);

-- AND/OR --

☐    A statement is provided herewith to satisfy the requirement under 37 CFR §§1.97(d);

-- AND/OR --

☐    A copy of a dated communication from a foreign patent office clearly showing that the information disclosure statement is being submitted within 3 months of the filing date on the communication is provided in lieu of a statement under 37 C.F.R. § 1.97(e)(1) as provided for under MPEP 609.04(b) V.

E.   ☐   *Statement Under 37 C.F.R. §1.704(d).* Each item of information contained in the information disclosure statement was first cited in a communication from a foreign patent office in a counterpart application that was received by an individual designated in § 1.56(c) not more than <u>thirty (30) days</u> prior to the filing of this information disclosure statement. This statement is made pursuant to the requirements of 37 C.F.R. §1.704(d) to avoid reduction of the period of adjustment of the patent term for Applicant(s) delay.

F.   ☒   *37 CFR §1.98(a)(2).* The content of the Information Disclosure Statement is as follows:

☐    Copies of each of the references listed on the attached Form PTO/SB/08 are enclosed herewith.

SPI_0000115

-- OR --

☒     Copies of U.S. Patent Documents (issued patents and patent publications) listed on the attached Form PTO/SB/08 are NOT enclosed.

-- AND/OR --

☒     Copies of Foreign Patent Documents and/or Non Patent Literature Documents listed on the attached Form PTO/SB/08 are enclosed in accordance with 37 CFR §1.98 (a)(2).

-- AND/OR --

☐     Copies of pending unpublished U.S. patent applications are enclosed in accordance with 37 CFR §1.98(a)(2)(iii).

G.   ☐   *37 CFR §1.98(a)(3).* The Information Disclosure Statement includes non-English patents and/or references.

☐     Pursuant to 37 CFR §1.98(a)(3)(i), a concise explanation of the relevance of each patent, publication or other information provided that is not in English is provided herewith.

☐     Pursuant to MPEP 609(B), an English language copy of a foreign search report is submitted herewith to satisfy the requirement for a concise explanation where non-English language information is cited in the search report.

-- OR --

☐     A concise explanation of the relevance of each patent, publication or other information provided that is not in English is as follows: _____

☐     Pursuant to 37 CFR §1.98(a)(3)(ii), a copy of a translation, or a portion thereof, of the non-English language reference(s) is provided herewith.

H.   ☐   *37 CFR §1.98(d).* Copies of patents, publications and pending U.S. patent applications, or other information specified in 37 C.F.R. § 1.98(a) are not provided herewith because:

☐     Pursuant to 37 CFR §1.98(d)(1) the information was previously submitted in an Information Disclosure Statement, or cited by examiner, for another application under which this application claims priority for an earlier effective filing date under 35 U.S.C. 120.

Application in which the information was submitted: _____

Information Disclosure Statement(s) filed on: _____

AND

☐     The information disclosure statement submitted in the earlier application complied with paragraphs (a) through (c) of 37 CFR §1.98.

SPI_0000116

I. ☒ *Fee Authorization.* The Commissioner is hereby authorized to charge the above-referenced fees of $0.00 and charge any additional fees or credit any overpayment associated with this communication to Deposit Account No. 23-2415 (Docket No. 43060-701.201).

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

Dated: *November 7, 2012*

By: _____

Jeffrey W. Guise
Registration No. 34,613

650 Page Mill Road
Palo Alto, CA 94304-1050
(650) 493-9300
Customer No. 021971

Attorney Docket No. 43060-701.201               - 4 -               5205973_1.DOC

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 13/670,355 | 11/06/2012 | 1629 | 1560 | 43060-701.201 | 16 | 1 |

**CONFIRMATION NO. 2719**

21971
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

**FILING RECEIPT**

*OC000000057842573*

Date Mailed: 11/30/2012

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Lian G. RAJEWSKI, Lawrence, KS;
Roger A. RAJEWSKI, Lawrence, KS;
John L. HASLAM, Lawrence, KS;
Kathleen HEPPERT, Lawrence, KS;
Michael C. BECKLOFF, Leawood, KS;
Frank SEGRAVE, Dublin, OH;
Robert MAURO, Miller Place, NY;
Peter COLABUONO, Las Vegas, NV;

**Applicant(s)**

University of Kansas, Lawrence, KS
Silvergate Phamaceuticals, Dublin, OH

**Assignment For Published Patent Application**

University of Kansas, Lawrence, KS
Silvergate Pharmaceuticals, Dublin, OH

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**

This appln claims benefit of 61/710,489 10/05/2012

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

page 1 of 3

SPI_0000118

Permission to Access - A proper **Authorization to Permit Access to Application by Participating Offices** (PTO/SB/39 or its equivalent) has been received by the USPTO.

**If Required, Foreign Filing License Granted:** 11/28/2012

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 13/670,355**

**Projected Publication Date:** 04/10/2014

**Non-Publication Request:** No

**Early Publication Request:** No

**Title**

Enalapril Compositions

**Preliminary Class**

514

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

SPI_0000119

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage, facilitate, and accelerate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

SPI_0000120

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**WILSON, SONSINI, GOODRICH & ROSATI**
**650 PAGE MILL ROAD**
**PALO ALTO CA 94304-1050**



MAILED

DEC 1 1 2012

**OFFICE OF PETITIONS**

Doc Code: TRACK1.GRANT

| *Decision Granting Request for Prioritized Examination (Track I or After RCE)* | Application No.:13/670,355 |
|---|---|

1.   THE REQUEST FILED ___November 6, 2012___ IS **GRANTED**.

The above-identified application has met the requirements for prioritized examination
   A.   ☒  for an original nonprovisional application (Track I).
   B.   ☐  for an application undergoing continued examination (RCE).

2.   **The above-identified application will undergo prioritized examination.**  The application will be accorded special status throughout its entire course of prosecution until one of the following occurs:

   A.   filing a **petition for extension of time** to extend the time period for filing a reply;

   B.   filing an **amendment to amend the application to contain more than four independent claims, more than thirty total claims**, or a multiple dependent claim;

   C.   filing a **request for continued examination**;

   D.   filing a notice of appeal;

   E.   filing a request for suspension of action;

   F.   mailing of a notice of allowance;

   G.   mailing of a final Office action;

   H.   completion of examination as defined in 37 CFR 41.102; or

   I.   abandonment of the application.

Telephone inquiries with regard to this decision should be directed to Kimberly Inabinet at 571-272-4618.  In his/her absence, calls may be directed to Brian W. Brown at 571-272-5338.

/ Kimberly A. Inabinet/                         Petitions Examiner, Office of Petitions

SPI_0000121

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/670,355 | 11/06/2012 | Lian G. RAJEWSKI | 43060-701.201 | 2719 |

21971        7590        02/08/2013
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| ZHANG, YANZHI |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/08/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| **Office Action Summary** | **Application No.** 13/670,355 | **Applicant(s)** RAJEWSKI ET AL. |
|---|---|---|
| | **Examiner** YANZHI ZHANG | **Art Unit** 1617 | |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>06 November 2012</u>.

2a)☐ This action is **FINAL**.          2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

5)☒ Claim(s) <u>1-16</u> is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>1-16</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on <u>06 November 2012</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☒ All   b)☐ Some \* c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☒ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    \* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date <u>11/07/2012</u>.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

4) ☐ Other: _____.

## DETAILED ACTION

Pursuant to the application dated November 6, 2012, claims 1-16 are pending in the application.

### *Priority*

Applicants' priority claim to U.S. Provisional Patent Application No. 61/710,489 filed October 5, 2012, is acknowledged.

### *Information Disclosure Statement*

The Information Disclosure Statement filed November 7, 2012 has been considered by the examiner.

### *Claim Rejection - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

This application currently names joint inventors. In considering patentability of the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

**Claims 1-16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Sosnowska et al.  (Non-patent literature cited in Applicants' IDS dated 11/07/2012, published 2009) in view of Jursic et al. (International patent application No.: WO2012/085249 A2; published June 28, 2012).**

The claims encompass a pharmaceutical powder for an oral liquid formulation, the powder comprising: (a) about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, (b) about 85 % (w/w) mannitol, and (c) about 1% (w/w) colloidal silicon dioxide.  In addition, claim 1 uses open-ended preamble "comprising". Thus, it allows for the presence of additional components.

Sosnowska et al. is directed to the stability of enalapril maleate suspension prepared from commercially available tablets (Title), which contains lactose and other excipients, as evidenced by Drug information (see attached). Lactose is used exchangeablly with mannitol in pharmaceutical industry.  Sosnowska et al. disclose that oral suspension containing 0.1 mg/mL and 1.0 mg/mL **enalapril maleate** in sugar-containing (reads on sweetener, the limitations of the instant claims 6-7 and 13-14) and sugar-free vehicles are **stable** for at least 30 days when stored at $4^{o}$ (refrigerated condition) and $25^{o}C$ (ambient condition) (page 325, Conclusion, reads on the limitations of the instant claims 1, 10-11 and 16 part (a) and claim 2). Sosnowska et al. state that the formulation was prepared by grounding tablets to fine powder and then combining with a hydroxyethylcellulose 0.5% **solution** (page 322, left column, reads on water, the limitation of the instant claim 3) or 1:10 mixture of raspberry **syrup** (page 322, Experimental, reads on the limitations of the instant claims 3-4, 9, and 15-16) and hydroxyethylcellulose 0.5% solution.

Sosnowska et al. indicate that all suspensions contain methyl hydroxybenzoate as a **preservative** (synonym of excipient) (page 322, right column, reads on the limitations of the instant claims 5 and 12).

While Sosnowska et al. do not expressly disclose mannitol and colloidal silicon dioxide in the composition; the deficiencies are cured by Jursic.

Jursic et al. is directed to a combined solid oral dosage form, useful for treating hypertension comprising lercanidipine, enalapril and their salts as active substances (Title). Jursic et al. disclose a composition comprising: hydroxy propylcellulose (10 wt.%) and maleic acid (5 wt.%) along with **enalapril maleate (20 wt.%)**, lercanidipine hydrochloride (polymorph V) (10 wt.%), part of sodium starch glycolate (20 wt.%) and a part of **mannitol (220 wt.%)** were granulated (Equivalent Abstracts, pharmaceuticals, reads on claims 1, 11 and 16 part (a) and (b)). Jursic et al. indicate that the amount may need to be optimized according to the needs of particular patient sub-populations depending on patients' response (page 10, para. 3, the limitations of the instant claim 1). Jursic et al. further disclose that the amount of each type of additive employed, e.g. glidant, binder, disintegrant, filler or diluent and lubricant may vary within ranges conventional in the art. Thus, for example, the amount of **glidant** may vary within a range of from 0.1 to 10% by weight, in **particular 0.1 to 5% by weight**; the amount of disintegrant may vary within a range of from 2 to 20% by weight, e.g. 15% by weight; and etc. (page 8, para. 2, the limitation of the instant claim 1, 11 and 16 part (c)). Jursic et al. indicate that glidants and lubricants, including **colloidal silica** (synonym of silicon dioxide as evidenced by Dave RH, see attached NPL) may also be included in the composition; disintegrants are preferably mannitol, microcrystalline cellulose and lactose are used as fillers, most preferably

**mannitol** (serving as many roles including as a filler, diluent, binder or sweetener) and/or lactose is used (page 9, lines 1-3, the limitations of the instant claims 1, 11 and 16 part (b) and 8). Furthermore, Jursic et al. disclose that other pharmaceutically acceptable excipients for suitable use include preservatives, **flavors** and perfumes, humectants, **sweetening agents** etc. (page 8, lines 9-12, and the limitation of the instant claims 6 and 13).

The teachings of Sosnowska et al. and Jursic et al. are each directed to a pharmaceutical composition containing enalapril. Therefore, it would have been *prima facie* obvious to one of the ordinary skill in the art at the time of invention was made to combine their respective teachings to come up with a pharmaceutical powder for an oral liquid formulation by a person of ordinary skill in the art, with reasonable expectation of success. A person of the ordinary skill in the art at the time of invention was made would have been motivated to combine the teachings of Sosnowska et al. and Jursic et al. for making a pharmaceutical powder comprising enalapril (or its ester, maleate), which can be reconstituted in water or a syrup, as suggested by Sosnowska et al.; mannitol and silicon dioxide as an adsorbent, disintegrant, anti-caking agent, or glidant to allow powder to flow freely as taught by Jursic et al., with a predictable result and reasonable expectation of success.

It should be noted that the weight percent is calculated based on the weight of each ingredient and the total weight given in the claims. For example, 1mg/ml enalapril of claim 11 is 14.1% (1mg/7.07mg = 14.1); 10 mg of silicon dioxide of claim 16 is 0.95% (10/1050mg = 0.95, round up to 1%).

Regarding claims 1, 11 and 16, the weight percent of 14% enalapril, 85% mannitol and 1% silicon dioxide, the prior art, both Sosnowska et al. and Jursic et al., taught the weight

SPI_0000127

percent of the ingredients (e.g. enalapril maleate 20 wt.%), either overlap with or near the ranges claimed. It would have been *prima facie* obvious to one of ordinary skill in the art at the time this invention was made to modify the teachings of Sosnowska et al. and Jursic et al. to determine the concentration of enalapril, mannitol and silicon dioxide that was optimal for an oral liquid formulation. When claimed ranges "overlap or lie inside ranges disclosed by the prior art" a prima facie case of obviousness exists. In re Wertheim, 541 F.2d 257, 191 USPQ 90 (CCPA 1976); In re Woodruff, 919 F.2d 1575, 16 USPQ2d 1934 (Fed. Cir. 1990). In this case Chang et al. and Erp et al. disclose the administration of TKIs at dosages ranging from 0.5 mg to 400 mg, encompassing the ranges recited in the claims of the instant application. (See above). Further, According to the MPEP § 2144.05(II)(A), "Generally, differences in concentration or temperature will not support the patentability of subject matter encompassed by the prior art unless there is **evidence** indicating such concentration or temperature is **critical**. '[W]here the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation.' In re Aller, 220 F.2d 454, 456, 105 USPQ 233, 235 (CCPA 1955). One would have been motivated to combine the teachings of Sosnowska et al. and Jursic et al., because the weight ranges provided therein encompassed that of the instant application. Thus, one of ordinary skill in the art would have a reasonable expectation that by modifying the teachings of Sosnowska et al. in view of Jursic et al., an oral liquid formulation at the claimed ranges would be successful.

Regarding claim 10, wherein the powder is stable for at least six months, Sosnowska et al. taught that enalapril maleate in sugar-containing and sugar-free vehicles are stable for at least 30 days when stored at $4^{\circ}C$ (refrigerated condition) and $25^{\circ}C$ (ambient condition). Although

Sosnowska et al. do not explicitly disclose stability of enalapril maleate longer than 30 days, it would have been *prima facie* obvious to one of the ordinary skill in the art at the time of invention was made to test stability beyond 30 days. Additionally, it is a common knowledge to one of the ordinary skill in the art that a powder form of enalapril maleate is much more stable than that of on a solution or syrup form. Furthermore, the powder would necessarily have the same property (stability) when one combines the teachings of Sosnowska et al. and Jursic et al. to make a pharmaceutical powder for oral liquid formulation. Additionally, claim scope is not limited by claim language that suggests or makes optional but does not require steps to be performed, or by claim language that does not limit a claim to a particular structure (see MPEP 211.04).

In conclusion, the claims 1-16 are unpatentable under 103(a) obviousness rejection.

### CONCLUSION

No claims are allowed.

### CONTACT INFORMATION

Any inquiry concerning this communication or earlier communications from the examiner should be directed to YANZHI ZHANG whose telephone number is (571)272-3117. The examiner can normally be reached on 8:30 am - 5:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Fereydoun G. Sajjadi can be reached on 2-3311.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 13/670,355                                    Page 8
Art Unit: 1617

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/YANZHI ZHANG/

Examiner, Art Unit 1617


/Janet Epps-Smith/
Primary Examiner, Art Unit 1633

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| ***Notice of References Cited*** | | 13/670,355 | RAJEWSKI ET AL. |
| | | Examiner | Art Unit | Page 1 of 1 |
| | | YANZHI ZHANG | 1617 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US- | | | |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | WO2012/085249 | 06-2012 | IA | Jursic et al. | A61K 9/20 |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| * | U | Sosnowska et al. cited by IDS dated 11/07/2012. |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)          **Notice of References Cited**          Part of Paper No. 20130103

SPI_0000131

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application: | |
| Inventor: | Lian G. RAJEWSKI, *et al.* |
| Application No.: | To Be Assigned |
| Filed: | Herewith |
| Title: | **ENALAPRIL COMPOSITIONS** |

| | |
|---|---|
| Confirmation No.: | To Be Assigned |
| Examiner: | To Be Assigned |
| Group Art Unit: | To Be Assigned |
| Customer No. 021971 | |

File No. 43060-701.101

## POWER OF ATTORNEY TO PROSECUTE APPLICATIONS BEFORE THE USPTO
and 3.73 STATEMENT

☒  I hereby appoint the practitioners associated with Customer Number:

**021971**

As attorney(s) or agent(s) to represent the undersigned before the United States Patent and Trademark Office (USPTO)

☒  Please address all correspondence for the above-identified application to:

**021971**

## STATEMENT UNDER 37 CFR 3.73(b)

Silvergate Pharmaceuticals, Inc. _____ a Corporation of the State of Delaware. _____

(Name of Assignee)                                               (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that it is the assignee of an undivided interest in the entirety, in the patent application/patent identified above by virtue of either:

A. ☒  An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel _____ , Frame _____ , or for which a copy thereof is attached.

