# EXHIBIT E – PART 1

PTO/AIA/15 (07-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **UTILITY PATENT APPLICATION TRANSMITTAL** | | |
|---|---|---|
| *(Only for new nonprovisional applications under 37 CFR 1.53(b))* | Attorney Docket No. | 43060-701.301 |
| | First Inventor | Lian G. RAJEWSKI |
| | Title | Enalapril Compositions |
| | Express Mail Label No. | Electronically Filed on June 10, 2013 |

**APPLICATION ELEMENTS**
*See MPEP chapter 600 concerning utility patent application contents.*

**ADDRESS TO:** Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

1. ☐ **Fee Transmittal Form.**
(PTO/SB/17 or equivalent)
2. ☐ **Applicant claims small entity status.**
See 37 CFR 1.27.
3. ☑ **Specification.** [Total Pages 45]
(For information on the preferred arrangement, see MPEP § 608.01(a))
Both the claims and abstract must start on a new page.
4. ☑ **Drawing(s).** (35 U.S.C. 113) [Total Sheets 3]
5. ☐ **Inventor's Oath or Declaration.** [Total Sheets 8]
(including substitute statements under 37 CFR 1.64 and assignments serving as an oath or declaration under 37 CFR 1.63(e))
   a. ☐ Newly executed (original or copy)
   b. ☐ A copy from a prior application (37 CFR 1.63(d))
6. ☑ **Application Data Sheet.** *See Note below.
See 37 CFR 1.76 (PTO/AIA/14 or equivalent)
7. ☐ **CD-ROM or CD-R.**
in duplicate, large table or Computer Program (Appendix)
   ☐ Landscape Table on CD
8. **Nucleotide and/or Amino Acid Sequence Submission.**
(if applicable, items a. – c. are required)
   a. ☐ Computer Readable Form (CRF)
   b. ☐ Specification Sequence Listing on:
      i. ☐ CD-ROM or CD-R (2 copies); or
      ii. ☐ Paper
   c. ☐ Statements verifying identity of above copies

**ACCOMPANYING APPLICATION PARTS**

9. ☐ **Assignment Papers.**
(cover sheet & document(s))
Name of Assignee _____
10. ☐ **37 CFR 3.73(c) Statement.**   ☐ Power of Attorney.
(when there is an assignee)
11. ☐ **English Translation Document.**
(if applicable)
12. ☐ **Information Disclosure Statement.**
(PTO/SB/08 or PTO-1449)
   ☐ Copies of citations attached
13. ☑ **Preliminary Amendment.**
14. ☐ **Return Receipt Postcard.**
(MPEP § 503) (Should be specifically itemized)
15. ☐ **Certified Copy of Priority Document(s).**
(if foreign priority is claimed)
16. ☐ **Nonpublication Request.**
Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35 or equivalent
17. ☑ **Other:** Certification and Request for Prioritized Examination
Under 37 CFR 1.102(e) (1 pp)

***Note:*** (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).

(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary interest in the matter. See 37 CFR 1.46(b).

**18. CORRESPONDENCE ADDRESS**

☑ The address associated with Customer Number: 21971     OR   ☐ Correspondence address below

| Name | |
|---|---|
| Address | |
| City | State | Zip Code |
| Country | Telephone | Email |

| Signature | [signature] | Date | June 10, 2013 |
|---|---|---|---|
| Name (Print/Type) | Jeffrey W. Guise | Registration No. (Attorney/Agent) | 34,613 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

SPI_0000213

WSGR Docket No. 43060-701.201

PATENT APPLICATION

**ENALAPRIL COMPOSITIONS**

Inventors:      Lian G. RAJEWSKI,
                Citizen of United States of America, Residing at
                4628 Muirfield Drive
                Lawrence, KS 66047

                Roger A. RAJEWSKI,
                Citizen of United States of America, Residing at
                4628 Muirfield Drive
                Lawrence, KS 66047

                John L. HASLAM,
                Citizen of United States of America, Residing at
                1560 N 1060 Road
                Lawrence, KS 66046

                Kathleen HEPPERT,
                Citizen of United States of America, Residing at
                2901 Oxford Road
                Lawrence, KS 66049

                Michael C. BECKLOFF,
                Citizen of United States of America, Residing at
                14108 Canterbury Street
                Leawood, Kansas 66224

                Frank SEGRAVE,
                Citizen of United States of America, Residing at
                5371 Gordon Way
                Dublin, OH 43017

                Robert MAURO,
                Citizen of United States of America, Residing at
                24 Oakwood Ave
                Miller Place, NY 11764

                Peter COLABUONO,
                Citizen of United States of America, Residing at
                7133 Mission Hills Dr.
                Las Vegas, NV 89113

SPI_0000214

Assignees:    Silvergate Pharmaceuticals
5371 Gordon Way
Dublin, OH 43017

a Delaware Corporation

University of Kansas
245 Strong Hall
1450 Jayhawk Boulevard
Lawrence, KS 66045

Entity:    Large business concern

WSGR

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300 (Main)
(650) 493-6811 (Facsimile)

**Filed Electronically on:  November 6, 2012**

SPI_0000215

# ENALAPRIL COMPOSITIONS

## CROSS REFERENCE

[0001] This application claims the benefit of U.S. Provisional Application Ser. No. 61/710,489, filed on October 5, 2012, which is incorporated herein by reference in its entirety.

## BACKGROUND OF THE INVENTION

[0002] Hypertension, or high blood pressure, is a serious health issue in many countries. According to the National Heart Blood and Lung Institute, it is thought that about 1 in 3 adults in the United States alone have hypertension. Left unchecked, hypertension is considered a substantial risk factor for cardiovascular and other diseases including coronary heart disease, myocardial infarction, congestive heart failure, stroke and kidney failure. Hypertension is classified as primary (essential) hypertension or secondary hypertension. Primary hypertension has no known cause and may be related to a number of environmental, lifestyle and genetic factors such as stress, obesity, smoking, inactivity and sodium intake. Secondary hypertension can be caused by drug or surgical interventions, or by abnormalities in the renal, cardiovascular or endocrine system.

[0003] A number of antihypertensive drugs are available for treating hypertension. Various therapeutic classes of antihypertensive drugs include alpha-adrenergic blockers, beta-adrenergic blockers, calcium-channel blockers, hypotensives, mineralcorticoid antagonists, central alpha-agonists, diuretics and renin-angiotensin-aldosterone inhibitors which include angiotensin II receptor antagonists (ARB) and angiotensin-converting enzyme (ACE) inhibitors. Angiotensin-converting enzyme (ACE) inhibitors inhibit angiotensin-converting enzyme (ACE), a peptydyl dipeptidase that catalyzes angiotension I to angiotension II, a potent vasoconstrictor involved in regulating blood pressure.

[0004] Enalapril is a prodrug belonging to the angiotensin-converting enzyme (ACE) inhibitor of medications. It is rapidly hydrolyzed in the liver to enalaprilat following oral administration. Enalaprilat acts as a potent inhibitor of ACE. The structural formulae of enalapril and enalaprilat is as follows:



Enalapril

Enalaprilat

WSGR Docket No. 43060-701.201

SPI_0000216

[0005] Enalapril is currently administered in the form of oral tablets, (e.g., Vasotec®). In addition to the treatment of hypertension, enalapril tablets have been used for symptomatic congestive heart failure, and asymptomatic left ventricular dysfunction.

## SUMMARY OF THE INVENTION

[0006] Provided herein are enalapril powder compositions for an oral liquid formulation. In one aspect, the powder comprises (a) about 1 to about 30 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, and (b) about 60 to about 99 % (w/w) mannitol. In some embodiments, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at ambient or refrigerated conditions. In other embodiments, the powder is stable for at least six months at ambient, accelerated or refrigerated conditions. In certain instances, ambient conditions are $25\pm5°C$ and $55\pm10\%$ relative humidity. In certain instances, refrigerated conditions are $5\pm3°C$. In certain instances, accelerated conditions are about 40 °C or 60 °C and/or up to 80% relative humidity.

[0007] In another aspect, the powder comprises (a) about 1 to about 30 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, (b) about 60 to about 99 % (w/w) mannitol, and (c) about 0.5 to about 2 % (w/w) colloidal silicon dioxide. In some embodiments, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at ambient or refrigerated conditions. In other embodiments, the powder is stable for at least six months at ambient, accelerated or refrigerated conditions.

[0008] In certain embodiments, the enalapril is enalapril maleate. In certain embodiments, the powder is reconstituted in water for the oral liquid. In certain embodiments, the powder is reconstituted in a syrup for the oral liquid. In certain embodiments, the powder further comprises a pharmaceutically acceptable excipient. In certain instances, the pharmaceutically acceptable excipient is a sweetener, flavoring agent or preservative. In certain instances, the pharmaceutically acceptable excipient is a sweetener. In certain instances, the sweetener is a solid. In certain instances, the powder further comprises a solid (e.g., powder) sweetener. In certain instances, the sweetener is a liquid. In certain instances, the powder is reconstituted in a liquid sweetener (e.g., syrup). In certain embodiments, the enalapril or pharmaceutically acceptable salt thereof is about 12 to about 15 % (w/w). In certain embodiments, the mannitol is about 80 to 85 % (w/w). In certain embodiments, the silicon dioxide is about 1 % (w/w). In certain embodiments, the enalapril or pharmaceutically acceptable salt thereof is about 14 % (w/w), the mannitol is about 85 % (w/w) and

WSGR Docket No. 43060-701.201

SPI_0000217

the silicon dioxide is about 1 % (w/w).  In certain embodiments, the powder comprises about 150 mg enalapril, about 890 mg mannitol and 10 mg colloidal silicon dioxide.

[0009]  In another aspect, the powder comprises (a) about 1 to about 30 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, (b) about 60 to about 99 % (w/w) mannitol, and (c) about 0.5 to about 2 % (w/w) colloidal silicon dioxide, wherein, when the powder is reconstituted into an oral liquid, the liquid maintains no more than 5 % total impurities for at least 12 weeks at ambient or refrigerated conditions.  In another aspect, the powder comprises (a) about 1 to about 30 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, (b) about 60 to about 99 % (w/w) mannitol, and (c) about 0.5 to about 2 % (w/w) colloidal silicon dioxide, wherein, the powder maintains no more than 5 % total impurities for at least six months at ambient, accelerated or refrigerated conditions.

[0010]  In certain embodiments, the liquid maintains no more than 2.5 % total impurities for at least 12 weeks.  In certain embodiments, the liquid maintains no more than 2.5 % enalaprilat for at least 12 weeks.  In certain embodiments, the liquid maintains no more than 2.5 % diketopiperazine for at least 12 weeks.  In certain embodiments, the powder maintains no more than 2.5 % total impurities for at least six months.  In certain embodiments, the powder maintains no more than 1 % enalaprilat for at least six months.  In certain embodiments, the powder maintains no more than 1 % diketopiperazine for at least six months.

[0011]  Also provided herein are enalapril oral liquid formulations.  In one aspect, the liquid formulation comprises (a) about 0.5 to about 5 mg/mL enalapril or a pharmaceutically acceptable salt thereof, (b) about 3 to about 10 mg/mL mannitol, and (c) a sweetener; wherein, the liquid is homogenous and stable for at least 12 weeks at ambient or refrigerated conditions.

[0012]  In another aspect, the liquid formulation comprises (a) about 0.5 to about 5 mg/mL enalapril or a pharmaceutically acceptable salt thereof, (b) about 3 to about 10 mg/mL mannitol,( c) about 0.03 to about 0.13 mg/mL colloidal silicon dioxide,and (d) a sweetener; wherein, the liquid is homogenous and stable for at least 12 weeks at ambient or refrigerated conditions.

[0013]  In certain embodiments, the enalapril is enalapril maleate.  In certain embodiments, the liquid formulation comprises about 1 mg/mL enalapril.  In certain embodiments, the liquid formulation comprises about 5 mg/mL mannitol.  In certain embodiments, the liquid formulation comprises about 6 mg/mL mannitol.  In certain embodiments, the liquid formulation comprises about 0.06 mg/mL colloidal silicon dioxide.  In certain embodiments, liquid formulation comprises about 1 mg/mL enalapril, about 6 mg/mL mannitol and about 0.06 mg/mL colloidal silicon dioxide.

WSGR Docket No. 43060-701.201

SPI_0000218

[0014] In certain embodiments, the sweetener is sorbitol. In certain embodiments, the liquid formulation comprises an additional pharmaceutically acceptable excipient. In certain instances, the pharmaceutically acceptable excipient is a flavoring agent or preservative. In certain embodiments, the liquid formulation comprises water as the liquid vehicle. In certain embodiments, the liquid formulation comprises a syrup as the liquid vehicle.

[0015] In another aspect, the liquid formulation comprises (a) about 1 mg/ml enalapril or a pharmaceutically acceptable salt thereof, (b) about 6 mg/ml mannitol, (c) about .07 mg/ml colloidal silicon dioxide, and (d) a sweetener, wherein the liquid formulation maintains an $80 – 125 \%$ $C_{max}$ of 58 ng/mL following oral administration at a 10 mg enalapril dosage for at least 12 weeks.

[0016] In some embodiments, when the liquid formulation is stored at up to 12 weeks at ambient or refrigerated conditions after reconstitution, the liquid formulation provides an $80 – 125 \%$ $C_{max}$ of 58 ng/mL enalapril following oral administration at a 10 mg enalapril dosage. In some embodiments, when the liquid formulation is stored at up to 12 weeks at ambient or refrigerated conditions, the liquid formulation provides an $80 – 125 \%$ $C_{max}$ of 41 ng/mL enalaprilat following oral administration at a 10 mg enalapril dosage.

[0017] In some embodiments, when the liquid formulation is stored at up to 12 weeks at ambient or refrigerated conditions after reconstitution, the liquid formulation provides an $80 – 125 \%$ $AUC_{inf}$ of 102.6 h*ng/mL enalapril following oral administration at a 10 mg enalapril dosage. In some embodiments, when the liquid formulation is stored at up to 12 weeks at ambient or refrigerated conditions, the liquid formulation provides an $80 – 125 \%$ $AUC_{inf}$ of 405.3 h*ng/mL enalaprilat following oral administration at a 10 mg enalapril dosage.

[0018] In some embodiments, when the liquid formulation is stored at up to 12 weeks at ambient or refrigerated conditions after reconstitution, the liquid formulation provides an $80 – 125 \%$ $T_{max}$ of 0.87 h for enalapril following oral administration at a 10 mg enalapril dosage. In some embodiments, when the liquid formulation is stored at up to 12 weeks at ambient or refrigerated conditions, the liquid formulation provides an $80 – 125 \%$ $T_{max}$ of 3.45 h for enalaprilat following oral administration at a 10 mg enalapril dosage.

[0019] Also provided herein are processes for preparing an enalapril oral liquid formulation. In one aspect, the process comprises the steps of (i) providing an uniform powder comprising about 10 to about 20 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, about 60 to about 90 % (w/w) mannitol, and about 0.5 to about 1 % (w/w) colloidal silicon dioxide in a bottle; (ii) adding an amount of sweetener in liquid syrup form; (iii) shaking the liquid formulation for at least 10 seconds; (iv) adding a second amount of sweetener in liquid syrup form; (v) shaking the liquid formulation for

                                           WSGR Docket No. 43060-701.201

SPI_0000219

at least 10 seconds; and (vi) allowing the formulation in the bottle to stand for at least one hour to allow bubble dissipation.

[0020] Also provided herein are methods of treating hypertension or heart failure comprising administering to a patient in need thereof an oral liquid formulation reconstituted from an enalapril powder as described herein. In one embodiment, the patient is a child. In another embodiment, the patient is elderly.

## INCORPORATION BY REFERENCE

[0021] All publications, patents, and patent applications mentioned in this specification are herein incorporated by reference to the same extent as if each individual publication, patent, or patent application was specifically and individually indicated to be incorporated by reference.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0022] The novel features of the invention are set forth with particularity in the appended claims. A better understanding of the features and advantages of the present invention will be obtained by reference to the following detailed description that sets forth illustrative embodiments, in which the principles of the invention are utilized, and the accompanying drawings of which:

[0023] FIG. 1: Scaled-up enalapril powder composition A blended for 60 minutes showing formulation of balls and segregation.

[0024] FIG. 2: Reconstitution of various enalapril powder compositions: enalapril and mannitol (2A), neat enalapril (2B), and enalapril, mannitol and colloidal silicon dioxide (2C).

[0025] FIG. 3: Mean enalapril concentration-time profiles (linear, *top*; log, *bottom*) after administration of test formulation – fasted (Treatment A), reference product – fasted (Treatment B), and test formulation – fed (Treatment C).

[0026] FIG. 4: Mean enalaprilat concentration-time profiles (linear, *top*; log, *bottom*) after administration of test formulation – fasted (Treatment A), reference product – fasted (Treatment B), and test formulation – fed (Treatment C).

## DETAILED DESCRIPTION OF THE INVENTION

[0027] Provided herein are stable enalapril powder compositions for oral liquid administration. Also provided herein are stable enalapril oral liquid compositions. These enalapril compositions described herein are useful for the treatment of hypertension, heart failure as well as ventricular dysfunction. The compositions are advantageous over conventional solid dosage administration of

WSGR Docket No. 43060-701.201

SPI_0000220

enalapril ranging from ease of administration, better absorption, accessibility to additional patient populations such as to children and the elderly, and an increased patient compliance to medication.

[0028] It is generally known that certain segments of the population have difficulty ingesting and swallowing solid oral dosage forms such as tablets and capsules.  As many as a quarter of the total population has this difficulty.  Often, this leads to non-compliance with the recommended medical therapy with the solid dosage forms, thereby resulting in rending the therapy ineffective.  Further, solid dosage forms are not recommended for children or elderly due to increased risk in choking.

[0029] For enalapril, the current solution to overcoming the use of the tablet form is for a compounding pharmacist to pulverize and crush the enalapril tablet(s) into a powder via mortar and pestle and reconstitute the powder in some liquid form.  However forming a enalapril oral liquid in this fashion has significant drawbacks including large variability in the actual dosage, incomplete solubilizing of the enalapril tablet in the liquid, rapid instability, inconsistent  formulation methods per compounding pharmacy, and a number other potential issues.  The crushed tablet liquid formulation may also be potentially unsafe due to contamination with residual drugs and other substances from the mortar and pestle or other crushing agent.

[0030] The present embodiments provide a safe and effective oral administration of enalapril for the treatment of hypertension and other disorders.  In particular, the embodiments provide stable enalapril oral liquid compositions as well as enalapril powder compositions for oral liquid administration.

[0031] As used herein, "enalapril" refers to enalapril base, its salt, or solvate or derivative or isomer or polymorph thereof. Suitable compounds include the free base, the organic and inorganic salts, isomers, isomer salts, solvates, polymorphs, complexes etc.  U.S. Pat. Nos. 4,374,829; 4,472,380 and 4,510,083 disclose exemplary methods in the preparation of enalapril.  In some embodiments, the enalapril used in the compositions described herein is an enalapril salt.  In some instances, the enalapril salt is enalapril maleate.  In other instances, the enalapril salt is in the form of enalapril sodium.

[0032] Other ACE inhibitors are contemplated in the formulations within and include but are not limited to quinapril, indolapril, ramipril, perindopril, lisinopril, benazepril, imidapril, zofenopril, trandolapril, fosinopril, captopril, and their salts, solvates, derivatives, polymorphs, complexes, thereof.


**Enalapril Powder Compositions**

WSGR Docket No. 43060-701.201

SPI_0000221

[0033] In one aspect, enalapril powder compositions herein comprise enalapril and mannitol as a stabilizing agent. By itself, enalapril is temperature stable under dry or stable conditions. However, when mixed in a matrix such as in a tablet with additional excipients, enalapril is unstable and can degrade to an unwanted cyclized diketopiperazine (DKP).



Enalapril                                    Diketopiperazine

[0034] It is contemplated that lactose in enalapril solid tablet formulations aid in preventing degradation to diketopiperazine and/or other related substances. However, surprisingly, as shown in Example 1, powder blends of lactose with enalapril showed the greatest degradation whereas enalapril/mannitol powder was most stable under accelerated conditions. This was also observed for the prepared solutions from the powder blends (Example 2).

[0035] In some embodiments, enalapril is present in about 1 % w/w to about 30 % w/w of the powder composition. In some embodiments, enalapril is present in about 2 % w/w to about 25 % w/w, about 5 % w/w to about 20 % w/w, about 7 % w/w to about 18 % w/w, about 10 % w/w to about 16 % w/w, or about 12 % w/w to about 15 % w/w of the powder composition. In other embodiments, enalapril is present in about 1 % w/w, about 2 % w/w, about 3 % w/w, about 4 % w/w, about 5 % w/w, about 6 % w/w, about 7 % w/w, about 8 % w/w, about 9 % w/w, about 10 % w/w, about 11 % w/w, about 12 % w/w, about 13 % w/w, about 14 % w/w, about 15 % w/w, about 16 % w/w, about 17 % w/w, about 18 % w/w, about 19 % w/w, about 20 % w/w, about 21 % w/w, about 22 % w/w, about 23 % w/w, about 24 % w/w, about 25 % w/w, about 26 % w/w, about 27 % w/w, about 28 % w/w, about 29 % w/w or about 30 % w/w of the powder composition. In certain embodiments, enalapril is present in about 1 % w/w of the powder composition. In certain other embodiments, enalapril is present in about 2 % w/w of the powder composition. In certain other embodiments, enalapril is present in about 10 % w/w of the powder composition. In certain other embodiments, enalapril is present in about 14 % w/w of the powder composition. In certain other embodiments, enalapril is present in about 15 % w/w of the powder composition. In certain other embodiments, enalapril is present in about 20 % w/w of the powder composition.

WSGR Docket No. 43060-701.201

SPI_0000222

[0036] In some embodiments, mannitol is present in about 60 % w/w to about 99 % w/w of the powder composition.  In some embodiments, mannitol is present in about 65 % w/w to about 95 % w/w, about 70 % w/w to about 90 % w/w or about 75 % w/w to about 85 % w/w of the powder composition.  In other embodiments, mannitol is present in about 99 % w/w, about 98 % w/w, about 97 % w/w, about 96 % w/w, about 95 % w/w, about 94 % w/w, about 93 % w/w, about 92 % w/w, about 91 % w/w, about 90 % w/w, about 89 % w/w, about 88 % w/w, about 87 % w/w, about 86 % w/w, about 85 % w/w, about 84 % w/w, about 83 % w/w, about 82 % w/w, about 81 % w/w, about 80 % w/w, about 79 % w/w, about 78 % w/w, about 77 % w/w, about 76 % w/w, about 75 % w/w, about 74 % w/w, about 73 % w/w, about 72 % w/w, about 71 % w/w, about 70 % w/w, about 69 % w/w, about 68 % w/w, about 67 % w/w, about 66 % w/w, about 65 % w/w, about 64 % w/w, about 63 % w/w, about 62 % w/w, about 61 % w/w or about 60 % w/w of the powder composition.  In certain embodiments, mannitol is present in about 1 % w/w of the powder composition.  In certain other embodiments, mannitol is present in about 99 % w/w of the powder composition.  In certain other embodiments, mannitol is present in about 90 % w/w of the powder composition. In certain other embodiments, mannitol is present in about 85 % w/w of the powder composition. In certain other embodiments, mannitol is present in about 80 % w/w of the powder composition. In certain other embodiments, mannitol is present in about 70 % w/w of the powder composition. In certain other embodiments, mannitol is present in about 60 % w/w of the powder composition.

[0037] In further embodiments, the enalapril powder compositions herein comprises additional excipients including, but not limited, to buffering agents, glidants, preservatives, sweeteners, flavoring agents, coloring agents and thickeners.  Additional excipients such as bulking agents, tonicity agents and chelating agents are within the scope of the embodiments.

[0038] Buffering agents maintain the pH when enalapril powder compositions are reconstituted into a liquid form.  Non-limiting examples of buffering agents include, but are not limited to, sodium bicarbonate, potassium bicarbonate, magnesium hydroxide, magnesium lactate, magnesium glucomate, aluminum hydroxide, aluminum hydroxide/sodium bicarbonate co precipitate, a mixture of an amino acid and a buffer, a mixture of aluminum glycinate and a buffer, a mixture of an acid salt of an amino acid and a buffer, and a mixture of an alkali salt of an amino acid and a buffer. Additional buffering agents include sodium citrate, sodium tartarate, sodium acetate, sodium carbonate, sodium polyphosphate, potassium polyphosphate, sodium pyrophosphate, potassium pyrophosphate, disodium hydrogenphosphate, dipotassium hydrogenphosphate, trisodium phosphate, tripotassium phosphate, sodium acetate, potassium metaphosphate, magnesium oxide, magnesium hydroxide, magnesium carbonate, magnesium silicate, calcium acetate, calcium glycerophosphate,

SPI_0000223

calcium chloride, calcium hydroxide, calcium lactate, calcium carbonate, calcium bicarbonate, and other calcium salts. Some buffering agents also impart effervescent qualities when a powder is reconstituted in a solution. In some embodiments, the enalapril powder compositions described herein comprise a buffering agent.

[0039] Glidants are substances that improve flowability of a powder. Suitable glidants include, but are not limited to, calcium phosphate tribasic, calcium silicate, cellulose (powdered), colloidal silicon dioxide, magnesium silicate, magnesium trisilicate, silicon dioxide, starch, talc and the like. In some embodiments, the enalapril powder compositions described herein comprise a glidant. In certain instances, enalapril powder compositions described herein comprise colloidal silicon dioxide.

[0040] Preservatives include anti-microbials, anti-oxidants, and agents that enhance sterility. Exemplary preservatives include ascorbic acid, ascorbyl palmitate, BHA, BHT, citric acid, erythorbic acid, fumaric acid, malic acid, propyl gallate, sodium ascorbate, sodium bisulfate, sodium metabisulfite, sodium sulfite, parabens (methyl-, ethyl-, butyl-), benzoic acid, potassium sorbate, vanillin, and the like. In some embodiments, the enalapril powder compositions described herein comprise a preservative.

[0041] Sweeteners or sweetening agents include any compounds that provide a sweet taste. This includes natural and synthetic sugars, natural and artificial sweeteners, natural extracts and any material that initiates a sweet sensation in a subject. In some embodiments, the enalapril powder compositions described herein comprise a sweetener. Solid, powder sweeteners, in some embodiments, are blended with the enalapril powder compositions described herein. In other embodiments, sweeteners in liquid form referred to as syrups are used to solvate or dissolve the enalapril powder compositions described herein.

[0042] Sugars illustratively include glucose, fructose, sucrose, xylitol, tagatose, sucralose, maltitol, isomaltulose, Isomalt[TM] (hydrogenated isomaltulose), lactitol, sorbitol, mannitol, erythritol, trehalose, maltodextrin, polydextrose, and the like. Other sweeteners illustratively include glycerin, inulin, erythritol, maltol, acesulfame and salts thereof, e.g., acesulfame potassium, alitame, aspartame, neotame, sodium cyclamate, saccharin and salts thereof, e.g., saccharin sodium or saccharin calcium, neohesperidin dihydrochalcone, stevioside, thaumatin, and the like. Sweeteners can be used in the form of crude or refined products such as hydrogenated starch hydrolysates, maltitol syrup, high fructose corn syrup, etc., and as branded products, e.g., Sweet Am[TM] liquid (Product Code 918.003--propylene glycol, ethyl alcohol, and proprietary artificial flavor combination, Flavors of North America) and Sweet Am[TM] powder (Product Code 918.005--maltodextrin, sorbitol, and fructose combination and Product Code 918.010--water, propylene

WSGR Docket No. 43060-701.201

SPI_0000224

glycol, sorbitol, fructose, and proprietary natural and artificial flavor combination, Flavors of North America), ProSweet™ (1-10% proprietary plant/vegetable extract and 90-99% dextrose combination, Viriginia Dare), Maltisweet™ (maltitol solution, Ingredion) and Sorbo™ (sorbitol and sorbitol/xylitol solution, SPI Polyols), Invertose™ (high fructose corn syrup, Ingredion) and Ora-Sweet® sugar-free flavored syrup (Paddock Laboratories, Inc.). Sweeteners can be used singly or in combinations of two or more. Suitable concentrations of different sweeteners can be selected based on published information, manufacturers' data sheets and by routine testing. In certain instances, an above-described syrup is used to solvate or dissolve the enalapril powder compositions described herein. In further instances, Ora-Sweet® sugar-free flavored syrup is used to solvate or dissolve the enalapril powder compositions described herein.

[0043] In some embodiments, the sweetener imparts a sweet sensation equivalent to an about 50 % to about 95% w/v sucrose in water. In some embodiments, the sweetener imparts a sweet sensation equivalent to an about 50 % w/v, about 55 % w/v, about 60 % w/v, about 65 % w/v, about 70 % w/v, about 75% w/v, about 85 % w/v (e.g., simple syrup NF), about 90 % w/v, or about 95 % w/v sucrose in water. In some embodiments, the sweetener imparts a sweet sensation equivalent to an about 60 % to about 80% w/v sorbitol in water. In some embodiments, the sweetener imparts a sweet sensation equivalent to an about 60 % w/v, about 65 % w/v, about 70 % w/v, about 75 % w/v or about 80 % w/v sorbitol in water. In some embodiments, the sweetener imparts a sweet sensation equivalent to an about 64 % w/v sorbitol in water.