OR

B. ☐  A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as shown below:
     1.     From: _____ To: _____
              The document was recorded in the United States Patent and Trademark Office at
              Reel _____ , Frame _____ , or for which a copy thereof is attached.
     2.     From: _____ To: _____
              The document was recorded in the United States Patent and Trademark Office at
              Reel _____ , Frame _____ , or for which a copy thereof is attached.

I am an authorized representative of the:
     ☒  Assignee of record of the entire interest. See 37 CFR 3.71
         Statement under 37 CFR 3.73(b) is incorporated herein.

### SIGNATURE of Assignee of Record

| | |
|---|---|
| Signature | *[signature]* |
| Name/Title | Frank SEAGRAVE / Chief Executive Officer |
| Date | 10/1/12 |
| Telephone No. | 614-783-2497 |

5162964_1.DOC
Rev. 5/16/2007

| PATENT ASSIGNMENT | Docket Number 43060-701.101 |
| --- | --- |

WHEREAS, the undersigned:

BECKLOFF, Michael C.
14108 Canterbury Street
Leawood, KS 66224

(hereinafter "Inventor(s),") have invented certain new and useful improvements in

## ENALAPRIL COMPOSITIONS

☒ for which a United States patent application is executed on even date herewith;
☐ for which Application No. _____ was filed on _____ in the United States Patent Office;
☐ for which Application No. _____ was filed on _____ in the U.S. Receiving Office of the Patent Cooperation Treaty;
☐ for which Application No. _____ was filed on _____ in the _____ Patent Office; and/or
☐ for which an application was filed upon which a United States Patent issued on _____, as U.S. Patent No. _____
(hereinafter "Application(s)").

WHEREAS, Silvergate Pharmaceuticals, Inc., a Corporation of the State of Delaware having an address at 5371 Gordon Way, Dublin, Ohio 43017, USA, (hereinafter "Assignee"), is desirous of acquiring the entire right, title and interest in and to said Application(s) and the inventions disclosed therein, and in and to all embodiments of the inventions, heretofore conceived, made or discovered, whether jointly or severally, by said Inventor(s) (hereinafter collectively referred to as "Inventions"), and in and to any and all patents, inventor's certificates and other forms of protection (hereinafter "Patent(s)") thereon granted in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty.

NOW, THEREFORE, in consideration of good and valuable consideration acknowledged by said Inventor(s) to have been received in full from said Assignee:

1.      Said Inventor(s) do hereby sell, assign, transfer and convey unto said Assignee the entire right, title and interest (a) in and to said Inventions and said Applications, including the right to claim priority to said Inventions and said Applications; (b) in and to all rights to all United States and corresponding non-United States patent applications and Patent(s), including those filed under the Paris Convention for the Protection of Industrial Property, The Patent Cooperation Treaty or otherwise; (c) in and to any and all applications filed and any and all Patent(s) granted on said Inventions in the United States, in any foreign country, or under any international convention, agreement, protocol, or treaty, including each and every application filed and any and all Patent(s) granted on any application which is a divisional, substitution, continuation, or continuation-in-part of any of said Application(s); and (d) in and to each and every reissue, reexamination, or extensions of any of said Patent(s).

2.      Said Inventor(s) hereby covenant and agree to cooperate with said Assignee to enable said Assignee to enjoy to the fullest extent the right, title and interest herein conveyed in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty. Such cooperation by said Inventor(s) shall include prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, specifications, declarations or other papers, and other assistance all to the extent deemed necessary or desirable by said Assignee (a) for perfecting in said Assignee the right, title and interest herein conveyed; (b) for prosecuting any applications covering said Inventions; (c) for filing and prosecuting substitute, divisional, continuing or additional applications covering said Inventions; (d) for filing and prosecuting applications for reissuance of any said Patent(s); (e) for interference or other priority proceedings involving said Inventions; and (f) for legal proceedings involving said Inventions and any applications therefor and any Patent(s) granted thereon, including without limitation reissues and reexaminations, opposition proceedings, cancellation proceedings, priority contests, public use proceedings, infringement actions and court actions; provided, however, that the expense incurred by said Inventor(s) in providing such cooperation shall be paid for by said Assignee.

3.      The terms and covenants of this assignment shall inure to the benefit of said Assignee, its successors, assigns and other legal representatives, and shall be binding upon said Inventor(s), their respective heirs, legal representatives and assigns.

4.      Said Inventor(s) hereby warrant and represent that they have not entered and will not enter into any assignment, contract, or understanding in conflict herewith.

5.      Said Inventor(s) hereby request that any Patent(s) issuing in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty, be issued in the name of the Assignee, or its successors and assigns, for the sole use of said Assignee, its successors, legal representatives and assigns.

6.      This instrument will be interpreted and construed in accordance with the laws of the State of California, without regard to conflict of law principles. If any provision of this instrument is found to be illegal or unenforceable, the other provisions shall remain effective and enforceable to the greatest extent permitted by law. This instrument may be executed in counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement.

IN WITNESS WHEREOF, said Inventor(s) have executed and delivered this instrument to said Assignee as of the dates written below:

Date: 10-4-12

Michael C. BECKLOFF

SPI_0000133

| PATENT ASSIGNMENT | Docket Number  43060-701.101 |
|---|---|

WHEREAS, the undersigned:

1. SEGRAVE, Frank
   5371 Gordon Way
   Dublin, OH 43017

2. MAURO, Robert
   24 Oakwood Avenue
   Miller Place, NY 11764

3. COLABUONO, Peter
   7133 Mission Hills Drive
   Las Vegas, NV 89113

(hereinafter "Inventor(s)," have invented certain new and useful improvements in

### ENALAPRIL COMPOSITIONS

☒ for which a United States patent application is executed on even date herewith;
☐ for which Application No. _____ was filed on _____ in the United States Patent Office;
☐ for which Application No. _____ was filed on _____ in the U.S. Receiving Office of the Patent Cooperation Treaty;
☐ for which Application No. _____ was filed on _____ in the _____ Patent Office; and/or
☐ for which an application was filed upon which a United States Patent issued on _____, as U.S. Patent No. _____.
(hereinafter "Application(s)").

WHEREAS, Silvergate Pharmaceuticals, Inc., a Corporation of the State of Delaware having an address at 5371 Gordon Way, Dublin, Ohio 43017, USA, (hereinafter "Assignee"), is desirous of acquiring the entire right, title and interest in and to said Application(s) and the inventions disclosed therein, and in and to all embodiments of the inventions, heretofore conceived, made or discovered, whether jointly or severally, by said Inventor(s) (hereinafter collectively referred to as "Inventions"), and in and to any and all patents, inventor's certificates and other forms of protection (hereinafter "Patent(s)") thereon granted in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty.

NOW, THEREFORE, in consideration of good and valuable consideration acknowledged by said Inventor(s) to have been received in full from said Assignee:

1. Said Inventor(s) do hereby sell, assign, transfer and convey unto said Assignee the entire right, title and interest (a) in and to said Inventions and said Applications, including the right to claim priority to said Inventions and said Applications; (b) in and to all rights to all United States and corresponding non-United States patent applications and Patent(s), including those filed under the Paris Convention for the Protection of Industrial Property, The Patent Cooperation Treaty  or otherwise; (c) in and to any and all applications filed and any and all Patent(s) granted on said Inventions in the United States, in any foreign country, or under any international convention, agreement, protocol, or treaty, including each and every application filed and any and all Patent(s) granted on any application which is a divisional, substitution, continuation, or continuation-in-part of any of said Application(s); and (d) in and to each and every reissue, reexamination, or extensions of any of said Patent(s).

2. Said Inventor(s) hereby covenant and agree to cooperate with said Assignee to enable said Assignee to enjoy to the fullest extent the right, title and interest herein conveyed in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty.  Such cooperation by said Inventor(s) shall include prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, specifications, declarations or other papers, and other assistance all to the extent deemed necessary or desirable by said Assignee (a) for perfecting in said said Assignee the right, title and interest herein conveyed; (b) for prosecuting any applications covering said Inventions; (c) for filing and prosecuting substitute, divisional, continuing or additional applications covering said Inventions; (d) for filing and prosecuting applications for reissuance of any said Patent(s); (e) for interference or other priority proceedings involving said Inventions; and (f) for legal proceedings involving said Inventions and any applications therefor and any Patent(s) granted thereon, including without limitation reissues and reexaminations, opposition proceedings, cancellation proceedings, priority contests, public use proceedings, infringement actions and court actions; provided, however, that the expense incurred by said Inventor(s) in providing such cooperation shall be paid for by said Assignee.

3. The terms and covenants of this assignment shall inure to the benefit of said Assignee, its successors, assigns and other legal representatives, and shall be binding upon said Inventor(s), their respective heirs, legal representatives and assigns.

4. Said Inventor(s) hereby warrant and represent that they have not entered and will not enter into any assignment, contract, or understanding in conflict herewith.

5. Said Inventor(s) hereby request that any Patent(s) issuing in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty, be issued in the name of the Assignee, or its successors and assigns, for the sole use of said Assignee, its successors, legal representatives and assigns.

6. This instrument will be interpreted and construed in accordance with the laws of the State of California, without regard to conflict of law principles.  If any provision of this instrument is found to be illegal or unenforceable, the other provisions shall remain effective and enforceable to the greatest extent permitted by law.  This instrument may be executed in counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement.

IN WITNESS WHEREOF, said Inventor(s) have executed and delivered this instrument to said Assignee as of the dates written below:

Date: 10/1/12                                           Date: _____
      Frank SEGRAVE                                           Robert MAURO

Date: _____
      Peter COLABUONO

SPI_0000134

| PATENT ASSIGNMENT | Docket Number 43060-701.101 |
| --- | --- |

WHEREAS, the undersigned:

1. SEGRAVE, Frank
5371 Gordon Way
Dublin, OH 43017

2. MAURO, Robert
24 Oakwood Avenue
Miller Place, NY 11764

3. COLABUONO, Peter
7133 Mission Hills Drive
Las Vegas, NV 89113

(hereinafter "Inventor(s)," have invented certain new and useful improvements in

### ENALAPRIL COMPOSITIONS

- ☒ for which a United States patent application is executed on even date herewith;
- ☐ for which Application No. _____ was filed on _____ in the United States Patent Office;
- ☐ for which Application No. _____ was filed on _____ in the U.S. Receiving Office of the Patent Cooperation Treaty;
- ☐ for which Application No. _____ was filed on _____ in the _____ Patent Office; and/or
- ☐ for which an application was filed upon which a United States Patent issued on _____, as U.S. Patent No. _____

(hereinafter "Application(s)").

WHEREAS, Silvergate Pharmaceuticals, Inc., a Corporation of the State of Delaware having an address at 5371 Gordon Way, Dublin, Ohio 43017, USA, (hereinafter "Assignee"), is desirous of acquiring the entire right, title and interest in and to said Application(s) and the inventions disclosed therein, and in and to all embodiments of the inventions, heretofore conceived, made or discovered, whether jointly or severally, by said Inventor(s) (hereinafter collectively referred to as "Inventions"), and in and to any and all patents, inventor's certificates and other forms of protection (hereinafter "Patent(s)") thereon granted in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty.

NOW, THEREFORE, in consideration of good and valuable consideration acknowledged by said Inventor(s) to have been received in full from said Assignee:

1.      Said Inventor(s) do hereby sell, assign, transfer and convey unto said Assignee the entire right, title and interest (a) in and to said Inventions and said Applications, including the right to claim priority to said Inventions and said Applications; (b) in and to all rights to all United States and corresponding non-United States patent applications and Patent(s), including those filed under the Paris Convention for the Protection of Industrial Property, The Patent Cooperation Treaty or otherwise; (c) in and to any and all applications filed and any and all Patent(s) granted on said Inventions in the United States, in any foreign country, or under any international convention, agreement, protocol, or treaty, including each and every application filed and any and all Patent(s) granted on any application which is a divisional, substitution, continuation, or continuation-in-part of any of said Application(s); and (d) in and to each and every reissue, reexamination, or extensions of any of said Patent(s).

2.      Said Inventor(s) hereby covenant and agree to cooperate with said Assignee to enable said Assignee to enjoy to the fullest extent the right, title and interest herein conveyed in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty. Such cooperation by said Inventor(s) shall include prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, specifications, declarations or other papers, and other assistance all to the extent deemed necessary or desirable by said Assignee (a) for perfecting in said Assignee the right, title and interest herein conveyed; (b) for prosecuting any applications covering said Inventions; (c) for filing and prosecuting substitute, divisional, continuing or additional applications covering said Inventions; (d) for filing and prosecuting applications for reissuance of any said Patent(s); (e) for interference or other priority proceedings involving said Inventions; and (f) for legal proceedings involving said Inventions and any applications therefor and any Patent(s) granted thereon, including without limitation reissues and reexaminations, opposition proceedings, cancellation proceedings, priority contests, public use proceedings, infringement actions and court actions; provided, however, that the expense incurred by said Inventor(s) in providing such cooperation shall be paid for by said Assignee.

3.      The terms and covenants of this assignment shall inure to the benefit of said Assignee, its successors, assigns and other legal representatives, and shall be binding upon said Inventor(s), their respective heirs, legal representatives and assigns.

4.      Said Inventor(s) hereby warrant and represent that they have not entered and will not enter into any assignment, contract, or understanding in conflict herewith.

5.      Said Inventor(s) hereby request that any Patent(s) issuing in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty, be issued in the name of the Assignee, or its successors and assigns, for the sole use of said Assignee, its successors, legal representatives and assigns.

6.      This instrument will be interpreted and construed in accordance with the laws of the State of California, without regard to conflict of law principles. If any provision of this instrument is found to be illegal or unenforceable, the other provisions shall remain effective and enforceable to the greatest extent permitted by law. This instrument may be executed in counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement.

IN WITNESS WHEREOF, said Inventor(s) have executed and delivered this instrument to said Assignee as of the dates written below:

Date: _____      _____
Frank SEGRAVE

Date: 02-09-2012      _____
Robert MAURO

Date: _____      _____
Peter COLABUONO

SPI_0000135

| PATENT ASSIGNMENT | Docket Number 43060-701.101 |

WHEREAS, the undersigned:

1. SEGRAVE, Frank
   5371 Gordon Way
   Dublin, OH 43017

2. MAURO, Robert
   24 Oakwood Avenue
   Miller Place, NY 11764

3. COLABUONO, Peter
   7133 Mission Hills Drive
   Las Vegas, NV 89133

(hereinafter "Inventor(s)," have invented certain new and useful improvements in

### ENALAPRIL COMPOSITIONS

☒ for which a United States patent application is executed on even date herewith;
☐ for which Application No. _____ was filed on _____ in the United States Patent Office;
☐ for which Application No. _____ was filed on _____ in the U.S. Receiving Office of the Patent Cooperation Treaty;
☐ for which Application No. _____ was filed on _____ in the _____ Patent Office; and/or
☐ for which an application was filed upon which a United States Patent issued on _____ as U.S. Patent No. _____

(hereinafter "Application(s)").

WHEREAS, Silvergate Pharmaceuticals, Inc., a Corporation of the State of Delaware having an address at 5371 Gordon Way, Dublin, Ohio 43017, USA, (hereinafter "Assignee"), is desirous of acquiring the entire right, title and interest in and to said Application(s) and the inventions disclosed therein, and in and to all embodiments of the inventions, heretofore conceived, made or discovered, whether jointly or severally, by said Inventor(s) (hereinafter collectively referred to as "Inventions"), and in and to any and all patents, inventor's certificates and other forms of protection (hereinafter "Patent(s)") thereon granted in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty.

NOW, THEREFORE, in consideration of good and valuable consideration acknowledged by said Inventor(s) to have been received in full from said Assignee:

1.     Said Inventor(s) do hereby sell, assign, transfer and convey unto said Assignee the entire right, title and interest (a) in and to said Inventions and said Applications, including the right to claim priority to said Inventions and said Applications; (b) in and to all rights to all United States and corresponding non-United States patent applications and Patent(s), including those filed under the Paris Convention for the Protection of Industrial Property, The Patent Cooperation Treaty or otherwise; (c) in and to any and all applications filed and any and all Patent(s) granted on said Inventions in the United States, in any foreign country, or under any international convention, agreement, protocol, or treaty, including each and every application filed and any and all Patent(s) granted on any application which is a divisional, substitution, continuation, or continuation-in-part of any of said Application(s); and (d) in and to each and every reissue, reexamination, or extensions of any of said Patent(s).