[0044] In another embodiment, the enalapril powder compositions comprise a flavoring agent or flavorant to enhance the taste or aroma of the composition in liquid form. Suitable natural or synthetic flavoring agents can be selected from standard reference books, for example Fenaroli's Handbook of Flavor Ingredients, 3rd edition (1995). Non-limiting examples of suitable natural flavors, some of which can readily be simulated with synthetic agents or combinations thereof, include almond, anise, apple, apricot, bergamot, blackberry, blackcurrant, blueberry, cacao, caramel, cherry, cinnamon, clove, coffee, coriander, cranberry, cumin, dill, eucalyptus, fennel, fig, ginger, grape, grapefruit, guava, hop, lemon, licorice, lime, malt, mandarin, molasses, nutmeg, orange, peach, pear, peppermint, pineapple, raspberry, rose, spearmint, strawberry, tangerine, tea, vanilla, wintergreen, etc. Also useful, particularly where the composition is intended primarily for pediatric use, is tutti-frutti or bubblegum flavor, a compounded flavoring agent based on fruit flavors. Presently preferred flavoring agents include anise, cinnamon, cacao, orange, peppermint, cherry (in particular wild cherry), grape, bubblegum and vanilla. In some embodiments, the enalapril powder

compositions described herein comprise a wild cherry flavoring agent. Flavoring agents can be used singly or in combinations of two or more.

[0045] In further embodiments, the enalapril powder compositions comprise a coloring agent for identity and/or aesthetic purposes of the resultant liquid form. Suitable coloring agents illustratively include FD&C Red No. 3, FD&C Red No. 20, FD&C Red No. 40, FD&C Yellow No. 6, FD&C Blue No. 2, D&C Green No. 5, D&C Orange No. 5, caramel, ferric oxide and mixtures thereof.

[0046] Thickeners impart viscosity or weight to the resultant liquid forms from the enalapril compositions described herein. Exemplary thickeners include dextrin, cellulose derivatives (ethylcellulose, hydroxyethyl cellulose, methylcellulose, hypromellose, and the like) starches, pectin, polyethylene glycol, polyethylene oxide, trehalose and certain gums (xanthan gum, locust bean gum, etc.). In certain embodiments, the enalapril powder compositions comprise a thickener.

[0047] Additional excipients are contemplated in the enalapril powder composition embodiments. These additional excipients are selected based on function and compatibility with the enalapril powder compositions described herein and may be found, for example in *Remington: The Science and Practice of Pharmacy,* Nineteeth Ed (Easton, PA: Mack Publishing Company, 1995); Hoover, John E., *Remington's Pharmaceutical Sciences,* (Easton, PA: Mack Publishing Co 1975); Liberman, H.A. and Lachman, L., Eds., *Pharmaceutical Dosage Forms* (New York, NY: Marcel Decker 1980); and *Pharmaceutical Dosage Forms and Drug Delivery Systems*, Seventh Ed (Lippincott Williams & Wilkins 1999), herein incorporated by reference in their entirety.

[0048] In certain embodiments, an additional excipient is present in about 1 % w/w to about 30 % w/w of the enalapril powder composition. In certain embodiments, an additional excipient is present in about 2 % w/w to about 25 % w/w, about 5 % w/w to about 20 % w/w, about 7 % w/w to about 15 % w/w or about 10 % w/w to about 12 % w/w of the enalapril powder composition. In other embodiments, an additional excipient is present in about 1 % w/w, about 2 % w/w, about 3 % w/w, about 4 % w/w, about 5 % w/w, about 6 % w/w, about 7 % w/w, about 8 % w/w, about 9 % w/w, about 10 % w/w, about 11 % w/w, about 12 % w/w, about 13 % w/w, about 14 % w/w, about 15 % w/w, about 16 % w/w, about 17 % w/w, about 18 % w/w, about 19 % w/w, about 20 % w/w, about 21 % w/w, about 22 % w/w, about 23 % w/w, about 24 % w/w, about 25 % w/w, about 26 % w/w, about 27 % w/w, about 28 % w/w, about 29 % w/w or about 30 % w/w of the enalapril powder composition.

*Preparation of Enalapril Powder Compositions*

[0049] Preparation of enalapril powder compositions described herein includes any known pharmaceutical method. In one embodiment, the enalapril powder compositions described herein are

prepared by a granulation method.  In an exemplary granulation method, enalapril is dissolved in water or a solution (e.g., sodium bicarbonate) which is subsequently sprayed onto mannitol.  The wetted material is then dried via heat (e.g., 40°-60°C oven) or air-dried.  The dried granulation is then passed through a 40-mesh screen, for example.

[0050]  In another embodiment, the enalapril powder compositions described herein are prepared by a direct blend method. In one example, enalapril is blended with mannitol along with any other excipients in a dry mixer or blender.  In certain instances, the powders are passed through a mesh screen prior to and/or after mixing.  The dry blend is facilitated by conventional large-scale mixing equipment such as rotating-shell mixers (e.g., drum-type, cubical shaped, double-cone and twin-shell blender), fixed-shell (ribbon) mixers, sigma-blade and planetary paddle mixers, vertical impeller mixers and motionless mixers.  The mixing is performed to blend uniformity of the enalapril powder compositions described herein.  In embodiments with additional excipients, mixing methods can include all components together or incorporate certain components together first with other components subsequently added.

[0051]  In an additional embodiment, the enalapril powder compositions described herein additionally comprise colloidal silicon dioxide in scale-up preparation.  Although colloidal silicon dioxide has been reported to decrease stability of enalapril, (Rezende *et al.,* Stability and Compatibility Study on Enalapril Maleate using Thermoanalytical Techniques, *J. Thermal Anal. & Calorimetry*, 2008 (93) 881-886), the addition of colloidal silicon dioxide surprisingly aided in the uniformity of the blend and the bottle content as well as in preparation of the liquid form (see Example 4).

[0052]  In some embodiments, colloidal silicon dioxide is present in about 0.1 % w/w to about 2 % w/w of the powder composition.  In some embodiments, colloidal silicon dioxide is present in about 0.1 % w/w to about 2 % w/w, about 0.2 % w/w to about 1.7 % w/w, about 0.3 % w/w to about 1.5 %, about 0.4 % w/w to about 1.2 % or about 0.5 % w/w to about 1.0 % w/w of the powder composition.  In other embodiments, colloidal silicon dioxide is present in about 0.1 % w/w, about 0.2 % w/w, about 0.3 % w/w, about 0.4 % w/w, about 0.5 % w/w, about 0.6 % w/w, about 0.7 % w/w, about 0.8 % w/w, about 0.9 % w/w, about 1.0 % w/w, about 1.1 % w/w, about 1.2 % w/w, about 1.3 % w/w, about 1.4 % w/w, about 1.5 % w/w, about 1.6 % w/w, about 1.7 % w/w, about 1.8 % w/w, about 1.9 % w/w or about 2.0 % w/w of the powder composition.  In certain embodiments, colloidal silicon dioxide is present in about 0.1 % w/w of the powder composition.  In certain other embodiments, colloidal silicon dioxide is present in about 0.5 % w/w of the powder composition.  In certain other embodiments, colloidal silicon dioxide is present in about 1.0 % w/w of the powder

WSGR Docket No. 43060-701.201

SPI_0000227

composition. In certain other embodiments, colloidal silicon dioxide is present in about 1.2 % w/w of the powder composition. In certain other embodiments, colloidal silicon dioxide is present in about 1.5 % w/w of the powder composition. In certain other embodiments, colloidal silicon dioxide is present in about 1.7 % w/w of the powder composition. In certain other embodiments, colloidal silicon dioxide is present in about 2.0 % w/w of the powder composition.

*Stability of Enalapril Powder Compositions*

[0053] The enalapril powder compositions described herein are stable in various storage conditions including refrigerated, ambient and accelerated conditions. Stable as used herein refer to enalapril powder compositions having about 95 % enalapril and about 5 % or less total impurities or substances at the end of a given storage period. Stability is assessed by HPLC or any other known testing method. In some embodiments, the stable enalapril powder compositions have about 5 %, about 4 %, about 3 %, about 2.5 %, about 2 %, about 1.5 %, about 1 %, or about 0.5 % total impurities or substances. In other embodiments, the stable enalapril powder compositions have about 5 % total impurities or substances. In yet other embodiments, the stable enalapril powder compositions have about 4 % total impurities or substances. In yet other embodiments, the stable enalapril powder compositions have about 3 % total impurities or substances. In yet other embodiments, the stable enalapril powder compositions have about 2 % total impurities or substances. In yet other embodiments, the stable enalapril powder compositions have about 1 % total impurities or substances. In further embodiments, the stable enalapril powder compositions have about 95 %, about 96 %, about 97 %, about 98 % or about 99 % enalapril at the end of a given storage period.

[0054] At refrigerated and ambient conditions, the enalapril powder compositions described herein are stable for at least 1 month, at least 2 months, at least 3 months, at least 6 months, at least 9 months, at least 12 months, at least 15 months, at least 18 months, at least 24 months, at least 30 months and at least 36 months. At accelerated conditions, the enalapril powder compositions described herein are stable for at least 1 month, at least 2 months, at least 3 months, at least 4 months, at least 5 months, at least 6 months, at least 7 months, at least 8 months, at least 9 months, at least 10 months, at least 11 months or at least 12 months. Accelerated conditions include temperature and/or relative humidity (RH) that are above ambient levels (e.g. 25±5°C; 55±10% RH). In some instances, an accelerated condition is at about 30 °C, about 35 °C, about 40 °C, about 45 °C, about 50 °C, about 55 °C or about 60 °C. In other instances, an accelerated condition is above 65 % RH, about 70 % RH, about 75 % RH or about 80 % RH. In further instances, an accelerated condition is about 40 °C or 60 °C at ambient humidity. In yet further instances, an accelerated

SPI_0000228

condition is about 40 °C at 75±5 % RH humidity. Ambient conditions include temperature and/or relative humidity (RH) that are at ambient levels (e.g. 25±5°C; 55±10% RH). In some instances, an ambient condition is at about 20 °C, about 21 °C, about 22 °C, about 23 °C, about 24 °C, about 25 °C, about 26 °C, about 27 °C, about 28 °C, about 29 °C, or about 30 °C. In other instances, an ambient condition is about 45 % RH, about 50 % RH, about 55 % RH, about 60 % RH or about 65 % RH. Refrigerated conditions include temperature and/or relative humidity (RH) in typical refrigeration units (e.g., 5±3°C). In some instances, a refrigerated condition is at about 2 °C, about 3 °C, about 4 °C, about 5 °C, about 6 °C, about 7 °C or about 8 °C. In other instances, a a refrigerated condition is at about 4 °C.

## Enalapril Oral Liquid Compositions

[0055] In another aspect, enalapril powder compositions described herein are useful for the preparation or reconstitution of an enalapril oral liquid. Oral liquids include, but are not limited to, solutions (both aqueous and nonaqueous), suspensions, emulsions, syrups, slurries, juices, elixirs, dispersions, and the like. It is envisioned that solution/suspensions are also included where certain components of the enalapril powder compositions described herein are in a solution while other components are in a suspension. By way of illustrative example only, when an enalapril powder composition comprising enalapril, mannitol and an excipient such as colloidal silicon dioxide or a powdered cellulose is dissolved in water or other aqueous solvent, the enalapril and mannitol are in solution whereas the colloidal silicon dioxide or powdered cellulose would form a suspension in the aqueous environment. In some embodiments, the enalapril oral liquid compositions are solutions. In other embodiments, the enalapril oral liquid compositions are suspensions. In yet other embodiments, the enalapril oral liquid compositions are solution/suspensions.

[0056] Liquid vehicles suitable for the enalapril powder compositions described herein are selected for a particular oral liquid composition (solution, suspension, etc.) as well as other qualities such as clarity, toxicity, viscosity, compatibility with excipients, chemical inertness, palatability, odor, color and economy. Exemplary liquid vehicles include water, ethyl alcohol, glycerin, propylene glycol, syrup (sugar or other sweetener based, e.g., Ora-Sweet® SF sugar-free flavored syrup), juices (apple, grape, orange, cranberry, cherry, tomato and the like), other beverages (tea, coffee, soft drinks, milk and the like), oils (olive, soybean, corn, mineral, castor and the like), and combinations or mixtures thereof. Certain liquid vehicles, e.g., oil and water, can be combined together to form emulsions. In some embodiments, water is used for as a vehicle for an enalapril oral liquid. In other embodiments,

SPI_0000229

a syrup is used for as a vehicle for an enalapril oral liquid.  In yet other embodiments, a juice is used for as a vehicle for an enalapril oral liquid.

[0057] The enalapril liquids prepared from the powder compositions described herein, in some embodiments, are homogenous.  Homogenous liquids as used herein refer to those liquids that are uniform in appearance, identity, consistency and drug concentration per volume.  Non-homogenous liquids include such liquids that have varied coloring, viscosity and/or aggregation of solid particulates, as well as non-uniform drug concentration in a given unit volume.  Homogeneity in liquids are assessed by qualitative identification or appearance tests and/or quantitative HPLC testing or the like.  Such exemplary tests  include visual inspection of the resultant liquid for air bubbles and/or undissolved solids which may cause variable dosing.  Analytical HPLC testing can also determine drug concentration uniformity by examining aliquots of certain volume sections (e.g., 5 or 10 mL from the top, middle and bottom of a 150 mL bottle).  The mixing methods and excipients described herein are selected to impart a homogenous quality to a resultant enalapril liquid.

[0058] Mixing methods encompass any type of mixing that results in a homogenous enalapril liquid composition.  In some embodiments, a quantity of an enalapril powder composition is added to a liquid vehicle and then mixed by a stirring, shaking, swirling, agitation element or a combination thereof.  In certain instances, a fraction of an enalapril powder composition (i.e., one-half, one-third, one-fourth, etc.) is added to a liquid vehicle, mixed by stirring, shaking, swirling, agitation or a combination thereof, and the subsequent powder fraction(s) is added and mixed.  In other embodiments, a liquid vehicle is added to an enalapril powder composition in a container, for example, a bottle, vial, bag, beaker, syringe, or the like.  The container is then mixed by stirring, shaking, swirling, agitation, inversion or a combination thereof.  In certain instances, a fractional volume of the liquid vehicle (i.e., one-half, one-third, one-fourth volume, etc.) is added to an enalapril powder composition in a container, mixed by stirring, shaking, swirling, agitation, inversion or a combination thereof; and the subsequent liquid fraction(s) is added and mixed.  In certain instances, a one-half fractional volume of the liquid vehicle is added to an enalapril powder composition in a container and mixing by shaking; the other one-half fractional volume of the liquid vehicle is then subsequently added and mixed.  In any of the above embodiments, mixing (i.e., stirring, shaking, swirling, agitation, inversion or a combination thereof) occurs for a certain time intervals such as about 10 seconds, about 20 seconds, about 30 seconds, about 45 seconds, about 60 seconds, about 90 seconds, about 120 seconds, about 2.5 minutes, about 3 minutes, about 3.5 minutes, about 4 minutes, or about 5 minutes.  In embodiments, where there are two or more mixing steps, the time intervals for each mixing can be the same (e.g., 2x10 seconds) or different (e.g., 10

WSGR Docket No. 43060-701.201

SPI_0000230

seconds for first mixing and 20 seconds for second mixing).   In any of the above embodiments, an enalapril liquid composition is allowed to stand for a period of time such as about 10 minutes, about 20 minutes, about 30 minutes, about 45 minutes, about 1 hour, about 1.5 hours or about 2 hours, to allow any air bubbles resultant from any of the mixing methods to dissipate.

*Stability of Enalapril Oral Liquid Compositions*

[0059]  The enalapril oral liquid compositions described herein are stable in various storage conditions including refrigerated and ambient conditions.  Stable as used herein refer to enalapril oral liquid compositions having at least about 90 % enalapril and 5 % or less total impurities or substances at the end of a given storage period.  Stability is assessed by HPLC or any other known testing method.  In some embodiments, the stable enalapril oral liquid compositions have about 5 %, about 4 %, about 3 %, about 2.5 %, about 2 %, about 1.5 %, about 1 %, or about 0.5 % total impurities or substances.  In other embodiments, the stable enalapril oral liquid compositions have about 5 % total impurities or substances.  In yet other embodiments, the stable enalapril oral liquid compositions have about 4 % total impurities or substances.  In yet other embodiments, the stable enalapril oral liquid compositions have about 3 % total impurities or substances.  In yet other embodiments, the stable enalapril oral liquid compositions have about 2 % total impurities or substances.  In yet other embodiments, the stable enalapril oral liquid compositions have about 1 % total impurities or substances.  In further embodiments, the stable enalapril oral liquid compositions have at least about 90 %, at least about 91 %, at least about 92 %, at least about 93 %, or at least about 94 % enalapril at the end of a given storage period.

[0060]  At refrigerated and ambient conditions, in some embodiments, the enalapril oral liquid compositions described herein are stable for at least 1 week, 2 weeks, 4 weeks, 6 weeks, 8 weeks, 10 weeks, 12 weeks, 16 weeks, 20 weeks, at least 24 weeks, at least 30 weeks, or at least 36 weeks.  In other embodiments, the enalapril oral liquid compositions described herein are stable at refrigerated and ambient conditions for at least 12 weeks.  Ambient conditions include temperature and/or relative humidity (RH) that are at ambient levels (e.g. 25±5°C; 55±10% RH).  In some instances, an ambient condition is at about 20 °C, about 21 °C, about 22 °C, about 23 °C, about 24 °C, about 25 °C, about 26 °C, about 27 °C, about 28 °C, about 29 °C, or about 30 °C.  In other instances, an ambient condition is about 45 % RH, about 50 % RH, about 55 % RH, about 60 % RH or about 65 % RH.  Refrigerated conditions include temperature and/or relative humidity (RH) in typical refrigeration units (e.g., 5±3°C).  In some instances, a refrigerated condition is at about 2 °C, about 3 °C, about 4 °C, about 5 °C, about 6 °C, about 7 °C or about 8 °C.  In other instances, a a refrigerated condition is at about 4 °C.

SPI_0000231

[0061]  In further embodiments, the stable enalapril oral liquid compositions described herein that are stored at ambient or refrigerated conditions for a give storage period after reconstitution provide similar, consistent or equivalent pharmacokinetic parameters as an enalapril oral liquid composition that is formulated prior to administration to a subject (i.e., freshly made).  In other words, the enalapril oral liquid compositions described herein have stability after a storage period to provide similar, consistent or equivalent pharmacokinetic parameters as a freshly made enalapril oral liquid composition.  For example, a 12 week stable enalapril oral liquid composition provides similar, consistent or equivalent pharmacokinetic parameters as an enalapril oral liquid composition made five minutes prior administration.   Pharmacokinetic parameters include $C_{max}$, $T_{max}$, $AUC_{last}$, $AUC_{inf}$, $T_{1/2}$, $C_{last}$ for enalapril and/or enalaprilat and exemplary values are obtained and described in Example 7.  In some instances, the stable enalapril oral liquid compositions described herein provide within 80% to 125%, 80% to 120%, 85% to 125%, 90% to 110% pharmacokinetic parameters of a freshly made enalapril oral liquid composition when the stable composition is stored at least 1 week, 2 weeks, 4 weeks, 6 weeks, 8 weeks, 10 weeks, 12 weeks, 16 weeks, 20 weeks, at least 24 weeks, at least 30 weeks, or at least 36 weeks after reconstitution.  In other instances, the stable enalapril oral liquid compositions described herein provide within 80% to 125%, 80% to 120%, 85% to 125%, 90% to 110% pharmacokinetic parameters of a freshly made enalapril oral liquid composition when the stable composition is stored for 12 weeks after reconstitution.

**Kits and Articles of Manufacture**

[0062]  For the enalapril powder and liquid compositions described herein, kits and articles of manufacture are also described.  Such kits can comprise a carrier, package, or container that is compartmentalized to receive one or more containers such as vials, tubes, and the like, each of the container(s) comprising one of the separate elements to be used in a method described herein including an enalapril powder or liquid composition.  Suitable containers include, for example, bottles, vials, syringes, and test tubes.  The containers can be formed from a variety of materials such as glass or plastic.

[0063]  A kit will typically may comprise one or more additional containers, each with one or more of various materials (such as reagents, optionally in concentrated form, and/or devices) desirable from a commercial and user standpoint for an enalapril powder or liquid composition described herein.  Non-limiting examples of such materials include, but not limited to, buffers, diluents, filters, needles, syringes; carrier, package, container, vial and/or tube labels listing contents and/or

WSGR Docket No. 43060-701.201

SPI_0000232

instructions for use, and package inserts with instructions for use associated with an enalapril powder or liquid composition. A set of instructions will also typically be included.

[0064] A label can be on or associated with the container. A label can be on a container when letters, numbers or other characters forming the label are attached, molded or etched into the container itself; a label can be associated with a container when it is present within a receptacle or carrier that also holds the container, e.g., as a package insert. A label can be used to indicate that the contents are to be used for a specific therapeutic application. The label can also indicate directions for use of the contents, such as in the methods described herein.

## Methods

[0065] Provided herein, in one aspect, are methods of treatment comprising administration of the enalapril oral liquid compositions described herein to a subject. In some embodiments, the enalapril oral liquid compositions described herein treat hypertension in a subject. Hypertension as used herein includes both primary (essential) hypertension or secondary hypertension. In certain instances, hypertension is classified in cases when blood pressure values are greater than or equal to 140/90 (systolic/diastolic) mm Hg in a subject. In certain instances, the enalapril oral liquid compositions described herein treat a subject having a blood pressure values are greater than or equal to 140/90 mm Hg. In certain instances, the enalapril oral liquid compositions described herein treat primary (essential) hypertension in a subject. In other instances, the enalapril oral liquid compositions described herein treat secondary hypertension in a subject.

[0066] In other embodiments, the enalapril oral liquid compositions described herein treat prehypertension in a subject. Prehypertension as used herein refers to cases where a subject's blood pressure is elevated above normal but not to the level considered to be hypertension. In some instances, prehypertension is classified in cases when blood pressure values are 120-139/80-89 mm Hg. In certain instances, the enalapril oral liquid compositions described herein treat a subject having a blood pressure values of 120-139/80-89 mm Hg.

[0067] In yet other embodiments, the enalapril oral liquid compositions described herein are prophylactically administered to subjects suspected of having, predisposed to, or at risk of developing hypertension. In some embodiments, the administration of enalapril oral liquid compositions described herein allow for early intervention prior to onset of hypertension. In certain embodiments, upon detection of a biomarker, environmental, genetic factor, or other marker, the enalapril oral liquid compositions described herein are prophylactically administered to subjects.

WSGR Docket No. 43060-701.201

SPI_0000233

[0068] In further embodiments, the enalapril oral liquid compositions described herein treat heart failure (e.g., symptomatic congestive), asymptomatic left ventricular dysfunction, myocardial infarction, diabetic nephropathy and chronic renal failure.  In certain instances, the enalapril oral liquid compositions described herein treat symptomatic congestive heart failure.  In other instances, the enalapril oral liquid compositions described herein treat asymptomatic left ventricular dysfunction.  In further instances, the enalapril oral liquid compositions described herein treat myocardial infarction.  In yet further instances, the enalapril oral liquid compositions described herein treat diabetic nephropathy.  In yet further instances, the enalapril oral liquid compositions described herein treat chronic renal failure.

## Dosing

[0069] In one aspect, the enalapril oral liquid compositions are used for the treatment of diseases and conditions described herein.  In addition, a method for treating any of the diseases or conditions described herein in a subject in need of such treatment, involves administration of enalapril oral liquid compositions in therapeutically effective amounts to said subject.

[0070] Dosages of enalapril oral liquid compositions described can be determined by any suitable method.  Maximum tolerated doses (MTD) and maximum response doses (MRD) for enalapril and/or enalaprilat can be determined via established animal and human experimental protocols as well as in the examples described herein.  For example, toxicity and therapeutic efficacy of enalapril and/or enalaprilat can be determined by standard pharmaceutical procedures in cell cultures or experimental animals, including, but not limited to, for determining the $LD_{50}$ (the dose lethal to 50% of the population) and the $ED_{50}$ (the dose therapeutically effective in 50% of the population).  The dose ratio between the toxic and therapeutic effects is the therapeutic index and it can be expressed as the ratio between $LD_{50}$ and $ED_{50}$.  Enalapril dosages exhibiting high therapeutic indices are of interest.  The data obtained from cell culture assays and animal studies can be used in formulating a range of dosage for use in human.  The dosage of such compounds lies preferably within a range of circulating concentrations that include the $ED_{50}$ with minimal toxicity.  The dosage may vary within this range depending upon the dosage form employed and the route of administration utilized.  Additional relative dosages, represented as a percent of maximal response or of maximum tolerated dose, are readily obtained via the protocols.

[0071] In some embodiments, the amount of a given enalapril oral liquid composition that corresponds to such an amount varies depending upon factors such as the particular enalapril salt or form, disease condition and its severity, the identity (e.g., age, weight, sex) of the subject or host in

WSGR Docket No. 43060-701.201

SPI_0000234

need of treatment, but can nevertheless be determined according to the particular circumstances surrounding the case, including, *e.g.*, the specific agent being administered, the liquid composition type, the condition being treated, and the subject or host being treated.

[0072]  In some embodiments, the enalapril oral liquid compositions described herein are provided in a dose per day from about 0.01 mg to 100 mg, from about 0.1 mg to about 80 mg, from about 1 to about 60, from about 2 mg to about 40 mg of enalapril.  In certain embodiments, the enalapril oral liquid compositions described herein are provided in a daily dose of about 0.01 mg, about 0.05 mg, about 0.1 mg, about 0.2 mg, about 0.4 mg, about 0.6 mg, about 0.8 mg, about 1 mg, about 1.5 mg, about 2 mg, about 2.5 mg, about 3 mg, about 4 mg, about 5 mg, about 6 mg, about 7 mg, about 8 mg, about 9 mg, about 10 mg, about 11 mg, about 12 mg, about 15 mg, about 20 mg, about 25 mg, about 30 mg, about 35 mg, about 40 mg, about 45 mg, about 50 mg, about 55 mg, about 60 mg, about 65 mg, about 70 mg, about 76, mg, about 80 mg, about 85 mg, about 90 mg or about 100 mg, or any range derivable therein.  In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 1 mg.  In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 2 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 3 mg.  In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 4 mg.  In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 5 mg.  In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 6 mg.  In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 7 mg. In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 8 mg.  In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 9 mg.  In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 10 mg.  In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 11 mg.  In certain instances, the enalapril oral liquid compositions described herein are provided in a dose per day of about 12 mg.  The dose per day described herein can be given once per day or multiple times per day in the form of sub-doses given b.i.d., t.i.d., q.i.d., or the like where the number of sub-doses equal the dose per day.

[0073]  In further embodiments, the daily dosages appropriate for the enalapril oral liquid compositions described herein are from about 0.01 to about 1.0 mg/kg per body weight. In one embodiment, the daily dosages appropriate for the enalapril oral liquid compositions are from about

SPI_0000235

0.02 to about 0.8 mg/kg enalapril per body weight.  In another embodiment, the daily dosage appropriate for the enalapril oral liquid compositions are from about 0.05 to about 0.6 mg/kg per body weight.  In another embodiment, the daily dosage appropriate for the enalapril oral liquid compositions is about 0.05 mg/kg, about 0.06 mg/kg, about 0.07 mg/kg, about 0.08 mg/kg, about 0.10 mg/kg, about 0.15 mg/kg, about 0.20 mg/kg, about 0.25 mg/kg, about 0.30 mg/kg, about 0.40 mg/kg, about 0.50 mg/kg, or about 0.60 mg/kg.  In a further embodiment, the daily dosage appropriate for the enalapril oral liquid compositions is about 0.08 mg/kg.

[0074]  In other embodiments the enalapril oral liquid compositions are provided at the maximum tolerated dose (MTD) for enalapril and/or enalaprilat.  In other embodiments, the amount of the enalapril oral liquid compositions administered is from about 10% to about 90% of the maximum tolerated dose (MTD), from about 25% to about 75% of the MTD, or about 50% of the MTD. In particular embodiments, the amount of the enalapril oral liquid compositions administered is from about 5%, 10%, 15%, 20%, 25%, 30%, 35%, 40%, 45%, 50%, 55%, 60%, 65%, 70%, 75%, 80%, 85%, 90%, 95%, 99%, or higher, or any range derivable therein, of the MTD for enalapril and/or enalaprilat.

[0075]  In further embodiments, the enalapril oral liquid compositions are provided in a dosage that is similar, comparable or equivalent to a dosage of a known enalapril tablet formulation.  In other embodiments, the enalapril oral liquid compositions are provided in a dosage that provides a similar, comparable or equivalent pharmacokinetic parameters (e.g., AUC, $C_{max}$, $T_{max}$, $C_{min}$, $T_{1/2}$) as a dosage of a known enalapril tablet formulation.  Similar, comparable or equivalent pharmacokinetic parameters, in some instances, refer to within 80% to 125%, 80% to 120%, 85% to 125%, 90% to 110%, or increments therein, of the given values. It should be recognized that the ranges can, but need not be symmetrical, e.g., 85% to 105%.