2.     Said Inventor(s) hereby covenant and agree to cooperate with said Assignee to enable said Assignee to enjoy to the fullest extent the right, title and interest herein conveyed in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty. Such cooperation by said Inventor(s) shall include prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, specifications, declarations or other papers, and other assistance all to the extent deemed necessary or desirable by said Assignee (a) for perfecting in said Assignee the right, title and interest herein conveyed; (b) for prosecuting any applications covering said Inventions; (c) for filing and prosecuting substitute, divisional, continuing or additional applications covering said Inventions; (d) for filing and prosecuting applications for reissuance of any said Patent(s); (e) for interference or other priority proceedings involving said Inventions; and (f) for legal proceedings involving said Inventions and any applications therefor and any Patent(s) granted thereon, including without limitation reissues and reexaminations, opposition proceedings, cancellation proceedings, priority contests, public use proceedings, infringement actions and court actions; provided, however, that the expense incurred by said Inventor(s) in providing such cooperation shall be paid for by said Assignee.

3.     The terms and covenants of this assignment shall inure to the benefit of said Assignee, its successors, assigns and other legal representatives, and shall be binding upon said Inventor(s), their respective heirs, legal representatives and assigns.

4.     Said Inventor(s) hereby warrant and represent that they have not entered and will not enter into any assignment, contract, or understanding in conflict herewith.

5.     Said Inventor(s) hereby request that any Patent(s) issuing in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty, be issued in the name of the Assignee, or its successors and assigns, for the sole use of said Assignee, its successors, legal representatives and assigns.

6.     This instrument will be interpreted and construed in accordance with the laws of the State of California, without regard to conflict of law principles. If any provision of this instrument is found to be illegal or unenforceable, the other provisions shall remain effective and enforceable to the greatest extent permitted by law. This instrument may be executed in counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement.

IN WITNESS WHEREOF, said Inventor(s) have executed and delivered this instrument to said Assignee as of the dates written below:

Date: _____                          Date: _____

_____Frank SEGRAVE_____                          _____Robert MAURO_____

Date: 10/3/17 _____
_____Peter COLABUONO_____

SPI_0000136

<u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

In re Application:
Inventor:           Lian G. RAJEWSKI, *et al.*
Application No.:    To Be Assigned
Filed:              Herewith
Title:       **ENALAPRIL COMPOSITIONS**

Confirmation No.:    **To Be Assigned**
Examiner:            To Be Assigned
Group Art Unit:      To Be Assigned
Customer No. 021971

**File No. 43060-701.101**

## POWER OF ATTORNEY TO PROSECUTE APPLICATIONS BEFORE THE USPTO
### and 3.73 STATEMENT

☒   I hereby appoint the practitioners associated with Customer Number:

| 021971 |

As attorney(s) or agent(s) to represent the undersigned before the United States Patent and Trademark Office (USPTO).

☒   Please address all correspondence for the above-identified application to:

| 021971 |

## STATEMENT UNDER 37 CFR 3.73(b)

<u>University of Kansas</u>                                      a University
(Name of Assignee)                              (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)
states that it is: the assignee of an undivided interest in the entirety; in the patent application/patent identified above by virtue of either:

A. ☒   An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States
       Patent and Trademark Office at Reel        , Frame        , *or for which a copy thereof is attached.*

*OR*

B. ☐   A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as shown below:
       1.   From: _____ To: _____
            The document was recorded in the United States Patent and Trademark Office at
            Reel _____, Frame _____, *or for which a copy thereof is attached.*
       2.   From: _____ To: _____
            The document was recorded in the United States Patent and Trademark Office at
            Reel _____, Frame _____, *or for which a copy thereof is attached.*

I am an authorized representative of the:
       ☒   Assignee of record of the entire interest. See 37 CFR 3.71.
            *Statement under 37 CFR 3.73(b) is incorporated herein.*

### SIGNATURE of Assignee of Record

| Signature |  |  |
|---|---|---|
| Name/Title | Joseph A. Heppert | Assoc. Vice Chancellor for Research & Graduate Studies |
| Date | 2 Oct 12 | Telephone No.   785 - 864 - 8235 |

5149312_1.DOC
Rev. 5/16/2007

SPI_0000137

| PATENT ASSIGNMENT | Docket Number 43060-701.101 |
|---|---|

WHEREAS, the undersigned:

1. RAJEWSKI, Lian G.
   4628 Muirfield Drive
   Lawrence, KS 66047

2. RAJEWSKI, Roger A.
   4628 Muirfield Drive
   Lawrence, KS 66047

3. HASLAM, John L.
   1560 N 1060 Road
   Lawrence, KS 66046

4. HEPPERT, Kathleen
   2901 Oxford Road
   Lawrence, KS 66049

(hereinafter "Inventor(s)," have invented certain new and useful improvements in

**ENALAPRIL COMPOSITIONS**

☒ for which a United States patent application is executed on even date herewith;
☐ for which application serial number _____ was filed on _____ in the United States Patent Office;
☐ for which application serial number _____ was filed on _____ in the U.S. Receiving Office of the Patent Cooperation Treaty;
☐ for which application serial number _____ was filed on _____ in the _____ Patent Office; and/or
☐ for which an application was filed upon which a United States Patent issued on _____, as U.S. Patent No. _____

(hereinafter, "Application(s)". The term "Application(s)" also includes all patent applications that share or claim priority to or from the above application(s) .

WHEREAS, University of Kansas, a Unversity having a place of business at 245 Strong Hall, 1450 Jayhawk Boulevard, Lawrence, Kansas 66045, U.S.A., (hereinafter "Assignee"), is desirous of acquiring the entire right, title and interest in and to said Application(s), and the inventions disclosed therein, and in and to all embodiments of the inventions, heretofore conceived, made or discovered, whether jointly or severally, by said Inventor(s) (hereinafter collectively referred to as "Inventions"), and in and to any and all patents, inventor's certificates and other forms of protection thereon granted in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty, including those filed under the Paris Convention for the Protection of Industrial Property, The Patent Cooperation Treaty  or otherwise (hereinafter "Patent(s)").

NOW, THEREFORE, in consideration of good and valuable consideration acknowledged by said Inventor(s) to have been received in full from said Assignee:

1.     Said Inventor(s) do hereby sell, assign, transfer and convey unto said Assignee the entire right, title and interest (a) in and to said Inventions; (b) in and to said Applications, including the right to claim priority to and from said Application(s); (c) in and to each and every application that is a divisional, substitution, continuation, or continuation-in-part of any of said Application(s); (d) in and to said Patent(s) and each and every patent issuing or reissuing from any of the foregoing; (e)  in and to each and every reissue, reexamination, renewal or extension of any kind of any of the foregoing; and (f) in and to each and every patent and application filed outside the United States and corresponding to any of the foregoing.

2.     Said Inventor(s) hereby covenant and agree to cooperate with said Assignee to enable said Assignee to enjoy to the fullest extent the right, title and interest herein conveyed in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty.  Such cooperation by said Inventor(s) shall include prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, specifications, declarations or other papers, and other assistance all to the extent deemed necessary or desirable by said Assignee (a) for perfecting in said Assignee the right, title and interest herein conveyed; (b) for prosecuting any applications covering said Inventions; (c) for filing and prosecuting substitute, divisional, continuing or additional applications covering said Inventions; (d) for filing and prosecuting applications for reissuance of any said Patent(s); (e) for interference or other priority proceedings involving said Inventions; and (f) for legal proceedings involving said Inventions and any applications therefor and any Patent(s) granted thereon, including without limitation reissues and reexaminations, opposition proceedings, cancellation proceedings, priority contests, public use proceedings, infringement actions and court actions; provided, however, that reasonable expenses incurred by said Inventor(s) in providing such cooperation shall be paid for by said Assignee.

3.     The terms and covenants of this assignment shall inure to the benefit of said Assignee, its successors, assigns and other legal representatives, and shall be binding upon said Inventor(s), their respective heirs, legal representatives and assigns.

4.     Said Inventor(s) hereby warrant, represent and covenant that said Inventor(s) have not entered and will not enter into any assignment, contract, or understanding in conflict herewith.

5.     Said Inventor(s) hereby request that any Patent(s) issuing in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty, be issued in the name of the Assignee, or its successors and assigns, for the sole use of said Assignee, its successors, legal representatives and assigns.

6.     This instrument will be interpreted and construed in accordance with the laws of the State of California, without regard to conflict of law principles.  If any provision of this instrument is found to be illegal or unenforceable, the other provisions shall remain effective and enforceable to the greatest extent permitted by law.  This instrument may be executed in counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement.

5166209_1.DOC

SPI_0000138

| PATENT ASSIGNMENT | Docket Number  43060-701.101 |
| --- | --- |

IN WITNESS WHEREOF, said Inventor(s) have executed and delivered this instrument to said Assignee as of the dates written below:

Date: 04Oct2012                          Lian G. RAJEWSKI

State/Commonwealth of _Kansas_          )
County of _Douglas_                      )

On _Oct 4 2012_ before me, _Nancy Helm_ (Name/Title of Notary) personally appeared Lian G. RAJEWSKI (Name of Signer) who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State/Commonwealth of _Kansas_ that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature: _Nancy Helm_

> Nancy Helm
> NOTARY PUBLIC
> State of Kansas
> My Appt. (Notary Seal) 9/22/15

---

Date: 04Oct12                            Roger A. RAJEWSKI

State/Commonwealth of _Kansas_          )
County of _Douglas_                      )

On _Oct 4 2012_ before me, _Nancy Helm_ (Name/Title of Notary) personally appeared Roger A. RAJEWSKI (Name of Signer) who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State/Commonwealth of _Kansas_ that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature: _Nancy Helm_

> Nancy Helm
> NOTARY PUBLIC
> State of Kansas
> My Appt. (Notary Seal) 9/22/15

---

Date: 4 Oct 12                           John L. HASLAM

State/Commonwealth of _Kansas_          )
County of _Douglas_                      )

On _Oct 4 2012_ before me, _Nancy Helm_ (Name/Title of Notary) personally appeared John L. HASLAM (Name of Signer) who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State/Commonwealth of _Kansas_ that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature: _Nancy Helm_

> Nancy Helm
> NOTARY PUBLIC
> State of Kansas
> My Appt. (Notary Seal) 2/15

---

Date: 04Oct12                            Kathleen HEPPERT

State/Commonwealth of _Kansas_          )
County of _Douglas_                      )

On _Oct 4 2012_ before me, _Nancy Helm_ (Name/Title of Notary) personally appeared Kathleen HEPPERT (Name of Signer) who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State/Commonwealth of _Kansas_ that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature: _Nancy Helm_

> Nancy Helm
> NOTARY PUBLIC
> State of Kansas
> My Appt. # (Notary Seal) 2/15

5166209_1.DOC

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 15194122 |
| **Application Number:** | 13670355 |
| **International Application Number:** | |
| **Confirmation Number:** | 2719 |
| **Title of Invention:** | Enalapril Compositions |
| **First Named Inventor/Applicant Name:** | Lian G. RAJEWSKI |
| **Customer Number:** | 21971 |
| **Filer:** | Clark Y. Lin/Rose Andico |
| **Filer Authorized By:** | Clark Y. Lin |
| **Attorney Docket Number:** | 43060-701.201 |
| **Receipt Date:** | 12-MAR-2013 |
| **Filing Date:** | 06-NOV-2012 |
| **Time Stamp:** | 16:58:22 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 43060-701-201-POA-and-373b-Silvergate.pdf | 4546813 <br> ab6ea5b996bbf114c27258d9060bcb3ee52 85882 | yes | 5 |

SPI_0000140

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Power of Attorney | 1 | 1 |
| Assignee showing of ownership per 37 CFR 3.73. | 2 | 5 |

| Warnings: |
|---|
| **Information:** |

| 2 | | 43060-701-201-POA-and-373b-KU.pdf | 2868876 <br> bd128a865375e5aab6106a88f283734375 28dae | yes | 3 |
|---|---|---|---|---|---|

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Power of Attorney | 1 | 1 |
| Assignee showing of ownership per 37 CFR 3.73. | 2 | 3 |

| Warnings: |
|---|
| **Information:** |

| **Total Files Size (in bytes):** | 7415689 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

SPI_0000141



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 13/670,355 | 11/06/2012 | Lian G. RAJEWSKI | 43060-701.201 |

**CONFIRMATION NO. 2719**

21971
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

**POA ACCEPTANCE LETTER**


*OC000000059962918*

Date Mailed: 03/25/2013

# NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 03/12/2013.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

/sleutchit/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

page 1 of 1

PATENT
Attorney Docket No. 43060-701.201

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| In re the Patent Application of: | Confirmation No.: 2719 |
| Inventor: Lian G. RAJEWSKI, *et al.* | Examiner: Zhang, Yanzhi |
| | Group Art Unit: 1617 |
| Application No.: 13/670,355 | Customer No. 21971 |
| Filed: November 6, 2012 | |
| Title: ENALAPRIL COMPOSITIONS | |

Certificate of Electronic Filing

I hereby certify that the attached Amendment in Response and all attached documents are being deposited by Electronic Filing on May 1, 2013, by using the EFS – Web patent filing system and addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

By:  _____/Rose Andico/_____
             Rose Andico

**AMENDMENT IN RESPONSE TO THE OFFICE ACTION
DATED FEBRUARY 8, 2013**

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Madam:

Applicants hereby submit a response to the Office Action dated February 8, 2013 (the "Office Action"), in the above-identified application.  Applicants respectfully request amendment of the patent application, and reconsideration and allowance of the pending claims. A statutory period of three months was set in the Office Communication and expires on May 8, 2013.  Thus, no fees are believed due, as a response to the February 8, 2013, Office Communication is timely if filed on or before May 8, 2013.  Please charge any fees associated with this Response to Deposit Account No. 23-2415, referencing Docket No. 43060-701.201.

1

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 2 of 19

**Amendments to the Claims**, reflecting the status of the claims, begins on page **3**.

**Remarks** begin on page **5**

The **Conclusion** is on page **19**.

SPI_0000144

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 3 of 19

<u>**AMENDMENTS TO THE CLAIMS**</u>

This listing of claims will replace all prior versions, amendments and listings of claims in this application.  The following amendments do not constitute an admission regarding the patentability of the amended subject matter and should not be so construed.  Applicant reserves the right to pursue the subject matter of the withdrawn claims in this or any other appropriate patent application.

<u>**Complete Listing of Claims**</u>:

1.      (Currently Amended)  A pharmaceutical powder ~~for~~ <u>that is reconstituted into</u> an oral liquid formulation, the powder comprising:

(a)      about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,
(b)      about 85 % (w/w) mannitol, and
(c)      about 1 % (w/w) colloidal silicon dioxide,
wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about 25±5°C and 55±10% relative humidity.

2.      (Original)  The pharmaceutical powder of claim 1, wherein the enalapril or pharmaceutically acceptable salt thereof is enalapril maleate.

3.      (Original)  The pharmaceutical powder of claim 1, wherein the powder is reconstituted in water for the oral liquid.

4.      (Original)  The pharmaceutical powder of claim 1, wherein the powder is reconstituted in syrup for the oral liquid.

5.      (Original)  The pharmaceutical powder of claim 1, wherein the powder further comprises a pharmaceutically acceptable excipient.

6.      (Original)  The pharmaceutical powder of claim 5, wherein the pharmaceutically acceptable excipient is a sweetener, flavoring agent or preservative.

7.      (Original)  The pharmaceutical powder of claim 5, wherein the pharmaceutically acceptable excipient is a sweetener.

8.      (Original)  The pharmaceutical powder of claim 7, wherein the sweetener is a solid.

9.      (Original)  The pharmaceutical powder of claim 7, wherein the sweetener is a liquid.

SPI_0000145

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 4 of 19

10.    (Original)  The pharmaceutical powder of claim 1, wherein the powder is stable for at least six months at ambient, accelerated or refrigerated conditions.

11.    (Original)  The pharmaceutical powder of claim 1, wherein the liquid comprises

(a)     about 1 mg/ml enalapril or a pharmaceutically acceptable salt thereof,

(b)     about 6 mg/ml mannitol, and

(c)     about .07 mg/ml colloidal silicon dioxide.

12.    (Original)  The pharmaceutical powder of claim 11, wherein the liquid further comprises a pharmaceutically acceptable excipient.

13.    (Original)  The pharmaceutical powder of claim 11, wherein the pharmaceutically acceptable excipient is a sweetener, flavoring agent or preservative.

14.    (Original)  The pharmaceutical powder of claim 11, wherein the pharmaceutically acceptable excipient is a sweetener.

15.    (Original)  The pharmaceutical powder of claim 14, wherein the sweetener is a syrup.

16.    (Original)  The pharmaceutical powder of claim 1, wherein the powder comprises about 150 mg enalapril, about 890 mg mannitol and 10 mg colloidal silicon dioxide.


*        *        *


4

## REMARKS

### I. Status of the claims

Claims 1-16 are pending in this application.  Claim 1 has been amended to now recite "A pharmaceutical powder that is reconstituted into an oral liquid formulation".  This amendment is made as per the Examiners' suggestions as discussed during the Applicant-initiated Interview dated April 11, 2013.