## Administration

[0076]  Administration of a enalapril oral liquid composition is at a dosage described herein or at other dose levels and compositions determined and contemplated by a medical practitioner.  In certain embodiments, the enalapril oral liquid compositions described herein are administered for prophylactic and/or therapeutic treatments. In certain therapeutic applications, the enalapril oral liquid compositions are administered to a patient already suffering from a disease, e.g., hypertension, in an amount sufficient to cure the disease or at least partially arrest or ameliorate the symptoms, e.g., lower blood pressure. Amounts effective for this use depend on the age of the patient, severity of the disease, previous therapy, the patient's health status, weight, and response to the enalapril

WSGR Docket No. 43060-701.201

SPI_0000236

compositions, and the judgment of the treating physician. Therapeutically effective amounts are optionally determined by methods including, but not limited to, a dose escalation clinical trial.

[0077] In prophylactic applications, the enalapril oral liquid compositions described herein are administered to a patient susceptible to or otherwise at risk of a particular disease, e.g., hypertension. Such an amount is defined to be a "prophylactically effective amount or dose." In this use, the precise amounts also depend on the patient's age, state of health, weight, and the like. When used in a patient, effective amounts for this use will depend on the risk or susceptibility of developing the particular disease, previous therapy, the patient's health status and response to the enalapril compositions, and the judgment of the treating physician.

[0078] In certain embodiments wherein the patient's condition does not improve, upon the doctor's discretion the administration of an enalapril oral liquid composition described herein are administered chronically, that is, for an extended period of time, including throughout the duration of the patient's life in order to ameliorate or otherwise control or limit the symptoms of the patient's disease.  In other embodiments, administration of an enalapril oral liquid composition continues until complete or partial response of a disease.

[0079] In certain embodiments wherein a patient's status does improve, the dose of an enalapril oral liquid composition being administered may be temporarily reduced or temporarily suspended for a certain length of time (*i.e.*, a "drug holiday"). In specific embodiments, the length of the drug holiday is between 2 days and 1 year, including by way of example only, 2 days, 3 days, 4 days, 5 days, 6 days, 7 days, 10 days, 12 days, 15 days, 20 days, 28 days, 35 days, 50 days, 70 days, 100 days, 120 days, 150 days, 180 days, 200 days, 250 days, 280 days, 300 days, 320 days, 350 days, and 365 days. The dose reduction during a drug holiday is, by way of example only, by 10%-100%, including by way of example only 10%, 15%, 20%, 25%, 30%, 35%, 40%, 45%, 50%, 55%, 60%, 65%, 70%, 75%, 80%, 85%, 90%, 95%, and 100%.

[0080] In some embodiments, enalapril oral liquid compositions described herein are administered chronically.  For example, in some embodiments, an enalapril oral liquid composition is administered as a continuous dose, i.e., administered daily to a subject.  In some other embodiments, enalapril oral liquid compositions described herein are administered intermittently (e.g. drug holiday that includes a period of time in which the composition is not administered or is administered in a reduced amount).

[0081] In some embodiments an enalapril oral liquid composition is administered to a subject who is in a fasted state.  A fasted state refers to a subject who has gone without food or fasted for a certain period of time.  General fasting periods include at least 4 hours, at least 6 hours, at least 8 hours, at

WSGR Docket No. 43060-701.201

SPI_0000237

least 10 hours, at least 12 hours, at least 14 hours and at least 16 hours without food.  In some embodiments, an enalapril oral liquid composition is administered orally to a subject who is in a fasted state for at least 8 hours.  In other embodiments, an enalapril oral liquid composition is administered to a subject who is in a fasted state for at least 10 hours.  In yet other embodiments, an enalapril oral liquid composition is administered to a subject who is in a fasted state for at least 12 hours.  In other embodiments, an enalapril oral liquid composition is administered to a subject who has fasted overnight.

[0082]  In other embodiments an enalapril oral liquid composition is administered to a subject who is in a fed state. A fed state refers to a subject who has taken food or has had a meal.  In certain embodiments, an enalapril oral liquid composition is administered to a subject in a fed state 5 minutes post-meal, 10 minutes post-meal, 15 minutes post-meal, 20 minutes post-meal, 30 minutes post-meal, 40 minutes post-meal, 50 minutes post-meal, 1 hour post-meal, or 2 hours post-meal.  In certain instances, an enalapril oral liquid composition is administered to a subject in a fed state 30 minutes post-meal.  In other instances, an enalapril oral liquid composition is administered to a subject in a fed state 1 hour post-meal.  In yet further embodiments, an enalapril oral liquid composition is administered to a subject with food.

[0083]  In further embodiments described herein, an enalapril oral liquid composition is administered at a certain time of day for the entire administration period.  For example, an enalapril oral liquid composition can be administered at a certain time in the morning, in the evening, or prior to bed.  In certain instances, an enalapril oral liquid composition is administered in the morning.  In other embodiments, an enalapril oral liquid composition can be administered at different times of the day for the entire administration period.  For example, an enalapril oral liquid composition can be administered on 8:00 am in the morning for the first day, 12 pm noon for the next day or administration, 4 pm in the afternoon for the third day or administration, and so on.

## Further Combinations

[0084]  The treatment of certain diseases or conditions (e.g., hypertension, heart failure, myocardial infarction and the like) in a subject with an enalapril oral liquid composition described herein encompass additional therapies and treatment regimens with other agents in some embodiments. Such additional therapies and treatment regimens can include another therapy, e.g., additional anti-hypertensives,  for treatment of the particular disease or condition in some embodiments. Alternatively, in other embodiments, additional therapies and treatment regimens include other

WSGR Docket No. 43060-701.201

SPI_0000238

agents used to treat adjunct conditions associated with the disease or condition or a side effect from the enalapril oral liquid composition in the therapy.

[0085] Additional agents for use in combination with an enalapril oral liquid composition described herein include, but are not limited to, diuretics (loop, thiazide, potassium-sparing, and the like), beta blockers (metoprolol, propanolol, pronethalol, and the like), alpha blockers (phentolamine, phenoxybenzamine, tamsulosin, prazosin, and the like), mixed alpha and beta blockers (bucindolol, carvedilol, labetalol), calcium channel blockers (dihydropyridines such as nifedipine, amlodipine, etc., dilitazem, verapamil and the like), angiotensin II receptor antagonists (saralasin, lsartan, eprosartin, irbesartan, valsartan, and the like), other ACE inhibitors (captopril, quinapril, ramipril, lisinopril, zofenopril, and the like), aldosterone antagonists (eplerenone, spironolactone and the like), vasodilators (hydralazine and the like) and alpha-2 agonists (clonidine, moxonidine, guanabenz and the like).

## Certain Definitions

[0086] Unless defined otherwise, all technical and scientific terms used herein have the same meanings as commonly understood by one of ordinary skill in the art. Although any methods and materials similar or equivalent to those described herein can be used in the practice or testing of embodiments described herein, certain preferred methods, devices, and materials are now described.

[0087] As used herein and in the appended claims, the singular forms "a", "an", and "the" include plural reference unless the context clearly dictates otherwise. Thus, for example, reference to "an excipient" is a reference to one or more excipients and equivalents thereof known to those skilled in the art, and so forth.

[0088] The term "about" is used to indicate that a value includes the standard level of error for the device or method being employed to determine the value. The use of the term "or" in the claims is used to mean "and/or" unless explicitly indicated to refer to alternatives only or the alternatives are mutually exclusive, although the disclosure supports a definition that refers to only alternatives and to "and/or." The terms "comprise," "have" and "include" are open-ended linking verbs. Any forms or tenses of one or more of these verbs, such as "comprises," "comprising," "has," "having," "includes" and "including," are also open-ended. For example, any method that "comprises," "has" or "includes" one or more steps is not limited to possessing only those one or more steps and also covers other unlisted steps.

WSGR Docket No. 43060-701.201

SPI_0000239

[0089] "Optional" or "optionally" may be taken to mean that the subsequently described structure, event or circumstance may or may not occur, and that the description includes instances where the events occurs and instances where it does not.

[0090] As used herein, the term "therapeutic" means an agent utilized to treat, combat, ameliorate, prevent or improve an unwanted condition or disease of a patient. In some embodiments, a therapeutic agent such as enalapril is directed to the treatment and/or the amelioration of, reversal of, or stabilization of the symptoms of hypertension described herein.

[0091] "Administering" when used in conjunction with a therapeutic means to administer a therapeutic systemically or locally, as directly into or onto a target tissue, or to administer a therapeutic to a patient whereby the therapeutic positively impacts the tissue to which it is targeted. Thus, as used herein, the term "administering", when used in conjunction with an enalapril composition, can include, but is not limited to, providing an enalapril composition into or onto the target tissue; providing an enalapril composition systemically to a patient by, e.g., oral administration whereby the therapeutic reaches the target tissue or cells. "Administering" a composition may be accomplished by injection, topical administration, and oral administration or by other methods alone or in combination with other known techniques.

[0092] The term "animal" as used herein includes, but is not limited to, humans and non-human vertebrates such as wild, domestic and farm animals. As used herein, the terms "patient," "subject" and "individual" are intended to include living organisms in which certain conditions as described herein can occur. Examples include humans, monkeys, cows, sheep, goats, dogs, cats, mice, rats, and transgenic species thereof. In a preferred embodiment, the patient is a primate. In certain embodiments, the primate or subject is a human. In certain instances, the human is an adult. In certain instances, the human is child. In further instances, the human is under the age of 12 years. In certain instances, the human is elderly. In other instances, the human is 60 years of age or older. Other examples of subjects include experimental animals such as mice, rats, dogs, cats, goats, sheep, pigs, and cows. The experimental animal can be an animal model for a disorder, e.g., a transgenic mouse with hypertensive pathology. A patient can be a human suffering from hypertension, or its variants or etiological forms.

[0093] By "pharmaceutically acceptable", it is meant the carrier, diluent or excipient must be compatible with the other ingredients of the formulation and not deleterious to the recipient thereof.

[0094] The term "pharmaceutical composition" shall mean a composition comprising at least one active ingredient, whereby the composition is amenable to investigation for a specified, efficacious outcome in a mammal (for example, without limitation, a human). Those of ordinary skill in the art

WSGR Docket No. 43060-701.201

SPI_0000240

will understand and appreciate the techniques appropriate for determining whether an active ingredient has a desired efficacious outcome based upon the needs of the artisan.

[0095] A "therapeutically effective amount" or "effective amount" as used herein refers to the amount of active compound or pharmaceutical agent that elicits a biological or medicinal response in a tissue, system, animal, individual or human that is being sought by a researcher, veterinarian, medical doctor or other clinician, which includes one or more of the following: (1) preventing the disease; for example, preventing a disease, condition or disorder in an individual that may be predisposed to the disease, condition or disorder but does not yet experience or display the pathology or symptomatology of the disease, (2) inhibiting the disease; for example, inhibiting a disease, condition or disorder in an individual that is experiencing or displaying the pathology or symptomatology of the disease, condition or disorder (i.e., arresting further development of the pathology and/or symptomatology), and (3) ameliorating the disease; for example, ameliorating a disease, condition or disorder in an individual that is experiencing or displaying the pathology or symptomatology of the disease, condition or disorder (i.e., reversing the pathology and/or symptomatology).  As such, a non-limiting example of a "therapeutically effective amount" or "effective amount" of a composition of the present disclosure may be used to inhibit, block, or reverse the activation, migration, or proliferation of cells or to effectively treat hypertension or ameliorate the symptoms of hypertension.

[0096] The terms "treat," "treated," "treatment," or "treating" as used herein refers to both therapeutic treatment in some embodiments and prophylactic or preventative measures in other embodiments, wherein the object is to prevent or slow (lessen) an undesired physiological condition, disorder or disease, or to obtain beneficial or desired clinical results.  For the purposes described herein, beneficial or desired clinical results include, but are not limited to, alleviation of symptoms; diminishment of the extent of the condition, disorder or disease; stabilization (i.e., not worsening) of the state of the condition, disorder or disease; delay in onset or slowing of the progression of the condition, disorder or disease; amelioration of the condition, disorder or disease state; and remission (whether partial or total), whether detectable or undetectable, or enhancement or improvement of the condition, disorder or disease.  Treatment includes eliciting a clinically significant response without excessive levels of side effects.  Treatment also includes prolonging survival as compared to expected survival if not receiving treatment.  A prophylactic benefit of treatment includes prevention of a condition, retarding the progress of a condition, stabilization of a condition, or decreasing the likelihood of occurrence of a condition. As used herein, "treat," "treated," "treatment," or "treating" includes prophylaxis in some embodiments.

WSGR Docket No. 43060-701.201

SPI_0000241

# EXAMPLES

## Example 1: Stability of Enalapril Formulated Powder

[0097] *Enalapril Powder Formulation*: The stability of enalapril with lactose, sucrose or mannitol was assessed in various storage conditions. 2 % w/w enalapril powder was formulated via granulation according to the following table.

| Component | Amount in 150 mL Bottle (mg) | Weight (% w/w solids) | Batch (g) |
|---|---|---|---|
| Enalapril Maleate | 150 | 2.0 | 6.000 |
| Stability Agent (Lactose, Sucrose or Mannitol) | 7350 | 98.0 | 294.0 |
| Sodium Bicarbonate | --- | --- | 3.074 |
| Water | --- | --- | 25.00 |
| Total Solids | 7500 | 100.0 | 300.0 |

[0098] Enalapril Maleate was slowly dissolved in a 12 % sodium bicarbonate solution. The stability agent (lactose, sucrose or mannitol) was mixed in a mixer at slow speed and the enalapril solution was slowly sprayed onto the stability agent over a period of about 20 minutes. The wetted material was spread onto a dish and placed in a 60°C oven for at least 4 h. The dried granulation was passed through a 40-mesh screen.

[0099] *Stability Studies*: The effect of the three stability agents, lactose, mannitol and sucrose on the stability of the granulated powder was evaluated. 7.5 g of powder was placed in 8 oz amber, graduated PET bottles and stored under refrigerated, 25°C/60% Relative Humidity (RH), 40°C/ambient and 60°C/ambient conditions. At various time points the powder in the bottle was analyzed for enalapril by HPLC/UV analysis. The following tables depict the stability of enalapril+stability agent powder in bottle in the various storage conditions.

| 2 % w/w Enalapril/Lactose Powder in Bottle Formulation | | | | |
|---|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient | 60°C/ambient |
| 0 | 101.54 | 101.54 | 101.54 | 101.54 |
| 1 | 100.27 | 100.59 | 98.61 | 94.74 |
| 2 | 100.37 | 100.60 | 98.82 | 94.51 |
| 3 | 101.10 | 99.58 | 98.45 | 93.44 |
| 4 | 99.03 | 98.53 | 96.94 | 92.66 |

SPI_0000242

| | | | | |
|---|---|---|---|---|
| 8 | 100.23 | 99.63 | 98.89 | 90.56 |
| 12 | 102.20 | 99.53 | 100.02 | 89.76 |
| 26 | 101.28 | 95.83 | 97.89 | 75.57 |
| 52 | 101.50 | 91.90 | 93.70 | N/A |

| 2 % w/w Enalapril/Mannitol Powder in Bottle Formulation | | | | |
|---|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient | 60°C/ambient |
| 0 | 100.16 | 100.16 | 100.16 | 100.16 |
| 1 | 99.61 | 99.57 | 93.42 | 96.96 |
| 2 | 98.56 | 98.41 | 94.41 | 101.14 |
| 3 | 99.21 | 98.51 | 99.42 | 101.24 |
| 4 | 99.20 | 98.59 | 101.26 | 99.97 |
| 8 | 101.26 | 98.88 | 102.17 | 100.80 |
| 12 | 103.33 | 99.67 | 103.31 | 95.15 |
| 26 | 102.19 | 96.89 | 102.68 | 94.66 |
| 52 | 102.50 | 94.30 | 99.70 | N/A |

| 2 % w/w Enalapril/Sucrose Powder in Bottle Formulation | | | | |
|---|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient | 60°C/ambient |
| 0 | 98.68 | 98.68 | 98.68 | 98.68 |
| 2 | 97.67 | 100.60 | 98.87 | 99.92 |
| 4 | 97.40 | 100.50 | 98.97 | 99.06 |
| 8 | 98.40 | 99.56 | 98.83 | 97.74 |
| 12 | 97.17 | 98.47 | 97.13 | 94.97 |
| 26 | 97.90 | 96.40 | 99.00 | 93.50 |
| 52 | N/A | N/A | N/A | N/A |

[00100]      Based on the powder in bottle stability at accelerated conditions (25°C/60% RH, 40°C/ambient, 60°C/ambient), it was determined that the enalapril/mannitol formulation was the most stable.


**Example 2: Stability of Prepared Enalapril Solution**

**[00101]**    *Enalapril Solution Formulation*: 1.0 mg/mL enalapril solutions were prepared from the lactose and mannitol granulations (Example 1) made with the addition of OraSweet SF® flavored syrup and placed under refrigerated, 25°C/60% RH and 40°C/ambient conditions.  A enalapril/sucrose solution was prepared at 2 mg/mL concentration to evaluate the effect of the higher concentration on solution stability.  The following tables depict the stability of enalapril+stability agent solution in the various storage conditions.

| 1 mg/mL Enalapril/Lactose Prepared Solution | | | |
|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient |
| 0 | 101.66 | 101.66 | 101.66 |
| 1 | 100.63 | 100.33 | 97.18 |
| 2 | 101.35 | 99.77 | 93.69 |
| 3 | 101.25 | 98.68 | 90.03 |
| 4 | 100.65 | 97.25 | 86.21 |
| 8 | 101.27 | 94.19 | 73.69 |
| 12 | 102.15 | 92.99 | 65.91 |

| 1 mg/mL Enalapril/Mannitol Prepared Solution | | | |
|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient |
| 0 | 95.86 | 95.86 | 95.86 |
| 1 | 94.56 | 94.08 | 91.28 |
| 2 | 94.98 | 93.90 | 87.48 |
| 3 | 95.06 | 92.59 | 83.86 |
| 4 | 94.42 | 91.28 | 80.45 |
| 8 | 95.10 | 88.39 | 68.52 |
| 12 | 95.74 | 86.99 | 60.43 |

| 2 mg/mL Enalapril/Sucrose Prepared Solution | | | |
|---|---|---|---|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient |
| 0 | 99.16 | 99.16 | 99.16 |
| 2 | 101.1 | 98.71 | 89.05 |
| 4 | 101.3 | 95.48 | 79.86 |
| 8 | 99.79 | 90.35 | 62.94 |

SPI_0000244

| 12 | 99.40 | 86.18 | 40.24 |

[00102]    In the prepared solutions, the enalapril+mannitol solution was most stable at 40°C/ambient conditions.

## Example 3: Direct Blend Enalapril Powder Compositions

[00103]    *Enalapril Powder Composition A*: An enalapril powder composition as set forth in the following table is prepared.

| Component | Amount in 150 mL Bottle (mg) | Weight (% w/w solids) |
|---|---|---|
| Enalapril Maleate | 150 | 14.29 |
| Mannitol | 900 | 85.71 |
| Total Solids | 1050 | 100.0 |

[00104]    The composition is prepared by adding the components together.  The powder is then screened and direct blended until blend uniformity.

[00105]    *Enalapril Powder Composition B*: An enalapril powder composition as set forth in the following table is prepared.

| Component | Amount in 150 mL Bottle (mg) | Weight (% w/w solids) |
|---|---|---|
| Enalapril Maleate | 150 | 14.29 |
| Mannitol | 890 | 84.76 |
| Colloidal Silicon Dioxide | 10 | 0.95 |
| Total Solids | 1050 | 100.0 |

[00106]    The composition is prepared by adding the components together.  The powder is then screened and direct blended until blend uniformity.

[00107]    *Enalapril Powder Composition C*: An enalapril powder composition as set forth in the following table is prepared.

| Component | Amount in 150 mL Bottle (mg) | Weight (% w/w solids) |
|---|---|---|
| Enalapril Maleate | 150 | 14.29 |

SPI_0000245

| Mannitol | 590 | 56.19 |
|---|---|---|
| Colloidal Silicon Dioxide | 10 | 0.95 |
| Sorbitol | 300 | 28.57 |
| Total Solids | 1050 | 100.0 |

[00108]      The composition is prepared by adding the components together.  The powder is then screened and direct blended until blend uniformity.

[00109]      *Enalapril Powder Composition D*: An enalapril powder composition as set forth in the following table is prepared.

| Component | Amount in 150 mL Bottle (mg) | Weight (% w/w solids) |
|---|---|---|
| Enalapril Maleate | 150 | 12.5 |
| Mannitol | 590 | 49.17 |
| Colloidal Silicon Dioxide | 10 | 0.83 |
| Sorbitol | 300 | 25.0 |
| Wild Cherry Flavor | 150 | 12.5 |
| Total Solids | 1200 | 100.0 |

[00110]      *Enalapril Powder Composition E*: An enalapril powder composition as set forth in the following table is prepared.

| Component | Amount in 150 mL Bottle (mg) | Weight (% w/w solids) |
|---|---|---|
| Enalapril Maleate | 150 | 7.5 |
| Mannitol | 590 | 29.5 |
| Colloidal Silicon Dioxide | 10 | 0.5 |
| Sorbitol | 300 | 15 |
| Sodium Bicarbonate | 800 | 40 |
| Lemon Flavor | 150 | 7.5 |
| Total Solids | 2000 | 100.0 |

WSGR Docket No. 43060-701.201

SPI_0000246

**Example 4: Enalapril Composition Scale-up Optimization Studies**

[00111]     Scale-up studies investigated blend and bottle content uniformity

[00112]     *Blend and Bottle Content Uniformity of Enalapril Powder Composition A*: Enalapril Powder Composition A (150 mg enalapril, 900 mg mannitol/bottle) was scaled-up and the resultant formulation tested for blend and content uniformity.  For blend uniformity, 10 1g samples were taken from the blender (top front right, middle front right, bottom front, top front left, middle front left, top back right, middle back right, bottom back, top back left, and middle back left) by a suitable powder sampler at the below times.

| Blend Uniformity - Enalapril Powder Composition A | | |
|---|---|---|
| **Blending Time (min)** | **Avg drug assay (%)** | **%RSD** |
| 10 | 96.0 | 2.80 |
| 15 | 96.6 | 2.13 |
| 20 | 99.5 | 3.69 |

[00113]     Bottle content uniformity values were assessed via a hopper study after filling and capping the Enalapril Powder Composition blend into 150 mL bottles:

| Bottle Content Uniformity - Enalapril Powder Composition A | | | |
|---|---|---|---|
| **Time Point** | **Avg drug assay (%)** | **%RSD** | **Acc. Value (Limit ≤15)** |
| Beginning | 89.9 | 2.12 | 13.2 |
| Middle | 104.7 | 2.66 | 9.9 |
| End | 99.8 | 3.14 | 7.5 |

[00114]     The content uniformity study revealed that some segregation of the powder composition could have occurred post-blending.

[00115]     *Blend Time Variation for Enalapril Powder Composition A*: Blend time was assessed for possibility of contributing to segregation of the powder composition.  Blend time was shortened to 5 minutes and blend uniformity and bottle content uniformity was assessed as above:

| Blend Uniformity - Enalapril Powder Composition A | | |
|---|---|---|
| **Blending Time (min)** | **Avg drug assay (%)** | **%RSD** |
| 5 | 96.7 | 1.25 |
| **Bottle Content Uniformity - Enalapril Powder Composition A** | | |

| Study | Avg drug assay (%) | %RSD |
|---|---|---|
| Content Uniformity | 95.9 | 6.14 |
| By Weight | 97.7 | 6.69 |

[00116]    The high %RSD was observed in the bottle content uniformity studies indicating variance in the filling and capping of the drug powder composition.

[00117]    Blend time was changed back to 10 minutes in an attempt to optimize blend and fill, however, it was not successful.

[00118]    Lengthening the blend time to 20, 30, 40 and 60 minutes revealed the following observations:

| Blend Uniformity - Enalapril Powder Composition A | | |
|---|---|---|
| Blending Time (min) | Visual Observation | Avg drug assay (%) |
| 20 | Homogenous | 89.9, 102.8, 96.1 |
| 30 | Small round balls segregating in blend | 90.4, 90.1, 100.9 |
| 40 | Small round balls segregating in blend and gradually increasing in proportion | 105.4 |
| 60 | Much greater and clear segregation of round balls in the blend | 139.8; fines: 55.8 |

[00119]    FIG. 1 shows a visual depiction of the enalapril powder composition A blended for 60 minutes.  Thus, a lower blend time (e.g., about 10 – 20 minutes) is contemplated to be more optimal to prevent 'balling up' and segregation of the powder blend.

[00120]    The scaled-up enalapril and mannitol powder compositions (Enalapril Powder Composition A and the like) were examined in reconstitution studies where 150 mL Ora-Sweet® SF sugar-free flavored syrup was to the powder compositions.  Scaled-up enalapril and mannitol powder compositions such as Enalapril Powder Composition A did not dissolve in the syrup, but instead resulted in powder clumping and specking on the surface of the liquid, termed 'clouding'.  Various

SPI_0000248

enalapril and mannitol formulations were examined at different concentrations, which resulted in similar 'clouding'. FIG. 2A shows the clouding phenomenon from an exemplary enalapril and mannitol powder formulation.

[00121]     *Reconstitution of Neat Enalapril Powder in Bottle*: Due to the 'clouding' in the reconstitution as well as the uniformity issues in the scale-up studies of Enalapril Powder Composition A, neat enalapril, i.e., drug alone, without any excipients, was examined for scale-up bottle filling and subsequent reconstitution. It was observed that during reconstitution with 150 mL Ora-Sweet® SF sugar-free flavored syrup, the neat enalapril did not dissolve but floated on the surface of the liquid, even after 2 hours standing after reconstitution (FIG. 2B).

[00122]     *Colloidal Silicon Dioxide Addition to form Enalapril Powder Composition B*:

[00123]     Although colloidal silicon dioxide has been reported to decrease stability of enalapril (Rezende *et al.,* Stability and Compatibility Study on Enalapril Maleate using Thermoanalytical Techniques, *J. Thermal Anal. & Calorimetry*, 2008 (93) 881-886), the addition of colloidal silicon dioxide to an enalapril powder composition during scale-up resulted in improved and acceptable blend uniformity and bottle content uniformity levels. Enalapril Powder Composition B (150 mg enalapril, 890 mg mannitol, 10 mg colloidal silicon dioxide/bottle) was scaled-up and the resultant formulation tested for blend and content uniformity as described above. The blend and content uniformity assays showed that the addition of colloidal silicon dioxide imparted uniformity in the powder composition:

| Blend Uniformity - Enalapril Powder Composition B | | |
|---|---|---|
| Blending Time (min) | Avg drug assay (%) | %RSD |
| 10 | 99.8 | 1.34 |
| 10 | 99.7 | 1.08 |
| Bottle Content Uniformity - Enalapril Powder Composition B | | |
| Study | Avg drug assay (%) | %RSD |
| Content Uniformity | 102.6 | 1.98 |
| Content Uniformity | 98.5 | 2.77 |

[00124]     In reconstitution studies, surprisingly, the addition of colloidal silicon dioxide resulted in a solution that, upon visual inspection, was truly dissolved and homogenous (FIG. 2C).

SPI_0000249

[00125]        A lower amount of colloidal silicon dioxide was also studied (150 mg enalapril, 895 mg mannitol, 5 mg colloidal silicon dioxide/bottle).  However the enalapril powder composition had lower flowability than that of enalapril powder composition B.

[00126]        The stability of the enalapril powder and liquid composition with respect to the addition of colloidal silicon dioxide was analyzed in Example 6.

**Example 5: Additional Reconstitution Methods and Studies**

[00127]        The overall mixing efficiency and solution/suspension drug concentration homogeneity was evaluated over a series of mixing methods and times.

[00128]        *Mixing Method A*: 75 mL of Ora-Sweet® SF sugar-free flavored syrup was added to a 150 mL bottle of Enalapril Powder Composition B and the bottle was shaken vigorously.  A second 75 mL of Ora-Sweet® SF syrup was subsequently added and the bottle was shaken vigorously.

[00129]        *Observations:* The resultant liquid contained entrapped air bubbles.  It was determined that the bubbles would interfere with dosing as a variable volume of the liquid could be administered in dosing syringes for administration.

[00130]        *Mixing Method B*: 75 mL of Ora-Sweet® SF sugar-free flavored syrup was added to a 150 mL bottle of Enalapril Powder Composition B and the bottle was gently swirled. A second 75 mL of Ora-Sweet® SF syrup was subsequently added and the bottle was gently swirled.  The bottle was then inverted slowly for about 5 times.