### II. Aplicant-Initiated Interview Dated April 11, 2013

Applicant thanks Examiners Zhang and Epps-Smith for the opportunity to interview the pending case on April 11, 2013.  The status of the current claims was discussed as well as the outstanding rejection.  In the Interview, Applicant described the components, their properties and surprising results of the claimed pharmaceutical powder of which the Examiners will take into consideration.  In this response, Applicant further describes these details in **Section III.D** below.

### III. Rejection Under 35 U.S.C. § 103

Claims 1-16 are rejected under 35 U.S.C. § 103(a) as allegedly obvious over Sosnowska et al., *Acta Poloniae Pharmaceutica – Drug Research*, 2009, 66(3) 321-326 ("Sosnowska") in view of Jursic et al., International Patent Application No. WO2012/085249 ("Jursic").

Obviousness is a question of law based on underlying factual inquiries. The factual inquiries enunciated by the Court are as follows:

(A) Ascertaining the scope and content of the prior art; and

(B) Ascertaining the differences between the claimed invention and the prior art; and

(C) Resolving the level of ordinary skill in the pertinent art.

*See Graham v. John Deere Co.*, 383 U.S. 1, (1966); *see also* M.P.E.P. § 2141(II).

Once these factual inquiries have been completed, the Office must explain why the difference(s) between the prior art and the claimed invention would have been obvious to one of ordinary skill in the art.  According to the M.P.E.P., "The key to supporting any rejection under 35 U.S.C. 103 is the clear articulation of the reason(s) why the claimed invention would have been obvious."  M.P.E.P. § 2141(III).  Moreover, the result of any obviousness inquiry must, generally, provide a predictable result or have an expectation of success.  *See id.*

5

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 6 of 19

The Office asserts that:

> Sosnowska et al. is directed to the stability of enalapril maleate suspension prepared from commercially available tablets (Title), which contains lactose and other excipients, as evidenced by Drug information (See attached).  Lactose is used exchangeably with mannitol in pharmaceutical industry.  Sosnowska et al. disclose that oral suspension containing 0.1 mg/mL and 1.0 mg/mL **enalapril maleate** in sugar-containing (reads on sweetener, the limitations of claims 6-7 and 13-14) and sugar-free vehicles are **stable** for at least 30 days when stored at 4° (refrigerated condition) and 25°C (ambient condition (page 325, Conclusion, reads on the limitations of the instant claims 1, 10-11 and 16 part (a) and claim 2).
>
> *Office Action, page 3 (emphasis original).*

The Office states that Sosnowska does not expressly disclose mannitol and colloidal silicon dioxide in the composition and argues that Jursic remedies this deficiency.  Jursic is cited for the premise of teaching:

> Jursic et al. disclose a composition comprising: hydroxyl propylcellulose (10 wt.%) and maleic acid (5 wt.%) along with **enalapril maleate (20 wt**.%), lercanidipine hydrochloride (polymorph V) 10 wt.%), part of sodium starch glycolate (20wt.%) and a part of **mannitol (220 wt**.%) were granulated (Equivalent Abstracts, pharmaceuticals, reads on claims 1, 11 and 16 part (a) and (b)).
>
> *Office Action, page 4 (emphasis original).*

The Office further asserts that:

> Jursic et al. indicate that glidants and lubricants, including **colloidal silica** (synonym of silicon dioxide as evidenced by Dave RH, see attached NBL) may also be included in the composition [...].
>
> *Id. (emphasis in original).*

The Office concludes by stating:

> Therefore, it would have been *prima facie* obvious to one of the ordinary skill in the art at the time of the invention was made to combine their respective teachings to come up with a pharmaceutical powder for an oral liquid formulation by a person of of ordinary skill in the art, with reasonable expectation of success. A person of the ordinary skill in the art at the time of the invention was made would have been motivated to combine the teachings of Sosnowska et al. and Jursic et al. for making a pharmaceutical comprising enalapril (or its ester maleate), which can be reconstituted in water or a syrup, as suggested by Sosnowska et al.; mannitol and silicon dioxide as an absorbant, disintegrant, anti-caking agent, or glidant to allow powder to flow freely as taught by Jursic et al., with a predictable result and reasonable expectation of success.
>
> *Office Action, page 5 (emphasis original).*

6

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 7 of 19

The current standard of obviousness takes into account (1) whether there would have been a "reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed invention does;" and (2) whether the combination of elements would have yielded "predictable results" *i.e.*, whether there would have been a reasonable expectation of success. (*See e.g., KSR International Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1731 (2007), *see also PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d at 1342, 1360 (Fed. Cir. 2007) ("The burden falls on the patent challenger to show by clear and convincing evidence that a person of ordinary skill in the art would have had <u>reason to attempt</u> to make the composition or device, or carry out the claimed process, and would have had a <u>reasonable expectation of success</u> in doing so.") (emphasis added, internal quotations omitted)).

With regard to the instant case, Applicant respectfully submits that the Office has not established a *prima facie* case of obviousness. Specifically, Applicant respectfully submits that Sosnowska and Jursic would not have provided any reason to single out the specific components at the requisite concentrations for a pharmaceutical powder recited in the instant claims; and further that Sosnowska and Jursic would not have provided the legally required reasonable expectation of success.

**A.      The Office Fails to Provide a Reason to Arrive at the Pharmaceutical Powder of the Instant Claims from Sosnowska and Jursic**

Applicant respectfully points out that the instant application is directed to novel enalapril powders for use in oral liquid forms. Specifically, claim 1 is directed to a pharmaceutical powder for an oral liquid formulation, the powder comprising (a) about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, (b) about 85 % (w/w) mannitol, and (c) about 1 % (w/w) colloidal silicon dioxide. As the Specification and Drawings of the instant application show, the enalapril drug along with the mannitol and colloidal silicon dioxide exhibit excellent stability and uniformity properties in powder and reconstituted liquid form. Further, the claimed pharmaceutical enalapril powders represent an elegant solution over the previous method at

SPI_0000149

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 8 of 19

obtaining liquid enalapril formulations, namely grinding or crushing commercially available enalapril tablets and then suspending the ground tablets in a liquid vehicle.

_Sosnowska only teaches the preparation of oral enalapril suspensions from grinding commercially available tablets._

Sosnowska describes in great detail this process of grinding the enalapril tablets, mixing with certain excipients and liquid vehicles and providing an analysis of the resultant suspension. While Sosnowska teaches enalapril oral suspensions from ground enalapril tablets, nothing in Sosnowska provides any reason or rationale of how one of ordinary skill in the art would use these teachings to arrive at pharmaceutical enalapril powders, let alone pharmaceutical enalapril powders with enalapril, mannitol and colloidal silicon dioxide.  In fact, Sosnowska does not even teach, disclose or suggest the preparation of any enalapril powders for reconstitution whatsoever as an alternative to the ground tablet and resuspension method.  Sosnowska only teaches the preparation of oral enalapril suspensions from grinding commercially available tablets.

Further, Applicant respectfully points out that one skilled in the art would not use Sosnowska to arrive at the claimed pharmaceutical enalapril powders.  As the Office is no doubt aware, the crushing or grinding of tablets to form oral suspensions has many issues including stability, solubility, uniformity, etc.  Indeed, Sosnowska also makes reference to these problems:

> During preparing suspensions from tablets or capsules one should consider a lot of important problems including: solubility and stability of the active substance, pH and composition of the suspending medium, and antimicrobial protection. The main problems appearing during preparation the formulation include achieving dose uniformity and chemical and physical stability (7).
>
> _Sosnowska, p. 321, col. 2._

One can deduce that oral suspensions from tablets can exhibit undesired variability across different (or even the same) pharmacies and with the use of different grinding methods, tablet brands, liquid vehicles and excipients.  In forming a new pharmaceutical enalapril powder that exhibits the stability and homogeneity properties as recited in the instant claims, one ordinarily skilled in the art would not select Sosnowska by virtue of its teaching in the use of enalapril tablets as a starting material.

SPI_0000150

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 9 of 19

Moreover, Applicant respectfully submits that one skilled in the art in reading a claim on "a *pharmaceutical* powder" would interpret the claim to mean a powder made by a pharmaceutical process.  That is, a powder is produced from pharmaceutical grade materials from a process that is validated with a Good Manufacturing Practice (GMP) certification.  One skilled in the art would not consider a pharmaceutical powder as being prepared from the crushing of existing commercially available tablets.

### *Sosnowska teaches away from the claimed composition.*

Finally, as the Office acknowledges in the Office Action, Sosnowska fails to disclose or suggest mannitol and colloidal silicon dioxide in compositions with enalapril.  Instead, Sosnowska teaches the use of enalapril tablets (Enarenal®) which contain *lactose* as an excipient.  Regarding lactose, Applicant respectfully submits that the Office has failed to consider Sosnowska as a whole, which actually <u>teaches away</u> from the claimed composition.  (*See e.g*. MPEP §2141, *citing W.L. Gore & Associates, Inc. v. Garlock, Inc*., 721 F.2d 1540, 220 U.S.P.Q. 303 (Fed. Cir. 1983), *cert. denied*, 469 U.S. 851 (1984) ("A prior art reference must be considered in its entirety, *i.e*., as a <u>whole</u>, including portions that would lead away from the invention.") (emphasis in original).

Contrary to the Office's assertion that "[l]actose is used exchangeably with mannitol in the pharmaceutical industry", Applicant submits that one skilled in the art, i.e., a formulator would recognize that mannitol and lactose have vastly different properties in terms of chemical reactivity, water content, patient tolerance, etc.  Further, Applicant respectfully point out that, according to the Specification and Examples of the instant application, lactose is disfavored in enalapril powder compositions as an enalapril powder composition with lactose has the greatest instability of the active ingredient:

> However, surprisingly, as shown in Example 1, powder blends of lactose with enalapril showed the greatest degradation whereas enalapril/mannitol powder was most stable under accelerated conditions.
>
> *Specification, page 7, para. [0034], see also Example 1.*

Thus, Sosnowska teaches enalapril and lactose together which actually would produce a powder composition that was more instable than the composition as described in the instant claims.

9

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 10 of 19

Accordingly, one ordinarily skilled in the art, in forming enalapril pharmaceutical powders, would not reference Sosnowska because it only teaches enalapril tablets as a starting material.  Further, even if one ordinarily skilled in the art attempted to use the teachings of Sosnowska, one would be led away from the claimed composition by virtue of the disclosure on lactose.

*Jursic also fails to provide a reason to arrive at the claimed composition.*

The Jursic reference does not remedy the deficiencies of Sosnowska.  The Office cites Jursic for the premise of mannitol in an enalapril/lercanidipine tablet and that glidants such as colloidal silica are contemplated within scope of embodiments.  However, Applicant respectfully points out that nothing in Jursic would give one ordinarily skilled in the art any reason, basis, suggestion or rationale to select mannitol as well as a glidant, let alone colloidal silica to form an enalapril powder composition as recited in the instant claims.  Applicant also notes that Jursic teaches enalapril/lercanidipine tablets that contain lactose instead (see, Jursic, Example 6).  This further raises the question of how would one select mannitol over lactose as taught by Sosnowska or Jursic?  Neither reference teaches that mannitol is preferred over lactose.

Accordingly, the Office cannot provide a plausible rationale of how one of ordinary skill in the art would use the teachings of Jursic in combination with Sosnowska to arrive at the enalapril powder composition as claimed in the present application.  This leads one to conclude that the Office has applied hindsight reconstruction to reject the instant claims.

**B.      Sosnowska In View of the Jursic Reference Provides No Reasonable Expectation of Success of the Claimed Subject Matter**

The second measure of obviousness requires that the combination of elements would have yielded "predictable results" *i.e.*, whether there would have been a reasonable expectation of success.  To have a reasonable expectation of success, "one must be motivated to do more than merely "vary all parameters or try each of numerous possible choices until one possibly arrived at a successful result, where the prior art gave no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful." *Medichem, S.A. v. Robaldo,* 327 F.3d 1157, 1165 (Fed. Cir. 2006).

SPI_0000152

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 11 of 19

The Office Action states that the Jursic reference is applied for its teachings with respect to mannitol and colloidal silicon dioxide. Regarding mannitol, as Applicant has noted above, Jursic teaches, in various embodiments, enalapril/lercanidipine tablet compositions which contain either mannitol or lactose without a preference for either. With respect to colloidal silicon dioxide, Applicant respectfully submits that Jursic merely lists possible excipients that can be used and does not particularly point out colloidal silicon dioxide nor even use it in its formulations:

> Examples of suitable excipients for use in a composition or solid dosage form according to the invention include fillers, diluents, disintegrants, binders, stabilizers, lubricants etc. or mixtures thereof. As the composition or solid dosage form according to the invention may be used for different purposes, the choice of excipients is normally made taken such different uses into considerations. Other pharmaceutically acceptable excipients for suitable use are e.g. preservatives, antioxidants, buffering agents, chelating agents, coloring agents, complexing agents, emulsifying and/or solubilizing agents, flavors and perfumes, humectants, sweetening agents, wetting agents etc.

> *Jursic, page. 15, ll. 1-9.*

Additionally, Jursic further lists examples of fillers, diluents, binders, disintegrants, glidants, lubricants, organic acids, anti-oxidants, surfactants that in total number to over one hundred excipients and states that "The amount of each type of additive employed, e.g. glidant, binder,disintegrant, filler, or diluents and lubricant may vary within ranges conventional in the Art." *Jursic, page 15, ll. 11-12.*

When Jursic and Sosnowska are combined, one ordinarily skilled in the art is merely taught that any one of the hundreds of excipients disclosed in Jursic may potentially be combined with oral suspensions from ground enaparil tablets as taught in Sosnowska. As such, the prior art does not provide any expectation that any <u>particular</u> combination would be successful for stable enalapril pharmaceutical powder compositions, much less any expectation that the combination of enalapril, mannitol and colloidal silicon dioxide would be successful in forming a stable enalapril pharmaceutical powder. Simply put, to arrive at the combination of a enalapril, mannitol and colloidal silicon dioxide using the Jursic and Sosnowska references, one skilled in the art must "vary all parameters or try each of the numerous possible choices" of the reference without "direction as to which of the many choices is likely to be successful." *Medichem*, 437

SPI_0000153

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 12 of 19

F.3d at 1165.  This is precisely what courts have held <u>not</u> to be a reasonable expectation of success.  *Id.*; *see also, In re O'Farrell*, 853 F.3d 894, 903-4.

Since a reasonable expectation of success in the specifically claimed compositions in Jursic and Sosnowska, Applicant respectively submit that the Office is improperly relying on the prior art disclosures as a basis for finding reasonable expectation of success.

Accordingly, because the Office has not demonstrated a rationale for arriving at the claimed composition nor a reasonable expectation of success, the Office has failed to establish a *prima facie* case of obviousness.  Moreover, because a *prima facie* case of obviousness is not established based on Jursic and Sosnowska, the Office's further rejections with respect to concentrations and stability periods have no merit.

Applicant, therefore, respectfully request that this rejection be withdrawn.

### C.    The Entire Prior Art Must Be Considered; Rezende *et al.*, teaches that colloidal silicon dioxide <u>decreases</u> stability of enalapril

As the Office is no doubt aware, the Examiner "must not [consider] a reference in a vacuum, but against the background of the other references of record which may disprove theories and speculations in the reference..."  *In re Ehrreich*, 590 F.2d 902, 908-909, 200 USPQ 504 (CCPA 1979).  "The question in a § 103 case is what the references would *collectively* suggest to one of ordinary skill in the art."  *Id.* (emphasis in original).  It is also improper to combine references where a reference teaches away from their combination. *In re Grasselli*, 713 F.2d 731, 743, 218 USPQ 769, 779 (Fed. Cir. 1983) (The claimed catalyst which contained both iron and an alkali metal was not suggested by the combination of a reference which taught the interchangeability of antimony and alkali metal with the same beneficial result, combined with a reference expressly excluding antimony from, and adding iron to, a catalyst.), *see also* MPEP § 2145.

Applicant submits that Rezende *et al.*, Stability and Compatibility Study on Enalapril Maleate using Thermoanalytical Techniques, *J. Thermal Anal. & Calorimetry*, 2008 (93) 881-886 (submitted herewith and in IDS dated November 7, 2012 of record, also referenced in Specification at paragraph [0117]) actually teaches away from the claimed pharmaceutical powder.  Rezende *et al.* note in the Introduction, that although enalapril maleate (EM) alone is

12

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 13 of 19

stable, the drug is unstable in a matrix and it is very difficult to form a stable solid oral dosage

for it:

> EM alone is temperature stable either under dry or different humidity conditions. However, it becomes unstable when it is mixed with the matrix, during tablet making and exposed to the same conditions [10].  Since EM is incompatible with most of the commonly used excipients, it is very difficult to formulate a stable solid oral dosage form for it [11].
>
> *Rezende et al., p. 881, 2nd col., last paragraph (emphasis added).*

Therefore at the outset, enalapril, as noted by others, is incompatible with most other

excipients, as stated by Rezende *et al.*  Further, Rezende *et al.* investigated the compatibility of

enalapril maleate with colloidal silicon dioxide ($SiO_2$) by differential scanning calorimetry

(DSC) and thermogravimetry (TG) analysis and found that:

> A 40% decrease in the $E_A$ value can be observed for the thermal degradation reaction of EM when it is mixed with $SiO_2$ keeping 1:1 mass/mass ratio. Therefore, the use of $SiO_2$ as excipient should be avoided in formulations containing EM, since it may act as a catalyst in the thermal decomposition of this drug even though $SiO_2$ is usually employed at low concentrations (as it is the case for the studied formulation, in which $SiO_2$ is employed at 1% mass/mass).
>
> *Rezende et al., p. 884, 2nd col., last paragraph (emphasis added).*

As found by Rezende *et al.*, colloidal silicon dioxide is incompatible with enalapril

maleate.  Although the concentration ratio in the experiment of enalapril and colloidal silicon

dioxide was 1:1, *i.e.,* the powder tested consisted of 50% enalapril maleate and 50% colloidal

silicon dioxide, and the authors still cautioned the use of this excipient in enalapril formulations

even though the colloidal silicon dioxide would not be used in such a high concentration.