[00131]        *Observations:* The gently swirling and subsequent inversions minimized the bubble formation.  However, in a clinical trial similar to Example 7, it was observed that the subjects had received a lower dose (about 1.30 mg) of enalapril rather than standard 10 mg dosage.  Based on this observation, it was determined that the mixing method did not introduce enough energy in the process and resulted in improper wetting and mixing of the powder.

[00132]        *Mixing Method C*: 150 mL bottle of Enalapril Powder Composition B was first tapped on a hard surface to disperse any powder caking.  75 mL of Ora-Sweet® SF sugar-free flavored syrup was added to the 150 mL bottle and the bottle was shaken for specified time intervals (10, 20, 30, 45 and 60 seconds).  A second 75 mL of Ora-Sweet® SF syrup was subsequently added and the bottle was shaken for the specified time interval.  Bubbles were allowed to dissipate (for at least one hour).  Two samples were taken immediately after the second shaking.  One sample was filtered through a 0.45 micron filter.  A third sample was taken 1 h after the second shaking and after any bubbles dissipated from the liquid.  The three samples were assayed by HPLC.  The mixing and homogeneity results are as follows:

| Mixing Method C: Enalapril by HPLC as % of 1 mg/mL | | | |
|---|---|---|---|
| Time (seconds) | Sample 1 (unfiltered) | Sample 2 (filtered) | Sample 3 (1 h) |
| 2 x 10 | 101.3 | 101.2 | 101.2 |
| 2 x 20 | 100.9 | 100.8 | 100.8 |
| 2 x 30 | 101.5 | 101.3 | 101.1 |
| 2 x 45 | 101.6 | 101.7 | 101.7 |
| 2 x 60 | 100.9 | 100.9 | 101.1 |

[00133]     *Observations*: There was no perceived difference observed between filtered and unfiltered samples indicating that the reconstituted enalapril liquid is not a suspension.  The addition of 75 mL of Ora-Sweet® SF syrup followed by shaking for 10 seconds and the addition of another 75 mL of Ora-Sweet® SF syrup followed by shaking for 10 seconds resulted in a homogenous solution.  All longer shaking times produced equivalent results.

**Example 6: Additional Stability Studies**

[00134]     *Powder Stability*: Enalapril Powder Composition B and its reconstituted oral liquid form were further investigated in stability studies.  1050 mg enalapril Powder Composition B in 150 mL white plastic bottles were examined for stability in $25\pm2°C/60\pm5\%$ RH at up to 9 months and $40\pm2°C/75\pm5\%$ RH (accelerated) conditions at up to 6 months.  At each given time point, enalapril and related substances were assayed via HPLC.  The below tables depict stability of the powder at the various conditions.

| Enalapril Powder Composition B - 25°C/60% RH | | | |
|---|---|---|---|
| Time (Months) | Enalapril (%) | Enalaprilat (%) | DKP (%) |
| 0 | 97.8 | 0.05 | 0.02 |
| 1 | 98.6 | 0.05 | 0.03 |
| 2 | 97.6 | 0.12 | 0.05 |
| 3 | 98.6 | 0.06 | 0.07 |
| 6 | 96.8 | 0.09 | 0.11 |
| 9 | 98.6 | 0.12 | 0.15 |

| Enalapril Powder Composition B - 40°C/75% RH | | | |
|---|---|---|---|
| Time (Months) | Enalapril (%) | Enalaprilat (%) | DKP (%) |

SPI_0000251

| 0 | 97.8 | 0.05 | 0.2 |
| 1 | 97.9 | 0.12 | 0.23 |
| 2 | 96.8 | 0.15 | 0.32 |
| 3 | 97.2 | 0.16 | 0.42 |
| 6 | 96.2 | 0.18 | 0.63 |

[00135]    Enalapril Powder Composition B remained stable through 6 months under accelerated stability conditions and 9 months under ambient ($25\pm2°C/60\pm5\%$ RH) conditions at up to 9 months conditions with slight increase in the levels of enalaprilat and DPK. However, none of the total related impurities exceeded 5%. Stability at ambient conditions was also examined for two additional lots of Enalapril Powder Composition B. Similar results were observed for the levels of enalaprilat and DPK.

[00136]    *Reconstituted Liquid Stability*: Enalapril Powder Composition B was reconstituted in 150 mL bottles according to Mixing Method C (2x30 s of shaking) and stored at ambient conditions. Aliquots were taken during selected time points during the study period. The below tables depict stability of the reconstituted liquid at the various conditions.

| Enalapril Reconstituted Liquid - Ambient | | | |
|---|---|---|---|
| Time (Weeks) | Enalapril (%) | Enalaprilat (%) | DKP (%) |
| 0 | 97.4 | 0.43 | 0.04 |
| 2 | 96.8 | 0.73 | 0.08 |
| 4 | 96.9 | 0.87 | 0.08 |
| 8 | 95.4 | 1.35 | 0.12 |
| 12 | 93.7 | 2.22 | 0.17 |

[00137]    After being reconstituted, the enalapril liquid was stable in ambient conditions with essentially unchanged values of its attributes, including microbial limits, preservative effectiveness and preservative assay up to the end of the study period (12 weeks).

**Example 7: Clinical Trial: Bioavailability Study of 10 mg Enalapril Maleate Oral Liquid vs Vasotec® 10 mg Tablets Under Fasted Conditions and 10 mg Enalapril Maleate Oral Liquid in Fed Conditions in Healthy Adults**

[00138]    The objectives of this single-dose, open-label, randomized, three-period, three-treatment, three-way crossover study were:

-37-

SPI_0000252

- To assess the bioavailability of a test formulation of 10 mg oral liquid reconstituted from Enalapril Powder Composition B versus Vasotec® 10 mg enalapril tablets under fasted conditions in healthy adults
- To assess the food effect on a test formulation of 10 mg oral liquid reconstituted from Enalapril Powder Composition B in healthy adults

[00139]     *Study Design*: Healthy adult subjects were to receive each of the following three treatments in a randomized fashion during three study periods:

- <u>Treatment A</u>, Test Formulation: Enalapril maleate oral liquid reconstituted from Enalapril Powder Composition B via Mixing Method C (2x30 s of shaking), 10 mg/10 mL, administered under fasted conditions
- <u>Treatment B</u>, Reference Product: Vasotec®, one 10 mg tablet, administered under fasted conditions
- <u>Treatment C</u>, Test Formulation: Enalapril maleate oral liquid reconstituted from Enalapril Powder Composition B via Mixing Method C (2x30 s of shaking), 10 mg/10 mL, administered under fed conditions

[00140]     Screening assessments were performed by the investigator or designee within 28 days prior to study start. Treatments A and B were to be administered after an overnight fast of at least 10 hours; Treatment C was to be administered following an overnight fast of at least 10 hours and an FDA standard high-calorie, high-fat breakfast meal beginning 30 minutes prior to administration of the study drug. Each dose was to be orally administered with 240 mL (8 fl. oz.) of room temperature tap water; after dosing, no food was allowed until 4 hours postdose. Each drug administration was separated by a washout period of ≥ 7 days.

[00141]     During each study period, meals were the same and scheduled at approximately the same times relative to dose. In addition, during each period, blood samples were obtained prior to and following each dose at selected times through 72 hours postdose. Plasma pharmacokinetic (PK) samples were analyzed for enalapril and enalaprilat using a validated analytical method; appropriate PK parameters were calculated for each formulation using on-compartmental methods. Blood was also drawn and urine collected for clinical laboratory testing at screening and at the end of the study.

[00142]     Each subject was to receive a total of three single doses, one dose at each of three study periods; the duration of the study for each subject would be approximately 45 days.

[00143]     *Subject Criteria*: Subjects must have been a male or non-pregnant, non-breastfeeding female; 18 to 55 years of age; with body mass index (BMI) between 18 and 30 kg/m2 and weight a minimum of 50 kg (110 lbs). Subjects were not to have a history or presence of clinically significant

SPI_0000253

cardiovascular, pulmonary, hepatic, renal, hematologic, gastrointestinal, endocrine, immunologic, dermatologic, neurologic, oncologic, or psychiatric disease, or any other condition that, in the opinion of the investigator, would jeopardize the safety of the subject or the validity of the study results; and were not to have a history of chronic cough, hyperkalemia, renal insufficiency, renal artery stenosis, or angioedema related to previous treatment with an angiotensin-converting enzyme inhibitor.

[00144]     _Results_

[00145]     Various pharmacokinetic parameters are summarized below for enalapril and enalaprilat.

| Mean PK Parameters | | | | | |
|---|---|---|---|---|---|
| Single 10 mg Doses | | | | | |
| $C_{max}$ (ng/mL) | $T_{max}$ (h) | $AUC_{last}$ (h*ng/mL) | $AUC_{inf}$ (h*ng/mL) | $T_{1/2}$ (h) | $C_{last}$ (ng/mL) |
| Treatment A - Enalapril | | | | | |
| 58.0 | 0.87 | 102.6 | 103.7 | 1.70 | 0.460 |
| Treatment B - Enalapril | | | | | |
| 61.8 | 0.92 | 106.5 | 107.5 | 1.45 | 0.467 |
| Treatment C - Enalapril | | | | | |
| 31.3 | 1.21 | 88.47 | 88.70 | 1.34 | 0.507 |
| Treatment A - Enalaprilat | | | | | |
| 41.0 | 3.45 | 405.3 | 443.3 | 30.49 | 0.841 |
| Treatment B - Enalaprilat | | | | | |
| 44.5 | 3.51 | 417.1 | 455.9 | 30.78 | 0.860 |
| Treatment C - Enalaprilat | | | | | |
| 26.4 | 4.49 | 315.7 | 360.1 | 33.94 | 0.889 |

[00146]     Concentration-time data are summarized graphically for enalapril in FIG. 3 (linear, _top_; log, _bottom_) and enalaprilat in FIG. 4 (linear, _top_; log, _bottom_).

[00147]     _Test Formulation versus Reference Product (Fasted)_: Based on the geometric mean ratios of enalapril and enalaprilat AUCs (Test/Reference for $AUC_{last}$ and $AUC_{inf}$), the bioavailability of the test formulation relative to the reference product was approximately 96% to 97%. The geometric mean ratios of enalapril and enalaprilat $C_{max}$ were 92.45% and 90.94%, respectively. The

SPI_0000254

90% confidence intervals about the geometric mean ratios (Test/Reference) of enalapril and enalaprilat $C_{max}$ and AUCs were within the accepted 80% to 125% range, indicating no significant difference.

[00148]    *Test Formulation (Fasted) versus Test Product (Fed)*: Based on the geometric mean ratios of enalapril AUCs (Fed/Fasted for $AUC_{last}$ and $AUC_{inf}$), a high-fat meal decreases the bioavailability of enalapril from the test formulation by approximately 14% to 15%; $C_{max}$ is decreased by approximately 46%. For enalaprilat, food decreases $C_{max}$ by approximately 36% and AUCs by approximately 20% to 23%.

[00149]    *Clinical Trial with Mixing Method B*: The above trial was conducted with Enalapril maleate oral liquid reconstituted from Enalapril Powder Composition B via Mixing Method A (shake vigorously).  The study was discontinued prior to dosing after it was observed that the mixing method created entrapped air bubbles in the liquid and could result in uneven dosing via dosing syringes.

[00150]    *Clinical Trial with Mixing Method B*: The above trial was conducted with Enalapril maleate oral liquid reconstituted from Enalapril Powder Composition B via Mixing Method B (gentle swirling and inversion).  A number of subjects on the test product only were observed to have very low enalapril and enalaprilat levels in both fasted and fed test treatments.  Based on this observation, the reconstituted enalapril maleate test formulation was assayed and it was determined that the test dose administered was not a 10 mg dose as specified in the study protocol, but was a mean dose of about 1.30 mg.  Upon further investigation, it was determined that the low concentration of enalapril in the dose occurred due to the mixing method.

[00151]    While preferred embodiments of the present invention have been shown and described herein, it will be obvious to those skilled in the art that such embodiments are provided by way of example only.  Numerous variations, changes, and substitutions will now occur to those skilled in the art without departing from the invention.  It should be understood that various alternatives to the embodiments of the invention described herein may be employed in practicing the invention.  It is intended that the following claims define the scope of the invention and that methods and structures within the scope of these claims and their equivalents be covered thereby.

WSGR Docket No. 43060-701.201

SPI_0000255

CLAIMS

WHAT IS CLAIMED IS:

1.      A pharmaceutical powder for an oral liquid formulation, the powder comprising:

(a)      about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,

(b)      about 85 % (w/w) mannitol, and

(c)      about 1 % (w/w) colloidal silicon dioxide,

wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about 25±5°C and 55±10% relative humidity.

2.      The pharmaceutical powder of claim 1, wherein the enalapril or pharmaceutically acceptable salt thereof is enalapril maleate.

3.      The pharmaceutical powder of claim 1, wherein the powder is reconstituted in water for the oral liquid.

4.      The pharmaceutical powder of claim 1, wherein the powder is reconstituted in syrup for the oral liquid.

5.      The pharmaceutical powder of claim 1, wherein the powder further comprises a pharmaceutically acceptable excipient.

6.      The pharmaceutical powder of claim 5, wherein the pharmaceutically acceptable excipient is a sweetener, flavoring agent or preservative.

7.      The pharmaceutical powder of claim 5, wherein the pharmaceutically acceptable excipient is a sweetener.

8.      The pharmaceutical powder of claim 7, wherein the sweetener is a solid.

9.      The pharmaceutical powder of claim 7, wherein the sweetener is a liquid.

10.      The pharmaceutical powder of claim 1, wherein the powder is stable for at least six months at ambient, accelerated or refrigerated conditions.

11.      The pharmaceutical powder of claim 1, wherein the liquid comprises

(a)      about 1 mg/ml enalapril or a pharmaceutically acceptable salt thereof,

(b)      about 6 mg/ml mannitol, and

(c)      about .07 mg/ml colloidal silicon dioxide.

12.      The pharmaceutical powder of claim 11, wherein the liquid further comprises a pharmaceutically acceptable excipient.

13.      The pharmaceutical powder of claim 11, wherein the pharmaceutically acceptable excipient is a sweetener, flavoring agent or preservative.

      WSGR Docket No. 43060-701.201

SPI_0000256

14.     The pharmaceutical powder of claim 11, wherein the pharmaceutically acceptable excipient is a sweetener.

15.     The pharmaceutical powder of claim 14, wherein the sweetener is a syrup.

16.     The pharmaceutical powder of claim 1, wherein the powder comprises about 150 mg enalapril, about 890 mg mannitol and 10 mg colloidal silicon dioxide.

WSGR Docket No. 43060-701.201

SPI_0000257

# ENALAPRIL COMPOSITIONS

## ABSTRACT OF THE DISCLOSURE

Provided herein are stable enalapril powder compositions for oral liquid formulation. Also provided herein are methods of using enalapril oral liquid formulations for the treatment of certain diseases including hypertension, heart failure and asymptomatic left ventricular dysfunction.

WSGR Docket No. 43060-701.201

SPI_0000258

1/3



FIGURE 1





FIGURE 2A                          FIGURE 2B



FIGURE 2C

SPI_0000259







**FIGURE 3**

SPI_0000260

3/3





**FIGURE 4**

SPI_0000261

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:   ☒   The attached application, or

☐   United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Lian G. RAJEWSKI          Date (Optional): 11/01/2012

Signature: _____

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form. Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

SPI_0000262

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Roger A. RAJEWSKI

Signature: _____

Date (Optional): _____

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form. Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

SPI_0000263

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: John L. HASLAM                     Date (Optional): 30 Oct 2012

Signature: _____

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form. Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☒ The attached application, or

☐ United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Kathleen HEPPERT

Date (Optional): 3/1/2012

Signature: _Kathleen E Heppert_

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form. Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

SPI_0000265

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft.  Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application.  If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO.  Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent.  Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14).  Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor:  Michael C. BECKLOFF                          Date (Optional) : _____

Signature:  _[signature]_

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form.
Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

SPI_0000266

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

■ The attached application, or

☐ United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Frank SEGRAVE

Date (Optional) : _____

Signature: _____

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form. Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☒ The attached application, or

☐ United States application or PCT international application number _____

  filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Robert MAURO _____        Date (Optional): 05-NOV-2012

Signature: _____

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form. Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

SPI_0000268

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:   ☒ The attached application, or

☐ United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Peter COLABUONO

Signature: _____   Date (Optional): 10/30/12

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form.
Use an additional PTO/SB/AIA01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

SPI_0000269

PATENT
Attorney Docket No. 43060-701.301

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re the Patent Application of: | Confirmation No.: *To Be Assigned* |
| Inventor:      Lian G. RAJEWSKI, *et al.* | Examiner: *To Be Assigned* |
| | Group Art Unit: *To Be Assigned* |
| Application No.: *To Be Assigned* | Customer No.   21971 |
| Filed:      *Herewith* | |
| Title:   ENALAPRIL COMPOSITIONS | |

Certificate of Electronic Filing

I hereby certify that the attached Preliminary Amendment and all attached documents are being deposited by Electronic Filing on June 10, 2013, by using the EFS – Web patent filing system and addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

By: _____
         *Rose Andico*
         Rose Andico

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## PRELIMINARY AMENDMENT

Dear Madam:

Prior to examination on the merits of the above-referenced application, please amend the application as follows:

**Amendments to the Specification** begin on page **2** of this paper.

**Amendments to the Claims** begin on page **3** of this paper.

**Remarks** are on page **7** of this paper.

**Conclusion** is on page **8** of this paper.

5574010_1.docx

SPI_0000270

Preliminary Amendment
Attorney Docket No. 43060-701.301
Page 2 of 8

## AMENDMENTS TO THE SPECIFICATION

In the Specification, please amend paragraph [0001] as follows:

### CROSS REFERENCE

This application is a continuation application of U.S. Patent Application Ser. No. 13/670,355, filed November 6, 2012, which claims the benefit of U.S. Provisional Application Ser. No. 61/710,489, filed on October 5, 2012, each of which is incorporated herein by reference in its entirety.

2

SPI_0000271

Preliminary Amendment
Attorney Docket No. 43060-701.301
Page 3 of 8

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, amendments and listings of claims in this application. The following amendments do not constitute an admission regarding the patentability of the amended subject matter and should not be so construed. Applicant reserves the right to pursue the subject matter of the withdrawn claims in this or any other appropriate patent application.

### Complete Listing of Claims:

1 – 16. (Canceled).

17. (Original) A method of treating hyertension in a subject comprising administering to that subject a therapeutically effective amount of an enalapril oral liquid formulation, the enalapril oral liquid formulation reconstituted from a pharmaceutical powder comprising:

    (a)    about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,

    (b)    about 85 % (w/w) mannitol, and

    (c)    about 1 % (w/w) colloidal silicon dioxide,

wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about $25\pm5°C$ and $60\pm10\%$ relative humidity.

18. (Original) The method of claim 17, wherein the hypertension is primary (essential) hypertension.

19. (Original) The method of claim 17, wherein the hypertension is secondary hypertension.

20. (Original) The method of claim 17, wherein the subject has blood pressure values are greater than or equal to 140/90 mm Hg.

21. (Original) The method of claim 17, wherein the subject is an adult.

22. (Original) The method of claim 17, wherein the subject elderly.

23. (Original) The method of claim 17, wherein the subject is a child.

24. (Original) The method of claim 17, wherein the enalapril or pharmaceutically acceptable salt thereof is enalapril maleate.

SPI_0000272

Preliminary Amendment
Attorney Docket No. 43060-701.301
Page 4 of 8

25. (Original)  The method of claim 17, wherein the powder is reconstituted in water for the oral liquid.

26. (Original)  The method of claim 17, wherein the powder is reconstituted in syrup for the oral liquid.

27. (Original)  The method of claim 17, wherein the powder further comprises a pharmaceutically acceptable excipient.

28. (Original)  The method of claim 27, wherein the pharmaceutically acceptable excipient is a sweetener, flavoring agent or preservative.

29. (Original)  The method of claim 27, wherein the pharmaceutically acceptable excipient is a sweetener.

30. (Original)  The method of claim 29, wherein the sweetener is a solid.

31. (Original)  The method of claim 17, wherein the powder is stable for at least six months at ambient, accelerated or refrigerated conditions.

32. (Original)  The method of claim 17, wherein the liquid comprises

(a)      about 1 mg/ml enalapril or a pharmaceutically acceptable salt thereof,

(b)      about 6 mg/ml mannitol, and

(c)      about .07 mg/ml colloidal silicon dioxide.

33. (Original)  The method of claim 32, wherein the liquid further comprises a pharmaceutically acceptable excipient.

34. (Original)  The method of claim 33, wherein the pharmaceutically acceptable excipient is a sweetener, flavoring agent or preservative.

35. (Original)  The method of claim 33, wherein the pharmaceutically acceptable excipient is a sweetener.

36. (Original)  The method of claim 17, wherein the powder comprises about 150 mg enalapril, about 890 mg mannitol and 10 mg colloidal silicon dioxide.

37. (Original)  The method of claim 32, wherein the enalalpril oral liquid is administered to the subject at a daily dosage from about 0.01 to about 1.0 mg/kg per body weight.

SPI_0000273

38. (Original)  The method of claim 32, wherein the enalalpril oral liquid is administered to the subject at a daily dosage of about 5 mg enalapril.

39. (Original)  The method of claim 32, wherein the enalalpril oral liquid is administered to the subject at a daily dosage of about 40 mg enalapril.

40. (Original)  The method of claim 17, wherein the enalalpril oral liquid is administered to the subject in a fasted state.

41. (Original)  The method of claim 17, wherein the enalalpril oral liquid is administered to the subject in a fed state.

42. (Original)  The method of claim 17, wherein the enalalpril oral liquid further administered in combination with an agent selected from the group consisting of diuretics, beta blockers, alpha blockers, mixed alpha and beta blockers, calcium channel blockers, angiotensin II receptor antagonists, ACE inhibitors, aldosterone antagonists and alpha-2 agonists.

43. (Original)  A method of treating prehytertension in a subject comprising administering to that subject a therapeutically effective amount of an enalapril oral liquid formulation, the enalapril oral liquid formulation reconstituted from a pharmaceutical powder comprising:

    (a)      about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,

    (b)      about 85 % (w/w) mannitol, and

    (c)      about 1 % (w/w) colloidal silicon dioxide,

wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about $25\pm5°C$ and $60\pm10\%$ relative humidity.

44. (Original)  The method of claim 43, wherein the subject has blood pressure values of about 120-139/80-89 mm Hg.

45. (Original)  A method of treating heart failure in a subject comprising administering to that subject a therapeutically effective amount of an enalapril oral liquid formulation, the enalapril oral liquid formulation reconstituted from a pharmaceutical powder comprising:

    (a)      about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,

SPI_0000274

Preliminary Amendment
Attorney Docket No. 43060-701.301
Page 6 of 8

    (b)    about 85 % (w/w) mannitol, and

    (c)    about 1 % (w/w) colloidal silicon dioxide,

wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about $25\pm5°C$ and $60\pm10\%$ relative humidity.

46. (Original)  A method of treating left ventricular dysfunction in a subject comprising administering to that subject a therapeutically effective amount of an enalapril oral liquid formulation, the enalapril oral liquid formulation reconstituted from a pharmaceutical powder comprising:

    (a)    about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,

    (b)    about 85 % (w/w) mannitol, and

    (c)    about 1 % (w/w) colloidal silicon dioxide,

wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about $25\pm5°C$ and $60\pm10\%$ relative humidity.

\*     \*     \*

SPI_0000275

Preliminary Amendment
Attorney Docket No. 43060-701.301
Page 7 of 8

# REMARKS

## Track I Request

The Applicants believe the requirements for participation in the Track I prioritized examination have been established upon consideration by the Office of the documents submitted herewith including an executed Form PTO/AIA/424 and submission of the appropriate fees. The Applicants refer the Office to the announcement of final rulemaking entitled the "Changes To Implement the Prioritized Examination Track (Track I) of the Enhanced Examination Timing Control Procedures Under the Leahy-Smith America Invents Act" which published in the Federal Register, Vol. 76, No. 185 on September 23, 2011. The Applicants understand such final rulemaking implemented the prioritized examination provisions of section 11(h) of the Leahy-Smith America Invents Act. The Applicants respectfully request the instant application be accorded "special" status and be placed on the appropriate examiner's special docket throughout prosecution. The undersigned takes this opportunity to encourage the Examiner to contact him directly to the extent necessary in the interest of expediting prosecution of this case to allowance. The Applicants respectfully request consideration of the application and swift issuance of a patent.

## Claims

Claims 1-16 have been canceled and new claims 17-46 are presented by way of this amendment. Support for the new claims is found in the originally filed specification and claims. No new matter is introduced by way of these new claims.

7

SPI_0000276

Preliminary Amendment
Attorney Docket No. 43060-701.301
Page 8 of 8

## CONCLUSION

This Preliminary Amendment is submitted prior to the examination of this application on the merits. Because the present amendment does not introduce new matter, its entry prior to examination of the present application is respectfully requested. Should the Examiner have any questions, the Examiner is encouraged to telephone the undersigned attorney at (858) 350-2318. The Commissioner is hereby authorized to charge any fees that may be required, or credit any overpayment to Deposit Account No. 23-2415, referencing Attorney Docket No. 43060-701.301.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Date: June 10, 2013

Jeffrey W. Guise, Reg. No. 34,613

650 Page Mill Road
Palo Alto, CA 94304-1050
(650) 493-9300
Customer No. 021971

8

SPI_0000277

Doc Code: TRACK1.REQ
Document Description: TrackOne Request

PTO/AIA/424 (09-12)

## CERTIFICATION AND REQUEST FOR PRIORITIZED EXAMINATION
### UNDER 37 CFR 1.102(e) (Page 1 of 1)

| First Named Inventor: | Lian G. RAJEWSKI | Nonprovisional Application Number (if known): | |
|---|---|---|---|
| Title of Invention: | ENALAPRIL COMPOSITIONS | | |

**APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS PRIORITIZED EXAMINATION FOR THE ABOVE-IDENTIFIED APPLICATION.**

1.  The processing fee set forth in 37 CFR 1.17(i), the prioritized examination fee set forth in 37 CFR 1.17(c), and if not already paid, the publication fee set forth in 37 CFR 1.18(d) have been filed with the request. The basic filing fee, search fee, examination fee, and any required excess claims and application size fees are filed with the request or have been already been paid.

2.  The application contains or is amended to contain no more than four independent claims and no more than thirty total claims, and no multiple dependent claims.

3.  The applicable box is checked below:

   **I.    ☑ Original Application (Track One) - Prioritized Examination under § 1.102(e)(1)**

   i.   (a) The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a). This certification and request is being filed with the utility application via EFS-Web.
   ---OR---
   (b) The application is an original nonprovisional plant application filed under 35 U.S.C. 111(a). This certification and request is being filed with the plant application in paper.

   ii.  The executed inventor's oath or declaration is filed with the application. (37 CFR 1.63 and 1.64)

   **II.   ☐ Request for Continued Examination - Prioritized Examination under § 1.102(e)(2)**

   i.   A request for continued examination has been filed with, or prior to, this form.
   ii.  If the application is a utility application, this certification and request is being filed via EFS-Web.
   iii. The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a), or is a national stage entry under 35 U.S.C. 371.
   iv.  This certification and request is being filed prior to the mailing of a first Office action responsive to the request for continued examination.
   v.   No prior request for continued examination has been granted prioritized examination status under 37 CFR 1.102(e)(2).

| Signature | | Date  June 10, 2013 |
|---|---|---|
| Name (Print/Typed)  Jeffrey W. Guise | | Practitioner Registration Number  34,613 |

**Note:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below*.

☑ *Total of ___1___ forms are submitted.