Thus, this reference discloses that colloidal silicon dioxide destabilizes enalapril thereby

teaching away from the claimed pharmaceutical powder which includes enalapril and colloidal

silicon dioxide.  One skilled in the art, in reading Rezende *et al.* would not consider and use

enalapril with colloidal silicon dioxide together in a formulation.

Applicant further points out that even the commercially available VASOTEC® enalapril

maleate tablets, their description forwarded by the Office in the Non-final Office Action and

found on http://www.drugs.com/pro/vasotec.html; also do not contain colloidal silicon dioxide.

Taken together, it is apparent that colloidal silicon dioxide is disfavored in formulating with

enalapril in the prior art and also in commercial embodiments.

SPI_0000155

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 14 of 19

Accordingly, the Office has failed to establish a *prima facie* case of obviousness for at least the reason that the prior art teaches away from the use of colloidal silicon dioxide with enalapril.  For at least this reason, the pending claims which recite colloidal silicon dioxide and enalapril together is not obvious.

### D.    The Office must consider the secondary considerations of the claimed invention

Finally, as well settled, even if a *prima facie* case of obviousness is established, the Office is required to consider all rebuttal evidence submitted by an Applicant.  *See, e.g.*, MPEP §2145.  This requirement remains unchanged following *KSR*, as the Federal Circuit has made clear.  (*See In re Sullivan*, 498 F.3d 1345 (Fed. Cir. 2007); MPEP §2145).  In *In re Sullivan*, the Federal Circuit vacated and remanded a Board rejection of antivenom-composition claims because the Board failed to give any weight to the applicant's rebuttal evidence demonstrating that, *inter alia*, the combination of prior art elements exhibited unexpected efficacy while reducing the occurrence of adverse immune reactions in humans.  (*Id.* at 1353).  As the Court explained, "[w]hen a patent applicant puts forth rebuttal evidence, the Board <u>must</u> consider that evidence."  (*Id.* at 1351).

Applicant submit that the present claims are not obvious over Sosnowska and Jursic as discussed above and further submit that the that the subject matter in the claims 1) have unexpected properties with respect to stability and reconstitution in liquid forms; and 2) solve a long-felt need as evidenced by the failure of others.

<u>Unexpected Properties</u>

As discussed in the Interview, Applicant submit that each component is required for a stable pharmaceutical enalapril powder for reconstitution into an oral liquid.  With respect to mannitol, Example 1 of the instant application describes that mannitol unexpectedly stabilizes enalapril in powder form moreso than lactose (Example 1, Tables 2 & 3 reproduced below):

14

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 15 of 19

| 2 % w/w Enalapril/Lactose Powder in Bottle Formulation | | | | |
|---|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient | 60°C/ambient |
| 0 | 101.54 | 101.54 | 101.54 | 101.54 |
| 1 | 100.27 | 100.59 | 98.61 | 94.74 |
| 2 | 100.37 | 100.60 | 98.82 | 94.51 |
| 3 | 101.10 | 99.58 | 98.45 | 93.44 |
| 4 | 99.03 | 98.53 | 96.94 | 92.66 |
| 8 | 100.23 | 99.63 | 98.89 | 90.56 |
| 12 | 102.20 | 99.53 | 100.02 | 89.76 |
| 26 | 101.28 | 95.83 | 97.89 | 75.57 |
| 52 | 101.50 | 91.90 | 93.70 | N/A |

| 2 % w/w Enalapril/Mannitol Powder in Bottle Formulation | | | | |
|---|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient | 60°C/ambient |
| 0 | 100.16 | 100.16 | 100.16 | 100.16 |
| 1 | 99.61 | 99.57 | 93.42 | 96.96 |
| 2 | 98.56 | 98.41 | 94.41 | 101.14 |
| 3 | 99.21 | 98.51 | 99.42 | 101.24 |
| 4 | 99.20 | 98.59 | 101.26 | 99.97 |
| 8 | 101.26 | 98.88 | 102.17 | 100.80 |
| 12 | 103.33 | 99.67 | 103.31 | 95.15 |
| 26 | 102.19 | 96.89 | 102.68 | 94.66 |
| 52 | 102.50 | 94.30 | 99.70 | N/A |

As shown from the above data, the enalapril as analyzed by HPLC/UV, showed greater stability in the enalapril/mannitol powder formulations than enalapril/lactose powder formulations at the 25°C, 40°C and 60°C stored conditions.  At higher temperatures (40°C and 60°C), the degradation of enalapril in the enalapril/lactose formulations is more pronounced with respect to the enalapril/mannitol formulations.  This is surprising as enalapril has traditionally been formulated with lactose in solid tablet forms, *see, e.g.,* VASOTEC® enalapril maleate

SPI_0000157

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 16 of 19

tablets, their description found on http://www.drugs.com/pro/vasotec.html.  Thus the data shows

that contrary to lactose being used in enalapril maleate tablets, this excipient actually does not

perform favorably towards enalapril stability in a powder format.  Instead, mannitol gave the

greatest enalapril stability.  These results are not predicted or suggested anywhere in the

literature, thus showing the unexpected properties of mannitol contributing to enalapril stability.

Regarding colloidal silicon dioxide, the prior art disfavors its use as colloidal silicon

dioxide was found to destabilize enalapril maleate from DSC and TG thermoanalysis, *see*

discussion above at **Section III.C**.  However, in the present case, "the addition of colloidal

silicon dioxide surprisingly aided in the uniformity of the blend and the bottle content as well as

in preparation of the liquid form".  Specification, page 12, paragraph [0051].  As Example 4

states:

> [T]he addition of colloidal silicon dioxide to an enalapril powder composition
> during scale-up resulted in improved and acceptable blend uniformity and bottle
> content uniformity levels.  Enalapril Powder Composition B (150 mg enalapril,
> 890 mg mannitol, 10 mg colloidal silicon dioxide/bottle) was scaled-up and the
> resultant formulation tested for blend and content uniformity as described above.

> *Example 4, page 34, paragraph [00123].*

More surprisingly, "the addition of colloidal silicon dioxide resulted in a solution that,

upon visual inspection, was truly dissolved and homogenous".  Example 4, page 34, paragraph

[00124].  Figure 2C in the drawings shows a enalapril liquid that is clear and without

particulates.  This contrasts with enalapril alone (Figure 2B) and enalapril+mannitol alone

(Figure 2A).  As Example 4 describes, reconstitution of enalapril+mannitol in syrup showd that:

> Scaled-up enalapril and mannitol powder compositions such as Enalapril Powder
> Composition A did not dissolve in the syrup, but instead resulted in powder
> clumping and specking on the surface of the liquid, termed 'clouding'.  Various
> enalapril and mannitol formulations were examined at different concentrations,
> which resulted in similar 'clouding'.

> *Example 4, page 33, paragraph [00120].*

With respect to reconstitution of enalapril alone (enalapril neat):

> It was observed that during reconstitution with 150 mL Ora-Sweet® SF sugar-
> free flavored syrup, the neat enalapril did not dissolve but floated on the surface
> of the liquid, even after 2 hours standing after reconstitution (FIG. 2B).

> *Example 4, page 34, paragraph [00121].*

16

SPI_0000158

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 17 of 19

Thus, only the addition of colloidal silicon dioxide allowed a clear and homogenous enalapril liquid reconstituted from powder. Further as Example 6 shows, the colloidal silicon dioxide did not destabilize the enalapril powder and liquid forms. This was very unexpected, at least because the prior art taught against the use of colloidal silicon dioxide and its destabilizing effects and also the fact that colloidal silicon dioxide is not known for aiding in solvating powders. The inventors here have demonstrated a new and unappreciated property in colloidal silicon dioxide with respect for pharmaceutical powders that is reconstituted into liquid forms.

Accordingly, the specification and examples of the pending application show the unexpected properties of the lactose and colloidal silicon dioxide for the enalapril pharmaceutical powder which rebuts any *prima facie* obviousness.

Long-felt need and the failure of others

Establishing long-felt need requires objective evidence that an art recognized problem existed in the art for a long period of time without solution. The relevance of long-felt need and the failure of others to the issue of obviousness depends on several factors. First, the need must have been a persistent one that was recognized by those of ordinary skill in the art. *In re Gershon*, 372 F.2d 535, 539, 152 USPQ 602, 605 (CCPA 1967) ("Since the alleged problem in this case was first recognized by appellants, and others apparently have not yet become aware of its existence, it goes without saying that there could not possibly be any evidence of either a long felt need in the . . . art for a solution to a problem of dubious existence or failure of others skilled in the art who unsuccessfully attempted to solve a problem of which they were not aware."). Second, the long-felt need must not have been satisfied by another before the invention by applicant. Newell Companies v. Kenney Mfg. Co., 864 F.2d 757, 768, 9 USPQ2d 1417, 1426 (Fed. Cir. 1988). *See also,* MPEP § 716.04.

Applicant respectfully submits that the claimed enalapril pharmaceutical powder for reconstitution as an oral liquid as recited in the claims solves a long-felt need. Enalapril as drug has been readily available for a long time. A search of the approval for enalapril maleate tablets shows that, in the U.S., VASOTEC® enalapril maleate tablets were approved in 1985, *see,* http://www.accessdata.fda.gov/scripts/cder/ob/docs/obdetail.cfm?Appl_No=018998&TABLE1= OB_Rx. The product insert for VASOTEC® enalapril maleate tablets describes that the tablets can be crushed and compounded into an oral suspension for pediatric administration. Thus, for

17

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 18 of 19

almost 30 years and lacking a better option, the current form of preparing an enalapril for pediatric patients and those who are unable to swallow tablets is still crushing commercially available enalapril tablets and mixing them to form an oral suspension under non-GMP conditions. Thus, there is a long-felt need for a better pharmaceutical enalapril formulation available for pediatric patients and those who are unable to swallow tablets as evidenced by the current practice. The claimed composition solves this long-felt need by describing an elegant solution which removes variability, contamination, stability, additional steps, complexity and other issues with crushing tablets and compounding them. This solution is therefore safer than the previous method of compounding tablets.

Secondly, the claimed composition is the first to satisfy this long-felt need. This is evidenced by the lack of any approved enalapril pharmaceutical product that is solely prepared and administered in oral liquid form. As evidenced by the support and data from the examples of the present application, the effort in developing this formulation was not trivial and required ingenuity to prepare a powder that was stable and, upon reconstitution, clear and homogeneous. The lack of any comparable approved enalapril products to the one as recited in the instant claims suggests the failure of others. Indeed, the data from the specification and examples of the instant application show that formulating such an enalapril powder is difficult, and is full of failed attempts in initial formulation, scale-up, reconstitution and clinical administration.

In sum, Applicant respectfully request withdrawal of the rejection directed to claims 1-16 at least for the reason that a *prima facie* case of obviousness has not been established, the Office has not considered the totality of prior art, and that any presumption of obviousness is overcome by a sufficient showing of secondary considerations, including at least, unexpected results and solving a long-felt need.

*    *    *

SPI_0000160

Application No. 13/670,355
Amendment in Response to Office Action dated February 8, 2013
Page 19 of 19

## CONCLUSION

Applicants submit that this response fully addresses the Office Action mailed February 8, 2013.  Applicants believe that for the reasons set forth herein the pending claims are in condition for allowance and early and favorable consideration is respectfully requested. Further, none of Applicants' amendments or cancellations are to be construed as dedicating any such subject matter to the public, and Applicants reserve all rights to pursue any such subject matter in this or a related patent application.

Should the Examiner have any questions or concerns, the Examiner is encouraged to contact the undersigned attorney at (858) 350-2318.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Date: May 1, 2013                    _/Clark Lin /_

Clark Y. Lin, Reg. No. 67,024

650 Page Mill Road
Palo Alto, CA  94304-1050
(650) 493-9300
Customer No. 021971

SPI_0000161

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO<br><br>**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br><br>*(Use as many sheets as necessary)* | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| | | | | Application Number | 13/670,355 |
| | | | | Filing Date | 11/06/2012 |
| | | | | First Named Inventor | Lian G. Rajewski |
| | | | | Art Unit | 1617 |
| | | | | Examiner Name | Yanzhi Zhang |
| Sheet | 1 | of | 3 | Attorney Docket Number | 43060-701.201 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1. | US-4,374,829 | 02/22/1983 | Kunkee et al. | |
| | 2. | US-4,472,380 | 09/18/1984 | Harris et al. | |
| | 3. | US-4,510,083 | 04/09/1985 | Blacklock et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] – Number[4] – Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | 4. | BLOWEY, "Update on the pharmacologic treatment of hypertension in pediatrics," Journal of Clinical Hypertension (Hoboken, NJ, United States) (2012), 14(6), 383-387. Database: CAPLUS, DOI:10.1111/j.1751-7176.2012.00659.x | |
| | 5. | CALABRO et al., "Hemodynamic effects of a single oral dose of enalapril among children with asymptomatic chronic mitral regurgitation," American Heart Journal (1999), 138(5, Pt. 1), 955-961. Database: CAPLUS, DOI:10.1016/S0002-8703(99)70023-2 | |
| | 6. | DELUCCHI et al., "Enalapril and prednisone in children with nephrotic-range proteinuria," Pediatric nephrology (Berlin, Germany) (2000), 14(12), 1088-91., Database: MEDLINE | |
| | 7. | HSU et al., "Enalapril in Infants With Single Ventricle: Results of a Multicenter Randomized Trial; DOI:10.1161/CIRCULATIONAHA.109.927988Richard V.; et al From Circulation (2010), 122(4), 333-340. Database: CAPLUS, | |
| | 8. | HSU et al., "Rationale and design of a trial of angiotensin-converting enzyme inhibition in infants with single ventricle," American Heart Journal (2009), 157(1), 37-45. Database: CAPLUS, DOI:10.1016/j.ahj.2008.08.030 | |
| | 9. | MIR et al., "Effect of carvedilol on QT duration in pediatric patients with congestive heart failure," Clinical Drug Investigation (2004), 24(1), 9-15. Database: CAPLUS, | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

- 1 –

SPI_0000162

PTO/SB/08a (07-09)
Approved for use through 07/31/2012.  OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | *Complete if Known* | |
|---|---|---|
| | Application Number | 13/670,355 |
| | Filing Date | 11/06/2012 |
| | First Named Inventor | Lian G. Rajewski |
| | Art Unit | 1617 |
| | Examiner Name | Yanzhi Zhang |

| Sheet | 2 | of | 3 | Attorney Docket Number | 43060-701.201 |
|---|---|---|---|---|---|

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | | DOI:10.2165/00044011-200424010-00002 | |
| | 10. | LI et al., "Lessons learned from a pediatric clinical trial: The Pediatric Heart Network Angiotensin-Converting Enzyme Inhibition in Mitral Regurgitation Study," American Heart Journal (2011), 161(2), 233-240. Database: CAPLUS, DOI:10.1016/j.ahj.2010.10.030 | |
| | 11. | LIPSHULTZ, "Exposure to anthracyclines during childhood causes cardiac injury," Seminars in Oncology (2006), 33(3, Suppl. 8), S8-S14., Database: CAPLUS, DOI:10.1053/j.seminoncol.2006.04.019 | |
| | 12. | MEYERS et al., "Pharmacotherapy Review of Chronic Pediatric Hypertension," Clinical Therapeutics (2011), 33(10), 1331-1356. Database: CAPLUS, DOI:10.1016/j.clinthera.2011.09.003 | |
| | 13. | MILLER et al., "Enalapril: a well-tolerated and efficacious agent for the pediatric hypertensive patient," Journal of cardiovascular pharmacology (1987), 10 Suppl 7S154-6, Database: MEDLINE | |
| | 14. | MILLER et al., "Enalapril: a well-tolerated and efficacious agent for the paediatric hypertensive patient," Journal of hypertension. Supplement : official journal of the International Society of Hypertension (1986), 4(5), S413-6,  Database: MEDLINE | |
| | 15. | MOMMA, "ACE inhibitors in pediatric patients with heart failure," Paediatric drugs (2006), 8(1), 55-69, Database: MEDLINE | |
| | 16. | NAKAMURA et al., "The kinetic profiles of enalapril and enalaprilat and their possible developmental changes in pediatric patients with congestive heart failure," Clinical pharmacology and therapeutics (1994), 56(2), 160-8, Database: MEDLINE | |
| | 17. | PROESMANS et al., 'Long-term therapy with enalapril in patients with nephrotic-range proteinuriam," Pediatric nephrology (Berlin, Germany) (1996), 10(5), 587-9, Database: MEDLINE | |
| | 18. | PROSEMANS et al., "Enalapril in pediatric patients with Alport syndrome: 2 years' experience," European Journal of Pediatrics (2000), 159(6), 430-433. Database: CAPLUS, DOI:10.1007/s004310051301 | |
| | 19. | PROESMANS et al., "Enalapril in children with Alport syndrome," Pediatric nephrology (Berlin, Germany) (2004), 19(3), 271-5, Database: MEDLINE | |
| | 20. | RAMUSOVIC ET AL., "Determination of enalapril and enalaprilat in small human serum quantities for pediatric trials by HPLC-tandem mass spectrometry," Biomedical | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.  [1]Applicant's unique citation designation number (optional).  [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.  [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3).  [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [6]Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