SPI_0000278

PTO/AIA/14 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 43060-701.301 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | | | Remove |
|---|---|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Lian | G. | RAJEWSKI | |

**Residence Information (Select One)** ● US Residency ○ Non US Residency ○ Active US Military Service

| City | Lawrence | State/Province | KS | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 4628 Muirfield Drive | | |
|---|---|---|---|
| Address 2 | | | |
| City | Lawrence | State/Province | KS |
| Postal Code | 66047 | Country i | US |

| Inventor | 2 | | | | Remove |
|---|---|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Roger | A. | RAJEWSKI | |

**Residence Information (Select One)** ● US Residency ○ Non US Residency ○ Active US Military Service

| City | Lawrence | State/Province | KS | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 4628 Muirfield Drive | | |
|---|---|---|---|
| Address 2 | | | |
| City | Lawrence | State/Province | KS |
| Postal Code | 66047 | Country i | US |

| Inventor | 3 | | | | Remove |
|---|---|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | John | L. | HASLAM | |

**Residence Information (Select One)** ● US Residency ○ Non US Residency ○ Active US Military Service

SPI_0000279

PTO/AIA/14 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 43060-701.301 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

| City | Lawrence | State/Province | KS | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 1560 N 1060 Road | | |
|---|---|---|---|
| Address 2 | | | |
| City | Lawrence | State/Province | KS |
| Postal Code | 66046 | Country i | US |

**Inventor    4**    [Remove]
Legal Name

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Kathleen | | HEPPERT | |

**Residence Information (Select One)**  ● US Residency  ○ Non US Residency  ○ Active US Military Service

| City | Lawrence | State/Province | KS | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 2901 Oxford Road | | |
|---|---|---|---|
| Address 2 | | | |
| City | Lawrence | State/Province | KS |
| Postal Code | 66049 | Country i | US |

**Inventor    5**    [Remove]
Legal Name

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Michael | C. | BECKLOFF | |

**Residence Information (Select One)**  ● US Residency  ○ Non US Residency  ○ Active US Military Service

| City | Leawood | State/Province | KS | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 14108 Canterbury Street | | |
|---|---|---|---|
| Address 2 | | | |
| City | Leawood | State/Province | KS |
| Postal Code | 66224 | Country i | US |

**Inventor    6**    [Remove]
Legal Name

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Frank | | SEGRAVE | |

**Residence Information (Select One)**  ● US Residency  ○ Non US Residency  ○ Active US Military Service

| City | Dublin | State/Province | OH | Country of Residence | US |
|---|---|---|---|---|---|

EFS Web 2.2.6

SPI_0000280

PTO/AIA/14 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 43060-701.301 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

**Mailing Address of Inventor:**

| **Address 1** | 5371 Gordon Way | | |
|---|---|---|---|
| **Address 2** | | | |
| City | Dublin | **State/Province** | OH |
| **Postal Code** | 43017 | Country i | US |

**Inventor   7**                                    [ Remove ]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Robert | | MAURO | |

**Residence Information (Select One)**  ● US Residency   ○ Non US Residency   ○ Active US Military Service

| City | Miller Place | **State/Province** | NY | **Country of Residence** | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| **Address 1** | 24 Oakwood Avenue | | |
|---|---|---|---|
| **Address 2** | | | |
| City | Miller Place | **State/Province** | NY |
| **Postal Code** | 11764 | Country i | US |

**Inventor   8**                                    [ Remove ]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Peter | | COLABUONO | |

**Residence Information (Select One)**  ● US Residency   ○ Non US Residency   ○ Active US Military Service

| City | Las Vegas | **State/Province** | NV | **Country of Residence** | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| **Address 1** | 7133 Mission Hills Drive | | |
|---|---|---|---|
| **Address 2** | | | |
| City | Las Vegas | **State/Province** | NV |
| **Postal Code** | 89113 | Country i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.   [ Add ]

## Correspondence Information:

| Enter either Customer Number or complete the Correspondence Information section below. For further information see 37 CFR 1.33(a). |
|---|
| ☐   **An Address is being provided for the correspondence Information of this application.** |

| **Customer Number** | 21971 |
|---|---|

SPI_0000281

PTO/AIA/14 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 43060-701.301 |
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

| **Email Address** | patentdocket@wsgr.com | Add Email | Remove Email |

## Application Information:

| Title of the Invention | ENALAPRIL COMPOSITIONS | | |
|---|---|---|---|
| Attorney Docket Number | 43060-701.301 | **Small Entity Status Claimed** | ☐ |
| Application Type | | | |
| Subject Matter | | | |
| **Total Number of Drawing Sheets (if any)** | 3 | **Suggested Figure for Publication (if any)** | 4 |

## Publication Information:

☐  Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐  **Request Not to Publish.**  I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify  that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a  multilateral international agreement, that requires publication at eighteen months after filing.

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | ○ US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 21971 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application.  Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.

| Prior Application Status | Pending | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| | Continuation of | 13670355 | 2012-11-06 |
| Prior Application Status | Pending | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| 13670355 | non provisional of | 61710489 | 2012-10-05 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

SPI_0000282

PTO/AIA/14 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 43060-701.301 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(d). When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(h)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

|  |  |  | Remove |
|---|---|---|---|
| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.

## Authorization to Permit Access:

☒ Authorization to Permit Access to the Instant Application by the Participating Offices

If checked, the undersigned hereby grants the USPTO authority to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the World Intellectual Property Office (WIPO), and any other intellectual property offices in which a foreign application claiming priority to the instant patent application is filed access to the instant patent application. See 37 CFR 1.14(c) and (h). This box should not be checked if the applicant does not wish the EPO, JPO, KIPO, WIPO, or other intellectual property office in which a foreign application claiming priority to the instant patent application is filed to have access to the instant patent application.

In accordance with 37 CFR 1.14(h)(3), access will be provided to a copy of the instant patent application with respect to: 1) the instant patent application-as-filed; 2) any foreign application to which the instant patent application claims priority under 35 U.S.C. 119(a)-(d) if a copy of the foreign application that satisfies the certified copy requirement of 37 CFR 1.55 has been filed in the instant patent application; and 3) any U.S. application-as-filed from which benefit is sought in the instant patent application.

In accordance with 37 CFR 1.14(c), access may be provided to information concerning the date o f filing this Authorization.

SPI_0000283

PTO/AIA/14 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 43060-701.301 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

### Applicant  1

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

[ Clear ]

| ◉ Assignee | ◯ Legal Representative under  35 U.S.C. 117 | ◯ Joint Inventor |
|---|---|---|
| ◯ Person to whom the inventor is obligated to assign. | ◯ Person who shows sufficient proprietary interest | |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor :

If the Applicant is an Organization check here.   ☒

| Organization Name | University of Kansas |
|---|---|

**Mailing Address Information For Applicant:**

| Address 1 | 245 Strong Hall | | |
|---|---|---|---|
| Address 2 | 1450 Jayhawk Boulevard | | |
| City | Lawrence | State/Province | KS |
| Country | | Postal Code | 66045 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.

EFS Web 2.2.5

SPI_0000284

PTO/AIA/14 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 43060-701.301 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

## Applicant   2

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

[ Clear ]

| ◉ Assignee | ○ Legal Representative under 35 U.S.C. 117 | ○ Joint Inventor |
|---|---|---|
| ○ Person to whom the inventor is obligated to assign. | | ○ Person who shows sufficient proprietary interest |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

| Name of the Deceased or Legally Incapacitated Inventor : | |
|---|---|

| If the Applicant is an Organization check here. | ☒ |
|---|---|

| Organization Name | Silvergate Pharmaceuticals |
|---|---|

### Mailing Address Information For Applicant:

| Address 1 | 5371 Gordon Way | | |
|---|---|---|---|
| Address 2 | | | |
| City | Dublin | State/Province | OH |
| Country | US | Postal Code | 43017 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.

## Non-Applicant Assignee Information:

Providing assignment information in this section does not subsitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

### Assignee   1

Complete this section only if non-applicant assignee information is desired to be included on the patent application publication in accordance with 37 CFR 1.215(b). Do not include in this section an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest), as the patent application publication will include the name of the applicant(s).

| If the Assignee is an Organization check here. | ☐ |
|---|---|

SPI_0000285

PTO/AIA/14 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 43060-701.301 |
|---|---|---|
| | Application Number | |

| Title of Invention | ENALAPRIL COMPOSITIONS |
|---|---|

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Non-Applicant Assignee:**

| Address 1 | |
|---|---|
| Address 2 | |

| City | | State/Province | |
|---|---|---|---|
| Country ﹀ | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee Data may be generated within this form by selecting the Add button.

# Signature:

NOTE: This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications.

| Signature | | Date (YYYY-MM-DD) | 2013-06-10 |
|---|---|---|---|
| First Name | Jeffrey | Last Name | Guise | Registration Number | 34613 |

Additional Signature may be generated within this form by selecting the Add button.

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

SPI_0000286



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 13/914,452 | 06/10/2013 | 1629 | 3120 | 43060-701.301 | 30 | 4 |

**CONFIRMATION NO. 3336**

21971
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

**FILING RECEIPT**

*OC000000062335987*

Date Mailed: 07/10/2013

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Lian G. Rajewski, Lawrence, KS;
Roger A. Rajewski, Lawrence, KS;
John L. Haslam, Lawrence, KS;
Kathleen Heppert, Lawrence, KS;
Michael C. Beckloff, Leawood, KS;
Frank Segrave, Dublin, OH;
Robert Mauro, Miller Place, NY;
Peter Colabuono, Las Vegas, NV;

**Applicant(s)**

Silvergate Pharmaceuticals, Dublin, OH
University of Kansas, Lawrence, KS

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**
This application is a CON of 13/670,355 11/06/2012
which claims benefit of 61/710,489 10/05/2012

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

Permission to Access - A proper **Authorization to Permit Access to Application by Participating Offices** (PTO/SB/39 or its equivalent) has been received by the USPTO.

page 1 of 3

SPI_0000287

**If Required, Foreign Filing License Granted:** 07/02/2013

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 13/914,452**

**Projected Publication Date:** 04/10/2014

**Non-Publication Request:** No

**Early Publication Request:** No
**Title**

        Enalapril Compositions

**Preliminary Class**

        514

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

SPI_0000288

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

SPI_0000289



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**WILSON, SONSINI, GOODRICH & ROSATI**
**650 PAGE MILL ROAD**
**PALO ALTO CA 94304-1050**



MAILED
JUL 2 3 2013
OFFICE OF PETITIONS

| *Decision Granting Request for Prioritized Examination (Track I or After RCE)* | Application No.:13/914,452 |
| --- | --- |

1.   THE REQUEST FILED   June 10, 2013      IS **GRANTED**.

The above-identified application has met the requirements for prioritized examination
   A.   ☒ for an original nonprovisional application (Track I).
   B.   ☐ for an application undergoing continued examination (RCE).

2.   **The above-identified application will undergo prioritized examination.** The application will be accorded special status throughout its entire course of prosecution until one of the following occurs:

   A.   filing a **petition for extension of time** to extend the time period for filing a reply;

   B.   filing an **amendment to amend the application to contain more than four independent claims, more than thirty total claims**, or a multiple dependent claim;

   C.   filing a **request for continued examination**;

   D.   filing a notice of appeal;

   E.   filing a request for suspension of action;

   F.   mailing of a notice of allowance;

   G.   mailing of a final Office action;

   H.   completion of examination as defined in 37 CFR 41.102; or

   I.   abandonment of the application.

Telephone inquiries with regard to this decision should be directed to Kimberly Inabinet at 571-272-4618.

/ Kimberly Inabinet/                     Petitions Examiner, Office of Petitions

SPI_0000290

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/914,452 | 06/10/2013 | Lian G. Rajewski | 43060-701.301 | 3336 |

21971      7590      08/28/2013
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| ZHANG, YANZHI |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/28/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SPI_0000291

| *Office Action Summary* | Application No.<br>13/914,452 | Applicant(s)<br>RAJEWSKI ET AL. | |
|---|---|---|---|
| | Examiner<br>YANZHI ZHANG | Art Unit<br>1617 | AIA (First Inventor to File)<br>Status<br>No |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --**

**Period for Reply**

    A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE _3_ MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on _10 June 2013_.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL.**    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) _17-46_ is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) _17-46_ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see <u>http://www.uspto.gov/patents/init_events/pph/index.jsp</u> or send an inquiry to <u>PPHfeedback@uspto.gov</u>.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a)☐ All  b)☐ Some *  c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

4)☐ Other: _____.

## DETAILED ACTION

### *Claim Status*

The continuation application of SN 13/670,355 filed June 11, 2013 is acknowledged. Claims 1-16 have been cancelled. Claims 17-46 has been originally filed. Accordingly, claims 17-46 are pending in the application and under current examination.

### *Priority*

Applicants' priority claim to U.S. Provisional Patent Application No. 61/710,489 filed October 5, 2012 is acknowledged.

### *Claim Rejection - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

> This application currently names joint inventors. In considering patentability of the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

**Claims 17-29, 31-46 are rejected under 35 U.S.C. 103(a) as being unpatentable over**

**RxList Drug description (Non-patent literature, published/reviewed September 24, 2012, attached) in view of Jursic et al. (International patent application No.: WO2012/085249 A2; published June 28, 2012) as evidenced by Sipahi et al. (Title: Effects of normal, pre-hypertensive, and hypertensive blood pressure levels on progression of coronary atherosclerosis. J. Am. Coll. Cardiol. Vol. 48, pp. 833-838, 2006).**

The claims encompass a method of treating hypertension in a subject comprising administering to that subject a therapeutically effective amount of an enalapril oral liquid formulation, which is reconstituted from a pharmaceutical powder comprising: (a) about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, (b) about 85 % (w/w) mannitol, and (c) about 1% (w/w) colloidal silicon dioxide, wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about 25±5°C and 60±10% relative humidity. In addition, claim 1 uses open-ended preamble "comprising". Thus, it allows for the presence of additional components.

RxList discloses **enalapril maleate** tablets (approved by FDA 11//27/2001 along with Vasotec I.V. or enalapril, and enalapril maleate/hydrochlorothiazide tablets, 1ˢᵗ page of the attached PDF, reads on the limitations of the instant claims 17, 24, and 42-43) for the treatment of **hypertension** [as evidenced by the definition of medical dictionary, see attached] (reads on the preamble of the instant claim 17 and the limitations of the instant claims 18-20, 24 and 44), **heart failure**, and **asymptomatic left ventricular dysfunction** (second page of attached PDF, reads on the limitation of the instant claims 45 and 46). RxList also discloses each tablet contains inactive ingredients (synonym excipients) including lactose, magnesium stearate, sodium bicarbonate, and starch. RxList further discloses preparation of 200 mL of a 1.0 mg/mL

suspension (reads on oral liquid and the limitations of the instant claims 25, 27 and part (a) of claim 32) from commercially available tablets (ten 20 mg tablets in 50 ml Bicitra, which is sodium citrate and citric acid oral solution in water) and Ora-Sweet SF™ (flavored syrup vehicle, ideal for the flavoring of pediatric and geriatric preparations (as evidenced by the product information published by Paddock, reads on the limitations of the instant claims 21-23, 26, 29, and 35). Bicitra contains **flavoring**, purified **water**, **sodium benzoate** (preservative) and etc. as evidenced by the product insert (see attached, reads on the limitation of the instant claims 27-28 and 34-35). RxList states that the suspension can be stored for up to 30 days at 2-8$^{\circ}$C (3rd page of the attached PDF, reads on the wherein clause). The FDA approval states that the usual dosage range of enalapril is 10 mg to 40 mg per day administered in a single or two divided doses (page 1 of the attached PDF, reads on the limitations of the instant claims 37-41). While RxList does not expressly disclose mannitol and colloidal silicon dioxide in the composition; such was known in the prior art. The deficiencies are cured by Jursic.

Jursic et al. is directed to a combined solid oral dosage form, useful for treating hypertension comprising lercanidipine, enalapril and their salts as active substances (Title). Jursic et al. disclose a composition comprising: enalapril maleate (20 wt.%), hydroxy propylcellulose (10 wt.%), maleic acid (5 wt.%), **mannitol (20 wt.%)** and along with lercanidipine hydrochloride (polymorph V) (10 wt.%), sodium starch glycolate (20 wt.%) were granulated (Equivalent Abstracts, pharmaceuticals, reads on claims 17, 43, 45 and 46). Jursic et al. indicate that the amount may need to be optimized according to the needs of particular patient sub-populations depending on patients' response (page 10, para. 3). Jursic et al. further disclose that the amount of each type of additive employed, e.g. glidant, binder, disintegrant, filler or

diluent and lubricant may vary within ranges conventional in the art. Thus, for example, the amount of **glidant** may vary within a range of from 0.1 to 10% by weight, in **particular 0.1 to 5% by weight**; the amount of disintegrant may vary within a range of from 2 to 20% by weight, e.g. 15% by weight; and etc. (page 8, para. 2, reads on the limitations of part (c) of the instant claims 17, 32, 43 and 36). Jursic et al. indicate that glidants and lubricants, including **colloidal silica** (synonym of silicon dioxide) may also be included in the composition; disintegrants are preferably mannitol, microcrystalline cellulose and lactose are used as fillers, most preferably **mannitol** (serving as many roles including as a filler, diluent, binder or sweetener) and/or lactose is used (page 9, lines 1-3, the limitations of part (b) of the instant claims 17, 32, 43 and 36). Furthermore, Jursic et al. disclose that other pharmaceutically acceptable excipients for suitable use include preservatives, **flavors** and perfumes, humectants, **sweetening agents** etc. (page 8, lines 9-12, and the limitation of the instant claims 27-29 and 33-35).

The teachings of RxList and Jursic et al. are each directed to a pharmaceutical composition containing enalapril. Therefore, it would have been *prima facie* obvious to one of the ordinary skill in the art at the time of invention was made to combine their respective teachings to obtain a method of treating hypertension with an enalapril oral liquid formulation by a person of ordinary skill in the art, with reasonable expectation of success. A person of the ordinary skill in the art at the time of invention was made would have been motivated to combine the teachings of RxList use enalapril (or its ester, maleate) powder, which is reconstituted in water or a syrup, as suggested by RxList; mannitol and silicon dioxide as excipients Jursic et al. specifically taught silicon dioxide as an excipient to allow powder to flow freely. Thus, one of ordinary skill in the art would have a reasonable expectation that by modifying the teachings of

RxList and Jursic et al., treatment of hypertension at the claimed composition would be successful.

Regarding claims 17, 43, 45 and 46, the weight percent of 14% enalapril, 85% mannitol and 1% silicon dioxide, the prior art, both RxList and Jursic et al., taught the weight percent of the ingredients (e.g. enalapril maleate 20 wt.%), either overlap with or near the ranges claimed. It would have been *prima facie* obvious to one of ordinary skill in the art at the time this invention was made to modify the teachings of RxList and Jursic et al. to determine the concentration of enalapril, mannitol and silicon dioxide that was optimal for an oral liquid formulation. Jursic et al. specifically indicate that the amount of additives may need to be optimized according to the needs of particular patient sub-populations depending on patients' response. When claimed ranges "overlap or lie inside ranges disclosed by the prior art" a prima facie case of obviousness exists. *In re* Wertheim, 541 F.2d 257, 191 USPQ 90 (CCPA 1976); In re Woodruff, 919 F.2d 1575, 16 USPQ2d 1934 (Fed. Cir. 1990). In this case Chang et al. and Erp et al. disclose the administration of TKIs at dosages ranging from 0.5 mg to 400 mg, encompassing the ranges recited in the claims of the instant application. (See above). Further, According to the MPEP § 2144.05(II)(A), "Generally, differences in concentration or temperature will not support the patentability of subject matter encompassed by the prior art unless there is **evidence** indicating such concentration or temperature is **critical**. '[W]here the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation.' In re Aller, 220 F.2d 454, 456, 105 USPQ 233, 235 (CCPA 1955). One would have been motivated to combine the teachings of Sosnowska et al. and Jursic et al., because the weight ranges provided therein encompassed that of the instant application. Thus,

SPI_0000297

one of ordinary skill in the art would have a reasonable expectation that by modifying the teachings of Sosnowska et al. in view of Jursic et al., an oral liquid formulation at the claimed ranges would be successful.

Regarding claim 31, wherein the powder is stable for at least six months, Sosnowska et al. taught that enalapril maleate in sugar-containing and sugar-free vehicles are stable for at least 30 days when stored at 4°C (refrigerated condition) and 25°C (ambient condition). Although Sosnowska et al. do not explicitly disclose stability of enalapril maleate longer than 30 days, it would have been *prima facie* obvious to one of the ordinary skill in the art at the time of invention was made to test stability beyond 30 days. Additionally, it is a common knowledge to one of the ordinary skill in the art that a powder form of enalapril maleate is much more stable than that of on a solution or syrup form. Furthermore, the powder would necessarily have the same property (stability) when one combines the teachings of Sosnowska et al. and Jursic et al. to make a pharmaceutical powder for oral liquid formulation. Additionally, claim scope is not limited by claim language that suggests or makes optional but does not require steps to be performed, or by claim language that does not limit a claim to a particular structure (see MPEP 211.04).

Regarding claims 32, the liquid composing 1mg/ml enalapril, 6 mg/mL mannitol and 0.07 mg/mL silicon dioxide, the prior art, both RxList and Jursic et al., taught the weight percent of each ingredients. Therefore, it would have been *prima facie* obvious to one of ordinary skill in the art at the time this invention was made to modify the teachings of RxList and Jursic et al. to determine the concentration of enalapril, mannitol and silicon dioxide that was optimal for an

oral liquid formulation. For simplicity, the case law (*In re* Wertheim) and MPEP 2144.05(II)(A) would not be reiterated because they have been discussed above.

Regarding claims 36, the powder composing 150 mg enalapril, 890 mg mannitol and 10 mg silicon dioxide, the prior art, both RxList and Jursic et al., taught the weight percent of each ingredients. Therefore, it would have been *prima facie* obvious to one of ordinary skill in the art at the time this invention was made to modify the teachings of RxList and Jursic et al. to determine the concentration of enalapril, mannitol and silicon dioxide that was optimal for an oral liquid formulation. For simplicity, the case law (In re Wertheim) and MPEP 2144.05(II)(A) would not be reiterated because they have been discussed above.

Regarding claim 43, treating the preamble of prehypertension, such intended use has been known in the prior art as evidenced by Sipahi et al. (Title: Effects of normal, pre-hypertensive, and hypertensive blood pressure levels on progression of coronary atherosclerosis. J. Am. Coll. Cardiol. 48, 833-838, 2006).

**Claims 17-46 are rejected under 35 U.S.C. 103(a) as being unpatentable over RxList Drug description (Non-patent literature available online, published/reviewed September 24, 2012, attached) in view of Jursic et al. (International patent application No.: WO2012/085249 A2; published June 28, 2012) as applied to claims 17-29, 32-42 and 45-46 further in view of over Sosnowska et al.  (Non-patent literature cited in Applicants' IDS dated 11/07/2012, published 2009).**

The teachings of RxList and Jursic et al. have been discussed above. While  RxList and Jursic et al. don't explicitly disclose that the sweetener is solid, such was known in the prior art. The deficiency is cured by Sosnowska.

Sosnowska et al. is directed to the stability of enalapril maleate suspension prepared from commercially available tablets (Title). Sosnowska et al. disclose that oral suspension containing 0.1 mg/mL and 1.0 mg/mL enalapril maleate in **sugar**-containing (reads on the limitations of the instant claims 30) and sugar-free vehicles are stable for at least 30 days when stored at 4°C (refrigerated condition) and 25°C (ambient condition) (page 325, Conclusion, reads on the limitations of the instant claims 17, 31, 43 and 45-46).

The teachings of RxList, Jursic et al. and Sosnowska et al. are each directed to a pharmaceutical composition containing enalapril. Therefore, it would have been *prima facie* obvious to one of the ordinary skill in the art at the time of invention was made to modify their respective teachings to obtain a method of treating hypertension with an enalapril oral liquid formulation containing solid sweetener by a person of ordinary skill in the art, with reasonable expectation of success. A person of the ordinary skill in the art at the time of invention was made would have been motivated to combine the teachings of RxList, Jursic et al. and Sosnowska et al. because Sosnowska et al. specifically taught sugar as sweetener. Thus, one of ordinary skill in the art would have a reasonable expectation that by modifying the teachings of RxList Jursic et al. and Sosnowska et al., treatment of hypertension at the claimed composition containing solid sweetener would be successful.

In conclusion, the claims 17-46 are unpatentable under 103(a) obviousness rejection.

### *Obviousness Type Double Patenting (Provisional)*

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. See *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed.

Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and *In re Thorington,* 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent is shown to be commonly owned with this application. See 37 CFR 1.130(b).

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

**Claims 17-46** are provisionally rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 1-4, 10 and  16 of the copending U.S. Patent application No. 13/670,355 claiming a pharmaceutical powder comprising the same ingredients, enalapril, mannitol and silicon dioxide. Although the conflicting claims are not identical, they are not patentably distinct from each other because claim 17 of the instant application is drawn to a method for the treating hypertension comprising the same ingredients and same presentation. Therefore, to practice the instant invention, it would have been obvious to utilize the pharmaceutical powder of the '355 Application. Thus, claims 1 of the copending U.S. Patent application No. 13/670,355 and claim 17 of the instant Application are obvious variants of each other.

Claims 18-46 depends directly or indirectly from the base claim, are thus included in the rejection.

This is a <u>provisional</u> obviousness-type double patenting rejection, because the conflicting claims have not in fact been patented.

## *CONCLUSION*

Application/Control Number: 13/914,452                                                                Page 11
Art Unit: 1617

**No claims are allowed.**


*CONTACT INFORMATION*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to YANZHI ZHANG whose telephone number is (571)272-3117. The examiner can normally be reached on 8:30 am - 5:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Fereydoun G. Sajjadi can be reached on 2-3311. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Y. Z. /

Examiner, Art Unit 1617

/Janet Epps-Smith/

Primary Examiner, Art Unit 1633

| *Notice of References Cited* | Application/Control No. 13/914,452 | Applicant(s)/Patent Under Reexamination RAJEWSKI ET AL. | |
|---|---|---|---|
| | Examiner YANZHI ZHANG | Art Unit 1617 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US- | | | |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | WO2012/085249 | 06-2012 | IA | Jursic et al. | A61K9/20 |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | Sipahi et al.; Title: Effects of normal, pre-hypertensive, and hypertensive blood pressure levels on progression of coronary atherosclerosis. J. Am. Coll. Cardiol. 48, 833-838, 2006. |
| | V | Product information of Bicitra |
| | W | Product information of Ora-Sweet SF. |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20130808

SPI_0000303

Attorney Docket No. 43060-701.301

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re the Patent Application of: | Confirmation No.: 3336 |
| Inventor: Lian G. RAJEWSKI, *et al.* | Examiner: Zhang, Yanzhi |
| | Group Art Unit: 1617 |
| Application No.: 13/914,452 | Customer No. 21971 |
| Filed: June 10, 2013 | |
| Title: ENALAPRIL COMPOSITIONS | Certificate of Electronic Filing |
| | I hereby certify that the attached Amendment in Response and all attached documents are being deposited by Electronic Filing on November 27, 2013, by using the EFS – Web patent filing system and addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450. |
| | By: _/Rose Andico/_ |
| | Rose Andico |

## AMENDMENT IN RESPONSE TO THE OFFICE ACTION
## DATED AUGUST 28, 2013

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Madam:

Applicants hereby submit a response to the Office Action dated August 28, 2013 (the "Office Action"), in the above-identified application. Applicants respectfully request reconsideration and allowance of the pending claims. A statutory period of three months was set in the Office Communication and expires on November 28, 2013. Thus, no fees are believed due, as a response to the August 28, 2013, Office Communication is timely if filed on or before November 28, 2013. Please charge any fees associated with this Response to Deposit Account No. 23-2415, referencing Docket No. 43060-701.301.

**Amendments to the Claims** begin on page **2** of this paper.

**Remarks** begin on page **6**.

The **Conclusion** is on page **23**.

1

5948910_1.docx

SPI_0000304

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, amendments and listings of claims in this application.  The following amendments do not constitute an admission regarding the patentability of the amended subject matter and should not be so construed.  Applicants reserve the right to pursue the subject matter of the withdrawn claims in this or any other appropriate patent application.

### Complete Listing of Claims:

1 – 16. (Canceled).

17. (Currently Amended)  A method of treating ~~hyertension~~ hypertension in a subject comprising administering to that subject a therapeutically effective amount of an enalapril oral liquid formulation, the enalapril oral liquid formulation reconstituted from a pharmaceutical powder comprising:

    (a)       about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,

    (b)       about 85 % (w/w) mannitol, and

    (c)       about 1 % (w/w) colloidal silicon dioxide,

wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about $25\pm5°C$ and $60\pm10\%$ relative humidity.

18. (Previously Presented) The method of claim 17, wherein the hypertension is primary (essential) hypertension.

19. (Previously Presented)  The method of claim 17, wherein the hypertension is secondary hypertension.

20. (Currently Amended)  The method of claim 17, wherein the subject has blood pressure values ~~are~~ greater than or equal to 140/90 mm Hg.

21. (Previously Presented)  The method of claim 17, wherein the subject is an adult.

22. (Previously Presented)  The method of claim 17, wherein the subject elderly.

23. (Previously Presented)  The method of claim 17, wherein the subject is a child.

24. (Previously Presented)  The method of claim 17, wherein the enalapril or pharmaceutically acceptable salt thereof is enalapril maleate.

25. (Previously Presented)  The method of claim 17, wherein the powder is reconstituted in water for the oral liquid.

SPI_0000305

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 3 of 23

26. (Previously Presented)  The method of claim 17, wherein the powder is reconstituted in syrup for the oral liquid.

27. (Previously Presented)  The method of claim 17, wherein the powder further comprises a pharmaceutically acceptable excipient.

28. (Previously Presented)  The method of claim 27, wherein the pharmaceutically acceptable excipient is a sweetener, flavoring agent or preservative.

29. (Previously Presented)  The method of claim 27, wherein the pharmaceutically acceptable excipient is a sweetener.

30. (Previously Presented)  The method of claim 29, wherein the sweetener is a solid.

31. (Previously Presented)  The method of claim 17, wherein the powder is stable for at least six months at ambient, accelerated or refrigerated conditions.

32. (Previously Presented)  The method of claim 17, wherein the liquid comprises

(a)      about 1 mg/ml enalapril or a pharmaceutically acceptable salt thereof,

(b)      about 6 mg/ml mannitol, and

(c)      about .07 mg/ml colloidal silicon dioxide.