- 2 –

Attorney Docket No. 43060-701.201

PTO/SB/08a (07-09)
Approved for use through 07/31/2012.  OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | ***Complete if Known*** | |
|---|---|---|---|---|---|
| | | | | Application Number | 13/670,355 |
| | | | | Filing Date | 11/06/2012 |
| | | | | First Named Inventor | Lian G. Rajewski |
| | | | | Art Unit | 1617 |
| | | | | Examiner Name | Yanzhi Zhang |
| Sheet | 3 | of | 3 | Attorney Docket Number | 43060-701.201 |

| **NON PATENT LITERATURE DOCUMENTS** | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
| | | Chromatography (2012), 26(6), 697-702. Database: CAPLUS, DOI:10.1002/bmc.1716 | |
| | 21. | SILBER et al., "Design and baseline characteristics for the ACE inhibitor after anthracycline (AAA) study of cardiac dysfunction in long-term pediatric cancer survivors," American Heart Journal (2001), 142(4), 577-585. Database: CAPLUS, DOI:10.1067/mhj.2001.118115 | |
| | 22. | SILBER et al., "Enalapril to prevent cardiac function decline in long-term survivors of pediatric cancer exposed to anthracyclines," Journal of Clinical Oncology (2004), 22(5), 820-828. Database: CAPLUS, DOI:10.1200/JCO.2004.06.022 | |
| | 23. | STANDING et al., "Paediatric formulations-Getting to the heart of the problem," International Journal of Pharmaceutics (2005), 300(1-2), 56-66. Database: CAPLUS, | |
| | 24. | WELLS et al., "A double-blind, placebo-controlled, dose-response study of the effectiveness and safety of enalapril for children with hypertension," Journal of Clinical Pharmacology (2002), 42(8), 870-880. Database: CAPLUS, DOI:10.1177/009127002401102786 | |
| | 25. | WILLIAMS et al, "Factors affecting growth in infants with single ventricle physiology: a report from the Pediatric Heart Network Infant Single Ventricle Trial," The Journal of pediatrics (2011), 159(6), 1017-22.e2, Database: MEDLINE | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

- 3 –

SPI_0000164

**Attorney Docket No.  43060-701.201**
**PATENT**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| Inventor:    Lian G. Rajewski | Group Art Unit:      1617 |
| Serial Number:       13/670,355 | Examiner:   ZHANG, Yanzhi |
| Filing Date:      11/06/2012 | **CONFIRMATION NO:    2719** |
| Title:      Enalapril Compositions | |

**FILED ELECTRONICALLY ON: May 1, 2013**

Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

**INFORMATION DISCLOSURE STATEMENT**
**UNDER 37 CFR §1.97**

Madam:

An Information Disclosure Statement along with attached PTO/SB/08 is hereby submitted.   A copy of each listed publication is submitted, if required, pursuant to 37 CFR §§1.97-1.98, as indicated below.

The Examiner is requested to review the information provided and to make the information of record in the above-identified application.   The Examiner is further requested to initial and return the attached PTO/SB/08 in accordance with MPEP §609.

The right to establish the patentability of the claimed invention over any of the information provided herewith, and/or to prove that this information may not be prior art, and/or to prove that this information may not be enabling for the teachings purportedly offered, is hereby reserved.

This statement is not intended to represent that a search has been made or that the information cited in the statement is, or is considered to be, prior art or material to patentability as defined in §1.56.

A.  ☐  *37 CFR §1.97(b)*. This Information Disclosure Statement should be considered by the Office because:

       ☐    (1)    It is being filed within 3 months of the filing date of a national application and is other than a continued prosecution application under §1.53(d);

-- OR --

       ☐    (2)    It is being filed within 3 months of entry of the national stage as set forth in §1.491 in an international application;

SPI_0000165

-- OR --

☐ (3) It is being filed before the mailing of a first Office action on the merits;

-- OR --

☐ (4) It is being filed before the mailing of a first Office action after the filing of a request for continued examination under §1.114.

B. ☒ *37 CFR §1.97(c).*  Although this Information Disclosure Statement is being filed after the period specified in *37 CFR §1.97(b),* above, it is filed before the mailing date of the earlier of (1) a final office action under §1.113, (2) a notice of allowance under §1.311, or (3) an action that otherwise closes prosecution on the merits, this Information Disclosure Statement should be considered because it is accompanied by one of:

☐ a statement as specified in §1.97(e) provided concurrently herewith;

-- OR --

☒ a fee of $180.00 as set forth in §1.17(p) authorized below, enclosed, or included with the payment of other papers filed together with this statement.

C. ☐ *37 CFR §1.97(d).*  Although this Information Disclosure Statement is being filed after the mailing date of the earlier of (1) a final office action under §1.113 or (2) a notice of allowance under §1.311, it is being filed before payment of the issue fee and should be considered because it is accompanied by:

i. a statement as specified in §1.97(e);

-- AND --

ii. a fee of $180.00 as set forth in §1.17(p) is authorized below, enclosed, or included with the payment of other papers filed together with this Statement.

D. ☐ *37 CFR §1.97(e).* Statement.

☐ A statement is provided herewith to satisfy the requirement under 37 CFR §§1.97(c);

-- AND/OR --

☐ A statement is provided herewith to satisfy the requirement under 37 CFR §§1.97(d);

-- AND/OR --

☐ A copy of a dated communication from a foreign patent office clearly showing that the information disclosure statement is being submitted within 3 months of the filing date on the communication is provided in lieu of a statement under 37 C.F.R. § 1.97(e)(1) as provided for under MPEP 609.04(b) V.

E. ☐ *Statement Under 37 C.F.R. §1.704(d).* Each item of information contained in the information disclosure statement was first cited in a communication from a foreign patent office in a counterpart application that was received by an individual designated in § 1.56(c) not more than <u>thirty (30) days</u> prior to the filing of this information disclosure statement. This statement is made pursuant to the requirements of 37 C.F.R. §1.704(d) to avoid reduction of the period of adjustment of the patent term for Applicant(s) delay.

F. ☒ *37 CFR §1.98(a)(2).*  The content of the Information Disclosure Statement is as follows:

☐ Copies of each of the references listed on the attached Form PTO/SB/08 are enclosed herewith.

SPI_0000166

-- OR --

☒ Copies of U.S. Patent Documents (issued patents and patent publications) listed on the attached Form PTO/SB/08 are NOT enclosed.

-- AND/OR --

☒ Copies of Foreign Patent Documents and/or Non Patent Literature Documents listed on the attached Form PTO/SB/08 are enclosed in accordance with 37 CFR §1.98 (a)(2).

-- AND/OR --

☐ Copies of pending unpublished U.S. patent applications are enclosed in accordance with 37 CFR §1.98(a)(2)(iii).

G. ☐ *37 CFR §1.98(a)(3).* The Information Disclosure Statement includes non-English patents and/or references.

    ☐ Pursuant to 37 CFR §1.98(a)(3)(i), a concise explanation of the relevance of each patent, publication or other information provided that is not in English is provided herewith.

        ☐ Pursuant to MPEP 609(B), an English language copy of a foreign search report is submitted herewith to satisfy the requirement for a concise explanation where non-English language information is cited in the search report.

        -- OR --

        ☐ A concise explanation of the relevance of each patent, publication or other information provided that is not in English is as follows: _____

    ☐ Pursuant to 37 CFR §1.98(a)(3)(ii), a copy of a translation, or a portion thereof, of the non-English language reference(s) is provided herewith.

H. ☐ *37 CFR §1.98(d).* Copies of patents, publications and pending U.S. patent applications, or other information specified in 37 C.F.R. § 1.98(a) are not provided herewith because:

    ☐ Pursuant to 37 CFR §1.98(d)(1) the information was previously submitted in an Information Disclosure Statement, or cited by examiner, for another application under which this application claims priority for an earlier effective filing date under 35 U.S.C. 120.

    Application in which the information was submitted: _____

    Information Disclosure Statement(s) filed on: _____

        AND

    ☐ The information disclosure statement submitted in the earlier application complied with paragraphs (a) through (c) of 37 CFR §1.98.

SPI_0000167

I.   ☒ *Fee Authorization.*  The Commissioner is hereby authorized to charge the above-referenced fees of $180.00 and charge any additional fees or credit any overpayment associated with this communication to Deposit Account No. 23-2415 (Docket No. 43060-701.201).

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

Dated: May 1, 2013 _____

By:_____ */Clark Lin /*_____

Clark Y. Lin
Registration No. 67,024

650 Page Mill Road
Palo Alto, CA 94304-1050
(650) 493-9300
Customer No. 021971

SPI_0000168

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/670,355 | 11/06/2012 | Lian G. RAJEWSKI | 43060-701.201 | 2719 |

21971          7590          07/30/2013
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| ZHANG, YANZHI |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/30/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SPI_0000169

| *Office Action Summary* | **Application No.**<br>13/670,355 | **Applicant(s)**<br>RAJEWSKI ET AL. | |
|---|---|---|---|
| | **Examiner**<br>YANZHI ZHANG | **Art Unit**<br>1617 | **AIA (First Inventor to File)<br>Status**<br>No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>1 May 2013</u>.
   ☐ A declaration(s)/affidavit(s) under 37 CFR 1.130(b) was/were filed on _____.
2a) ☒ This action is **FINAL.**      2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5) ☒ Claim(s) <u>1-16</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☒ Claim(s) <u>1-16</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are:  a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance.  See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All  b) ☐ Some *  c) ☐ None of the:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____.
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☒ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date <u>5/1/13</u>.
3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____.
4) ☐ Other: _____.

SPI_0000170

## DETAILED ACTION

### *Claim Status*

Applicants' response of May 01, 2013, to the non-final Office Action dated February 8, 2013 has been entered. Claim 1 has been amended. No claim has been cancelled or newly added. Accordingly, claims 1-16 are pending in the application and under current examination.

### *Information Disclosure Statement*

The Information Disclosure Statement filed May 01,, 2013 has been fully considered by the examiner.

### *Maintain/ Response Claim Rejections - 35 USC § 103*

Claims 1-16 were previously rejected under 35 U.S.C. 103(a) as being unpatentable over Sosnowska et al.  (Non-patent literature cited in Applicants' IDS dated 11/07/2012, published 2009) in view of Jursic et al. (International patent application No.: WO2012/085249 A2; published June 28, 2012).

Applicants have amended for the limitation for powder that is reconstituted into an oral liquid formulation, which has been addressed in the previous office action (see page 2). Sosnowska et al. disclosed that an oral formulation was prepared by grounding tablets to **fine powder** and then combining with a hydroxyethylcellulose 0.5% solution or 1:10 mixture of raspberry syrup. Therefore, the rejection is maintained.

Applicants disagree and the ground for argument is discussed and responded in as set in the following.

Argument A:

Applicants argue that Sosnowska does not teach, disclose or suggest the preparation of any enalapril powders for reconstitution as an alternative to the ground tablet and re-suspension method. Applicants' arguments have been fully considered, but are not found persuasive.

In response, it is true that the fine powder of prior art by Sosnowska is obtained by grounding tablets and then reconstituted the powder into an oral formulation. The tablets contain

Application/Control Number: 13/670,355                                    Page 3
Art Unit: 1617

enalapril and other ingredients as evidenced by Drug information (provided in the previous office action). Thus, it is the examiner's position that the term "pharmaceutical powder" must be given the broadest reasonable interpretation (MEPE 2111). Therefore, the fine powder of prior art is interpreted as pharmaceutical powder. The Applicants assert that the crushing or grinding of tablets to form oral suspensions has many issues cited by the applicants including solubility, uniformity, etc. is not the claimed subject although they might be concerned by the practitioners and pharmacists. Stability of the oral formulation has been addressed since Sosnowska conducted the stability studies and demonstrated the oral formulation is stable for 30 days.

Finally, applicants argue that Sosnowska teaches away from the claimed composition and point out that lactose is disfavored in enalapril powder compositions as an enalapril powder composition with lactose has the greatest instability of the active ingredient. Applicants' arguments have been fully considered, but are not found persuasive.

In response to teaching away, the applicants point to example 1 (page 27, the instant specification). The test is concerned with bottle formulations of enalapril and stability agents including lactose, sucrose and mannitol. Unfortunately, formulation is not the claimed subject. An unexpected results between the extemporaneous enalapril formulation and the claimed would be given favorable consideration.

Argument B:

Applicants argue that Sosnowska in view of the Jursic provides no reasonable expectation of success of the claimed subject matter. Applicants' arguments have been fully considered, but are not found persuasive.

In response, applicants are reminded that Jursic taught oral dosage form (tablet) containing mannitol and silicone dioxide, which are required by Sosnowska. The statement that when Jursic and Sosnowska are combined, one ordinarily skilled in the art is merely taught that any one of the hundreds of excipients disclosed in Jursic may potentially combined is incorrect because Jursic specifically disclosed weight percent of glidant (silicon dioxide) is 0.1 to 10%, in particular 0.1 to 5% and percentage of mannitol (see page 3, previous office action).

Argument C:

Application/Control Number: 13/670,355                                Page 4
Art Unit: 1617

Applicants introduce a brand new prior art, which is not cited in the office action and assert that Rezende et al. teaches that colloidal silicon dioxide decreases stability of enalapril. The examiner will not comment on the unknown art.

Argument D:

Applicants state that the Office must consider the secondary considerations of the claimed invention. Applicants' arguments have been fully considered, but are not found persuasive.

In response to consideration of unexpected result, the results of example 1 have been fully considered in the telephonic interview. As discussed in the interview, the results are not considered unexpected. E.g. week 2, 2% w/w Enalapril with lactose has less degradation than that with mannitol at refrigerated and 25°C. The two conditions are more likely used by consumers. Even at 52 week, the differences between the two formulations are too small to be unexpected.

In response to consideration of long-felt need, applicants recognize that establishing long-felt need requires objective evidence. However, applicants mistakenly treat the current successful practice of crushing commercially available enalapril tablets and mixing them to form an oral suspension as long-felt need. No objective evidence is provided. Additionally, lacking any approved enalapril pharmaceutical product that is solely prepared and administered in oral liquid form is not considered objective evidence of failure by others.

In conclusion, claims 1-16 stand rejected under 35 U.S.C. 103.


*Conclusion*

**No claims are allowed.**

Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action.  The claims are drawn to the same invention claimed earlier in the application and would have been finally rejected on the grounds and art of record in the next Office Action if they had been entered earlier in the application. Accordingly, **THIS ACTION IS MADE FINAL.** See MPEP § 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

Application/Control Number: 13/670,355                                                      Page 5
Art Unit: 1617

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR§1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of this final action.

### CONTACT INFORMATION

Any inquiry concerning this communication or earlier communications from the examiner should be directed to YANZHI ZHANG whose telephone number is (571)272-3117. The examiner can normally be reached on 8:30 am - 5:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Fereydoun G. Sajjadi can be reached on 2-3311. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Y. Z. /

Examiner, Art Unit 1617

/Janet Epps-Smith/

Primary Examiner, Art Unit 1633

SPI_0000174

Application/Control Number: 13/670,355                                          Page 6
Art Unit: 1617

SPI_0000175

PATENT
Attorney Docket No. 43060-701.201

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re the Patent Application of: | | Confirmation No.: | 2719 |
| Inventor: | Lian G. RAJEWSKI, *et al.* | Examiner: | Zhang, Yanzhi |
| | | Group Art Unit: | 1617 |
| Application No.: | 13/670,355 | Customer No. | 21971 |
| Filed: | November 6, 2012 | | |
| Title:   ENALAPRIL COMPOSITIONS | | | |

Certificate of Electronic Filing

I hereby certify that the attached Amendment in Response to the Final Office Action dated July 30, 2013, and all attached documents are being deposited by Electronic Filing on August 21, 2013, by using the EFS – Web patent filing system and addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

By: _____/Rose Andico/_____
Rose Andico

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## AMENDMENT IN RESPONSE TO THE FINAL OFFICE ACTION
## DATED JULY 30, 2013

Dear Madam:

Applicants hereby submit a responsive amendment and argument to the Final Office Action dated July 30, 2013 ("Final Office Action"), in the above-identified application. Applicants respectfully request amendment of the patent application, and reconsideration and allowance of the pending claims.  A statutory period of three months was set in the Office Communication and expires on October 30, 2013.  Thus, this response to the July 30, 2013, Office Communication is timely filed.