33. (Previously Presented)  The method of claim 32, wherein the liquid further comprises a pharmaceutically acceptable excipient.

34. (Previously Presented)  The method of claim 33, wherein the pharmaceutically acceptable excipient is a sweetener, flavoring agent or preservative.

35. (Previously Presented)  The method of claim 33, wherein the pharmaceutically acceptable excipient is a sweetener.

36. (Previously Presented)  The method of claim 17, wherein the powder comprises about 150 mg enalapril, about 890 mg mannitol and 10 mg colloidal silicon dioxide.

37. (Currently Amended)  The method of claim 32, wherein the ~~enalalpril~~ enalapril oral liquid is administered to the subject at a daily dosage from about 0.01 to about 1.0 mg/kg per body weight.

38. (Currently Amended)  The method of claim 32, wherein the ~~enalalpril~~ enalapril oral liquid is administered to the subject at a daily dosage of about 5 mg enalapril.

39. (Currently Amended)  The method of claim 32, wherein the ~~enalalpril~~ enalapril oral liquid is administered to the subject at a daily dosage of about 40 mg enalapril.

3

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 4 of 23

40. (Currently Amended)  The method of claim 17, wherein the ~~enalalpril~~ enalapril oral liquid is administered to the subject in a fasted state.

41. (Currently Amended)  The method of claim 17, wherein the ~~enalalpril~~ enalapril oral liquid is administered to the subject in a fed state.

42. (Currently Amended)  The method of claim 17, wherein the ~~enalalpril~~ enalapril oral liquid further administered in combination with an agent selected from the group consisting of diuretics, beta blockers, alpha blockers, mixed alpha and beta blockers, calcium channel blockers, angiotensin II receptor antagonists, ACE inhibitors, aldosterone antagonists and alpha-2 agonists.

43. (Currently Amended)  A method of treating ~~prehyertension~~ prehypertension in a subject comprising administering to that subject a therapeutically effective amount of an enalapril oral liquid formulation, the enalapril oral liquid formulation reconstituted from a pharmaceutical powder comprising:

(a)      about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,

(b)      about 85 % (w/w) mannitol, and

(c)      about 1 % (w/w) colloidal silicon dioxide,

wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about 25±5°C and 60±10% relative humidity.

44. (Previously Presented)  The method of claim 43, wherein the subject has blood pressure values of about 120-139/80-89 mm Hg.

45. (Previously Presented)  A method of treating heart failure in a subject comprising administering to that subject a therapeutically effective amount of an enalapril oral liquid formulation, the enalapril oral liquid formulation reconstituted from a pharmaceutical powder comprising:

(a)      about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,

(b)      about 85 % (w/w) mannitol, and

(c)      about 1 % (w/w) colloidal silicon dioxide,

wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about 25±5°C and 60±10% relative humidity.

SPI_0000307

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 5 of 23

46. (Previously Presented)  A method of treating left ventricular dysfunction in a subject comprising administering to that subject a therapeutically effective amount of an enalapril oral liquid formulation, the enalapril oral liquid formulation reconstituted from a pharmaceutical powder comprising:

(a)      about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof,

(b)      about 85 % (w/w) mannitol, and

(c)      about 1 % (w/w) colloidal silicon dioxide,

wherein, when the powder is reconstituted into an oral liquid, the liquid is homogenous and stable for at least 12 weeks at about 25±5°C and 60±10% relative humidity.

*       *       *

5

**REMARKS**

**I. Status of the claims**

Claims 17-46 are pending in this application. Claims 17, 20, and 37-43 are amended to correct typographical errors. No new matter is presented by way of the amendment.  Upon entry of this response, claims 17-46 will be pending.

**II. Rejection Under 35 U.S.C. § 103**

Claims are rejected under 35 U.S.C. § 103(a) as allegedly obvious over various combinations of references.  Office Action at pages 2-9.  Applicant traverses with respect to each combination of references below.

   **1.    The Rejection over RxList, Jursic and Sipahi**

Claims 17-29 and 31-46 are rejected under 35 U.S.C. § 103(a) as allegedly obvious over RxList Drug description ("RxList") in view of Jursic *et al.,* International Patent Application No. WO2012/085249 ("Jursic") as evidenced by Sipahi *et al., J. Am. Coll. Cardiol.,* 2006 48:833-838 ("Sipahi").

Obviousness is a question of law based on underlying factual inquiries. The factual inquiries enunciated by the Court are as follows:

   (A) Ascertaining the scope and content of the prior art; and

   (B) Ascertaining the differences between the claimed invention and the prior art; and

   (C) Resolving the level of ordinary skill in the pertinent art.

   *See Graham v. John Deere Co.*, 383 U.S. 1, (1966); *see also* M.P.E.P. § 2141(II).

Once these factual inquiries have been completed, the Office must explain why the difference(s) between the prior art and the claimed invention would have been obvious to one of ordinary skill in the art.  According to the M.P.E.P., "The key to supporting any rejection under 35 U.S.C. 103 is the clear articulation of the reason(s) why the claimed invention would have been obvious."  M.P.E.P. § 2141(III).  Moreover, the result of any obviousness inquiry must, generally, provide a predictable result or have an expectation of success.  *See id.*

SPI_0000309

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 7 of 23

The current standard of obviousness takes into account (1) whether there would have been a "reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed invention does;" and (2) whether the combination of elements would have yielded "predictable results" *i.e.*, whether there would have been a reasonable expectation of success. (*See e.g., KSR International Co. v. Teleflex Inc.,* 127 S.Ct. 1727, 1731 (2007), *see also PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d at 1342, 1360 (Fed. Cir. 2007) ("The burden falls on the patent challenger to show by clear and convincing evidence that a person of ordinary skill in the art would have had <u>reason to attempt</u> to make the composition or device, or carry out the claimed process, and would have had a <u>reasonable expectation of success</u> in doing so.") (emphasis added, internal quotations omitted)).

With regard to the instant case, Applicant respectfully submits that the Office has not established a *prima facie* case of obviousness. Specifically, Applicant respectfully submits that the RxList, Jursic and Sipahi would not have provided any reason to single out the specific components at the requisite concentrations for a pharmaceutical powder recited in the instant claims; and further that the cited references would not have provided the legally required reasonable expectation of success.

### A.   The Office Fails to Provide a Reason to Arrive at the Pharmaceutical Powder recited in the Instant Claims from RxList, Jursic and Sipahi

Applicant respectfully points out that the instant application is directed to methods of treatment using novel enalapril powders for use in oral liquid forms. Specifically, the pending claims are directed to a method of treating hypertension, prehypertension, heart failure or left ventricular dysfunction in a subject comprising administering to the subject a therapeutically effective amount of an enalapril oral liquid formulation reconstituted from a pharmaceutical powder, the powder comprising (a) about 14 % (w/w) enalapril or a pharmaceutically acceptable salt thereof, (b) about 85 % (w/w) mannitol, and (c) about 1 % (w/w) colloidal silicon dioxide. As the Specification and Drawings of the instant application show, the enalapril drug along with the mannitol and colloidal silicon dioxide exhibit excellent stability and uniformity properties in

7

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 8 of 23

powder and reconstituted liquid form. Further, the claimed pharmaceutical enalapril powders represent an elegant solution over the previous method at obtaining liquid enalapril formulations from suspending the commercially available enalapril tablets in a liquid vehicle.

_RxList only teaches the preparation of oral enalapril suspensions from commercially available tablets._

RxList discloses mixing Bicitra® with the commercially available enalapril tablets Vasotec® and Ora-Sweet SF$^{TM}$ to prepare enalapril suspensions. RxList only teaches suspending the tablets in a liquid solution by shaking the mixture. RxList provides no reason or rationale of how one of ordinary skill in the art would use these teachings to arrive at pharmaceutical enalapril powders, let alone pharmaceutical enalapril powders with enalapril, mannitol and colloidal silicon dioxide. In fact, RxList does not even teach, disclose or suggest the preparation of any enalapril powders for reconstitution whatsoever as an alternative to the suspension method.

Further, Applicant respectfully points out that one skilled in the art would not use RxList to arrive at the claimed pharmaceutical enalapril powders. One can deduce that oral suspensions from tablets can exhibit undesired variability across different (or even the same) pharmacies and with the use of different tablet brands, liquid vehicles and excipients. As the Office can appreciate, suspending the enalapril tablets in liquid solutions has many issues including stability, solubility, uniformity, _etc_. In fact, RxList cautions that the suspension should be mixed before each use, indicating that the suspension prepared by its method is not homogeneous. _See_ RxList, page 3, last paragraph. In forming a new pharmaceutical enalapril powder that exhibits the stability and homogeneity properties as required in the instant claims, one ordinarily skilled in the art would not select RxList by virtue of its teaching in the use of enalapril tablets as a starting material.

_RxList teaches away from the composition recited in the claimed method._

As the Office acknowledges in the Office Action, RxList fails to disclose or suggest mannitol and colloidal silicon dioxide in compositions with enalapril. Instead, RxList teaches the use of enalapril tablets (Vasotec®) which contain _lactose_ as an excipient. Office Action, at

SPI_0000311

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 9 of 23

pages 3-4. Regarding lactose, Applicant respectfully submits that the Office has failed to consider Rx List as a whole, which actually <u>teaches away</u> from the claimed composition. (*See e.g.* MPEP §2141, *citing W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 220 U.S.P.Q. 303 (Fed. Cir. 1983), *cert. denied*, 469 U.S. 851 (1984) ("A prior art reference must be considered in its entirety, *i.e.*, as a <u>whole</u>, including portions that would lead away from the invention.") (emphasis in original).

In particular, Applicant submits that one skilled in the art, i.e., a formulator would recognize that mannitol and lactose have vastly different properties in terms of chemical reactivity, water content, patient tolerance, etc. Further, Applicant respectfully point out that, according to the Specification and Examples of the instant application, lactose is disfavored in enalapril powder compositions as an enalapril powder composition with lactose has the greatest instability of the active ingredient:

> However, surprisingly, as shown in Example 1, powder blends of lactose with enalapril showed the greatest degradation whereas enalapril/mannitol powder was most stable under accelerated conditions.
>
> *Specification, page 7, para. [0034], see also Example 1.*

Thus, RxList teaches enalapril and lactose together which actually would produce a composition that was more instable than the composition as described in the instant claims.

Accordingly, one ordinarily skilled in the art, in forming enalapril pharmaceutical powders, would not reference RxList because it only teaches enalapril tablets as a starting material. Even if one ordinarily skilled in the art attempted to use the teachings of RxList, one would be led away from the claimed composition by virtue of the disclosure on lactose.

<u>*Jursic and Sipahi also fail to provide a reason to arrive at the claimed composition.*</u>

Jursic and Sipahi do not remedy the deficiencies of RxList. Jursic is cited for the premise of mannitol in an enalapril/lercanidipine tablet and that glidants such as colloidal silica are contemplated within scope of embodiments. Office Action, at page 5. However, Applicant respectfully points out that nothing in Jursic would give one ordinarily skilled in the art any reason, basis, suggestion or rationale to select mannitol as well as a glidant, let alone colloidal silica to form an enalapril powder composition as recited in the instant claims. Applicant also

9

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 10 of 23

notes that Jursic teaches enalapril/lercanidipine tablets that contain lactose instead (see, Jursic, Example 6). This further raises the question of how one would select mannitol over lactose as taught by RxList or Jursic. Neither reference teaches that mannitol is preferred over lactose.

Sipahi is cited as evidence for the intended use of treating prehypertension. Office Action, at page 8. However, Sipahi merely discloses a study of evaluating the effects of normal blood pressure, prehypertension, and hypertension on the progression of coronary atherosclerosis in patients treated with amlodipine, enalapril or placebo. Nothing in Sipahi teaches or suggests that enalapril is preferred over amlodipine or placebo, let alone any desirability to focus on a particular enalapril composition. Thus, Sipahi would not provide the legally required reason to specifically pursue the claimed method.

Accordingly, the Office cannot provide a plausible rationale of how one of ordinary skill in the art would use the teachings of Jursic and/or Sipahi in combination with RxList to arrive at the enalapril powder composition as recited in the claimed method. This leads one to conclude that the Office has applied hindsight reconstruction to reject the instant claims.

**B.      RxList, Jursic and Sipahi Provide No Reasonable Expectation of Success of the Claimed Subject Matter**

The second measure of obviousness requires that the combination of elements would have yielded "predictable results" *i.e.*, whether there would have been a reasonable expectation of success. To have a reasonable expectation of success, "one must be motivated to do more than merely "vary all parameters or try each of numerous possible choices until one possibly arrived at a successful result, where the prior art gave no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful." *Medichem, S.A. v. Robaldo,* 327 F.3d 1157, 1165 (Fed. Cir. 2006).

The Office Action states that the Jursic reference is applied for its teachings with respect to mannitol and colloidal silicon dioxide. Regarding mannitol, as Applicant has noted above, Jursic teaches, in various embodiments, enalapril/lercanidipine tablet compositions which contain either mannitol or lactose without a preference for either. With respect to colloidal silicon dioxide, Applicant respectfully submits that Jursic merely lists possible excipients that

SPI_0000313

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 11 of 23

can be used and does not particularly point out colloidal silicon dioxide nor even use it in its formulations:

> Examples of suitable excipients for use in a composition or solid dosage form according to the invention include fillers, diluents, disintegrants, binders, stabilizers, lubricants etc. or mixtures thereof. As the composition or solid dosage form according to the invention may be used for different purposes, the choice of excipients is normally made taken such different uses into considerations. Other pharmaceutically acceptable excipients for suitable use are e.g. preservatives, antioxidants, buffering agents, chelating agents, coloring agents, complexing agents, emulsifying and/or solubilizing agents, flavors and perfumes, humectants, sweetening agents, wetting agents etc.

> *Jursic, page. 15, ll. 1-9.*

Additionally, Jursic further lists examples of fillers, diluents, binders, disintegrants, glidants, lubricants, organic acids, anti-oxidants, surfactants that in total number to over one hundred excipients and states that "The amount of each type of additive employed, e.g. glidant, binder, disintegrant, filler, or diluents and lubricant may vary within ranges conventional in the Art." *Jursic, page 15, ll. 11-12.*

When Jursic and RxList are combined, one ordinarily skilled in the art is merely taught that any one of the hundreds of excipients disclosed in Jursic may potentially be combined with oral suspensions from enalapril tablets as taught in RxList.  Sipahi, which does not even disclose that enalapril is preferred over other treatment options, does not cure the deficiencies of Jursic or RxList.  As such, the prior art does not provide any expectation that any <u>particular</u> combination would be successful for stable enalapril pharmaceutical powder compositions, much less any expectation that the combination of enalapril, mannitol and colloidal silicon dioxide would be successful in forming a stable enalapril pharmaceutical powder.  Simply put, to arrive at the combination of enalapril, mannitol and colloidal silicon dioxide using the cited references, one skilled in the art must "vary all parameters or try each of the numerous possible choices" of the reference without "direction as to which of the many choices is likely to be successful." *Medichem*, 437 F.3d at 1165.  This is precisely what courts have held <u>not</u> to be a reasonable expectation of success.  *Id.*; *see also, In re O'Farrell*, 853 F.3d 894, 903-4.

SPI_0000314

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 12 of 23

Since no reasonable expectation of success in the specifically claimed compositions is provided by the cited references, Applicant respectively submits that the Office is improperly relying on the prior art disclosures as a basis for finding reasonable expectation of success.

Accordingly, because the Office has not demonstrated a rationale for arriving at the claimed composition nor a reasonable expectation of success, the Office has failed to establish a *prima facie* case of obviousness. Moreover, because a *prima facie* case of obviousness is not established based on the cited references, the Office's rejections with respect to methods of treatment using the recited compositions have no merit.

Applicant, therefore, respectfully requests that this rejection be withdrawn.

**2. The Rejection over RxList, Jursic and Sosnowska**

Claims 17-46 are rejected under 35 U.S.C. § 103(a) as allegedly obvious over RxList RxList in view of Jursic and further in view of Sosnowska *et al.*, *Acta Poloniae Pharmaceutica – Drug Research*, 2009, 66(3) 321-326 ("Sosnowska").

RxList and Jursic are discussed in detail above. Sosnowska is cited as evidence of adding solid sweetener to the enalapril composition. However, Sosnowska, similar to RxList and Jursic, does not provide the legally required reason to specifically pursue the claimed method for at least the following reasons:

First. Sosnowska describes the process of grinding the enalapril tablets, mixing with certain excipients and liquid vehicles and providing an analysis of the resultant suspension. However, Sosnowska does not teach or suggest that the ground tablet and resuspension method can be an alternative to the preparation of any enalapril powders for reconstitution. At best, Sosnowska only shows the preparation of oral enalapril suspensions from grinding commercially available tablets. However, nothing in Sosnowska provides any reason or rationale of how one of ordinary skill in the art would use these teachings to arrive at pharmaceutical enalapril powders, much less pharmaceutical enalapril powders with enalapril, mannitol and colloidal silicon dioxide.

Notably, Sosnowska makes reference to the problems associated with the crushing or grinding of tablets to form oral suspensions:

SPI_0000315

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 13 of 23

> During preparing suspensions from tablets or capsules one should consider a lot of important problems including: solubility and stability of the active substance, pH and composition of the suspending medium, and antimicrobial protection. The main problems appearing during preparation the formulation include achieving dose uniformity and chemical and physical stability (7).

> *Sosnowska, p. 321, col. 2.*

One can readily appreciate that oral suspensions from tablets can exhibit undesired variability across different (or even the same) pharmacies and with the use of different grinding methods, tablet brands, liquid vehicles and excipients.  Thus, one ordinarily skilled in the art would not select Sosnowska by virtue of its teaching in the use of enalapril tablets as a starting material to form a new pharmaceutical enalapril powder that exhibits the stability and homogeneity properties as recited in the instant claims.   This is particularly in view of Sosnowska's admission that "the main problems appearing during preparation the formulation include achieving dose uniformity and chemical and physical stability" with its process.  *Id.*

Applicant respectfully submits that one skilled in the art in reading a claim on "a *pharmaceutical* powder" would interpret the claim to mean a powder made by a pharmaceutical process.  That is, a powder is produced from pharmaceutical grade materials from a process that is validated with a Good Manufacturing Practice (GMP) certification.  One skilled in the art would not consider a pharmaceutical powder as being prepared from the crushing of existing commercially available tablets.

Second, Sosnowska fails to disclose or suggest mannitol and colloidal silicon dioxide in compositions with enalapril.  Instead, Sosnowska teaches the use of enalapril tablets (Enarenal®) which contain *lactose* as an excipient.  Regarding lactose, Applicant respectfully invites the Examiner's attention to Applicant's remarks in connection with RxList on pages 8-10 above.  In short, Sosnowska teaches enalapril and lactose together which actually would produce a powder composition that was more instable than the composition as described in the instant claims.  Accordingly, one ordinarily skilled in the art, in forming enalapril pharmaceutical powders, would not reference Sosnowska because it only teaches enalapril tablets as a starting material.  Even if one ordinarily skilled in the art attempted to use the teachings of Sosnowska, one would be led away from the claimed composition by virtue of the disclosure on lactose.

SPI_0000316

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 14 of 23

Finally, Applicant respectfully submits that Sosnowska, alone or in combination with RxList and/or Jursic provides no reasonable expectation of success in the specifically claimed compositions.  At best, one ordinarily skilled in the art is merely taught that any one of the hundreds of excipients disclosed in Jursic may potentially be combined with oral suspensions from enalapril tablets as taught in RxList or Sosnowska.  However, these references are completely silent as to the desirability of any particular combination for stable enalapril pharmaceutical powder compositions, let alone any expectation that the combination of enalapril, mannitol and colloidal silicon dioxide would be successful in forming a stable enalapril pharmaceutical powder.  Indeed, faced with almost an infinitely large number of possible excipients, one skilled in the art – who does not have the benefit of hindsight – must "vary all parameters or try each of the numerous possible choices" of the reference without "direction as to which of the many choices is likely to be successful." *Medichem*, 437 F.3d at 1165.  He or she would not have any reason to specifically focus on the combination of enalapril, mannitol and colloidal silicon dioxide.

As such, the Office has failed to establish a *prima facie* case of obviousness because the Office has not demonstrated a rationale for arriving at the claimed composition nor a reasonable expectation of success.  Moreover, because a *prima facie* case of obviousness is not established by the cited references, the Office's further rejection with respect to treatment of hypertension with the claimed composition containing solid sweetener is unfounded.  Withdrawal of this rejection of claims is respectfully requested.

### 3.    The Entire Prior Art Must Be Considered; Rezende *et al.*, teaches that colloidal silicon dioxide decreases stability of enalapril

As the Office is no doubt aware, the Examiner "must not [consider] a reference in a vacuum, but against the background of the other references of record which may disprove theories and speculations in the reference..." *In re Ehrreich*, 590 F.2d 902, 908-909, 200 USPQ 504 (CCPA 1979).  "The question in a § 103 case is what the references would *collectively* suggest to one of ordinary skill in the art." *Id*. (emphasis in original).  It is also improper to combine references where a reference teaches away from their combination. *In re Grasselli*, 713 F.2d 731, 743, 218 USPQ 769, 779 (Fed. Cir. 1983) (The claimed catalyst which contained both iron and an alkali metal was not suggested by the combination of a reference which taught the

14

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 15 of 23

interchangeability of antimony and alkali metal with the same beneficial result, combined with a reference expressly excluding antimony from, and adding iron to, a catalyst.), *see also* MPEP § 2145.

Applicant submits that Rezende *et al.*, Stability and Compatibility Study on Enalapril Maleate using Thermoanalytical Techniques, *J. Thermal Anal. & Calorimetry,* 2008 (93) 881-886 (submitted herewith and in IDS dated November 7, 2012 of record, also referenced in Specification at paragraph [0117]) actually teaches away from the claimed pharmaceutical powder. Rezende *et al.* note in the Introduction, that although enalapril maleate (EM) alone is stable, the drug is unstable in a matrix and it is very difficult to form a stable solid oral dosage for it:

> EM alone is temperature stable either under dry or different humidity conditions. However, it becomes unstable when it is mixed with the matrix, during tablet making and exposed to the same conditions [10]. <u>Since EM is incompatible with most of the commonly used excipients, it is very difficult to formulate a stable solid oral dosage form for it</u> [11].
>
> *Rezende et al., p. 881, 2nd col., last paragraph (emphasis added).*

Therefore at the outset, enalapril, as noted by others, is incompatible with most other excipients, as stated by Rezende *et al.* Further, Rezende *et al.* investigated the compatibility of enalapril maleate with colloidal silicon dioxide ($SiO_2$) by differential scanning calorimetry (DSC) and thermogravimetry (TG) analysis and found that:

> A 40% decrease in the $E_A$ value can be observed for the thermal degradation reaction of EM when it is mixed with $SiO_2$ keeping 1:1 mass/mass ratio. <u>Therefore, the use of $SiO_2$ as excipient should be avoided in formulations containing EM, since it may act as a catalyst in the thermal decomposition of this drug even though $SiO_2$ is usually employed at low concentrations</u> (as it is the case for the studied formulation, in which $SiO_2$ is employed at 1% mass/mass).
>
> *Rezende et al., p. 884, 2nd col., last paragraph (emphasis added).*

As found by Rezende *et al.*, colloidal silicon dioxide is incompatible with enalapril maleate. Although the concentration ratio in the experiment of enalapril and colloidal silicon dioxide was 1:1, *i.e.,* the powder tested consisted of 50% enalapril maleate and 50% colloidal silicon dioxide, and the authors still cautioned the use of this excipient in enalapril formulations even though the colloidal silicon dioxide would not be used in such a high concentration.

15

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 16 of 23

Thus, this reference discloses that colloidal silicon dioxide destabilizes enalapril thereby teaching away from the claimed pharmaceutical powder which includes enalapril and colloidal silicon dioxide. One skilled in the art, in reading Rezende *et al.* would not consider and use enalapril with colloidal silicon dioxide together in a formulation.

Applicant further points out that even the commercially available VASOTEC® enalapril maleate tablets, their description forwarded by the Office in the Non-final Office Action and found on http://www.drugs.com/pro/vasotec.html; also do not contain colloidal silicon dioxide. Taken together, it is apparent that colloidal silicon dioxide is disfavored in formulating with enalapril in the prior art and also in commercial embodiments.

Accordingly, the Office has failed to establish a *prima facie* case of obviousness for at least the reason that the prior art teaches away from the use of colloidal silicon dioxide with enalapril. For at least this reason, the pending claims which recite colloidal silicon dioxide and enalapril together is not obvious.

### 4.      The Office must consider the secondary considerations of the claimed invention

Finally, as well settled, even if a *prima facie* case of obviousness is established, the Office is required to consider all rebuttal evidence submitted by an Applicant. *See, e.g.,* MPEP §2145. This requirement remains unchanged following *KSR*, as the Federal Circuit has made clear. (*See In re Sullivan*, 498 F.3d 1345 (Fed. Cir. 2007); MPEP §2145). In *In re Sullivan*, the Federal Circuit vacated and remanded a Board rejection of antivenom-composition claims because the Board failed to give any weight to the applicant's rebuttal evidence demonstrating that, *inter alia*, the combination of prior art elements exhibited unexpected efficacy while reducing the occurrence of adverse immune reactions in humans. (*Id.* at 1353). As the Court explained, "[w]hen a patent applicant puts forth rebuttal evidence, the Board must consider that evidence." (*Id.* at 1351).

Applicant submits that the present claims are not obvious over the cited references as discussed above and further submit that the that the subject matter in the claims 1) have unexpected properties with respect to stability and reconstitution in liquid forms; and 2) solve a long-felt need as evidenced by the failure of others.

16

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 17 of 23

<u>Unexpected Properties</u>

Applicant notes that each component is required for a stable pharmaceutical enalapril powder for reconstitution into an oral liquid.  With respect to mannitol, Example 1 of the instant application describes that mannitol unexpectedly stabilizes enalapril in powder form moreso than lactose (Example 1, Tables 2 & 3 reproduced below):

SPI_0000320

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 18 of 23

| 2 % w/w Enalapril/Lactose Powder in Bottle Formulation | | | | |
|:---:|:---:|:---:|:---:|:---:|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient | 60°C/ambient |
| 0 | 101.54 | 101.54 | 101.54 | 101.54 |
| 1 | 100.27 | 100.59 | 98.61 | 94.74 |
| 2 | 100.37 | 100.60 | 98.82 | 94.51 |
| 3 | 101.10 | 99.58 | 98.45 | 93.44 |
| 4 | 99.03 | 98.53 | 96.94 | 92.66 |
| 8 | 100.23 | 99.63 | 98.89 | 90.56 |
| 12 | 102.20 | 99.53 | 100.02 | 89.76 |
| 26 | 101.28 | 95.83 | 97.89 | 75.57 |
| 52 | 101.50 | 91.90 | 93.70 | N/A |

| 2 % w/w Enalapril/Mannitol Powder in Bottle Formulation | | | | |
|:---:|:---:|:---:|:---:|:---:|
| Time (Weeks) | Refrigerated | 25°C/60% RH | 40°C/ambient | 60°C/ambient |
| 0 | 100.16 | 100.16 | 100.16 | 100.16 |
| 1 | 99.61 | 99.57 | 93.42 | 96.96 |
| 2 | 98.56 | 98.41 | 94.41 | 101.14 |
| 3 | 99.21 | 98.51 | 99.42 | 101.24 |
| 4 | 99.20 | 98.59 | 101.26 | 99.97 |
| 8 | 101.26 | 98.88 | 102.17 | 100.80 |
| 12 | 103.33 | 99.67 | 103.31 | 95.15 |
| 26 | 102.19 | 96.89 | 102.68 | 94.66 |
| 52 | 102.50 | 94.30 | 99.70 | N/A |

As shown from the above data, the enalapril as analyzed by HPLC/UV, showed greater stability in the enalapril/mannitol powder formulations than enalapril/lactose powder formulations at the 25°C, 40°C and 60°C stored conditions.  At higher temperatures (40°C and 60°C), the degradation of enalapril in the enalapril/lactose formulations is more pronounced with respect to the enalapril/mannitol formulations.  This is surprising as enalapril has traditionally been formulated with lactose in solid tablet forms, *see, e.g.,* VASOTEC® enalapril maleate tablets, their description found on http://www.drugs.com/pro/vasotec.html.  Thus the data shows

18

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 19 of 23

that contrary to lactose being used in enalapril maleate tablets, this excipient actually does not perform favorably towards enalapril stability in a powder format.  Instead, mannitol gave the greatest enalapril stability.  These results are not predicted or suggested anywhere in the literature, thus showing the unexpected properties of mannitol contributing to enalapril stability.

Regarding colloidal silicon dioxide, the prior art disfavors its use as colloidal silicon dioxide was found to destabilize enalapril maleate from DSC and TG thermoanalysis, *see* discussion above at **Section III.C**.  However, in the present case, "the addition of colloidal silicon dioxide surprisingly aided in the uniformity of the blend and the bottle content as well as in preparation of the liquid form".  Specification, page 12, paragraph [0051].  As Example 4 states:

> [T]he addition of colloidal silicon dioxide to an enalapril powder composition during scale-up resulted in improved and acceptable blend uniformity and bottle content uniformity levels.  Enalapril Powder Composition B (150 mg enalapril, 890 mg mannitol, 10 mg colloidal silicon dioxide/bottle) was scaled-up and the resultant formulation tested for blend and content uniformity as described above.