**Listing of the Claims**, reflecting the status of the claims, begins on page **2**.

**Remarks** begin on page **4**.

The **Conclusion** is on page **6**.

Application No. 13/670,355
Amendment in Response to the Final Office Action dated July 30, 2013
Page 2 of 6

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in this application.  The following amendments are made without prejudice and do not constitute an admission regarding the patentability of the amended subject matter and should not be so construed.  Applicants reserve the right to pursue the subject matter of the canceled claims in this or any other appropriate patent application.

### Complete Listing of Claims:

1.      (Currently Amended)  A pharmaceutical powder that is reconstituted into an oral liquid formulation, the powder ~~comprising~~ consisting of:

(a)      about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,

(b)      about 85 % (w/w) mannitol, and

(c)      about 1 % (w/w) colloidal silicon dioxide,

wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about 25±5°C and 55±10% relative humidity.

2.      (Original)  The pharmaceutical powder of claim 1, wherein the enalapril or pharmaceutically acceptable salt thereof is enalapril maleate.

3.      (Original)  The pharmaceutical powder of claim 1, wherein the powder is reconstituted in water for the oral liquid.

4.      (Original)  The pharmaceutical powder of claim 1, wherein the powder is reconstituted in syrup for the oral liquid.

5.      (Cancelled).

6.      (Cancelled).

7.      (Cancelled).

8.      (Cancelled).

9.      (Cancelled).

10.      (Original)  The pharmaceutical powder of claim 1, wherein the powder is stable for at least six months at ambient, accelerated or refrigerated conditions.

11.      (Cancelled).

12.      (Cancelled).

2

Application No. 13/670,355
Amendment in Response to the Final Office Action dated July 30, 2013
Page 3 of 6

13.     (Cancelled).

14.     (Cancelled).

15.     (Cancelled).

16.     (Currently Amended)  The pharmaceutical powder of claim 1, wherein the

powder ~~comprises~~ is ~~about~~ 150 mg enalapril, ~~about~~ 890 mg mannitol and 10 mg colloidal silicon

dioxide.

*       *       *

3

## REMARKS

### I. Status of the claims

In a response to the Final Office Action mailed on July 30, 2013, Applicants respectfully request entry and consideration of the claims provided herein.  Claims 1-16 are pending in this application.  By way of this amendment, claim 1 and 16 are amended and claims 5-9 and 11-15 are cancelled.  This amendment is made as per discussion with the Examiners during the Applicant-initiated Interview dated August 20, 2013.

### II. Aplicant-Initiated Interview Dated August 20, 2013

Applicant thanks Examiners Zhang and Epps-Smith for the opportunity to interview the pending case via telephone on August 20, 2013.  Attorneys Clark Lin and Matthew Grumbling were present as representatives of Applicant.

The status of the current claims was discussed as well as the outstanding rejection.  In the Interview, also discussed was the FDA approval of the enalapril powder formulation, the subject matter of the present claims.  Proposed claim amendments were discussed in which the Examiners indicated that amending claim 1 to "... the powder <u>consisting of</u> ..." and cancelling certain dependent claims would overcome the issues raised in the Final Office Action and strongly place the application in favorable condition for an allowance.

### II. Rejection Under 35 U.S.C. § 103

Claims 1-16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Sosnowska *et al.* (Non-patent literature cited in Applicants' IDS dated 11/07/2012, published 2009) in view of Jursic *et al.* (International patent application No.:  WO2012/085249 A2; published June 28, 2012).

Applicant respectfully traverses; however in order to advance prosecution and as per the discussion in the Interview with the Examiners, Applicant has amended claim 1 such that it recites a pharmaceutical powder consisting of the three components, enalapril, mannitol and colloidal silicon dioxide.

It is respectfully submitted that the cited prior art, which teaches the crushing of enalapril tablets to create an extemporaneous suspension, would result in a powder which contains

Application No. 13/670,355
Amendment in Response to the Final Office Action dated July 30, 2013
Page 5 of 6

additional components/excipients derived from the tablet such as lactose, magnesium stearate, starch, iron oxides and the like.  *See*, *e.g.,* the VASOTEC® enalapril tablet product insert (submitted in an IDS dated November 7, 2012 of record), also found at "http://dailymed.nlm.nih.gov/dailymed/lookup.cfm?setid=39631f1f-5d19-43c1-b504-bf56d991ed97".

As such, neither Sosnowska nor Jursic teaches nor suggests, alone or in combination, a pharmecutical powder consisting of enalapril, mannitol and colloidal silicon dioxide, let alone the recited amounts of each component and further reconstituting the powder into a liquid where the liquid is homogenous and stable for at least 12 weeks at the recited conditions.  The claims are therefore not obvious over the cited prior art.

Accordingly, Applicant respectfully requests withdrawal of the rejection directed to claims 1-4, 10  and 16 and earnest, favorable allowance.

*      *      *

SPI_0000180

Application No. 13/670,355
Amendment in Response to the Final Office Action dated July 30, 2013
Page 6 of 6

## **CONCLUSION**

Applicant submits that this response fully addresses the Final Office Action mailed July 30, 2013. Applicant believes that for the reasons set forth herein the pending claims are in condition for allowance and early and favorable consideration is respectfully requested. Further, none of Applicant's amendments or cancellations are to be construed as dedicating any such subject matter to the public, and Applicants reserve all rights to pursue any such subject matter in this or a related patent application.

Applicant believes that there are no fees associated with this response; however, if there are fees due in connection with the filing of this response, please charge any fees due to Deposit Account No. 23-2415, referencing Docket No. 43060-701.201.

Should the Examiner have any questions or concerns, the Examiner is encouraged to contact the undersigned attorney at (858) 350-2318.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Date:  August 21, 2013                    _____/Clark Lin/_____
                                          Clark Y. Lin, Reg. No. 67,024

650 Page Mill Road
Palo Alto, CA  94304-1050
(650) 493-9300
Customer No. 021971

SPI_0000181

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/670,355 | 11/06/2012 | Lian G. RAJEWSKI | 43060-701.201 | 2719 |

21971        7590        08/26/2013
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| ZHANG, YANZHI |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/26/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

SPI_0000182

| *Applicant-Initiated Interview Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 13/670,355 | RAJEWSKI ET AL. |
| | Examiner | Art Unit | |
| | YANZHI ZHANG | 1617 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) <u>YANZHI ZHANG</u>.               (3)<u>Janet Epps-Smith</u>.

(2) <u>Clark Lin</u>.                    (4)<u>Matthew Grumbling</u>.

Date of Interview: <u>20 August 2013</u>.

Type:      ☒ Telephonic    ☐ Video Conference
           ☐ Personal [copy given to: ☐ applicant    ☐ applicant's representative]

Exhibit shown or demonstration conducted:  ☐ Yes    ☐ No.
    If Yes, brief description: _____.

Issues Discussed   ☐101  ☐112  ☐102  ☐103  ☐Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: <u>1</u>.

Identification of prior art discussed: <u>Sosnowska</u>.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

<u>Attorney of record, Clar Lin and Mat Grumbling called to discuss the distinction between the prior art and the instant invention. Applicants indicated  that one of the distinctions of their invention lies in that the pharmaceutical power has three essential components. Applicants intend to make claim amendments to reflect the distinction.</u>

<u>Applicants are informed about potential ODP for SN13914452.</u>

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /Janet Epps-Smith/ Primary Examiner, Art Unit 1633 | |
|---|---|

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

### Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant.  An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing.  The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary.  The action of the Patent and Trademark Office will be based exclusively on the written record in the Office.  No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

———

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so.  It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks.  Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below.  Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper.  In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview.  In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
–   An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable).  Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate.  A verbatim or highly detailed description of the arguments is not required.  The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file.  Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview.  If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her.  If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

SPI_0000184



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

21971          7590          09/06/2013
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| ZHANG, YANZHI |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

DATE MAILED: 09/06/2013

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/670,355 | 11/06/2012 | Lian G. RAJEWSKI | 43060-701.201 | 2719 |

TITLE OF INVENTION: ENALAPRIL COMPOSITIONS

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1780 | $0 | $0 | $1780 | 12/06/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 4

PTOL-85 (Rev. 02/11)

SPI_0000185

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** _Mail_   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
_or **Fax**_   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

21971        7590        09/06/2013
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/670,355 | 11/06/2012 | Lian G. RAJEWSKI | 43060-701.201 | 2719 |

TITLE OF INVENTION: ENALAPRIL COMPOSITIONS

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1780 | $0 | $0 | $1780 | 12/06/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| ZHANG, YANZHI | 1617 | 424-400000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE        (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

PTOL-85 (Rev. 02/11)

SPI_0000186

**5. Change in Entity Status** (from status indicated above)

❑ Applicant certifying micro entity status. See 37 CFR 1.29

❑ Applicant asserting small entity status. See 37 CFR 1.27

❑ Applicant changing to regular undiscounted fee status.

<u>NOTE:</u> Absent a valid certification of Micro Entity Status (see form PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

<u>NOTE:</u> If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

<u>NOTE:</u> Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

| | |
|---|---|
| Authorized Signature _____ | Date _____ |
| Typed or printed name _____ | Registration No. _____ |

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SPI_0000187



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/670,355 | 11/06/2012 | Lian G. RAJEWSKI | 43060-701.201 | 2719 |

21971        7590        09/06/2013

WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| ZHANG, YANZHI |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

DATE MAILED: 09/06/2013

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SPI_0000188

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 13/670,355 | Applicant(s) RAJEWSKI ET AL. | |
|---|---|---|---|
| | Examiner YANZHI ZHANG | Art Unit 1617 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *8/21/13*.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on ____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *1-4,10 and 16*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

        a) ☐ All   b) ☐ Some   *c) ☐ None of the:

           1. ☐ Certified copies of the priority documents have been received.

           2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

           3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment

6. ☒ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____.

/Janet Epps-Smith/
Primary Examiner, Art Unit 1633

SPI_0000190

## DETAILED ACTION

The present application is being examined under the pre-AIA first to invent provisions.

Papers filed Aug. 21, 2013 are acknowledged.  Claims 1 and 16 have been amended; claims 5-9, and 11-15 have been canceled. No claim has been newly added. Currently, claims 1-4, 10, and 16 are remaining in the application and under consideration.

### *Withdrawn Claim Rejections - 35 USC § 103*

Claims 1-16 were previously rejected under 35 U.S.C. 103(a) as being unpatentable over Sosnowska et al.  (Non-patent literature cited in Applicants' IDS dated 11/07/2012, published 2009) in view of Jursic et al. (International patent application No.: WO2012/085249 A2; published June 28, 2012).

Applicants have amended claim 1 to include the close ended preamble "consist of", which excludes other excipients of prior art.  Therefore, the rejection under 35 U.S.C. 103(a) to claims 1-4, 10, and 16 is hereby withdrawn.

The rejection under 35 U.S.C. 103(a) to claims 5-9, and 11-15 is moot because claims 5-9, and 11-15 have been cancelled.

### *Reasons for Allowance*

The examiner has determined that the closest prior art, Sosnowska and Jursic, did not render obvious the claimed pharmaceutical composition consisting of:

(a) about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,

(b) about 85 % (w/w) mannitol, and

(c) about 1% (w/w) colloidal silicon dioxide, wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about $25+5°C$ and $55+10\%$ relative humidity.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### CONCLUSION

**Claims 1-4, 10, and 16 are allowed.**

### CONTACT INFORMATION

Any inquiry concerning this communication or earlier communications from the examiner should be directed to YANZHI ZHANG whose telephone number is (571)272-3117. The examiner can normally be reached on 8:30 am - 5:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Fereydoun G. Sajjadi can be reached on 2-3311.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

SPI_0000192

Application/Control Number: 13/670,355                                    Page 4
Art Unit: 1617

/Y. Z. /

Examiner, Art Unit 1617

/Janet Epps-Smith/

Primary Examiner, Art Unit 1633

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/670,355 | 11/06/2012 | Lian G. RAJEWSKI | 43060-701.201 | 2719 |

21971          7590          09/09/2013
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| ZHANG, YANZHI |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/09/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

SPI_0000194

| *Examiner-Initiated Interview Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 13/670,355 | RAJEWSKI ET AL. |
| | Examiner | Art Unit | |
| | YANZHI ZHANG | 1617 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _YANZHI ZHANG_.                                    (3) _____.

(2) _Clark Lin_.                                              (4) _____.

Date of Interview: _21 June 2013_.

Type:     ☒ Telephonic    ☐ Video Conference
          ☐ Personal [copy given to: ☐ applicant    ☐ applicant's representative]

Exhibit shown or demonstration conducted:    ☐ Yes    ☐ No.
    If Yes, brief description: _____.

Issues Discussed    ☐101  ☐112  ☐102  ☐103  ☒Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: _11-15_.

Identification of prior art discussed: _____.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

_Attorney of record, Clark Lin, has been informed via telephone regarding the language of allowable claims, comprising vs. consisting of. Attorney Lin indicated an intention to either modified claim to be consistent with claim 1 or deleting the liquid composition. ._

**Applicant recordation instructions:**  It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /Janet Epps-Smith/ | |
|---|---|
| Primary Examiner, Art Unit 1633 | |

SPI_0000195

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 13/670,355 |
| | Filing Date | 11-6-2012 |
| | First Named Inventor | Lian G. Rajewski |
| | Art Unit | 1617 |
| | Examiner Name | Yanzhi Zhang |

| Sheet | 1 | of | 1 | Attorney Docket Number | 43060-701.201 |
|---|---|---|---|---|---|

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] – Number[4] – Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | 1. | WO-2012/085249 | 6/28/2012 | Jursic et al | | |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | 2. | Sipahi et al., "Effects of normal, pre-hypertensive, and hypertensive blood pressure levels on progression of coronary atherosclerosis, J. Am. Coll. Cardiol. 48, 833-838, 2006 | |
| | 3. | Product Information of Bicitra, "Sodium Citrate and Citric Acid Oral Solution USP." 2 pages | |
| | 4. | Product Information of Ora-Sweet (1 page) retrieved from: http://www.stobec.com/documents/data/8196.pdf | |
| | 5. | Definition of Hypertension (1 page) retrieved from: http://medical-dictionary.thefreedictionary.com/hypertension | |
| | 6. | Drug Information on Enalapril (3 pages) retrieved from: http://www.accessdata.fda.gov/drugsatfda_docs/nda/2001/18-998s058_Vasotec.cfm | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹Applicant's unique citation designation number (optional). ²See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

- 1 -

Attorney Docket No. 43060-701.201

**Attorney Docket No.   43060-701.201**
**PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Inventor:   Lian G. Rajewski | Group Art Unit: | 1617 |
| Serial Number:   13/670,355 | Examiner: | Yanzhi Zhang |
| Filing Date:   11/6/2012 | **CONFIRMATION NO:** | **2719** |
| Title:   ENALAPRIL COMPOSITIONS | | |

FILED ELECTRONICALLY ON: September 12, 2013

Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

<u>**INFORMATION DISCLOSURE STATEMENT**
**UNDER 37 CFR §1.97**</u>

Madam:

An Information Disclosure Statement along with attached PTO/SB/08 is hereby submitted. A copy of each listed publication is submitted, if required, pursuant to 37 CFR §§1.97-1.98, as indicated below.

The Examiner is requested to review the information provided and to make the information of record in the above-identified application. The Examiner is further requested to initial and return the attached PTO/SB/08 in accordance with MPEP §609.

The right to establish the patentability of the claimed invention over any of the information provided herewith, and/or to prove that this information may not be prior art, and/or to prove that this information may not be enabling for the teachings purportedly offered, is hereby reserved.

This statement is not intended to represent that a search has been made or that the information cited in the statement is, or is considered to be, prior art or material to patentability as defined in §1.56.

A. ☐ *37 CFR §1.97(b).* This Information Disclosure Statement should be considered by the Office because:

    ☐  (1)  It is being filed within 3 months of the filing date of a national application and is other than a continued prosecution application under §1.53(d);

             -- OR --

    ☐  (2)  It is being filed within 3 months of entry of the national stage as set forth in §1.491 in an international application;

             -- OR --

SPI_0000197

☐ (3) It is being filed before the mailing of a first Office action on the merits;

-- OR --

☐ (4) It is being filed before the mailing of a first Office action after the filing of a request for continued examination under §1.114.

B. ☐ *37 CFR §1.97(c).* Although this Information Disclosure Statement is being filed after the period specified in *37 CFR §1.97(b)*, above, it is filed before the mailing date of the earlier of (1) a final office action under §1.113, (2) a notice of allowance under §1.311, or (3) an action that otherwise closes prosecution on the merits, this Information Disclosure Statement should be considered because it is accompanied by one of:

☐ a statement as specified in §1.97(e) provided concurrently herewith;

-- OR --

☐ a fee of $180.00 as set forth in §1.17(p) authorized below, enclosed, or included with the payment of other papers filed together with this statement.