> *Example 4, page 34, paragraph [00123].*

More surprisingly, "the addition of colloidal silicon dioxide resulted in a solution that, upon visual inspection, was truly dissolved and homogenous".  Example 4, page 34, paragraph [00124].  Figure 2C in the drawings shows a enalapril liquid that is clear and without particulates.  This contrasts with enalapril alone (Figure 2B) and enalapril+mannitol alone (Figure 2A).  As Example 4 describes, reconstitution of enalapril+mannitol in syrup showed that:

> Scaled-up enalapril and mannitol powder compositions such as Enalapril Powder Composition A did not dissolve in the syrup, but instead resulted in powder clumping and specking on the surface of the liquid, termed 'clouding'.  Various enalapril and mannitol formulations were examined at different concentrations, which resulted in similar 'clouding'.

> *Example 4, page 33, paragraph [00120].*

With respect to reconstitution of enalapril alone (enalapril neat):

> It was observed that during reconstitution with 150 mL Ora-Sweet® SF sugar-free flavored syrup, the neat enalapril did not dissolve but floated on the surface of the liquid, even after 2 hours standing after reconstitution (FIG. 2B).

> *Example 4, page 34, paragraph [00121].*

SPI_0000322

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 20 of 23

Thus, only the addition of colloidal silicon dioxide allowed a clear and homogenous enalapril liquid reconstituted from powder.  Further as Example 6 shows, the colloidal silicon dioxide did not destabilize the enalapril powder and liquid forms.  This was very unexpected, at least because the prior art taught against the use of colloidal silicon dioxide and its destabilizing effects and also the fact that colloidal silicon dioxide is not known for aiding in solvating powders.  The inventors here have demonstrated a new and unappreciated property in colloidal silicon dioxide with respect for pharmaceutical powders that is reconstituted into liquid forms.

Accordingly, the specification and examples of the pending application show the unexpected properties of the lactose and colloidal silicon dioxide for the enalapril pharmaceutical powder which rebuts any *prima facie* obviousness.

<u>Long-felt need and the failure of others</u>

Establishing long-felt need requires objective evidence that an art recognized problem existed in the art for a long period of time without solution. The relevance of long-felt need and the failure of others to the issue of obviousness depends on several factors. First, the need must have been a persistent one that was recognized by those of ordinary skill in the art. *In re Gershon*, 372 F.2d 535, 539, 152 USPQ 602, 605 (CCPA 1967) ("Since the alleged problem in this case was first recognized by appellants, and others apparently have not yet become aware of its existence, it goes without saying that there could not possibly be any evidence of either a long felt need in the . . . art for a solution to a problem of dubious existence or failure of others skilled in the art who unsuccessfully attempted to solve a problem of which they were not aware."). Second, the long-felt need must not have been satisfied by another before the invention by applicant. Newell Companies v. Kenney Mfg. Co., 864 F.2d 757, 768, 9 USPQ2d 1417, 1426 (Fed. Cir. 1988).  *See also*, MPEP § 716.04.

Applicant respectfully submits that the claimed enalapril pharmaceutical powder for reconstitution as an oral liquid as recited in the claims solves a long-felt need.  Enalapril as drug has been readily available for a long time.  A search of the approval for enalapril maleate tablets shows that, in the U.S., VASOTEC® enalapril maleate tablets were approved in 1985, *see,* http://www.accessdata.fda.gov/scripts/cder/ob/docs/obdetail.cfm?Appl_No=018998&TABLE1=OB_Rx.  The product insert for VASOTEC® enalapril maleate tablets describes that the tablets can be crushed and compounded into an oral suspension for pediatric administration.  Thus, for

20

SPI_0000323

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 21 of 23

almost 30 years and lacking a better option, the current form of preparing an enalapril for
pediatric patients and those who are unable to swallow tablets is still crushing commercially
available enalapril tablets and mixing them to form an oral suspension under non-GMP
conditions. Thus, there is a long-felt need for a better pharmaceutical enalapril formulation
available for pediatric patients and those who are unable to swallow tablets as evidenced by the
current practice. The claimed composition solves this long-felt need by describing an elegant
solution which removes variability, contamination, stability, additional steps, complexity and
other issues with crushing tablets and compounding them. This solution is therefore safer than
the previous method of compounding tablets.

Secondly, the claimed composition is the first to satisfy this long-felt need. This is
evidenced by the lack of any approved enalapril pharmaceutical product that is solely prepared
and administered in oral liquid form. As evidenced by the support and data from the examples of
the present application, the effort in developing this formulation was not trivial and required
ingenuity to prepare a powder that was stable and, upon reconstitution, clear and homogeneous.
The lack of any comparable approved enalapril products to the one as recited in the instant
claims suggests the failure of others. Indeed, the data from the specification and examples of the
instant application show that formulating such an enalapril powder is difficult, and is full of
failed attempts in initial formulation, scale-up, reconstitution and clinical administration.

In sum, Applicant respectfully request withdrawal of the rejection directed to claims 17-
46 at least for the reason that a *prima facie* case of obviousness has not been established, the
Office has not considered the totality of prior art, and that any presumption of obviousness is
overcome by a sufficient showing of secondary considerations, including at least, unexpected
results and solving a long-felt need.

### III. Double Patenting Rejection

Claims 17-46 are provisionally rejected under the judicially created doctrine of
obviousness-type double patenting as being unpatentable over claims 1-4, 10 and 16 of the
copending U.S. Patent application No. 13/670,355 (now U.S. Patent No. 8,568,747).

The Examiner indicates that a terminal disclaimer in compliance with 37 CFR 1.132(c) or
1.321(d) may be filed to overcome these rejections. Solely to expedite prosecution of this

SPI_0000324

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 22 of 23

application, a terminal disclaimer is being filed herewith with respect to U.S. Pat. No. 8,568,747.

The instant application is commonly owned with the '747 patent.

      Removal of these rejections is therefore respectfully requested.

                    *      *      *

SPI_0000325

Application No. 13/914,452
Amendment in Response to Office Action dated August 28, 2013
Page 23 of 23

## **CONCLUSION**

Applicants submit that this response fully addresses the Office Action mailed August 28, 2013.  Applicants believe that for the reasons set forth herein the pending claims are in condition for allowance and early and favorable consideration is respectfully requested.

Should the Examiner have any questions or concerns, the Examiner is encouraged to contact the undersigned attorney at (858) 350-2318.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Date: _November 27, 2013_____          _____/Clark Lin/_____
                                          Clark Y. Lin, Reg. No. 67,024

650 Page Mill Road
Palo Alto, CA  94304-1050
(650) 493-9300
Customer No. 021971

23

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Application: | | Confirmation No.: To Be Assigned |
| Inventor: | Lian G. RAJEWSKI, et al. | Examiner: To Be Assigned |
| Application No.: | To Be Assigned | Group Art Unit: To Be Assigned |
| Filed: | Herewith | Customer No. 021971 |
| Title: | **ENALAPRIL COMPOSITIONS** | |
| | | File No. 43960-701.101 |

## POWER OF ATTORNEY TO PROSECUTE APPLICATIONS BEFORE THE USPTO
### and 3.73 STATEMENT

☒   I hereby appoint the practitioners associated with Customer Number:   | **021971** |

As attorney(s) or agent(s) to represent the undersigned before the United States Patent and Trademark Office (USPTO)

☒   Please address all correspondence for the above-identified application to:   | **021971** |

## STATEMENT UNDER 37 CFR 3.73(b)

Silvergate Pharmaceuticals, Inc._____, a Corporation of the State of Delaware_____
(Name of Assignee)                                    (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)
states that it is: the assignee of an undivided interest in the entirety, in the patent application/patent identified above by virtue of either:

A. ☒   An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States
       Patent and Trademark Office at Reel _____, Frame _____, or for which a copy thereof is attached.

OR

B. ☐   A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as shown below:
       1.   From: _____ To: _____
            The document was recorded in the United States Patent and Trademark Office at
            Reel _____, Frame _____, or for which a copy thereof is attached.
       2.   From: _____ To: _____
            The document was recorded in the United States Patent and Trademark Office at
            Reel _____, Frame _____, or for which a copy thereof is attached.

I am an authorized representative of the:
       ☒   Assignee of record of the entire interest. See 37 CFR 3.71
            Statement under 37 CFR 3.73(b) is incorporated herein.

### SIGNATURE of Assignee of Record

| Signature | | |
|---|---|---|
| Name/Title | Frank SEGRAVE / Chief Executive Officer | |
| Date | 10/1/12 | Telephone No.: 614-783-2497 |

5162964_1.DOC
Rev. 5/16/2007

SPI_0000327

| PATENT ASSIGNMENT | Docket Number 43060-701.101 |
| --- | --- |

WHEREAS, the undersigned:

BECKLOFF, Michael C.
14108 Canterbury Street
Leawood, KS 66224

(hereinafter "Inventor(s),'' have invented certain new and useful improvements in

### ENALAPRIL COMPOSITIONS

☒ for which a United States patent application is executed on even date herewith;
☐ for which Application No. _____ was filed on _____ in the United States Patent Office;
☐ for which Application No. _____ was filed on _____ in the U.S. Receiving Office of the Patent Cooperation Treaty;
☐ for which Application No. _____ was filed on _____ in the _____ Patent Office; and/or
☐ for which an application was filed upon which a United States Patent issued on _____, as U.S. Patent No. _____
(hereinafter "Application(s)").

WHEREAS, Silvergate Pharmaceuticals, Inc., a Corporation of the State of Delaware having an address at 5371 Gordon Way, Dublin, Ohio 43017, USA, (hereinafter "Assignee"), is desirous of acquiring the entire right, title and interest in and to said Application(s) and the inventions disclosed therein, and in and to all embodiments of the inventions, heretofore conceived, made or discovered, whether jointly or severally, by said Inventor(s) (hereinafter collectively referred to as "Inventions"), and in and to any and all patents, inventor's certificates and other forms of protection (hereinafter "Patent(s)") thereon granted in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty.

NOW, THEREFORE, in consideration of good and valuable consideration acknowledged by said Inventor(s) to have been received in full from said Assignee:

1.       Said Inventor(s) do hereby sell, assign, transfer and convey unto said Assignee the entire right, title and interest (a) in and to said Inventions and said Applications, including the right to claim priority to said Inventions and said Applications; (b) in and to all rights to all United States and corresponding non-United States patent applications and Patent(s), including those filed under the Paris Convention for the Protection of Industrial Property, The Patent Cooperation Treaty or otherwise; (c) in and to any and all applications filed and any and all Patent(s) granted on said Inventions in the United States, in any foreign country, or under any international convention, agreement, protocol, or treaty, including each and every application filed and any and all Patent(s) granted on any application which is a divisional, substitution, continuation, or continuation-in-part of any of said Application(s); and (d) in and to each and every reissue, reexamination, or extensions of any of said Patent(s).

2.       Said Inventor(s) hereby covenant and agree to cooperate with said Assignee to enable said Assignee to enjoy to the fullest extent the right, title and interest herein conveyed in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty. Such cooperation by said Inventor(s) shall include prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, specifications, declarations or other papers, and other assistance all to the extent deemed necessary or desirable by said Assignee (a) for perfecting in said Assignee the right, title and interest herein conveyed; (b) for prosecuting any applications covering said Inventions; (c) for filing and prosecuting substitute, divisional, continuing or additional applications covering said Inventions; (d) for filing and prosecuting applications for reissuance of any said Patent(s); (e) for interference or other priority proceedings involving said Inventions; and (f) for legal proceedings involving said Inventions and any applications therefor and any Patent(s) granted thereon, including without limitation reissues and reexaminations, opposition proceedings, cancellation proceedings, priority contests, public use proceedings, infringement actions and court actions; provided, however, that the expense incurred by said Inventor(s) in providing such cooperation shall be paid for by said Assignee.

3.       The terms and covenants of this assignment shall inure to the benefit of said Assignee, its successors, assigns and other legal representatives, and shall be binding upon said Inventor(s), their respective heirs, legal representatives and assigns.

4.       Said Inventor(s) hereby warrant and represent that they have not entered and will not enter into any assignment, contract, or understanding in conflict herewith.

5.       Said Inventor(s) hereby request that any Patent(s) issuing in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty, be issued in the name of the Assignee, or its successors and assigns, for the sole use of said Assignee, its successors, legal representatives and assigns.

6.       This instrument will be interpreted and construed in accordance with the laws of the State of California, without regard to conflict of law principles. If any provision of this instrument is found to be illegal or unenforceable, the other provisions shall remain effective and enforceable to the greatest extent permitted by law. This instrument may be executed in counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement.

IN WITNESS WHEREOF, said Inventor(s) have executed and delivered this instrument to said Assignee as of the dates written below:

Date: 10-4-12

Michael C. BECKLOFF

SPI_0000328

| PATENT ASSIGNMENT | Docket Number 43060-701.101 |
|---|---|

WHEREAS, the undersigned:

1.  SEGRAVE, Frank
    5371 Gordon Way
    Dublin, OH 43017

2.  MAURO, Robert
    24 Oakwood Avenue
    Miller Place, NY 11764

3.  COLABUONO, Peter
    7133 Mission Hills Drive
    Las Vegas, NV 89113

(hereinafter "Inventor(s)," have invented certain new and useful improvements in

### ENALAPRIL COMPOSITIONS

☒ for which a United States patent application is executed on even date herewith;

☐ for which Application No. _____ was filed on _____ in the United States Patent Office;

☐ for which Application No. _____ was filed on _____ in the U.S. Receiving Office of the Patent Cooperation Treaty;

☐ for which Application No. _____ was filed on _____ in the _____ Patent Office; and/or

☐ for which an application was filed upon which a United States Patent issued on _____, as U.S. Patent No. _____.

(hereinafter "Application(s)").

WHEREAS, Silvergate Pharmaceuticals, Inc., a Corporation of the State of Delaware having an address at 5371 Gordon Way, Dublin, Ohio 43017, USA, (hereinafter "Assignee"), is desirous of acquiring the entire right, title and interest in and to said Application(s) and the inventions disclosed therein, and in and to all embodiments of the inventions, heretofore conceived, made or discovered, whether jointly or severally, by said Inventor(s) (hereinafter collectively referred to as "Inventions"), and in and to any and all patents, inventor's certificates and other forms of protection (hereinafter "Patent(s)") thereon granted in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty.

NOW, THEREFORE, in consideration of good and valuable consideration acknowledged by said Inventor(s) to have been received in full from said Assignee:

1.      Said Inventor(s) do hereby sell, assign, transfer and convey unto said Assignee the entire right, title and interest (a) in and to said Inventions and said Applications, including the right to claim priority to said Inventions and said Applications; (b) in and to all rights to all United States and corresponding non-United States patent applications and Patent(s), including those filed under the Paris Convention for the Protection of Industrial Property, The Patent Cooperation Treaty or otherwise; (c) in and to any and all applications filed and any and all Patent(s) granted on said Inventions in the United States, in any foreign country, or under any international convention, agreement, protocol, or treaty, including each and every application filed and any and all Patent(s) granted on any application which is a divisional, substitution, continuation, or continuation-in-part of any of said Application(s); and (d) in and to each and every reissue, reexamination, or extensions of any of said Patent(s).

2.      Said Inventor(s) hereby covenant and agree to cooperate with said Assignee to enable said Assignee to enjoy to the fullest extent the right, title and interest herein conveyed in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty. Such cooperation by said Inventor(s) shall include prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, specifications, declarations or other papers, and other assistance all to the extent deemed necessary or desirable by said Assignee (a) for perfecting in said Assignee the right, title and interest herein conveyed; (b) for prosecuting any applications covering said Inventions; (c) for filing and prosecuting substitute, divisional, continuing or additional applications covering said Inventions; (d) for filing and prosecuting applications for reissuance of any said Patent(s); (e) for interference or other priority proceedings involving said Inventions; and (f) for legal proceedings involving said Inventions and any applications therefor and any Patent(s) granted thereon, including without limitation reissues and reexaminations, opposition proceedings, cancellation proceedings, priority contests, public use proceedings, infringement actions and court actions; provided, however, that the expense incurred by said Inventor(s) in providing such cooperation shall be paid for by said Assignee.

3.      The terms and covenants of this assignment shall inure to the benefit of said Assignee, its successors, assigns and other legal representatives, and shall be binding upon said Inventor(s), their respective heirs, legal representatives and assigns.

4.      Said Inventor(s) hereby warrant and represent that they have not entered and will not enter into any assignment, contract, or understanding in conflict herewith.

5.      Said Inventor(s) hereby request that any Patent(s) issuing in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty, be issued in the name of the Assignee, or its successors and assigns, for the sole use of said Assignee, its successors, legal representatives and assigns.

6.      This instrument will be interpreted and construed in accordance with the laws of the State of California, without regard to conflict of law principles. If any provision of this instrument is found to be illegal or unenforceable, the other provisions shall remain effective and enforceable to the greatest extent permitted by law. This instrument may be executed in counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement.

IN WITNESS WHEREOF, said Inventor(s) have executed and delivered this instrument to said Assignee as of the dates written below:

Date: 10/1/12                                              Date: _____
        Frank SEGRAVE                                              Robert MAURO

Date: _____
        Peter COLABUONO

5162859_1.DOC                                    Page 1 of 1

SPI_0000329

| PATENT ASSIGNMENT | Docket Number 43060-701.101 |
|---|---|

WHEREAS, the undersigned:

1. SEGRAVE, Frank
   5371 Gordon Way
   Dublin, OH 43017

2. MAURO, Robert
   24 Oakwood Avenue
   Miller Place, NY 11764

3. COLABUONO, Peter
   7133 Mission Hills Drive
   Las Vegas, NV 89113

(hereinafter "Inventor(s)," have invented certain new and useful improvements in

## ENALAPRIL COMPOSITIONS

- ☒ for which a United States patent application is executed on even date herewith;
- ☐ for which Application No. _____ was filed on _____ in the United States Patent Office;
- ☐ for which Application No. _____ was filed on _____ in the U.S. Receiving Office of the Patent Cooperation Treaty;
- ☐ for which Application No. _____ was filed on _____ in the _____ Patent Office; and/or
- ☐ for which an application was filed upon which a United States Patent issued on _____ as U.S. Patent No. _____

(hereinafter "Application(s)").

WHEREAS, Silvergate Pharmaceuticals, Inc., a Corporation of the State of Delaware having an address at 5371 Gordon Way, Dublin, Ohio 43017, USA, (hereinafter "Assignee"), is desirous of acquiring the entire right, title and interest in and to said Application(s) and the inventions disclosed therein, and in and to all embodiments of the inventions, heretofore conceived, made or discovered, whether jointly or severally, by said Inventor(s) (hereinafter collectively referred to as "Inventions"), and in and to any and all patents, inventor's certificates and other forms of protection (hereinafter "Patent(s)") thereon granted in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty.

NOW, THEREFORE, in consideration of good and valuable consideration acknowledged by said Inventor(s) to have been received in full from said Assignee:

1. Said Inventor(s) do hereby sell, assign, transfer and convey unto said Assignee the entire right, title and interest (a) in and to said Inventions and said Applications, including the right to claim priority to said Inventions and said Applications; (b) in and to all rights to all United States and corresponding non-United States patent applications and Patent(s), including those filed under the Paris Convention for the Protection of Industrial Property, The Patent Cooperation Treaty or otherwise; (c) in and to any and all applications filed and any and all Patent(s) granted on said Inventions in the United States, in any foreign country, or under any international convention, agreement, protocol, or treaty, including each and every application filed and any and all Patent(s) granted on any application which is a divisional, substitution, continuation, or continuation-in-part of any of said Application(s); and (d) in and to each and every reissue, reexamination, or extensions of any of said Patent(s).

2. Said Inventor(s) hereby covenant and agree to cooperate with said Assignee to enable said Assignee to enjoy to the fullest extent the right, title and interest herein conveyed in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty. Such cooperation by said Inventor(s) shall include prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, specifications, declarations or other papers, and other assistance all to the extent deemed necessary or desirable by said Assignee (a) for perfecting in said Assignee the right, title and interest herein conveyed; (b) for prosecuting any applications covering said Inventions; (c) for filing and prosecuting substitute, divisional, continuing or additional applications covering said Inventions; (d) for filing and prosecuting applications for reissuance of any said Patent(s); (e) for interference or other priority proceedings involving said Inventions; and (f) for legal proceedings involving said Inventions and any applications therefor and any Patent(s) granted thereon, including without limitation reissues and reexaminations, opposition proceedings, cancellation proceedings, priority contests, public use proceedings, infringement actions and court actions; provided, however, that the expense incurred by said Inventor(s) in providing such cooperation shall be paid for by said Assignee.

3. The terms and covenants of this assignment shall inure to the benefit of said Assignee, its successors, assigns and other legal representatives, and shall be binding upon said Inventor(s), their respective heirs, legal representatives and assigns.

4. Said Inventor(s) hereby warrant and represent that they have not entered and will not enter into any assignment, contract, or understanding in conflict herewith.

5. Said Inventor(s) hereby request that any Patent(s) issuing in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty, be issued in the name of the Assignee, or its successors and assigns, for the sole use of said Assignee, its successors, legal representatives and assigns.

6. This instrument will be interpreted and construed in accordance with the laws of the State of California, without regard to conflict of law principles. If any provision of this instrument is found to be illegal or unenforceable, the other provisions shall remain effective and enforceable to the greatest extent permitted by law. This instrument may be executed in counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement.

IN WITNESS WHEREOF, said Inventor(s) have executed and delivered this instrument to said Assignee as of the dates written below:

Date: _____
_____
Frank SEGRAVE

Date: 02-09-2012
_____
Robert MAURO

Date: _____
_____
Peter COLABUONO

SPI_0000330

| PATENT ASSIGNMENT | Docket Number 43060-701.101 |
|---|---|

WHEREAS, the undersigned:

1. SEGRAVE, Frank
   5371 Gordon Way
   Dublin, OH 43017

2. MAURO, Robert
   24 Oakwood Avenue
   Miller Place, NY 11764

3. COLABUONO, Peter
   7133 Mission Hills Drive
   Las Vegas, NV 89133

(hereinafter "Inventor(s)," have invented certain new and useful improvements in

### ENALAPRIL COMPOSITIONS

☒ for which a United States patent application is executed on even date herewith;
☐ for which Application No. _____ was filed on _____ in the United States Patent Office;
☐ for which Application No. _____ was filed on _____ in the U.S. Receiving Office of the Patent Cooperation Treaty;
☐ for which Application No. _____ was filed on _____ in the _____ Patent Office; and/or
☐ for which an application was filed upon which a United States Patent issued on _____ as U.S. Patent No. _____

(hereinafter "Application(s)").

WHEREAS, Silvergate Pharmaceuticals, Inc., a Corporation of the State of Delaware having an address at 5371 Gordon Way, Dublin, Ohio 43017, USA, (hereinafter "Assignee"), is desirous of acquiring the entire right, title and interest in and to said Application(s) and the inventions disclosed therein, and in and to all embodiments of the inventions, heretofore conceived, made or discovered, whether jointly or severally, by said Inventor(s) (hereinafter collectively referred to as "Inventions"), and in and to any and all patents, inventor's certificates and other forms of protection (hereinafter "Patent(s)") thereon granted in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty.

NOW, THEREFORE, in consideration of good and valuable consideration acknowledged by said Inventor(s) to have been received in full from said Assignee:

1. Said Inventor(s) do hereby sell, assign, transfer and convey unto said Assignee the entire right, title and interest (a) in and to said Inventions and said Applications, including the right to claim priority to said Inventions and said Applications; (b) in and to all rights to all United States and corresponding non-United States patent applications and Patent(s), including those filed under the Paris Convention for the Protection of Industrial Property, The Patent Cooperation Treaty or otherwise; (c) in and to any and all applications filed and any and all Patent(s) granted on said Inventions in the United States, in any foreign country, or under any international convention, agreement, protocol, or treaty, including each and every application filed and any and all Patent(s) granted on any application which is a divisional, substitution, continuation, or continuation-in-part of any of said Application(s); and (d) in and to each and every reissue, reexamination, or extensions of any of said Patent(s).

2. Said Inventor(s) hereby covenant and agree to cooperate with said Assignee to enable said Assignee to enjoy to the fullest extent the right, title and interest herein conveyed in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty. Such cooperation by said Inventor(s) shall include prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, specifications, declarations or other papers, and other assistance all to the extent deemed necessary or desirable by said Assignee (a) for perfecting in said Assignee the right, title and interest herein conveyed; (b) for prosecuting any applications covering said Inventions; (c) for filing and prosecuting substitute, divisional, continuing or additional applications covering said Inventions; (d) for filing and prosecuting applications for reissuance of any said Patent(s); (e) for interference or other priority proceedings involving said Inventions; and (f) for legal proceedings involving said Inventions and any applications therefor and any Patent(s) granted thereon, including without limitation reissues and reexaminations, opposition proceedings, cancellation proceedings, priority contests, public use proceedings, infringement actions and court actions; provided, however, that the expense incurred by said Inventor(s) in providing such cooperation shall be paid for by said Assignee.

3. The terms and covenants of this assignment shall inure to the benefit of said Assignee, its successors, assigns and other legal representatives, and shall be binding upon said Inventor(s), their respective heirs, legal representatives and assigns.

4. Said Inventor(s) hereby warrant and represent that they have not entered and will not enter into any assignment, contract, or understanding in conflict herewith.

5. Said Inventor(s) hereby request that any Patent(s) issuing in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty, be issued in the name of the Assignee, or its successors and assigns, for the sole use of said Assignee, its successors, legal representatives and assigns.

6. This instrument will be interpreted and construed in accordance with the laws of the State of California, without regard to conflict of law principles. If any provision of this instrument is found to be illegal or unenforceable, the other provisions shall remain effective and enforceable to the greatest extent permitted by law. This instrument may be executed in counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement.

IN WITNESS WHEREOF, said Inventor(s) have executed and delivered this instrument to said Assignee as of the dates written below:

Date: _____          Date: _____

Frank SEGRAVE                         Robert MAURO

Date: 10/3/17

Peter COLABUONO

5162839_1.DOC                        Page 1 of 1

SPI_0000331

PTO/AIA/26 (04-13)
Approved for use through 04/30/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT | Docket Number (Optional) 43060-701.301 |
|---|---|

In re Application of:  Lian G. Rajewski, et al.

Application No.: 13/914,452

Filed: June 10, 2013

For:  Enalapril Compositions

The applicant, _Silvergate Pharmaceuticals and the University of Kansas,_ owner of __100__ percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of **prior patent** No. _8,568,747_ as the term of said **prior patent** is presently shortened by any terminal disclaimer. The applicant hereby agrees that any patent so granted on the instant application shall be enforceable only for any during such period that it and the **prior patent** are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the applicant does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term of the **prior patent**, "as the term of said **prior patent** is presently shortened by any terminal disclaimer," in the event that said **prior patent** later:

> expires for failure to pay a maintenance fee;
> is held unenforceable;
> is found invalid by a court of competent jurisdiction;
> is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321;
> has all claims canceled by a reexamination certificate;
> is reissued; or
> is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

Check either box 1 or 2 below, if appropriate.

1. [ ]   The undersigned is the applicant.  If the applicant is an assignee, the undersigned is authorized to act on behalf of the assignee.

I hereby acknowledge that any willful false statements made are punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

2. [✓]   The undersigned is an attorney or agent of record.   Reg. No. _67,024_

| /Clark Lin/ | November 27, 2013 |
|---|---|
| Signature | Date |

| Clark Y. Lin | |
| Typed or printed name | |

| | (858) 350-2318 |
|---|---|
| Title | Telephone Number |

[✓]   Terminal disclaimer fee under 37 CFR 1.20(d) included.

> **WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

This collection of information is required by 37 CFR 1.321. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14.  This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

<u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

In re Application:
Inventor:         Lian G. RAJEWSKI, *et al.*
Application No.:  To Be Assigned
Filed:            Herewith
Title:   **ENALAPRIL COMPOSITIONS**

Confirmation No.:   **To Be Assigned**
Examiner:           To Be Assigned
Group Art Unit:     To Be Assigned
Customer No. 021971

**File No. 43060-701.101**

## POWER OF ATTORNEY TO PROSECUTE APPLICATIONS BEFORE THE USPTO
### and 3.73 STATEMENT

☒    I hereby appoint the practitioners associated with Customer Number:

> **021971**

As attorney(s) or agent(s) to represent the undersigned before the United States Patent and Trademark Office (USPTO).