C. ☒ *37 CFR §1.97(d).* Although this Information Disclosure Statement is being filed after the mailing date of the earlier of (1) a final office action under §1.113 or (2) a notice of allowance under §1.311, it is being filed before payment of the issue fee and should be considered because it is accompanied by:

i. a statement as specified in §1.97(e);

-- AND --

ii. a fee of $180.00 as set forth in §1.17(p) is authorized below, enclosed, or included with the payment of other papers filed together with this Statement.

D. ☒ *37 CFR §1.97(e).* Statement.

☐ A statement is provided herewith to satisfy the requirement under 37 CFR §§1.97(c);

-- AND/OR --

☒ A statement is provided herewith to satisfy the requirement under 37 CFR §§1.97(d);

-- AND/OR --

☐ A copy of a dated communication from a foreign patent office clearly showing that the information disclosure statement is being submitted within 3 months of the filing date on the communication is provided in lieu of a statement under 37 C.F.R. § 1.97(e)(1) as provided for under MPEP 609.04(b) V.

E. ☐ *Statement Under 37 C.F.R. §1.704(d).* Each item of information contained in the information disclosure statement was first cited in a communication from a foreign patent office in a counterpart application that was received by an individual designated in § 1.56(c) not more than thirty (30) days prior to the filing of this information disclosure statement. This statement is made pursuant to the requirements of 37 C.F.R. §1.704(d) to avoid reduction of the period of adjustment of the patent term for Applicant(s) delay.

F. ☒ *37 CFR §1.98(a)(2).* The content of the Information Disclosure Statement is as follows:

☐ Copies of each of the references listed on the attached Form PTO/SB/08 are enclosed herewith.

-- OR --

☐ Copies of U.S. Patent Documents (issued patents and patent publications) listed on the attached Form PTO/SB/08 are NOT enclosed.

SPI_0000198

-- AND/OR --

☒ Copies of Foreign Patent Documents and/or Non Patent Literature Documents listed on the attached Form PTO/SB/08 are enclosed in accordance with 37 CFR §1.98 (a)(2).

-- AND/OR --

☐ Copies of pending unpublished U.S. patent applications are enclosed in accordance with 37 CFR §1.98(a)(2)(iii).

G. ☐ *37 CFR §1.98(a)(3).* The Information Disclosure Statement includes non-English patents and/or references.

☐ Pursuant to 37 CFR §1.98(a)(3)(i), a concise explanation of the relevance of each patent, publication or other information provided that is not in English is provided herewith.

☐ Pursuant to MPEP 609(B), an English language copy of a foreign search report is submitted herewith to satisfy the requirement for a concise explanation where non-English language information is cited in the search report.

-- OR --

☐ A concise explanation of the relevance of each patent, publication or other information provided that is not in English is as follows: _____

☐ Pursuant to 37 CFR §1.98(a)(3)(ii), a copy of a translation, or a portion thereof, of the non-English language reference(s) is provided herewith.

H. ☐ *37 CFR §1.98(d).* Copies of patents, publications and pending U.S. patent applications, or other information specified in 37 C.F.R. § 1.98(a) are not provided herewith because:

☐ Pursuant to 37 CFR §1.98(d)(1) the information was previously submitted in an Information Disclosure Statement, or cited by examiner, for another application under which this application claims priority for an earlier effective filing date under 35 U.S.C. 120.

Application in which the information was submitted: _____

Information Disclosure Statement(s) filed on: _____

AND

☐ The information disclosure statement submitted in the earlier application complied with paragraphs (a) through (c) of 37 CFR §1.98.

I. ☒ *Fee Authorization.* The Commissioner is hereby authorized to charge the above-referenced fees of $180.00 and charge any additional fees or credit any overpayment associated with this communication to Deposit Account No. 23-2415 (Docket No. 43060-701.201).

SPI_0000199

## Remarks

*Examiner Interview Dated September 12, 2013*

Reference is made to a telephone discussion with Examiner Zhang and Clark Lin, a representative of the Applicant, on September 12, 2013.   The Applicant's representative indicated the intention to file a supplemental IDS which would list the references cited by Examiner Zhang in the August 28, 2013 Non-final Office Action for Appl. Ser. No. 13/914,452, a continuation of the allowed 13/670,355 case.  It is the understanding of the representative, that the Examiner was in agreement with this course of action and would consider the IDS submission.

Accordingly, submitted herewith is the supplemental IDS submission along with the references cited herein for the Examiner's consideration.  Also accompanying the IDS submission is a 37 C.F.R. § 1.97(E) statement.  The Applicant's representative respectfully points out that all the references herein are from the Examiner's August 28, 2013 Non-final Office Action for Appl. Ser. No. 13/914,452 and none would be consider 'new' for this patent family.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

Dated:  September 12, 2013                          By:  /Clark Lin/
                                                                   Clark Lin, Attorney for Applicant
                                                                   Reg. No. 67,024

650 Page Mill Road
Palo Alto, CA 94304-1050
(650) 493-9300
Customer No. 021971

SPI_0000200

## STATEMENTS UNDER 37 C.F.R. § 1.97(E)

*(Attachment to Information Disclosure Statement)*

☐   *37 CFR §1.97(e)(1).*  **THE UNDERSIGNED HEREBY STATES THAT** each item of information contained in this information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of this Information Disclosure Statement:

☐   All references cited herein;

-- OR --

☐   The following subset of references: _____

--AND/OR--

☒   *37 CFR §1.97(e)(2).*  **THE UNDERSIGNED HEREBY STATES THAT** no item of information contained in this information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application and, to my knowledge after making reasonable inquiry, no item of information contained in this Information Disclosure Statement was known to any individual designated in 37 C.F.R. §1.56(c) more than three months prior to the filing of this Information Disclosure Statement:

☒   All references cited herein;

-- OR --

☐   The following subset of references: _____

Respectfully submitted,

Dated: September 12, 2013 _____          By: /Clark Lin/ _____
                                                      Clark Lin, Attorney for Applicant
                                                      Reg. No. 67,024

650 Page Mill Road
Palo Alto, CA 94304-1050
(650) 493-9300
Customer No. 021971

SPI_0000201

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail** Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax** (571) 273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/670,355 | 11/6/2012 | Lian G. Rajewski | 43060-701.201 | 2719 |

TITLE OF INVENTION:

ENALAPRIL COMPOSITIONS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | undiscounted | $1780 | $0 | $1780 | 12/6/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| ZHANG, YANZHI | 1617 | 424/400 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 Wilson, Sonsini,

2 Goodrich & Rosati

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

SILVERGATE PHARMACEUTICALS, INC.
UNIVERSITY OF KANSAS

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Dublin, Ohio
Lawrence, Kansas

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☑ Corporation or other private group entity ☐ Government

4a. The following fee(s) are enclosed:

☑ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies ___

4b. Payment of Fee(s):

☐ A check in the amount of the fee(s) is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☑ The Director is hereby authorized to charge the required fee(s), or credit any overpayment, to Deposit Account Number    23-2415    .

5. Change in Entity Status (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.

☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

The Director of the USPTO is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.
NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature  /Clark Lin /

Date  September 13, 2013

Typed or printed name  Clark Lin

Registration No.  67024

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 08-08) Approved for use through 08/31/2010. OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SPMO000202

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Response to Rule 312 Communication* | Application No. | Applicant(s) |
|---|---|---|
| | 13/670,355 | RAJEWSKI ET AL. |
| | **Examiner** | **Art Unit** |
| | YANZHI ZHANG | 1617 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

1. ☒ The amendment filed on <u>12 September 2013</u> under 37 CFR 1.312 has been considered, and has been:

   a) ☒   entered.

   b) ☐   entered as directed to matters of form not affecting the scope of the invention.

   c) ☐   disapproved because the amendment was filed after the payment of the issue fee.

           Any amendment filed after the date the issue fee is paid must be accompanied by a petition under 37 CFR 1.313(c)(1)

           and the required fee to withdraw the application from issue.

   d) ☐   disapproved.  See explanation below.

   e) ☐   entered  in part. See explanation below.

/Y.Z./

SPI_0000204

Receipt date: 09/12/2013                                                                    13670355 - GAU: 1617

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | **Complete if Known** | |
|---|---|---|---|---|
| | | | Application Number | 13/670,355 |
| | | | Filing Date | 11-6-2012 |
| | | | First Named Inventor | Lian G. Rajewski |
| | | | Art Unit | 1617 |
| | | | Examiner Name | Yanzhi Zhang |
| Sheet | 1 | of | 1 | Attorney Docket Number | 43060-701.201 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number–Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3]–Number[4]–Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | 1. | WO-2012/085249 | 6/28/2012 | Jursic et al | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | 2. | Sipahi et al., "Effects of normal, pre-hypertensive, and hypertensive blood pressure levels on progression of coronary atherosclerosis, J. Am. Coll. Cardiol. 48, 833-838, 2006 | |
| | 3. | Product Information of Bicitra, "Sodium Citrate and Citric Acid Oral Solution USP." 2 pages | |
| | 4. | Product Information of Ora-Sweet (1 page) retrieved from: http://www.stobec.com/documents/data/8196.pdf | |
| | 5. | Definition of Hypertension (1 page) retrieved from: http://medical-dictionary.thefreedictionary.com/hypertension | |
| | 6. | Drug Information on Enalapril (3 pages) retrieved from: http://www.accessdata.fda.gov/drugsatfda_docs/nda/2001/18-998s058_Vasotec.cfm | |

| Examiner Signature | /Yanzhi Zhang/ | Date Considered | 09/25/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹Applicant's unique citation designation number (optional). ²See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

- 1 -

Attorney Docket No. 43060-701.201

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /Y.Z./

Receipt date: 05/01/2013                                                                      13670355 - GAU: 1617

Change(s) applied
to document,
/M.M.S./
9/23/2013

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | **Complete if Known** | |
|---|---|---|
| | Application Number | 13/670,355 |
| | Filing Date | 11/06/2012 |
| | First Named Inventor | Lian G. Rajewski |
| | Art Unit | 1617 |
| | Examiner Name | Yanzhi Zhang |
| Sheet | 1 | of | 3 | Attorney Docket Number | 43060-701.201 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1. | US-4,374,829 | 02/22/1983 | ~~Kunkee et al.~~ | Harris et al. |
| | 2. | US-4,472,380 | 09/18/1984 | Harris et al. | |
| | 3. | US-4,510,083 | 04/09/1985 | Blacklock et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] – Number[4] – Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | 4. | BLOWEY, "Update on the pharmacologic treatment of hypertension in pediatrics," Journal of Clinical Hypertension (Hoboken, NJ, United States) (2012), 14(6), 383-387. Database: CAPLUS, DOI:10.1111/j.1751-7176.2012.00659.x | |
| | 5. | CALABRO et al., "Hemodynamic effects of a single oral dose of enalapril among children with asymptomatic chronic mitral regurgitation," American Heart Journal (1999), 138(5, Pt. 1), 955-961. Database: CAPLUS, DOI:10.1016/S0002-8703(99)70023-2 | |
| | 6. | DELUCCHI et al., "Enalapril and prednisone in children with nephrotic-range proteinuria," Pediatric nephrology (Berlin, Germany) (2000), 14(12), 1088-91, Database: MEDLINE | |
| | 7. | HSU et al., "Enalapril in Infants With Single Ventricle: Results of a Multicenter Randomized Trial; DOI:10.1161/CIRCULATIONAHA.109.927988Richard V.; et al From Circulation (2010), 122(4), 333-340. Database: CAPLUS, | |
| | 8. | HSU et al., "Rationale and design of a trial of angiotensin-converting enzyme inhibition in infants with single ventricle," American Heart Journal (2009), 157(1), 37-45. Database: CAPLUS, DOI:10.1016/j.ahj.2008.08.030 | |
| | 9. | MIR et al., "Effect of carvedilol on QT duration in pediatric patients with congestive heart failure," Clinical Drug Investigation (2004), 24(1), 9-15. Database: CAPLUS, | |

| Examiner Signature | /Yanzhi Zhang/ | Date Considered | 07/12/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

- 1 –

Attorney Docket No. 43060-701.201

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /Y.Z./

SPI_0000206

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/670,355 | 10/29/2013 | 8568747 | 43060-701.201 | 2719 |

21971          7590          10/09/2013
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Lian G. RAJEWSKI, Lawrence, KS;
Roger A. RAJEWSKI, Lawrence, KS;
John L. HASLAM, Lawrence, KS;
Kathleen HEPPERT, Lawrence, KS;
Michael C. BECKLOFF, Leawood, KS;
Frank SEGRAVE, Dublin, OH;
Robert MAURO, Miller Place, NY;
Peter COLABUONO, Las Vegas, NV;
UNIVERSITY OF KANSAS, Lawrence, KS
SILVERGATE PHAMACEUTICALS, Dublin, OH

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

SPI_0000207

PATENT
Attorney Docket No. 43060-701.201

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Inventors:  Lian G. Rajewski, *et al.*

Serial Number:  13/670,355

Filing Date:       November 6, 2012

Issued Patent No.:  8,568,747

Issued:            October 29, 2013

Title:   ENALAPRIL COMPOSITIONS

CONFIRMATION NO:  2719

### FILED ELECTRONICALLY ON DECEMBER 12, 2013

### REQUEST FOR CERTIFICATE OF CORRECTION OF THE ISSUED PATENT FOR PATENT OFFICE MISTAKE (37 C.F.R. §1.322)

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450
ATTN:  Certificate of Correction Branch

Madam:

It is noted that an error of a minor nature or character appears in this patent due to mistakes on the part of the Office, as more fully described below.  The Patentee believes that correction thereof does not involve such changes in the patent as would constitute new matter or would require re-examination of the patent.  A certificate of correction is therefore requested.

Attached hereto is Form PTO/SB/44 which is suitable for printing.

MISTAKES ON THE PART OF THE OFFICE:

In reviewing the issued Patent, Applicant noted the following errors, which Applicant believes are attributable to the Patent Office. These errors are located in the issued Patent at:

SPI_0000208

U.S. Patent No. 8,568,747
Request for Certificate of Correction of Patent for Office and Applicant Mistakes

| Requested Correction: | Support for Correction found in the Prosecution File History at: |
|---|---|
| On page 1, under the listing of Inventors, please correct inventor's name from "Frank Seagrave" to --Frank Segrave--. | *Application Data Sheet* and *Declaration (37 CFR 1.63) for Utility or Design Application Using an Application Data Sheet (37 CFR 1.76)* |

## FEE AUTHORIZATION

Please charge the processing fee under 37 CFR 1.20(a) to Deposit Account No. **23-2415** (Docket No. 43060-701.201).

The Commissioner is authorized to charge any additional fees which may be required, including petition fees, or credit any overpayment to Deposit Account No. 23-2415 (Docket No. 43060-701.201).

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Date:   December 12, 2013          By:    /Clark Lin/
                                         Clark Y. Lin
                                         Reg. No. 67, 024

650 Page Mill Road
Palo Alto, CA 94304
(858) 350-2300
Customer No. 21971

-2-

PTO/SB/44 (09-07)
Approved for use through 08/31/2010. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.
(Also Form PTO-1050)

## UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO.          :     8,568,747

APPLICATION NO. :     13/670,355

ISSUE DATE          :     October 29, 2013

INVENTOR(S)       :     Lian G. Rajewski, *et al.*

Page 1 of 1

      It is certified that an error appears or errors appear in the above-identified patent and that said Letters Patent is hereby corrected as shown below.


      On page 1, under the listing of Inventors, please correct inventor's name from "Frank Seagrave" to --Frank Segrave--.

MAILING ADDRESS OF SENDER:  (Please do not use customer number below)
   Wilson Sonsini Goodrich & Rosati
   650 Page Mill Road
   Palo Alto, California  94304

This collection of information is required by 37 CFR 1.322, 1.323, and 1.324.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1.0 hour to complete, including gathering, preparing, and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. 1450, Alexandria, VA  22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO:  Attention Certificate of Corrections Branch, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

5970274_1.DOC

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.           : 8,568,747 B1                                              Page 1 of 1
APPLICATION NO.   : 13/670355
DATED                   : October 29, 2013
INVENTOR(S)         : Lian G. Rajewski et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Title Page:

Item 75, please correct inventor's name from "Frank Seagrave" to --Frank Segrave--.

Signed and Sealed this
Twenty-eighth Day of January, 2014

Michelle K. Lee
*Deputy Director of the United States Patent and Trademark Office*

AO 120 (Rev. 08/10)

| TO: Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court _____ for the District of Delaware _____ on the following

☐ Trademarks or ☑ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED<br>9/28/2016 | U.S. DISTRICT COURT<br>for the District of Delaware |
|---|---|---|
| PLAINTIFF<br><br>SILVERGATE PHARMACEUTICALS, INC. | | DEFENDANT<br><br>BIONPHARMA, INC. |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 8,568,747 B1 | 10/29/2013 | Silvergate Pharmaceuticals, Inc. |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY |
|---|---|
| | ☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director     Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director     Copy 4—Case file copy**

SPI_0000212