☒    Please address all correspondence for the above-identified application to:

> **021971**

### STATEMENT UNDER 37 CFR 3.73(b)

<u>University of Kansas</u>                                                  <u>a University</u>
(Name of Assignee)                                  (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that it is: the assignee of an undivided interest in the entirety; in the patent application/patent identified above by virtue of either:

A. ☒   An assignment from the inventor(s) of the patent application/patent identified above.  The assignment was recorded in the United States
         Patent and Trademark Office at Reel         , Frame        , *or for which a copy thereof is attached.*

*OR*

B. ☐   A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as shown below:
        1.    From: _____  To: _____
              The document was recorded in the United States Patent and Trademark Office at
              Reel _____, Frame _____, *or for which a copy thereof is attached.*
        2.    From: _____  To: _____
              The document was recorded in the United States Patent and Trademark Office at
              Reel _____, Frame _____, *or for which a copy thereof is attached.*

I am an authorized representative of the:
        ☒    Assignee of record of the entire interest. See 37 CFR 3.71.
              *Statement under 37 CFR 3.73(b) is incorporated herein.*

### SIGNATURE of Assignee of Record

| Signature | *(signature)* | | |
|---|---|---|---|
| Name/Title | Joseph A. Heppert | Asso. Vice Chancellor for Research & Graduate Studies | |
| Date | 2 Oct 12 | Telephone No. | 785-864-8235 |

5149312_1.DOC
Rev. 5/16/2007

SPI_0000333

| PATENT ASSIGNMENT | Docket Number 43060-701.101 |
|---|---|

WHEREAS, the undersigned:

1. RAJEWSKI, Lian G.
   4628 Muirfield Drive
   Lawrence, KS 66047

2. RAJEWSKI, Roger A.
   4628 Muirfield Drive
   Lawrence, KS 66047

3. HASLAM, John L.
   1560 N 1060 Road
   Lawrence, KS 66046

4. HEPPERT, Kathleen
   2901 Oxford Road
   Lawrence, KS 66049

(hereinafter "Inventor(s)," have invented certain new and useful improvements in

**ENALAPRIL COMPOSITIONS**

☒ for which a United States patent application is executed on even date herewith;
☐ for which application serial number _____ was filed on _____ in the United States Patent Office;
☐ for which application serial number _____ was filed on _____ in the U.S. Receiving Office of the Patent Cooperation Treaty;
☐ for which application serial number _____ was filed on _____ in the _____ Patent Office; and/or
☐ for which an application was filed upon which a United States Patent issued on _____, as U.S. Patent No. _____

(hereinafter, "Application(s)". The term "Application(s)" also includes all patent applications that share or claim priority to or from the above application(s) .

WHEREAS, University of Kansas, a Unversity having a place of business at 245 Strong Hall, 1450 Jayhawk Boulevard, Lawrence, Kansas 66045, U.S.A., (hereinafter "Assignee"), is desirous of acquiring the entire right, title and interest in and to said Application(s), and the inventions disclosed therein, and in and to all embodiments of the inventions, heretofore conceived, made or discovered, whether jointly or severally, by said Inventor's (hereinafter collectively referred to as "Inventions"), and in and to any and all patents, inventor's certificates and other forms of protection thereon granted in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty, including those filed under the Paris Convention for the Protection of Industrial Property, The Patent Cooperation Treaty  or otherwise (hereinafter "Patent(s)").

NOW, THEREFORE, in consideration of good and valuable consideration acknowledged by said Inventor(s) to have been received in full from said Assignee:

1.  Said Inventor(s) do hereby sell, assign, transfer and convey unto said Assignee the entire right, title and interest (a) in and to said Inventions; (b) in and to said Applications, including the right to claim priority to and from said Application(s); (c) in and to each and every application that is a divisional, substitution, continuation, or continuation-in-part of any of said Application(s); (d) in and to said Patent(s) and each and every patent issuing or reissuing from any of the foregoing; (e)  in and to each and every reissue, reexamination, renewal or extension of any kind of any of the foregoing; and (f) in and to each and every patent and application filed outside the United States and corresponding to any of the foregoing.

2.  Said Inventor(s) hereby covenant and agree to cooperate with said Assignee to enable said Assignee to enjoy to the fullest extent the right, title and interest herein conveyed in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty.  Such cooperation by said Inventor(s) shall include prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, specifications, declarations or other papers, and other assistance all to the extent deemed necessary or desirable by said Assignee (a) for perfecting in said Assignee the right, title and interest herein conveyed; (b) for prosecuting any applications covering said Inventions; (c) for filing and prosecuting substitute, divisional, continuing or additional applications covering said Inventions; (d) for filing and prosecuting applications for reissuance of any said Patent(s); (e) for interference or other priority proceedings involving said Inventions; and (f) for legal proceedings involving said Inventions and any applications therefor and any Patent(s) granted thereon, including without limitation reissues and reexaminations, opposition proceedings, cancellation proceedings, priority contests, public use proceedings, infringement actions and court actions; provided, however, that reasonable expenses incurred by said Inventor(s) in providing such cooperation shall be paid for by said Assignee.

3.  The terms and covenants of this assignment shall inure to the benefit of said Assignee, its successors, assigns and other legal representatives, and shall be binding upon said Inventor(s), their respective heirs, legal representatives and assigns.

4.  Said Inventor(s) hereby warrant, represent and covenant that said Inventor(s) have not entered and will not enter into any assignment, contract, or understanding in conflict herewith.

5.  Said Inventor(s) hereby request that any Patent(s) issuing in the United States, foreign countries, or under any international convention, agreement, protocol, or treaty, be issued in the name of the Assignee, or its successors and assigns, for the sole use of said Assignee, its successors, legal representatives and assigns.

6.  This instrument will be interpreted and construed in accordance with the laws of the State of California, without regard to conflict of law principles.  If any provision of this instrument is found to be illegal or unenforceable, the other provisions shall remain effective and enforceable to the greatest extent permitted by law.  This instrument may be executed in counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement.

5166209_1.DOC

| PATENT ASSIGNMENT | Docket Number  43060-701.101 |
|---|---|

IN WITNESS WHEREOF, said Inventor(s) have executed and delivered this instrument to said Assignee as of the dates written below:

Date: 04Oct2012 _Lia G. Rajewski_
Lian G. RAJEWSKI

State/Commonwealth of _Kansas_ )
County of _Douglas_ )

On _Oct 4 2012_ before me, _Nancy Helm_ (Name/Title of Notary) personally appeared Lian G. RAJEWSKI (Name of Signer) who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State/Commonwealth of _Kansas_ that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature: _Nancy Helm_

Nancy Helm
NOTARY PUBLIC
State of Kansas
My Appt. Exp. (Notary Seal) 9/22/15

Date: 04Oct12 _Roger Rajewski_
Roger A. RAJEWSKI

State/Commonwealth of _Kansas_ )
County of _Douglas_ )

On _Oct 4 2012_ before me, _Nancy Helm_ (Name/Title of Notary) personally appeared Roger A. RAJEWSKI (Name of Signer) who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State/Commonwealth of _Kansas_ that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature: _Nancy Helm_

Nancy Helm
NOTARY PUBLIC
State of Kansas
My Appt. Exp. (Notary Seal) 9/22/15

Date: 4 Oct 12 _John L. Haslam_
John L. HASLAM

State/Commonwealth of _Kansas_ )
County of _Douglas_ )

On _Oct 4 2012_ before me, _Nancy Helm_ (Name/Title of Notary) personally appeared John L. HASLAM (Name of Signer) who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State/Commonwealth of _Kansas_ that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature: _Nancy Helm_

Nancy Helm
NOTARY PUBLIC
State of Kansas
My Appt. Exp. (Notary Seal) 2/15

Date: 04Oct12 _Kathleen E Heppert_
Kathleen HEPPERT

State/Commonwealth of _Kansas_ )
County of _Douglas_ )

On _Oct 4 2012_ before me, _Nancy Helm_ (Name/Title of Notary) personally appeared Kathleen HEPPERT (Name of Signer) who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State/Commonwealth of _Kansas_ that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature: _Nancy Helm_

Nancy Helm
NOTARY PUBLIC
State of Kansas
My Appt. # (Notary Seal) 2/15

5166209_1.DOC

PTO/SB/08a (07-09)
Approved for use through 07/31/2012.  OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| | | | | Application Number | 13/914,452 |
| | | | | Filing Date | 06/10/2013 |
| | | | | First Named Inventor | Rajewski et al |
| | | | | Art Unit | 1617 |
| | | | | Examiner Name | Y. Zhang |
| Sheet | 1 | of | 5 | Attorney Docket Number | 43060-701.301 |

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1. | US-2006/0094760 | 5/4/2006 | Fawzy et al. | |
| | 2. | US-2004/0258757 | 12/23/2004 | Bosch et al. | |
| | 3. | US-2007/0265344 | 11/15/2007 | Strobel et al. | |
| | 4. | US-2008/0221156 | 9/11/2008 | Spireas | |
| | 5. | US-2008/0234291 | 9/25/2008 | Francois et al. | |
| | 6. | US-4,743,450 | 5/10/1988 | Harris et al. | |
| | 7. | US-4,830,853 | 5/16/1989 | Murthy et al. | |
| | 8. | US-5,698,562 | 12/16/1997 | Mendes et al. | |
| | 9. | US-6,028,222 | 2/22/2000 | Dietlin et al. | |
| | 10. | US-6,413,988 | 7/2/2002 | De Proost | |
| | 11. | US-6,977,257 | 12/20/2005 | Parab et al. | |
| | 12. | US-7,101,888 | 9/5/2006 | Reo et al. | |
| | 13. | US-7,605,148 | 10/20/2009 | Batta et al. | |
| | 14. | US-8,153,824 | 4/10/2012 | Sesha | |
| | 15. | US-4,374,829 | 2/22/1983 | Kunkee et al. | |
| | 16. | US-4,472,380 | 9/18/1984 | Harris et al. | |
| | 17. | US-4,510,083 | 4/9/1985 | Blacklock et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] – Number[4] – Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | 18. | WO-2001/045667 | 6/28/2001 | LEK Tovarna Farmacevtskih | | |
| | 19. | WO-2011/031462 | 3/17/2011 | Latitude Pharma | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

Attorney Docket No.

SPI_0000336

PTO/SB/08a (07-09)
Approved for use through 07/31/2012.  OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 13/914,452 |
| | Filing Date | 06/10/2013 |
| | First Named Inventor | Rajewski et al |
| | Art Unit | 1617 |
| | Examiner Name | Y. Zhang |
| Sheet  2  of  5 | Attorney Docket Number | 43060-701.301 |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | 20. | AHLIN et al., "Investigation of polymeric nanoparticles as carriers of enalaprilat for oral administration," Int'l. Journ. Pharmaceutics, 239, pp. 113-120 (2002) | |
| | 21. | ALLEN et al., "Stability of alprazolam, chloroquine phosphate, cisapride, enalapril maleate, and hydralazine hydrochloride in extemporaneously compounded oral liquids," Am J. Health-Syst Pharm, Vol. 55, pp. 1915-1920,  (1998) | |
| | 22. | BHARDWAJ et al., "Study of forced degradation behavior of enalapril maleate by LC and LC-MS and development of a validated stability-indicating assay method," Journ. Pharmac. and Biomed. Analysis, 46, pp 113-120 (2008) | |
| | 23. | BLOWEY, "Update on the pharmacologic treatment of hypertension in pediatrics," Journal of Clinical Hypertension (Hoboken, NJ, United States) (2012), 14(6), 383-387. Database: CAPLUS, DOI:10.1111/j.1751-7176.2012.00659.x | |
| | 24. | BOURGAULT et al., "Reference-based pricing of prescription drugs: exploring the equivalence of angiotensin-converting-enzyme inhibitors," CMAJ, 161:255-60 (1999) | |
| | 25. | CABOT CORPORATION, "Influence of CAB-O-SIL® M-5P on the Angle of Repose and Flow Rates of Pharmaceutical Powders," 10 pages (2004) | |
| | 26. | CALABRO et al., "Hemodynamic effects of a single oral dose of enalapril among children with asymptomatic chronic mitral regurgitation,"  American Heart Journal (1999), 138(5, Pt. 1), 955-961. Database: CAPLUS, DOI:10.1016/S0002-8703(99)70023-2 | |
| | 27. | Definition of Hypertension (1 page) retrieved from: http://medical-dictionary.thefreedictionary.com/hypertension | |
| | 28. | DELUCCHI et al., "Enalapril and prednisone in children with nephrotic-range proteinuria," Pediatric nephrology (Berlin, Germany) (2000), 14(12), 1088-91, Database: MEDLINE | |
| | 29. | Drug Information on Enalapril (3 pages) retrieved from: http://www.accessdata.fda.gov/drugsatfda_docs/nda/2001/18-998s058_Vasotec.cfm | |
| | 30. | HSU et al., "Enalapril in Infants With Single Ventricle: Results of a Multicenter Randomized Trial; DOI:10.1161/CIRCULATIONAHA.109.927988Richard V.; et al From Circulation (2010), 122(4), 333-340. Database: CAPLUS, | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.  [1]Applicant's unique citation designation number (optional).  [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.  [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3).  [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [6]Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

Attorney Docket No.

SPI_0000337

PTO/SB/08a (07-09)
Approved for use through 07/31/2012.  OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | 13/914,452 |
| | | | | Filing Date | 06/10/2013 |
| | | | | First Named Inventor | Rajewski et al |
| | | | | Art Unit | 1617 |
| | | | | Examiner Name | Y. Zhang |
| Sheet | 3 | of | 5 | Attorney Docket Number | 43060-701.301 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
| | 31. | HSU et al., "Rationale and design of a trial of angiotensin-converting enzyme inhibition in infants with single ventricle," American Heart Journal (2009), 157(1), 37-45. Database: CAPLUS, DOI:10.1016/j.ahj.2008.08.030 | |
| | 32. | LI et al., "Lessons learned from a pediatric clinical trial: The Pediatric Heart Network Angiotensin-Converting Enzyme Inhibition in Mitral Regurgitation Study," American Heart Journal (2011), 161(2), 233-240. DOI:10.1016/j.ahj.2010.10.030 | |
| | 33. | LIERN et al., "The additive antiproteinuric effect of Enalapril and Losartan to normotensive patients with pathology proteinuria," Nefrologia : publicacion oficial de la Sociedad Espanola Nefrologia (2004), 24(6), 553-8, Database: MEDLINE (with English abstract) | |
| | 34. | LIMA et al., "Stability and *in vitro* release profile of enalapril maleate from different commercially available tablets: Possible therapeutic implications," Journ. Pharmac. and Biomed. Analysis, 47, pp 934-937 (2008) | |
| | 35. | LIPSHULTZ, "Exposure to anthracyclines during childhood causes cardiac injury," Seminars in Oncology (2006), 33(3, Suppl. 8), S8-S14., Database: CAPLUS, DOI:10.1053/j.seminoncol.2006.04.019 | |
| | 36. | MEYERS et al., "Pharmacotherapy Review of Chronic Pediatric Hypertension," Clinical Therapeutics (2011), 33(10), 1331-1356. Database: CAPLUS, DOI:10.1016/j.clinthera.2011.09.003 | |
| | 37. | MILLER et al., "Enalapril: a well-tolerated and efficacious agent for the paediatric hypertensive patient," Journal of hypertension. Supplement : official journal of the International Society of Hypertension (1986), 4(5), S413-6, Database: MEDLINE | |
| | 38. | MILLER et al., "Enalapril: a well-tolerated and efficacious agent for the pediatric hypertensive patient," Journal of cardiovascular pharmacology (1987), 10 Suppl 7S154-6, Database: MEDLINE | |
| | 39. | MIR et al., "Effect of carvedilol on QT duration in pediatric patients with congestive heart failure," Clinical Drug Investigation (2004), 24(1), 9-15. Database: CAPLUS, DOI:10.2165/00044011-200424010-00002 | |
| | 40. | MOMMA, "ACE inhibitors in pediatric patients with heart failure," Paediatric drugs (2006), 8(1), 55-69, Database: MEDLINE | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MEPE 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

- 3 –

Attorney Docket No.

SPI_0000338

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| | | | | Application Number | 13/914,452 |
| | | | | Filing Date | 06/10/2013 |
| | | | | First Named Inventor | Rajewski et al |
| | | | | Art Unit | 1617 |
| | | | | Examiner Name | Y. Zhang |
| Sheet | 4 | of | 5 | Attorney Docket Number | 43060-701.301 |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | 41. | NAHATA et al., "Stability of enalapril maleate in three extemporaneously prepared oral liquids," Am. J. Health-Syst Pharm Vol. 55, pp. 1155-1157 (1998) | |
| | 42. | NAKAMURA et al., "The kinetic profiles of enalapril and enalaprilat and their possible developmental changes in pediatric patients with congestive heart failure," Clinical pharmacology and therapeutics (1994), 56(2), 160-8, Database: MEDLINE | |
| | 43. | NUNN et al., "Formulation of medicines for children," British Journal of Clinical Pharmacology, 59:6, pp 674-676 (2005) | |
| | 44. | PATEL et al., "Extemporaneous Dosage Form for Oral Liquids," Pharmacophore, Vol. 2, No. 2, pp. 86-103 (2011) | |
| | 45. | PROESMANS et al., 'Long-term therapy with enalapril in patients with nephrotic-range proteinuriam," Pediatric nephrology (Berlin, Germany) (1996), 10(5), 587-9, Database: MEDLINE | |
| | 46. | PROESMANS et al., "Enalapril in children with Alport syndrome," Pediatric nephrology (Berlin, Germany) (2004), 19(3), 271-5, Database: MEDLINE | |
| | 47. | PROSEMANS et al., "Enalapril in pediatric patients with Alport syndrome: 2 years' experience," European Journal of Pediatrics (2000), 159(6), 430-433. Database: CAPLUS, DOI:10.1007/s004310051301 | |
| | 48. | RAMUSOVIC ET AL., "Determination of enalapril and enalaprilat in small human serum quantities for pediatric trials by HPLC-tandem mass spectrometry," Biomedical Chromatography (2012), 26(6), 697-702. Database: CAPLUS, DOI:10.1002/bmc.1716 | |
| | 49. | REZENDE et al., "Stability and Compatibility Study on Enalapril Maleate Using Thermoanalytical Techniques," Journ Thermal Analysis and Calorimetry, 93:3, pp 881-886 (2008) | |
| | 50. | RIPPLEY et al., "Pharmacokinetic Assessment of an Oral Enalapril Suspension for Use in Children," Biopharmaceutics & Drug Disposition 21:339-344 (2000) | |
| | 51. | ROKICKI, "Use of converting enzyme inhibitors in children. I. General remarks," Wiadomosci lekarskie (Warsaw, Poland : 1960) (1997), 50(1-3), 28-31, Database: MEDLINE (with English abstract) | |
| | 52. | SILBER et al., "Design and baseline characteristics for the ACE inhibitor after anthracycline (AAA) study of cardiac dysfunction in long-term pediatric cancer survivors," American Heart Journal (2001), 142(4), 577-585. Database: CAPLUS, DOI:10.1067/mhj.2001.118115 | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

Attorney Docket No.

SPI_0000339

PTO/SB/08a (07-09)
Approved for use through 07/31/2012.  OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons required to respond to a collection of information unless it contains a valid OMB control number.

| | | | | Complete if Known | |
|---|---|---|---|---|---|
| Substitute for form 1449/PTO | | | Application Number | 13/914,452 | |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Filing Date | 06/10/2013 | |
| | | | First Named Inventor | Rajewski et al | |
| | | | Art Unit | 1617 | |
| | | | Examiner Name | Y. Zhang | |
| Sheet | 5 | of | 5 | Attorney Docket Number | 43060-701.301 |

| | | NON PATENT LITERATURE DOCUMENTS | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
| | 53. | SILBER et al., "Enalapril to prevent cardiac function decline in long-term survivors of pediatric cancer exposed to anthracyclines," Journal of Clinical Oncology (2004), 22(5), 820-828. Database: CAPLUS, DOI:10.1200/JCO.2004.06.022 | |
| | 54. | SIMONČIČ et al., "Use of microcalorimetry in determination of stability of enalapril maleate and enalapril maleate table formulations," Int'l. Journ. Pharmaceutics, 342, pp. 145-151 (2007) | |
| | 55. | SOSNOWSKA et al., "Stability of Extemporaneous Enalapril Maleate Suspensions for Pediatric Use Prepared from Commercially Available Tablets," Acta Poloniae Pharmaceutica, Vol. 66, No. 3, pp. 321-326 (2009) | |
| | 56. | STANDING et al., "Paediatric formulations-Getting to the heart of the problem," International Journal of Pharmaceutics (2005), 300(1-2), 56-66. Database: CAPLUS, | |
| | 57. | STANISZ et al., "Evaluation of stability of enalapril maleate in solid phase," Journ. Pharma. and Biomed. Analysis, 31, pp 375-380 (2003) | |
| | 58. | VASOTEC (Enalapril Maleate) Product Insert (2010) | |
| | 59. | WANG et al., "Eudragit E Accelerated the Diketopiperazine Formation of Enalapril Maleate Determined by Thermal FTIR Microspectroscopic Technique," Pharmaceutical Research, Vol. 21, No. 11, November 2004 | |
| | 60. | WELLS et al., "A double-blind, placebo-controlled, dose-response study of the effectiveness and safety of enalapril for children with hypertension," Journal of Clinical Pharmacology (2002), 42(8), 870-880. Database: CAPLUS, DOI:10.1177/009127002401102786 | |
| | 61. | WELLS et al., "The Pharmacokinetics of Enalapril in Children and Infants with Hypertension," J. Clin Pharmacol 41:1064-1074 (2001) | |
| | 62. | WILLIAMS et al., "Factors affecting growth in infants with single ventricle physiology: a report from the Pediatric Heart Network Infant Single Ventricle Trial," The Journal of pediatrics (2011), 159(6), 1017-22.e2, Database: MEDLINE | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

Attorney Docket No.

SPI_0000340

Attorney Docket No. **43060-701.301**
**PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventor:    Rajewski et al | Group Art Unit:    1617 |
| Serial Number:    13/914,452 | Examiner:    Y. Zhang |
| Filing Date:    06/10/2013 | **CONFIRMATION NO: 3336** |
| Title:   Enalapril Compositions | |

**FILED ELECTRONICALLY ON:  November 27, 2013**

Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

## INFORMATION DISCLOSURE STATEMENT
## UNDER 37 CFR §1.97

Madam/Sir:

An Information Disclosure Statement along with attached PTO/SB/08 is hereby submitted.  A copy of each listed publication is submitted, if required, pursuant to 37 CFR §§1.97-1.98, as indicated below.

The Examiner is requested to review the information provided and to make the information of record in the above-identified application.  The Examiner is further requested to initial and return the attached PTO/SB/08 in accordance with MPEP §609.

The right to establish the patentability of the claimed invention over any of the information provided herewith, and/or to prove that this information may not be prior art, and/or to prove that this information may not be enabling for the teachings purportedly offered, is hereby reserved.

This statement is not intended to represent that a search has been made or that the information cited in the statement is, or is considered to be, prior art or material to patentability as defined in §1.56.

A. ☐  *37 CFR §1.97(b).* This Information Disclosure Statement should be considered by the Office because:

    ☐  (1)  It is being filed within 3 months of the filing date of a national application and is other than a continued prosecution application under §1.53(d);

        -- OR --

    ☐  (2)  It is being filed within 3 months of entry of the national stage as set forth in §1.491 in an international application;

SPI_0000341

-- OR --

☐   (3)   It is being filed before the mailing of a first Office action on the merits;

-- OR --

☐   (4)   It is being filed before the mailing of a first Office action after the filing of a request for continued examination under §1.114.

B.  ☒  *37 CFR §1.97(c).* Although this Information Disclosure Statement is being filed after the period specified in *37 CFR §1.97(b),* above, it is filed before the mailing date of the earlier of (1) a final office action under §1.113, (2) a notice of allowance under §1.311, or (3) an action that otherwise closes prosecution on the merits, this Information Disclosure Statement should be considered because it is accompanied by one of:

☐   a statement as specified in §1.97(e) provided concurrently herewith;

-- OR --

☒   a fee of $180.00 as set forth in §1.17(p) authorized below, enclosed, or included with the payment of other papers filed together with this statement.

C.  ☐  *37 CFR §1.97(d).* Although this Information Disclosure Statement is being filed after the mailing date of the earlier of (1) a final office action under §1.113 or (2) a notice of allowance under §1.311, it is being filed before payment of the issue fee and should be considered because it is accompanied by:

i.   a statement as specified in §1.97(e);

-- AND --

ii.   a fee of $180.00 as set forth in §1.17(p) is authorized below, enclosed, or included with the payment of other papers filed together with this Statement.

D.  ☐  *37 CFR §1.97(e).* Statement.

☐   A statement is provided herewith to satisfy the requirement under 37 CFR §§1.97(c);

-- AND/OR --

☐   A statement is provided herewith to satisfy the requirement under 37 CFR §§1.97(d);

-- AND/OR --

☐   A copy of a dated communication from a foreign patent office clearly showing that the information disclosure statement is being submitted within 3 months of the filing date on the communication is provided in lieu of a statement under 37 C.F.R. § 1.97(e)(1) as provided for under MPEP 609.04(b) V.

E.  ☐  *Statement Under 37 C.F.R. §1.704(d).* Each item of information contained in the information disclosure statement was first cited in a communication from a foreign patent office in a counterpart application that was received by an individual designated in § 1.56(c) not more than <u>thirty (30) days</u> prior to the filing of this information disclosure statement. This statement is made pursuant to the requirements of 37 C.F.R. §1.704(d) to avoid reduction of the period of adjustment of the patent term for Applicant(s) delay.

F.  ☐  *37 CFR §1.98(a)(2).* The content of the Information Disclosure Statement is as follows:

☐   Copies of each of the references listed on the attached Form PTO/SB/08 are enclosed herewith.

-- OR --

☐    Copies of U.S. Patent Documents (issued patents and patent publications) listed on the attached Form PTO/SB/08 are NOT enclosed.

-- AND/OR --

☐    Copies of Foreign Patent Documents and/or Non Patent Literature Documents listed on the attached Form PTO/SB/08 are enclosed in accordance with 37 CFR §1.98 (a)(2).

-- AND/OR --

☐    Copies of pending unpublished U.S. patent applications are enclosed in accordance with 37 CFR §1.98(a)(2)(iii).

G. ☐ *37 CFR §1.98(a)(3).* The Information Disclosure Statement includes non-English patents and/or references.

     ☐    Pursuant to 37 CFR §1.98(a)(3)(i), a concise explanation of the relevance of each patent, publication or other information provided that is not in English is provided herewith.

         ☐    Pursuant to MPEP 609(B), an English language copy of a foreign search report is submitted herewith to satisfy the requirement for a concise explanation where non-English language information is cited in the search report.

         -- OR --

         ☐    A concise explanation of the relevance of each patent, publication or other information provided that is not in English is as follows: _____

     ☐    Pursuant to 37 CFR §1.98(a)(3)(ii), a copy of a translation, or a portion thereof, of the non-English language reference(s) is provided herewith.

H. ☒ *37 CFR §1.98(d).* Copies of patents, publications and pending U.S. patent applications, or other information specified in 37 C.F.R. § 1.98(a) are not provided herewith because:

     ☒    Pursuant to 37 CFR §1.98(d)(1) the information was previously submitted in an Information Disclosure Statement, or cited by examiner, for another application under which this application claims priority for an earlier effective filing date under 35 U.S.C. 120.

         Application in which the information was submitted:       13/670,355

         Information Disclosure Statement(s) filed on:    09/12/2013;    05/01/2013;    11/07/2012    PTO Form 892 dated 02/08/2013

         AND

     ☒    The information disclosure statement submitted in the earlier application complied with paragraphs (a) through (c) of 37 CFR §1.98.

I.   ☒   *Fee Authorization*.  The Commissioner is hereby authorized to charge the above-referenced fees of $180.00 and charge any additional fees or credit any overpayment associated with this communication to Deposit Account No. 23-2415 (Docket No. 43060-701.301).

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

Dated: November 27, 2013                          By:       /Clark Lin/
                                                                    Clark Y. Lin, Reg. No. 67,024

650 Page Mill Road
Palo Alto, CA 94304-1050
(650) 493-9300
Customer No. 021971



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 13/914,452 | 06/10/2013 | Lian G. Rajewski | 43060-701.301 |

21971
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

**CONFIRMATION NO. 3336**
**IMPROPER CPOA LETTER**


*OC000000065348609*

Date Mailed: 12/04/2013

# NOTICE REGARDING POWER OF ATTORNEY

This is in response to the power of attorney filed 11/27/2013. The power of attorney in this application is not accepted for the reason(s) listed below:

- The power of attorney has not been accepted because the party who is giving power has not been identified. Power of attorney may only be signed by the applicant for patent (37 CFR 1.42) or the patent owner. A party who is not the applicant must become the applicant in accordance with 37 CFR 1.46(c) and appoint any power of attorney in compliance with 37 CFR 3.71 and 3.73. For a reissue application, reexamination proceeding, or supplemental examination proceeding, a patent owner who was not the applicant under 37 CFR 1.46 must appoint any power of attorney in compliance with 37 CFR 3.71 and 3.73. See 37 CFR 1.32(b)(4).

/ddinh/

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

page 1 of 1

SPI_0000345